

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

07 CIV 9329

-------------------------------------------------------------------x

MARYA J. LEBER, *and all others similarly situated,*

                      Plaintiffs,

             -against-

CITIGROUP, INC., THE PLANS ADMINISTRATIVE
COMMITTEE OF CITIGROUP INC., THE 401(k)
PLAN INVESTMENT COMMITTEE and DOE
DEFENDANTS 1-20,

                  Defendants.

-------------------------------------------------------------------x

                                           CLASS ACTION COMPLAINT

OCT 18 2007
U.S.D.C. S.D. N.Y.
CASHIERS

This action involves the Citigroup 401(k) Plan (the "401(k) Plan"), which is sponsored by Citigroup, Inc. ("Citigroup"). Plaintiff Marya J. Leber alleges the following on behalf of herself and a class of similarly-situated participants in the 401(k) Plan.

## I. NATURE OF THE ACTION

1.    This case is about self-dealing and imprudent investment of pension plan assets. The Plans Administrative Committee of Citigroup Inc. (the "Administrative Committee") and its individual members, and the 401(k) Plan Investment Committee ("Investment Committee") and its individual members,[1] are fiduciaries of the 401(k) Plan. The Committee Defendants were responsible for selecting and monitoring 401(k) Plan investments and for selecting service providers to the 401(k) Plan such as trustees and record-keepers. The Committee Defendants are officers, employees, or agents of Citigroup.

---

[1] The two committees and their members are referred to collectively as the "Committee Defendants." All allegations about the Committee Defendants apply to the individual members of the two committees whose identities are not presently known by plaintiff.

2.      As fiduciaries for the 401(k) Plan, Committee Defendants were required by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq.*, to act prudently and solely in the interest of the 401(k) Plan and its participants and beneficiaries when selecting investments, products, and services for the 401(k) Plan. They did not do so. Instead, they put Citigroup's interests ahead of the 401(k) Plan's interests by choosing investment products and pension plan services offered and managed by Citigroup subsidiaries and affiliates, which generated substantial revenues for Citigroup at great cost to the 401(k) Plan.

3.      More specifically, Committee Defendants chose mutual funds offered and managed by Smith Barney Fund Management LLC ("Smith Barney") and Salomon Brothers Asset Management Inc. ("Salomon Brothers"), guaranteed insurance contracts ("GICs") and a Stable Value Fund offered and managed by Travelers Life & Annuity ("Travelers"), trustee services provided by Citibank N.A. ("Citibank"), and record-keeping and other plan administration services provided by CitiStreet. Each of these entities is (or was) an affiliate or subsidiary of Citigroup during the Class Period.

4.      By selecting Smith Barney and Salomon Brothers mutual funds (hereinafter "Affiliated Funds"), Committee Defendants placed Citigroup's interests above the 401(k) Plan's interests. There were, and are, many better-performing, lower-fee mutual funds that Committee Defendants could have chosen—and did eventually choose *after* Citigroup sold its mutual fund business and no longer received revenue from the 401(k) Plan. Unaffiliated investment products, however, would not generate any fees for Citigroup. So, Committee Defendants chose investments to benefit Citigroup, the sponsor of the 401(k) Plan.

5.    Committee Defendants also caused the 401(k) Plan to invest in GICs and a Stable Value Fund offered by Travelers, another Citigroup subsidiary, and to contract with Citibank and CitiStreet for trustee and record-keeping services.

6.    This is a civil enforcement action under the ERISA, and in particular under ERISA §§ 404, 406, and 409, 29 U.S.C. §§ 1104, 1106 and 1109, for losses to the 401(k) Plan caused by Committee Defendants' breaches of fiduciary duty and violations of ERISA's prohibited transactions provisions.

7.    This class action is brought on behalf of the 401(k) Plan and its approximately 187,000 participants for losses to the 401(k) Plan caused by Committee Defendants' conflicted and imprudent selection of investments and services for the 401(k) Plan.

## II. JURISDICTION AND VENUE

8.    ERISA provides for exclusive federal jurisdiction over these claims. The 401(k) Plan is an "employee benefit plan" within the meaning of § 3(3) of ERISA, 29 U.S.C. § 1002(3), and Plaintiff is a "participant" within the meaning of § 3(7) of ERISA, 29 U.S.C. § 1002(7), who is authorized pursuant to § 502(a)(2) and (3) of ERISA, 29 U.S.C. § 1132(a)(2) and (3) to bring the present action on behalf of the participants and beneficiaries of the 401(k) Plan to obtain appropriate relief under §§ 502 and 409 of ERISA, 29 U.S.C. §§ 1132 and 1109.

9.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

10.    This Court has personal jurisdiction over the Defendants because the Court has subject matter jurisdiction under ERISA.

11.    Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2) because Citigroup's principal place of business is located in this district.

3

## III. PARTIES

**A.    Plaintiff.**

12.    **Plaintiff Marya J. Leber ("Leber").**  Plaintiff Leber is a resident of Sioux Falls, South Dakota.  Plaintiff Leber is a participant in the 401(k) Plan.

**B.    Defendants.**

13.    **Defendant Citigroup.**  Citigroup is the sponsor of the 401(k) Plan and, thus, by definition, a party in interest to the 401(k) Plan under ERISA.  ERISA § 3(14), 29 U.S.C. § 1002(14).  Citigroup is a Delaware corporation with its principal place of business at 399 Park Avenue, New York, New York.

14.    **Defendant The Plans Administrative Committee of Citigroup Inc. (the "Administrative Committee").**  The Administrative Committee is the "Plan Administrator" of the 401(k) Plan and is responsible for the overall operation and administration of the 401(k) Plan, including the responsibility, along with the 401(k) Plan Investment Committee, for selecting, monitoring, and evaluating the 401(k) Plan's investment options.

15.    **Defendant The 401(k) Plan Investment Committee (the "Investment Committee").**  The Investment Committee, with the Administrative Committee, is responsible for selecting, monitoring, and evaluating the 401(k) Plan's investment options.

16.    **Doe Defendants.**  Doe Defendants include individual members of the Administrative and Investment Committees whose names and identities are not presently known to plaintiff.

## IV. FACTUAL BACKGROUND

**A.    The 401(k) Plan.**

17.    The 401(k) Plan is an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A) and a defined contribution plan within the meaning of

ERISA § 3(34), 29 U.S.C. § 1002(34). Pursuant to ERISA, the relief requested in this action is for the benefit of the 401(k) Plan.

18.     The 401(k) Plan covers eligible employees of Citigroup and its subsidiaries and affiliates.

19.     In a defined contribution plan like the 401(k) Plan, the plan's fiduciaries are responsible for selecting the investment options made available to participants in the plan.

20.     When selecting investment options for a defined contribution plan, fiduciaries must act solely in the interest of plan participants and with all due care, prudence, and diligence.

21.     After selecting the investment options for a defined contribution plan, the fiduciaries have a continuing duty to monitor those investment options to ensure that the options are prudent and in the best interests of plan participants.

22.     Once the fiduciaries have determined which investment options to make available, the participants direct how to allocate their salary deferrals among the various investment options.

23.     Citigroup is the sponsor of the 401(k) Plan. ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B).

24.     Committee Defendants are responsible for operating and administering the 401(k) Plan, including selecting 401(k) Plan investment options and service-providers

25.     Citibank is the Trustee for the 401(k) Plan. The 401(k) Plan pays fees, directly or indirectly, to Citibank.

26.     CitiStreet, a joint venture between Citigroup and State Street Bank & Trust, provides administrative and recordkeeping services to the 401(k) Plan. The 401(k) Plan has paid CitiStreet millions of dollars each year of the Class Period (2001 to the present).

27.    The 401(k) Plan has invested, pursuant to the direction of the Committee Defendants, billions of dollars in Affiliated Funds, which investments have generated millions of dollars of investment advisory and other fees for Citigroup. During the Class Period, 2001 to the present, the 401(k) Plan's investment in Affiliated Funds averaged almost $2.5 billion a year.

28.    Considering that the 401(k) Plan also invested in GICs offered by Citigroup's Travelers affiliate and in Citigroup common stock, as much as 74% of the 401(k) Plan's assets in some years of the Class Period were invested in stock or investment products affiliated with Citigroup.

29.    The 401(k) Plan's investments in Smith Barney and Salomon Brothers mutual funds substantially under-performed similar products available from unaffiliated investment managers and resulted in tens of millions of dollars in losses to the 401(k) Plan.

**B.    Defendants Are Fiduciaries And Parties In Interest.**

30.    ERISA requires every plan to provide for one or more named fiduciaries of the Plan pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1002(21)(A).

31.    ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under ERISA § 402(a)(1), but also any other persons who in fact perform fiduciary functions. ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i) (stating that a person is a fiduciary "to the extent . . . he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . .").

32.    The Committee Defendants are fiduciaries to the 401(k) Plan and owe fiduciary duties to the 401(k) Plan and its participants under ERISA in the manner and to the extent set forth in the documents governing the 401(k) Plan, through their conduct, and under ERISA.

33.     The Administrative Committee is the administrator of the 401(k) Plan and a Named Fiduciary of the 401(k) Plan pursuant to ERISA §§ (3)(16(A) and 402(a)(2), 29 U.S.C. §§ 1002(16)(A) and 1029(a)(2), and the documents governing the 401(k) Plan. The Administrative Committee exercises broad responsibility for management and administration of the 401(k) Plan and, among its other duties, is responsible for oversight of the 401(k) Plan's investments, policies, and performance, as well as of other fiduciaries to the 401(k) Plan. The Administrative Committee's duties include, along with the Investment Committee, selecting, monitoring, and terminating the 401(k) Plan's investments.

34.     The Administrative Committee exercises broad responsibility for management and administration of the 401(k) Plan and, among its other duties, is responsible for selecting and monitoring service providers to the 401(k) Plan, including record keepers and trustees.

35.     The Investment Committee, along with the Administrative Committee, is responsible for selecting, monitoring, and evaluating the 401(k) Plan's investment options. In its capacity to select and monitor investments for the 401(k) Plan, the Investment Committee has the discretion and authority to suspend, eliminate, or reduce any of the 401(k) Plan's investments, including investments managed or offered by Citigroup subsidiaries and affiliates.

36.     Citigroup is the sponsor of the 401(k) Plan and, thus, by definition a party in interest. In addition, the Administrative Committee and the Investment Committee are internal committees created and staffed by Citigroup.

**C.    Defendants' ERISA Violations.**

37.     Among other things, the Committee Defendants are responsible for selecting investments and service-providers for the 401(k) Plan, which selections must be made prudently and solely in the interest of the 401(k) Plan's participants and beneficiaries.

38.     The Committee Defendants had the sole discretion to select the investments available under the 401(k) Plan.  Over many years, Committee Defendants used that discretion to direct billions of dollars of 401(k) Plan assets into Affiliated Funds.

39.     At virtually every turn, the Committee Defendants placed Citigroup's interests ahead of the 401(k) Plan's interests.  When the Committee Defendants terminated an investment option fund, the assets in that investment option were almost always moved into a Citigroup affiliated fund.

40.     For example, in 2003, the Committee Defendants replaced four unaffiliated fund options (Van Kampen funds) in the 401(k) Plan with four Smith Barney funds, effectively transferring approximately $160 million to the control of Citigroup affiliates.

41.     On December 1, 2005, Citigroup sold Citigroup Asset Management ("CAM") to Legg Mason, Inc.  CAM consisted largely of the mutual fund businesses operated and managed by Smith Barney and Salomon Brothers.  Citigroup retained the brokerage divisions Smith Barney and Salomon Brothers.

42.     Effective April 7, 2006, as a result of the sale to Legg Mason, Smith Barney and Salomon Brothers funds in which the 401(k) Plan invested were renamed Legg Mason funds.

43.     Consistent with its practice of favoring affiliated funds, on January 2, 2006— barely a month after selling CAM to Legg Mason—Committee Defendants caused the 401(k) Plan to eliminate a fund now owned by Legg Mason, the Salomon Brothers Investors Value Fund, and transferred the 401(k) Plan's assets therein to the Citi Institutional Liquid Reserves Fund, an Affiliated Fund.

44.     After selling CAM to Legg Mason, the Committee Defendants conducted an extensive review of the 401(k) Plan's investments and researched new investment options.  The

review considered various factors, including investment management fees, the current

investment options available under the 401(k) Plan, and performance. The ostensible goal of the

review was to improve performance, reduce 401(k) Plan expenses, and provide greater

diversification.

45.     The review culminated in the Committee Defendants' decision to terminate all

eight of the Legg Mason funds that succeeded the predecessor Smith Barney and Salomon

Brothers funds and replace them with collective index funds, target date retirement funds, and

select actively managed funds in various asset classes.

46.     The review and ultimate decision to terminate the Legg Mason funds occurred

only after Citigroup had sold CAM to Legg Mason, in other words, after Citigroup was no longer

generating fees from its own 401(k) Plan. The Committee Defendants failed to undertake any

such review of the 401(k) Plan's investments when the 401(k) Plan was generating fees for

Citigroup.

47.     During the Class Period, the 401(k) Plan was by far the largest investor in

Affiliated Funds. For example, the 401(k) Plan's investment in the institutional share class of

the following Affiliated Funds exceeded 50% for most of the Class Period: Smith Barney

Aggressive Growth Fund, Smith Barney Appreciation Fund, Smith Barney U.S. Government

Securities Fund, Salomon Brothers High Yield Bond Fund, and Salomon Brothers CAP Fund.

This means that few, if any, institutional investors with assets on the scale of the 401(k) Plan

chose to invest in Affiliated Funds. In other words, the large pension plan market did not favor

Affiliated Funds with one notable exception—the 401(k) Plan which was a captured client whose

investment decisions were made by conflicted fiduciaries.

48.    During the Class Period, the 401(k) Plan routinely invested in Affiliated Funds that charged investment advisory fees that were higher than comparable funds.  For example, the following Affiliated Funds charged investment advisory fees that were higher than such fees charged by comparable funds offered by the Vanguard Group, Inc.:  Smith Barney Aggressive Growth Fund—52% higher fees than comparable Vanguard fund; Smith Barney Appreciation Fund—50% higher fees than comparable Vanguard fund; Smith Barney U.S. Government Securities Fund—111% higher fees than comparable Vanguard fund; Smith Barney Large Cap Growth Fund—57% higher fees than comparable Vanguard fund; Smith Barney Fundamental Value Fund—37% higher fees than comparable Vanguard fund; Salomon Brothers High Yield Bond Fund—227% higher fees than comparable Vanguard fund; Salomon Brothers CAP Fund— 24% higher fees than comparable Vanguard fund; and Salomon Brothers Investors Fund—62% higher fees than comparable Vanguard fund.

49.    Citigroup subsidiaries and affiliates, chiefly Smith Barney, Salomon Brothers, Travelers, Citibank, and CitiStreet, received tens of millions of dollars in annual fees for investment advisory, custodial, trust, administrative and other services to the 401(k) Plan.

50.    Committee Defendants knew or should have known that similar investment funds and retirement plan administration services were available from unaffiliated entities.

51.    The 401(k) Plan's investments in the Affiliated Funds were prohibited transactions under ERISA, as were the payment of fees to other Citigroup affiliates such as Citibank and CitiStreet.

52.    The 401(k) Plan has suffered millions of dollars a year in losses because Committee Defendants forced the 401(k) Plan to invest billions of dollars in Affiliated Funds, which resulted in millions of dollars of revenue for Citigroup while delivering poor investment

returns for the 401(k) Plan. ERISA prohibits a plan from investing in the plan sponsor's

investment products or paying the plan sponsor fees for services provided to the plan unless the

fiduciary or sponsor can prove that the transactions are exempt. Even if Defendants can prove

the transactions are exempt from ERISA § 406, 29 U.S.C. § 1106, ERISA does not permit such

arrangements when they are not solely in the interest of the plan or when a prudent, unconflicted

fiduciary would choose differently.

53.    Citigroup, as plan sponsor was a party in interest. It also created and staffed the

Administrative and Investment Committees. Citigroup knew or should have known that the

Committee Defendants were breaching their duties under ERISA and engaging in prohibited

transactions by causing the 401(k) Plan to do business with Citigroup subsidiaries and affiliates.

In fact, Citigroup welcomed and participated in the Committee Defendants' violations of ERISA,

and must disgorge all monies received from the 401(k) Plan and profits earned by Citigroup

thereon.

## V. ERISA'S FIDUCIARY STANDARDS & PROHIBITED TRANSACTIONS

54.    ERISA imposes strict fiduciary duties of loyalty and prudence upon the

Defendants as fiduciaries of the Plan. ERISA § 404(a), 29 U.S.C. § 1104(a), states, in relevant

part, that:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the
> interest of the participants and beneficiaries and —
>
> (A)    for the exclusive purpose of
>
> >    (i)    providing benefits to participants and their beneficiaries;
> >           and
> >
> >    (ii)    defraying reasonable expenses of administering the plan;
>
> (B)    with the care, skill, prudence, and diligence under the
>        circumstances then prevailing that a prudent man acting in a like

11

capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims;

(C)    by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

(D)    in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and Title IV.

55.    ERISA also imposes explicit co-fiduciary duties on plan fiduciaries. ERISA § 405, 29 U.S.C. § 1105, states, in relevant part, that:

In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:

(1)    if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; or

(2)    if, by his failure to comply with section 404(a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3)    if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

56.    Under ERISA, fiduciaries that exercise discretionary authority or control over the selection of plan investments and the selection of plan service providers must act prudently and solely in the interest of participants in the plan when selecting investments and retaining service providers. Thus, "the duty to conduct an independent investigation into the merits of a particular investment" is "the most basic of ERISA's investment fiduciary duties." *In re Unisys Savings Plan Litig.*, 74 F.3d 420, 435 (3d Cir. 1996). As the Department of Labor explains,

[T]o act prudently, a plan fiduciary must consider, among other factors, the availability, riskiness, and potential return of alternative investments for his or her

plan. [Where an investment], if implemented, causes the Plan to forego other investment opportunities, such investments would not be prudent if they provided a plan with less return, in comparison to risk, than comparable investments available to the plan, or if they involved a greater risk to the security of plan assets than other investments offering a similar return.

DoL Ad. Op. No. 88-16A.

57.     Pursuant to these duties, fiduciaries must ensure that the services provided to the

plan are necessary and that the fees are reasonable:

> Under section 404(a)(1) of ERISA, the responsible Plan fiduciaries must act prudently and solely in the interest of the Plan participants and beneficiaries both in deciding ... which investment options to utilize or make available to Plan participants or beneficiaries. In this regard, the responsible Plan fiduciaries must assure that the compensation paid directly or indirectly by the Plan to [service providers] is reasonable ... .

DoL Ad. Op. 97-15A; DoL Ad. Op. 97-16A

58.     A fiduciary's duty of loyalty requires a fiduciary to act solely in the interest of

plan participants and beneficiaries. As the Department of Labor has repeatedly warned:

> We have construed the requirements that a fiduciary act solely in the interest of, and for the exclusive purpose of providing benefits to, participants and beneficiaries as prohibiting a fiduciary from subordinating the interests of participants and beneficiaries in their retirement income to unrelated objectives. Thus, in deciding whether and to what extent to invest in a particular investment, a fiduciary must ordinarily consider only factors relating to the interests of plan participants and beneficiaries in their retirement income. A decision to make an investment may not be influenced by [other] factors unless the investment, when judged solely on the basis of its economic value to the plan, would be equal or superior to alternative investments available to the plan.

DoL Ad. Op. No. 98-04A; DoL Ad. Op. No. 88-16A.

59.     The Department of Labor counsels that fiduciaries are responsible for ensuring

that a plan pays reasonable fees and expenses and that fiduciaries need to carefully evaluate

differences in fees and services between prospective service providers:

> While the law does not specify a permissible level of fees, it does require that fees charged to a plan be "reasonable." After careful evaluation during the initial

selection, the plan's fees and expenses should be monitored to determine whether they continue to be reasonable.

In comparing estimates from prospective service providers, ask which services are covered for the estimated fees and which are not. Some providers offer a number of services for one fee, sometimes referred to as a "bundled" services arrangement. Others charge separately for individual services. Compare all services to be provided with the total cost for each provider. Consider whether the estimate includes services you did not specify or want. Remember, all services have costs.

Some service providers may receive additional fees from investment vehicles, such as mutual funds, that may be offered under an employer's plan. For example, mutual funds often charge fees to pay brokers and other salespersons for promoting the fund and providing other services. There also may be sales and other related charges for investments offered by a service provider. Employers should ask prospective providers for a detailed explanation of all fees associated with their investment options.

*Meeting Your Fiduciary Responsibilities* (May 2004) (available at

http://www.dol.gov/ebsa/publications/fiduciaryresponsibility.html).

In a separate publication, the Department of Labor writes:

Plan fees and expenses are important considerations for all types of retirement plans. As a plan fiduciary, you have an obligation under ERISA to prudently select and monitor plan investments, investment options made available to the plan's participants and beneficiaries, and the persons providing services to your plan. Understanding and evaluating plan fees and expenses associated with plan investments, investment options, and services are an important part of a fiduciary's responsibility. This responsibility is ongoing. After careful evaluation during the initial selection, you will want to monitor plan fees and expenses to determine whether they continue to be reasonable in light of the services provided.

\* \* \*

By far the largest component of plan fees and expenses is associated with managing plan investments. Fees for investment management and other related services generally are assessed as a percentage of assets invested. Employers should pay attention to these fees. They are paid in the form of an indirect charge against the participant's account or the plan because they are deducted directly from investment returns. Net total return is the return after these fees have been deducted. For this reason, these fees, which are not specifically identified on statements of investments, may not be immediately apparent to employers.

14

*Understanding Retirement Plan Fees and Expenses* (May 2004) (available at

http://www.dol.gov/ebsa/publications/undrstndgrtrmnt.html.)

60.     A fiduciary's duty of loyalty and prudence require it to disregard plan documents

or directives that it knows or reasonably should know would lead to an imprudent result, or

would otherwise harm plan participants or beneficiaries. ERISA § 404(a)(1)(D), 29 U.S.C.

§ 1104(a)(1)(D).  Thus, a fiduciary may not blindly follow plan documents or directives that

would lead to an imprudent result or that would harm plan participants or beneficiaries, nor allow

others, including those whom they direct or who are directed by plan documents to do so.

61.     The general duties of loyalty and prudence imposed by § 404 of ERISA are

supplemented by a detailed list of transactions that are expressly prohibited by § 406 of ERISA,

29 U.S.C. § 1106, and are considered *"per se"* violations because they entail a high potential for

abuse.  Section 406(a)(1) provides, in pertinent part, that:

> [A] fiduciary with respect to a plan shall not cause the plan to engage in a
> transaction, if he knows or should know that such transaction constitutes a
> direct or indirect—
>
> (A)    sale or exchange, or leasing, of any property between the plan and
>        a party in interest;
>
> * * *
>
> (C)    furnishing of goods, services, or facilities between the plan and a
>        party in interest ... .

Section 406(b) provides, in pertinent part, that:

> [A] fiduciary with respect to a plan shall not—
>
> (1)    deal with the assets of the plan in his own interest or for his own
>        account,
>
> (2)    in his individual or in any other capacity act in a transaction
>        involving the plan on behalf of a party (or represent a party) whose
>        interests are adverse to the interests of the plan or the interests of
>        its participants or beneficiaries ...

62.    ERISA's prohibited transaction provisions thus prohibit fiduciaries, such as the Defendants here, from causing plans to engage in transactions with the plan sponsor, here Citigroup, including causing a plan to invest assets in investment management and other products offered by a party in interest or plan fiduciary and the payment of investment management and other fees in connection with such investments.

63.    Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), provides a cause of action against a party in interest, such as Citigroup, for participating in the breach of a fiduciary.

## VI. CLASS ALLEGATIONS

64.    Representative Plaintiff brings this action on behalf of a class defined as:

All participants in the Citigroup 401(k) Plan from 2001 to the present.

65.    Class certification is appropriate under Fed. R. Civ. P. 23(a) and (b)(1), (b)(2), and/or (b)(3).

66.    The class satisfies the numerosity requirement because it is composed of thousands of persons, in numerous locations. The 401(k) Plan has almost 190,000 participants. The number of class members is so large that joinder of all its members is impracticable.

67.    Common questions of law and fact include:

A.    Whether Defendants caused the 401(k) Plan to invest its assets in mutual funds and other investment products offered or managed by Citigroup subsidiaries and affiliates;

B.    Whether Committee Defendants were fiduciaries responsible for selecting and evaluating the investments of the 401(k) Plan;

C.    Whether Defendants caused the 401(k) Plan to pay fees to Citigroup subsidiaries and affiliates for trustee, record-keeping, plan administration and other such services and whether such fees were reasonable;

16

D.      Whether Committee Defendants breached their fiduciary duties to the 401(k) Plan and engaged in prohibited transactions by causing the 401(k) Plan to invest its assets in mutual funds and other investment products offered or managed by Citigroup subsidiaries and affiliates, and whether such fees were reasonable;

E.      Whether the 401(k) Plan and its participants suffered losses as a result of Committee Defendants' fiduciary breaches; and

F.      Whether Citigroup is liable to disgorge fees collected from the 401(k) Plan and profits earned thereon.

68.     Plaintiff's claims are typical of the claims of the Class. She has no interests that are antagonistic to the claims of the Class. She understands that this matter cannot be settled without the Court's approval. Plaintiff is not aware of another suit pending against Defendants arising from the same circumstances.

69.     Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is committed to the vigorous representation of the Class. Plaintiff's counsel, McTigue & Porter LLP, and Rosen Preminger & Bloom LLP are experienced in class action and ERISA litigation. Counsel have agreed to advance the costs of the litigation. Counsel are aware that no fee can be awarded without the Court's approval.

70.     A class action is the superior method for the fair and efficient adjudication of this controversy. Joinder of all members of the Class is impracticable. The losses suffered by some of the individual members of the Class may be small, and it would therefore be impracticable for individual members to bear the expense and burden of individual litigation to enforce their rights. Moreover, Committee Defendants, as fiduciaries of the 401(k) Plan, were obligated to treat all Class members similarly as 401(k) Plan participants pursuant to written plan documents

and ERISA, which impose uniform standards of conduct on fiduciaries. Individual proceedings, therefore, would pose the risk of inconsistent adjudications. Plaintiff is unaware of any difficulty in the management of this action as a class action.

71.    This Class may be certified under Rule 23(b).

A.    23(b)(1). As an ERISA breach of fiduciary duty action, this action is a classic 23(b)(1) class action. Prosecution of separate actions by individual members would create the risk of (A) inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for the defendants opposing the Class, or (B) adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests.

B.    23(b)(2). This action is suitable as a class action under 23(b)(2) because the Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final injunctive, declaratory or other appropriate equitable relief with respect to the Class.

C.    23(b)(3). This action is suitable to proceed as a class action under 23(b)(3) because questions of law and fact common to the members of the Class predominate over individual questions, and this class action is superior to other available methods for the fair and efficient adjudication of this controversy. Given the nature of the allegations, no class member has an interest in individually controlling the prosecution of this matter, and Plaintiffs are aware of no difficulties likely to be encountered in the management of this matter as a class action.

## VII. CLAIMS FOR RELIEF

### COUNT I

**Engaging in Prohibited Transactions by Causing the Plans to
Invest in Citigroup Affiliated Investment Products and To Purchase
Products and Services Provided by Citigroup Subsidiaries and Affiliates
(Violation of § 406 of ERISA, 29 U.S.C. § 1106 by Committee Defendants)**

72.     Plaintiff incorporates the allegations contained in the previous paragraphs of this

Complaint as if fully set forth herein.

73.     At all relevant times, Committee Defendants acted as fiduciaries within the

meaning of ERISA § 3(21)(A), 29 U.S.C.§ 1002(21)(A), by exercising discretionary authority

and control with respect to the management of the 401(k) Plan and authority or control with

respect to the management or disposition of the 401(k) Plan's assets.

74.     Committee Defendants, by their actions and omissions in authorizing or causing

the 401(k) Plan to invest in the Affiliated Funds and purchase Citigroup-affiliated products and

services, and pay, directly or indirectly, investment management and other fees in connection

therewith, caused the 401(k) Plan to engage in transactions that Committee Defendants knew or

should have known constituted sales or exchanges of property between the 401(k) Plan and

parties in interest, the furnishing of services by parties in interest to the 401(k) Plan, and

transactions with fiduciaries in violation of §§ 406(a)(1)(A), (C), and 406(b), 29 U.S.C.

§§ 1106(a)(1)(A), (C), and (b).

75.     As a direct and proximate result of these prohibited transaction violations, the

401(k) Plan, directly or indirectly, paid millions of dollars in investment management and other

fees that were prohibited by ERISA and suffered millions of dollars in losses annually.

76.     Pursuant to ERISA §§ 502(a)(2) and 409(a), 29 U.S.C. §§ 1132(a)(2)

and 1109(a), Committee Defendants are liable to restore all losses suffered by the Plans as a

result of the prohibited transactions and all profits earned by Citigroup on the fees paid by the 401(k) Plan to Citigroup and its subsidiaries and affiliates.

## COUNT II

### Breach of Duties of Loyalty and Prudence by Causing the 401(k) Plan to Invest in Citigroup Affiliated Funds Which Caused Losses to the 401(k) Plan

### (Violation of § 404 of ERISA, 29 U.S.C. § 1104 by Committee Defendants)

77.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

78.    At all relevant times, Committee Defendants acted as fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C.§ 1002(21)(A), by exercising discretionary authority and control with respect to the management of the 401(k) Plan and authority or control with respect to the management or disposition of the 401(k) Plan's assets.

79.    Committee Defendants, by their actions and omissions in authorizing or causing the 401(k) Plan to invest in Affiliated Funds and purchase products and services from Citigroup subsidiaries and affiliates, and to pay investment management and other fees in connection therewith to Citigroup subsidiaries and affiliates, put Citigroup's financial interests ahead of the 401(k) Plan's interests.  Thus, Committee Defendants breached their duties of prudence and loyalty to the Plans under ERISA § 404(a)(1)(A), (B), 29 U.S.C. § 1104(a)(1)(A), (B).

80.    As a direct and proximate result of these breaches of duty, the 401(k) Plan, and indirectly Plaintiff and the 401(k) Plan's other participants and beneficiaries, lost millions of dollars to Citigroup fees and inferior returns.

81.    Pursuant to ERISA §§ 502(a)(2) and 409(a), 29 U.S.C. §§ 1132(a)(2) and 1109(a), Committee Defendants are liable to restore all losses suffered by the 401(k) Plan caused by their breaches of fiduciary duty.

## COUNT III

**Citigroup Violated ERISA by Knowingly Participating in Breaches of
Fiduciary Duty and Prohibited Transactions.**

**(§ 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3))**

82.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

83.    At all relevant times, Citigroup was a party in interest to the 401(k) Plan. Citigroup also created and staffed the Administrative and Investment Committees.

84.    Citigroup, by its actions in participating in and abetting fiduciary breaches and prohibited transactions, caused the 401(k) Plan to invest in Affiliated Funds and purchase products and services from Citigroup subsidiaries and affiliates, and to pay investment management and other fees in connection therewith, to Citigroup subsidiaries and affiliates. A party in interest is subject to liability under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

85.    As a direct and proximate result of Citigroup's violations of ERISA, the 401(k) Plan, and indirectly Plaintiff and the 401(k) Plan's other participants and beneficiaries, lost millions of dollars to Citigroup fees and inferior returns.

86.    Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Citigroup is liable to disgorge all revenues received from the 401(k) Plan and Citigroup's earnings thereon.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1.    Declare that Committee Defendants have violated ERISA's prohibited transactions provisions;

2.    Declare that Committee Defendants breached their fiduciary duties under ERISA;

3.     Declare that Citigroup knowingly participated in Committee Defendants' violations of ERISA;

4.     Issue an order compelling Defendants to disgorge all fees paid and incurred, directly or indirectly, to Citigroup subsidiaries and affiliates by the 401(k) Plan, including disgorgement of profits thereon;

5.     Issue an order compelling Committee Defendants to restore all losses to the 401(k) Plan arising from Committee Defendants' violations of ERISA;

6.     Order equitable restitution and other appropriate equitable monetary relief against Defendants;

7.     Award such other equitable or remedial relief as may be appropriate, including the permanent removal of Defendants from any positions of trust with respect to the 401(k) Plan, the appointment of independent fiduciaries to administer the 401(k) Plan, rescission of the 401(k) Plan's investments in Affiliated Funds and the 401(k) Plan's contracts with affiliated service providers, and enjoining Defendants from causing the 401(k) Plan to invest in Affiliated Funds and contract with affiliated service providers;

8.     Certify this action as a class action and designate the Class to receive the amounts restored or disgorged to the 401(k) Plan by Defendants and a constructive trust be established for distribution to the extent required by law;

9.     Enjoin Defendants collectively from any further violations of their ERISA fiduciary responsibilities, obligations, and duties;

10.     Award Plaintiff her attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g) and/or the Common Fund doctrine; and

11.    Award such other and further relief as the Court deems equitable and just.


DATED:  New York, NY
        October 17, 2007

Respectfully submitted:

ROSEN PREMINGER & BLOOM LLP


By: _____
David S. Preminger (DP 1057)
708 Third Ave, Ste 1600
New York, NY 10017-4123
Tel:  (212) 682-1900
Fax: (212) 867-6878

*Of Counsel:*

J. Brian McTigue (BM 2422)
Gregory Y. Porter (GP 9605)
**McTIGUE & PORTER LLP**
5301 Wisconsin Avenue, NW
Suite 350
Washington, DC  20015
Tel:  (202) 364-6900
Fax: (202) 364-9960

*Attorneys for Plaintiffs*