UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARYA J. LEBER, SARA L. KENNEDY, *and all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>CITIGROUP, INC., THE PLANS ADMINISTRATIVE COMMITTEE OF CITIGROUP INC., THE 401(K) PLAN INVESTMENT COMMITTEE and DOE DEFENDANTS 1-20,<br><br>Defendants. | Case No. 07 Civ. 9329 (SHS) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

PAUL, WEISS, RIFKIND, WHARTON &
    GARRISON LLP
1285 Avenue of the Americas
New York, New York  10019-6064
(212) 373-3000

*Attorneys for Defendants*

# **TABLE OF CONTENTS**

**Page(s)**

Preliminary Statement ............................................................................................... 1

Statement of the Case ................................................................................................. 3

Argument ................................................................................................................... 6

I.     ALL OF PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTE
       OF LIMITATIONS ...........................................................................................7
       A.     Affiliated Mutual Funds ........................................................................8
              1.     The Six-Year Limitations Period...................................................8
              2.     The Three-Year Limitations Period................................................9
       B.     Affiliated Service Providers .................................................................12
              1.     The Six-Year Limitations Period..................................................12
              2.     The Three-Year Limitations Period..............................................13

II.    PLAINTIFFS FAIL TO STATE A CLAIM WITH RESPECT TO
       INVESTMENTS IN AFFILIATED MUTUAL FUNDS ......................................14
       A.     Plaintiffs Fail To State a Claim Because the Department of
              Labor Has Exempted Affiliated Mutual Funds From
              ERISA Section 406..............................................................................14
       B.     Plaintiffs Fail To State a Claim With Respect to the Fees and
              Performance of the Affiliated Funds ....................................................16

III.   PLAINTIFFS FAIL TO STATE A CLAIM WITH RESPECT TO
       PAYMENTS TO AFFILIATED SERVICE PROVIDERS ..................................19
       A.     Plaintiffs' Section 406 Claims Should Be Dismissed................................19
              1.     Plaintiffs Have Not Pled a Violation of Section 406(a) ...............20
              2.     Plaintiffs Have Not Pled a Violation of Section 406(b) ...............21
       B.     Plaintiffs Have Not Alleged Facts Sufficient To State a Claim for a
              Violation of Section 404........................................................................23

IV.    PLAINTIFFS' CLAIMS CONCERNING CITIGROUP SHOULD BE
       DISMISSED ..................................................................................................24

Conclusion ............................................................................................................... 25

i

# TABLE OF AUTHORITIES

**Page(s)**

C ASES

*Amron* v. *Morgan Stanley Inv. Advisors, Inc.*,
    464 F.3d 338 (2d Cir. 2006) ......................................................................17, 18

*Bell Atl. Corp.* v. *Twombly*,
    550 U.S. __, 127 S. Ct. 1955 (2007)..................................................2, 16, 17, 18

*Bona* v. *Barasch*,
    No. 01 Civ 2289, 2003 WL 1395932 (S.D.N.Y. Mar. 20, 2003) ....................12, 13

*Boss* v. *Kelly*,
    No. 07 Civ. 2113 (SHS), 2007 WL 2412261 (S.D.N.Y. Aug. 23, 2007) ...............16

*Brock* v. *Robbins*,
    830 F.2d 640 (7th Cir. 1987) ...................................................................................21

*Caputo* v. *Pfizer, Inc.*,
    267 F.3d 181 (2d Cir. 2001) ...............................................................................7, 10

*Donovan* v. *Bierwirth*,
    680 F.2d 263 (2d Cir. 1982) .......................................................................22, 23, 24

*Dura Pharms., Inc.* v. *Broudo*,
    544 U.S. 336 (2005)..............................................................................................19

*Edes* v. *Verizon Commc'ns, Inc.*,
    417 F.3d 133 (1st Cir. 2005)...................................................................................11

*Engelhart* v. *Consolidated Rail Corp.*,
    No. CIV.A. 92-7056, 1996 WL 526726 (E.D. Pa. Sept. 18, 1996),
    *aff'd* 127 F.3d 1095 (1997)..............................................................................21, 22

*Fitzgerald* v. *Citigroup*,
    No. 03 Civ 4305, 2007 WL 582965 (S.D.N.Y. Feb. 23, 2007)............................18

*Goldstein* v. *Pataki*,
    516 F.3d 50 (2d Cir.), *cert. denied* 128 S. Ct. 2964 (2008)....................................16

*Gruby* v. *Brady*,
    838 F. Supp. 820 (S.D.N.Y. 1993) .......................................................................25

*Haas* v. *Rhody*,
    No. 07 Civ. 1021, 2007 WL 2089282 (S.D.N.Y. Jul. 20, 2007) ............................16

*Harris Trust & Savings Bank* v. *John Hancock Mut. Life Ins. Co.*,
    122 F. Supp. 2d 444 (S.D.N.Y. 2000), *aff'd in part, rev'd in part on other
    grounds*, 302 F.3d 18 (2d Cir. 2002) ............................................................................7

*Henry* v. *Champlain Enters., Inc.*,
    445 F.3d 610 (2d Cir. 2006) ..............................................................................23

*In re Consol. Welfare Fund ERISA Litig.*,
    839 F. Supp. 1068 (S.D.N.Y. 1993) ...................................................................22

*In re Gartenberg*,
    636 F.2d 16 (2d Cir. 1980) ................................................................................19

*In re Salomon Smith Barney Mut. Fund Fees Litig.*,
    528 F. Supp. 2d 332 (S.D.N.Y. 2007) ...............................................................18

*Iqbal* v. *Hasty*,
    490 F.3d 143 (2d Cir. 2007), *cert. granted* 128 S. Ct. 2931 (2008).......................16

*L.I. Head Start Child Dev. Servs., Inc.* v. *Econ. Opportunity Comm'n of Nassau
    County, Inc.*,
    558 F. Supp. 2d 378 (E.D.N.Y. 2008) ............................................................7, 13

*Martin* v. *Consultants & Adm'rs, Inc.*,
    966 F.2d 1078 (7th Cir. 1992) .......................................................................7, 11

*Mehling* v. *New York Life Ins. Co.*,
    163 F. Supp. 2d 502 (E.D. Pa. 2001) ................................................................15

*Reeves* v. *Airlite Plastics, Co.*,
    No. 8:04CV56, 2005 WL 2347242 (D. Neb. Sept. 26, 2005) .................................11

*Rothman* v. *Gregor*,
    220 F.3d 81 (2d Cir. 2000) ..................................................................................3

*Salovaara* v. *Eckert*,
    No. 94 Civ. 3430, 1998 WL 276186 (S.D.N.Y. May 28, 1998)............................19

*Ulico Cas. Co.* v. *Clover Capital Mgmt.*,
    335 F. Supp. 2d 335 (N.D.N.Y. 2004)...............................................................23

*Varity Corp.* v. *Howe*,
    516 U.S. 489 (1996)..........................................................................................19

*Young* v. *General Motors Inv. Mgmt. Corp.*,
    550 F. Supp. 2d 416 (S.D.N.Y. 2008),
    *appeal docketed*, No. 08-1532-cv (2d Cir.) ....................................................9, 10

## STATUTES

ERISA § 404, 29 U.S.C. § 1104 ............................................................................5, 6, 19, 23

ERISA § 406, 29 U.S.C. § 1106 ..............................................................2, 5, 6, 14, 19, 20, 21, 22

ERISA § 408, 29 U.S.C. § 1108 ............................................................................2, 6, 14, 20, 21

ERISA § 409, 29 U.S.C. § 1109 ........................................................................................19

ERISA § 413, 29 U.S.C. § 1113 ..........................................................................................7

ERISA § 502, 29 U.S.C. § 1132 ..........................................................................................5

29 C.F.R. § 2550.408b-2(a) ......................................................................................20, 21

29 C.F.R. § 2550.408c-2(b)(2) .......................................................................................21

42 Fed. Reg. 18,734 (Apr. 8, 1977) ...............................................................................14, 15

## OTHER AUTHORITIES

Pamela D. Perdue, *Satisfying ERISA's Fiduciary Duty Requirements with Respect to Plan Costs*, 25 J. Pension Plan & Compliance 1 (1999) ................................................17, 18

**Preliminary Statement**

Plaintiffs allege that defendants violated ERISA by causing Citigroup's 401(k) Plan to offer mutual funds managed by Citigroup affiliates and by retaining Citigroup affiliates to provide services to the Plan — decisions made and publicly announced many years ago. In support of these claims, plaintiffs make only the barest conclusory allegations, without any relevant supporting facts. Each of plaintiffs' claims fails for one or more of the following reasons:

*First*, plaintiffs' claims are based on events that took place more than six years ago and are now time-barred. In July 2001, Citigroup combined the 401(k) plans of Citicorp and Travelers Group into the Citigroup 401(k) Plan (the "Plan"). The Plan offered as investment options all of the funds that had been available in each of the Citicorp and Travelers plans, including mutual funds managed by Citigroup affiliates Smith Barney and Salomon Brothers. These actions were open and transparent. All Plan participants – approximately 150,000 individuals – received information in July 2001 about the Plan's investment options, including funds offered by Smith Barney and Salomon Brothers. Also in July 2001, Citigroup retained CitiStreet (a joint venture between Citigroup and State Street) to provide administrative and recordkeeping services to the Plan. Citigroup continued to use its subsidiary Citibank, which had provided trust services to the Citicorp and Travelers plans, to provide the same services to the Plan.

More than six years later, plaintiffs brought this purported class action alleging that Citigroup and its administration and investment committees violated ERISA by authorizing or causing the Plan to offer mutual funds managed by Citigroup affiliates and to retain Citigroup affiliates to provide Plan services. These claims are plainly barred by ERISA's statute of limitations, which requires that claims be filed within six years

after the alleged breach and three years after plaintiffs had actual knowledge of facts giving rise to the claim.

*Second*, these claims fail because plaintiffs have not alleged specific facts to support them, as required by the Supreme Court's recent decision in *Bell Atlantic Corporation* v. *Twombly*, 550 U.S. __, 127 S. Ct. 1955 (2007).  Without pleading facts showing that the Smith Barney and Salomon Brothers funds were *unreasonable* choices, plaintiffs allege that these investments were imprudent simply because there allegedly were comparable unaffiliated funds that charged lower fees and ultimately earned higher returns.  That does not state a "plausible" claim as *Twombly* requires.  If such allegations were sufficient, fiduciaries of every 401(k) plan that did not offer only the fund with the lowest fees in any investment category would be subject to suit and burdensome discovery.  The same fatal defects appear in plaintiffs' claims concerning the retention of CitiStreet and Citibank — plaintiffs fail to plead any facts showing that the fees paid to these entities were unreasonable.

*Third*, plaintiffs allege that offering affiliated funds as investment options and using affiliated service providers amount to prohibited transactions under ERISA § 406.  But plaintiffs ignore the fact that ERISA § 408 and Department of Labor regulations expressly permit such arrangements where, as here, specified conditions are satisfied.  Plaintiffs have failed to allege any facts showing that the Plan's transactions with affiliates fell outside the safe harbors established by the statute and Department of Labor regulations.

For these reasons and for those that follow, the Amended Complaint should be dismissed with prejudice.

**Statement of the Case**

This statement of the case is based on the allegations of the Amended Complaint and on certain Plan documents and related materials of which plaintiffs were aware and on which they relied. *See, e.g., Rothman* v. *Gregor*, 220 F.3d 81, 88-89 (2d Cir. 2000) (courts may consider documents incorporated into the complaint by reference and "documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit.").

**The Parties**

Plaintiffs Leber and Kennedy are Citigroup employees who allegedly participated in the Plan. (Am. Cplt. ¶¶ 12, 14.) Though the Amended Complaint makes broad allegations about many of the Plan's investment options, Leber and Kennedy invested in just two of those funds. (*Id.*) Claiming nevertheless to sue on behalf of a purported class of Plan participants from 2001 to the present (*id.* ¶ 67), plaintiffs bring claims against Citigroup Inc. (the sponsor of the Plan) and two committees, the Plans Administration Committee and the 401(k) Plan Investment Committee (the "Committee Defendants"), that they allege are Plan fiduciaries (*id.* ¶¶ 16-18).

**The Plan**

On July 1, 2001, Citigroup rolled out a new 401(k) plan that combined pre-existing plans of Citicorp and Travelers Group, which had merged three years earlier. (Ex. 1 at 1.)[1] Leading up to and as part of that roll-out, Citigroup distributed to all Plan participants documents to educate them about these Plan changes and their investment

---

[1]    All exhibits are attached to the accompanying declaration of Lewis R. Clayton.

options. (Exs. 1 and 2.) As those documents show, the Plan menu included certain Smith Barney and Salomon Brothers funds and the Travelers Stable Value Fund. (*Id.*)

Also on July 1, 2001, Citigroup retained CitiStreet, a leading provider of services to pension and 401(k) plans, to provide administrative and recordkeeping services to the Plan. (Am. Cplt. ¶ 29; *see also* Ex. 3.) The agreement was for a five-year term, with automatic one-year renewals after the first five years until either party terminated the agreement. (Ex. 3 at 4.)

Citibank provides trust services to the Plan, as it has for plan predecessors going back to 1952. (Ex. 4.) Prior to 2006, a single master trust agreement with Citibank covered both the 401(k) and pension plans. On January 1, 2006, Citigroup and Citibank created separate trust agreements for each of the 401(k) and pension plans. (Ex. 5.) Despite the creation of a new trust agreement, the Plan's trust relationship with Citibank remains the same and is merely pursuant to a new instrument.

**Plaintiffs' Claims**

Plaintiffs' complaint was filed on October 18, 2007, and amended on July 18, 2008. All of their claims arise from two core allegations: First, plaintiffs allege that the Committee Defendants caused the Plan to offer as investment options mutual funds managed by Citigroup affiliates Smith Barney and Salomon Brothers. (Am. Cplt. ¶¶ 4, 41.) (Plaintiffs also allege that the Plan offered the Citi Institutional Liquid Reserves Fund (*id.* ¶¶ 12, 14) and a Stable Value Fund managed by Travelers that invested in Travelers' guaranteed insurance contracts (*id.* ¶¶ 3, 5), but do not appear to allege ERISA violations based on those investment options.) Second, plaintiffs allege that the

4

Committee Defendants retained and paid Citigroup affiliates Citibank and CitiStreet to provide administrative, recordkeeping and trust services to the Plan. (*Id.* ¶¶ 3, 54.)

Based on these allegations, plaintiffs claim that the Committee Defendants engaged in prohibited transactions in violation of ERISA § 406 (Count One), that the Committee Defendants breached their fiduciary duties in violation of ERISA § 404 (Count Two), and that Citigroup knowingly participated in and abetted those breaches in violation of ERISA § 502(a)(2) (Count Three).

Plaintiffs make only the barest of factual allegations in support of those claims. For instance, in the five paragraphs of the Amended Complaint that mention the service providers CitiStreet and Citibank, plaintiffs allege only that the Plan "pays fees, directly or indirectly to Citibank," has "paid CitiStreet millions of dollars each year of the Class Period (2001 to the present)," and that the "Committee Defendants knew or should have known that similar . . . retirement plan administration services were available from unaffiliated entities." (*Id.* ¶¶ 28, 29, 53.) Plaintiffs do not allege that the Plan paid unreasonable fees to CitiStreet or Citibank or that the Committee Defendants did not follow an appropriate process in selecting these entities to provide services.

With respect to the mutual funds, plaintiffs allege that the affiliated funds were imprudent investments because they charged higher fees and had lower returns than other unaffiliated funds. (*Id.* ¶ 4.) But plaintiffs do not plead any facts concerning the performance of the funds. And the only facts alleged concerning fees are that some Smith Barney and Salomon Brothers funds charged higher fees than allegedly comparable Vanguard funds. (*Id.* ¶ 51.)

5

## Argument

As we show below, plaintiffs' claims are barred for the following reasons:

(1)    ERISA's six-year statute of limitations bars plaintiffs' mutual fund claims with respect to all but two of the Smith Barney and Salomon Brothers funds. Nevertheless, the claims based on those funds, as well as all other mutual funds, are barred by ERISA's three-year statute of limitations, which runs from the date plaintiffs had actual knowledge of the facts on which their claims are based.

(2)    ERISA's six-year limitations period bars plaintiffs' service provider claims for contracts entered into prior to October 2001. The automatic renewal of the CitiStreet contract in 2006 and 2007 and the separation of the Plan's trust agreement from the pension plan agreement in 2006 do not represent new decisions by fiduciaries and therefore do not give rise to claims for 2006 and forward.

(3)    Plaintiffs' mutual fund claims also fail because the Plan is permitted to offer funds managed by affiliates under a Department of Labor exemption to ERISA § 406.

(4)    To the extent plaintiffs seek to state a claim for violation of ERISA § 404 based on their allegation that the Plan could have offered other comparable funds with lower fees and higher returns, that claim is barred by plaintiffs' failure to plead facts to state a claim for relief that is plausible on its face.

(5)    Plaintiffs' service provider claims based on ERISA § 406(a) fail because ERISA § 408 exempts from the provisions of Section 406 services that are necessary for the operation of the plan when no more than reasonable compensation is paid for those services. Plaintiffs have not alleged that the compensation paid for the services was unreasonable.

(6)    Plaintiffs' service provider claims based on ERISA § 406(b) fail because plaintiffs do not allege any violations of that provision nor do they plead facts showing any violation of that provision.

(7)    Plaintiffs' service provider claims based on ERISA § 404 fail because plaintiffs have not pled facts alleging a plausible claim for relief that the defendants breached their fiduciary duties in using affiliated service providers.

(8)    Finally, plaintiffs' claim against Citigroup fails because plaintiffs cannot show that the Committee Defendants violated ERISA and because plaintiffs have not pled facts showing that Citigroup knowingly participated in the alleged breaches.

# I.

## ALL OF PLAINTIFFS' CLAIMS ARE
## BARRED BY THE STATUTE OF LIMITATIONS

ERISA requires that claims alleging breach of fiduciary duties or prohibited transactions must be brought before the earlier of "(1) six years after . . . the date of the last action which constituted a part of the breach or violation" or "(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation." ERISA § 413, 29 U.S.C. § 1113; *see also Harris Trust & Savings Bank* v. *John Hancock Mut. Life Ins. Co.*, 122 F. Supp. 2d 444, 463 (S.D.N.Y. 2000), *aff'd in part, rev'd in part on other grounds*, 302 F.3d 18 (2d Cir. 2002) ("In other words, suit must be commenced within three years after the plaintiff acquires actual knowledge of the breach, with an outside limit of six years after the breach.").

The Second Circuit has held that a plaintiff has "actual knowledge" of a breach or violation "when he has knowledge of all material facts necessary to understand that an ERISA fiduciary has breached his or her duty or otherwise violated the Act." *Caputo* v. *Pfizer, Inc.*, 267 F.3d 181, 193 (2d Cir. 2001). Notably, a plaintiff "need not have knowledge of the relevant law;" rather, actual knowledge requires simply that the plaintiff "have knowledge of all facts necessary to constitute a claim." *Id.* Nevertheless, "it is not necessary for a potential plaintiff to have knowledge of every last detail of a transaction or knowledge of its illegality." *L.I. Head Start Child Dev. Servs., Inc.* v. *Econ. Opportunity Comm'n of Nassau County, Inc.*, 558 F. Supp. 2d 378, 393 (E.D.N.Y. 2008) (quoting *Martin* v. *Consultants & Adm'rs, Inc.*, 966 F.2d 1078, 1086 (7th Cir. 1992)).

The six-year statute of limitations bars plaintiffs' mutual fund claims with respect to all but two of the Smith Barney and Salomon Brothers funds. It also bars plaintiffs' service provider claims. The three-year statute of limitations bars all of the mutual funds claims.

### A.    Affiliated Mutual Funds

#### 1.    The Six-Year Limitations Period

All but two of the Smith Barney and Salomon Brothers funds were offered as part of the Plan beginning no later than July 1, 2001. (Exs. 1 and 2.) The Amended Complaint concedes as much by asserting a class period beginning in 2001 (Am. Cplt. ¶ 67) and alleging that the Plan invested in Affiliated Funds during the class period (*id.* ¶ 30). Because plaintiffs did not bring their initial complaint in this action until October 2007, more than six years from the time of the alleged breach, their claims as to these funds are barred by the six-year statute of repose.[2]

It is not clear whether plaintiffs also assert claims based on the Plan's offering of the Travelers Stable Value Fund (or the Travelers guaranteed insurance contracts in which the Stable Value Fund invested). The Amended Complaint defines "Affiliated Funds" to include only the Smith Barney and Salomon Brothers funds. (*Id.* ¶ 4.) The Amended Complaint's few paragraphs about the Travelers investment products say no more than that the Plan offered these products. (*Id.* ¶¶ 3, 5, 31.) Nevertheless, to the extent plaintiffs seek to state a claim based on the Travelers investment products, that

---

[2]    Two Smith Barney funds – the Smith Barney Fundamental Value Fund and the Smith Barney Small Cap Value Fund – were not offered until April 2003. (Ex. 6 at 1.) Although claims of violations of ERISA with respect to these two funds are not barred by the six-year limitations period, they are barred by the three-year limitations period that runs from the date plaintiffs had actual knowledge of facts giving rise to the alleged violation, as discussed further below.

claim is also time-barred. The Travelers Stable Value Fund has been offered as an investment option (and the fund has invested in Travelers' guaranteed insurance contracts) since prior to July 1, 2001. (Ex. 2 at 2.)

### 2.    The Three-Year Limitations Period

Moreover, all of plaintiffs' mutual fund claims are barred by the three-year limitations period. Plaintiffs Leber and Kennedy had actual knowledge of the facts giving rise to a claim as soon as they learned in 2001 that the Plan was offering the Smith Barney and Salomon Brothers funds as part of the Plan menu. The very names of the funds disclosed that they were offered by Smith Barney and Salomon Brothers, which are part of Citigroup. (*See* Am. Cplt. ¶¶ 50-51 (noting that these funds had "Smith Barney" or "Salomon Brothers" in their names).) Because Leber and Kennedy had all of the facts necessary to know that the Plan was offering affiliated funds as investment options, they had actual knowledge more than three years before the complaint was filed of the facts giving rise to their claims.[3]

This Court dismissed a strikingly similar case, filed by the same counsel representing plaintiffs here, on statute of limitations grounds earlier this year. *Young* v. *General Motors Inv. Mgmt. Corp.*, 550 F. Supp. 2d 416 (S.D.N.Y. 2008), *appeal docketed*, No. 08-1532-cv (2d Cir.). In *Young*, plaintiffs claimed that defendants breached fiduciary duties under ERISA by offering as 401(k) plan options single equity funds that were not diversified and Fidelity funds that had excessive fees. *Id.* at 418. The

---

[3]    Plaintiffs also had actual knowledge regarding the Travelers fund more than three years before filing the Complaint. The July 2001 "Investment Options" distribution stated that the Stable Value Fund's advisor was "Travelers Life & Annuity and Citigroup Asset Management" and that it invests in "insurance contracts and separate account products from Travelers Life & Annuity." (Ex. 2 at 2.)

Court held that plaintiffs had actual knowledge that the single equity funds were undiversified funds and of the fees charged for the Fidelity funds as soon as the funds were offered and their investments and fees were disclosed to plan participants. *Id.* at 419-20. As in *Young*, plaintiffs here had actual knowledge of all of the facts they needed to bring a claim as soon as they learned that the Plan was offering funds managed by Smith Barney and Salomon Brothers.

In a transparent effort to stave off dismissal on the pleadings, Leber and Kennedy each make identical allegations in the Amended Complaint that they did not know "until July 2008" that "Smith Barney and Salomon Brothers [sic], managers of mutual funds entrusted with 401(k) Plan assets, are (or were) affiliates or subsidiaries of Citigroup during the Class Period." (Am. Cplt. at ¶¶ 13, 15.)[4] These allegations were not included in the original complaint Leber filed in October 2007. They were added only after the decision in *Young,* a case, as noted above, also being prosecuted by plaintiffs' counsel. This court should not credit the absurd claim that Citigroup employees were unaware that Smith Barney and Salomon Brothers were Citigroup affiliates during the class period — those entities were important, high-profile parts of Citigroup. Leber's allegation is plainly false – while she claims to have been unaware of these facts until July 2008, she filed her initial complaint, making all of the claims alleged in the current

---

[4]    Leber and Kennedy also allege that they did not know the Plan had fiduciaries or the identity of those fiduciaries, that the fiduciaries were responsible for prudently selecting investment options for the Plan, and that ERISA generally prohibits transactions between affiliates and subsidiaries of plan sponsors. (Am. Cplt. at ¶¶ 13, 15.) Plaintiffs are required to have knowledge only of *facts* necessary to bring a claim and not the relevant law, *Caputo*, 267 F.3d at 193, thus these allegations are irrelevant in refuting a statute of limitations defense.

complaint, in October 2007 – nine months *before* she now claims she acquired this knowledge. These are sham allegations.[5]

Even taken at face value, these allegations fail to surmount the statute of limitations. Under the "actual knowledge" standard, the law does not permit a plaintiff to turn a blind eye to the facts. As other Circuits have held, "we do not think Congress intended the actual knowledge requirement to excuse willful blindness by a plaintiff." *Edes* v. *Verizon Commc'ns, Inc.*, 417 F.3d 133, 142 (1st Cir. 2005); *Martin*, 966 F.2d at 1086 n.7; *see also Reeves* v. *Airlite Plastics, Co.*, No. 8:04CV56, 2005 WL 2347242, at *5 (D. Neb. Sept. 26, 2005) (any standard for applying the statute of limitations that "would allow a participant to refuse to accept and acknowledge information clearly set before him is untenable.").

Plaintiffs cannot willfully disregard the numerous investment documents distributed to plan participants that disclosed that these investments were affiliated with Citigroup. A Plan distribution provided to employees before the July 1, 2001 menu changes disclosed for all of the Smith Barney funds that *Smith Barney was an affiliate of Citigroup.* (*See* Ex. 2 at 3, 5, 6, 12, 13, 14, 17, and 18.) For instance, the description of the Smith Barney Appreciation Fund, in which plaintiff Kennedy invested, discloses that the fund advisor is "Smith Barney Fund Management LLC (successor to SSB Citi Fund Management LLC)," which is "an affiliate of Salomon Smith Barney Inc., *which is a subsidiary of Citigroup.*" (*Id.* at 12.)

---

[5] Plaintiffs do not appear to bring claims based on the Citi Institutional Liquid Reserves Fund, in which both Leber and Kennedy invested. (Am. Cplt. ¶¶ 12, 14.) This is likely because they cannot dispute that "Citi" was in the name of the fund, giving them actual knowledge when the fund was offered in April 2003 (Ex. 6 at 1) that the

Moreover, Leber – who joined Citicorp on or around August 1, 1997 – was an employee at the time Citicorp merged with Travelers (which included Salomon Smith Barney) in October 1998.   It defies credulity to think that Leber ignored a merger of the very company at which she worked, a merger that created one of the largest financial institutions in the world.

### B.     Affiliated Service Providers

#### 1.     The Six-Year Limitations Period

Claims based on the Plan's contracts with CitiStreet and Citibank in 2001 and earlier are time-barred under the six-year statute of limitations.  The Plan's administration and recordkeeping contract with CitiStreet began in July 2001, more than six years before the complaint was filed.  The Plan's trust agreement with Citibank has existed since 1952.

This Court was faced with a similar factual situation in *Bona* v. *Barasch*, No. 01 Civ. 2289, 2003 WL 1395932 (S.D.N.Y. Mar. 20, 2003).  There, plaintiffs brought claims for breach of fiduciary duties based on plan service contracts signed more than six years before filing of the complaint.  *Id.* at *17-19.  The Court held that "plaintiffs may sue defendants for renewing service contracts within six years of the date on which the complaint was filed, but not for entering those contracts in the first instance."  *Id.* at *19.  Applying that holding here, the claims concerning the July 2001 CitiStreet agreement and pre-2006 Citibank trust agreement should be dismissed because those agreements went into effect more than six years before the complaint was filed in October 2007.

---

fund was affiliated with Citigroup.  To the extent Leber and Kennedy assert such claims, they are barred by the three-year statute of limitations.

Any claims concerning the automatic renewal of the CitiStreet contract in July 2006 and July 2007 and the Citibank trust agreement signed in January 2006 should be dismissed as well. Under *Bona*, a party can state a claim based on a renewal of a service provider agreement during the six-year period prior to the filing of the complaint only where those renewals are "separate transaction[s]" in which defendants made a conscious decision to renew "imprudent contracts with fund administrators." *Id.* at *19 & n.13. Here, the 2006 and 2007 agreements were not new decisions by the fiduciaries. The Citibank trust agreement was not a renewal at all; rather it merely represented the separation of trust agreements for Citigroup's 401(k) and pension plans. Similarly, the continuation of the CitiStreet contract was not a new decision by the fiduciaries, but an automatic renewal under the terms of the 2001 contract. *See, e.g., L.I. Head Start Child Dev. Servs., Inc.*, 558 F. Supp. 2d at 401 (claim for "continuing negative effects" of fiduciary's "single decision" is barred by statute of limitations where the decision was made more than six years prior to claim). Thus, these claims should be dismissed.

### 2.    The Three-Year Limitations Period

The CitiStreet claims are also barred by the three-year limitations period, as plaintiffs had actual knowledge in July 2001 that Citigroup had retained an affiliate, CitiStreet, to administer the Plan. A May 2001 distribution highlighting the changes coming in July 2001 reported that "[t]he plan will be managed by CitiStreet LLC, which is a *joint venture between Citigroup* and the State Street Corporation." (Ex. 1 at 1.)

## II.

### PLAINTIFFS FAIL TO STATE A CLAIM WITH RESPECT TO INVESTMENTS IN AFFILIATED MUTUAL FUNDS

In addition to being time-barred, plaintiffs' mutual fund claims should be dismissed because the Department of Labor has issued an exemption that permits Plan sponsors to offer as investment options mutual funds managed by affiliated companies. Moreover, to the extent plaintiffs allege that the funds were imprudent investments because they had allegedly higher fees and lower returns than other comparable funds, plaintiffs did not plead sufficient facts to state a plausible claim for relief.

### A. Plaintiffs Fail To State a Claim Because the Department of Labor Has Exempted Affiliated Mutual Funds From ERISA Section 406

Plaintiffs allege that the Committee Defendants engaged in prohibited transactions in violation of ERISA § 406 by authorizing or causing the Plan to invest in affiliated funds. But the Department of Labor has broadly exempted such transactions from Section 406, as it is authorized to do under ERISA § 408(a), 29 U.S.C. § 1108(a).

In 1977, the Department of Labor issued Prohibited Transaction Class Exemption 77-3 ("PTE 77-3"), which exempts from Section 406 transactions involving the acquisition or sale of mutual fund shares by plans covering any of the fund's affiliates, subject to some relatively modest conditions. *See* 42 Fed. Reg. 18,734-35 (Apr. 8, 1977). PTE 77-3 applies as long as the plan *does not* (a) "pay any investment management, investment advisory or similar fee to such investment adviser, principal underwriter, or affiliated person," (b) pay a redemption fee to any party other than the investment company, (c) pay a sales commission, or (d) have dealings with the investment company on terms that "are on a basis no less favorable to the plan than such dealings are with other shareholders of the investment company." *Id.*

14

Courts have dismissed complaints in which, as here, plaintiffs have not alleged that the plan failed to meet those conditions. For example, in *Mehling* v. *New York Life Ins. Co.*, 163 F. Supp. 2d 502 (E.D. Pa. 2001), plaintiffs challenged the investment of New York Life's Pension Plan assets in MainStay Funds, a proprietary family of funds created by New York Life. *Id.* at 505. Plaintiffs alleged that New York Life had invested Plan assets in those funds "in an attempt to 'seed, sustain, and grow' the Company's new line of institutional mutual funds." *Id.* On defendants' motion to dismiss, the Court rejected plaintiffs' claims, holding that plaintiffs had not alleged that "the fees paid by the Plans are not in compliance with the requirements of PTE 77-3, or that the Plans have had dealings with the [in-house funds] on terms that are less favorable than are offered to other shareholders." *Id.* at 510. Accordingly, the Court found that PTE 77-3 exempted defendants "from the transactional restrictions of Section 406." *Id.*

As in *Mehling*, the Amended Complaint here fails to allege that the fees paid by the Plan were not in compliance with PTE 77-3. Plaintiffs do not allege that the Plan paid investment management fees, sales commissions, or redemption fees.[6] Nor do they allege that the Plan had any dealings with the affiliated funds on terms that were less favorable than were offered to other shareholders in those funds. Thus, as in *Mehling*, plaintiffs' prohibited transaction claims should be dismissed.

---

[6]   Plaintiffs' allegation that the Smith Barney and Salomon Brothers funds "charged investment advisory fees" (Am. Cplt. ¶ 51) and "received . . . fees for investment advisory . . . services" (*id.* ¶ 52) does not defeat application of the exemption. Such fees are paid by the mutual fund to the investment advisor and are expressly permitted by PTE 77-3, which provides that the condition that a plan not pay any investment management or advisory fees "does not preclude the payment of investment advisory fees by the investment company," *i.e.*, by the mutual fund. *See* 42 Fed. Reg. 18,735.

**B.      Plaintiffs Fail To State a Claim With Respect to the Fees and Performance of the Affiliated Funds**

To the extent plaintiffs allege that the Smith Barney and Salomon Brothers funds were imprudent investments because they had higher fees and lower returns than other comparable funds (Am. Cplt. ¶ 4), those allegations do not include facts sufficient to show a plausible claim for relief.

Dismissal of a complaint or cause of action for failure to state a claim is appropriate "where the complaint fails to plead 'enough facts to state a claim to relief that is plausible on its face.'" *Haas* v. *Rhody*, No. 07 Civ. 1021, 2007 WL 2089282, at *2 (S.D.N.Y. Jul. 20, 2007) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. __, 127 S. Ct. 1955, 1974 (2007)). Where plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 127 S. Ct. at 1974; *see also Goldstein* v. *Pataki*, 516 F.3d 50, 56 (2d Cir.), *cert. denied* 128 S. Ct. 2964 (2008) (complaint must be dismissed where plaintiff fails to "provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." (internal quotation marks omitted)).

To this end, a plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1964-65. This pleading standard "'obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible.'" *Boss* v. *Kelly*, No. 07 Civ. 2113 (SHS), 2007 WL 2412261, at *3 (S.D.N.Y. Aug. 23, 2007) (quoting *Iqbal* v. *Hasty*, 490 F. 3d 143, 157-158 (2d Cir. 2007), *cert. granted* 128 S. Ct. 2931 (2008)).

16

The Amended Complaint contains no factual allegations – as opposed to the mere recitation – that other comparable funds outperformed the Smith Barney and Salomon Brothers funds. And the Amended Complaint contains only a single paragraph concerning the fees paid to those funds. In that paragraph, plaintiffs allege that eight Smith Barney and Salomon Brothers funds charged fees that were higher than "comparable" funds offered by Vanguard. (Am. Cplt. ¶ 51.) Plaintiffs do not identify those Vanguard funds, nor do they allege facts showing that those funds are actually comparable. There are no allegations as to whether the Vanguard funds are index funds, retail mutual funds, or institutional funds such that fees could be compared across funds.

Even if such facts had been alleged, they would still not suggest entitlement to relief above a speculative level, as required under *Twombly*. At most, the Amended Complaint alleges that other mutual funds were available at lower costs. But it does not plausibly follow that the Smith Barney and Salomon Brothers funds were *unreasonably* expensive or imprudently selected. Indeed, Vanguard is "known for its emphasis on keeping costs low," thus the fact that fund fees may be higher than Vanguard fees "raises little suspicion." *Amron* v. *Morgan Stanley Inv. Advisors, Inc.*, 464 F.3d 338, 345 (2d Cir. 2006). If plaintiffs' allegation were sufficient to state a claim for breach of fiduciary duty with respect to plan fees under *Twombly*, then any time a plan fiduciary picked a fund that did not charge the lowest fee, the fiduciary would be subject to a claim for violation of ERISA. *See* Pamela D. Perdue, *Satisfying ERISA's Fiduciary Duty Requirements with Respect to Plan Costs*, 25 J. Pension Plan. & Compliance 1, 9 (1999) ("The requirement that fees be reasonable does not mean, of course, that the fiduciary must only or always select those products or vendors with the

lowest cost."). Such a result would be contrary to the holding of *Twombly*, which requires that the complaint allege facts that raises the claim from "conceivable" to "plausible." *Twombly*, 127 S. Ct. at 1974.

In a very similar context, this Court and the Second Circuit have both rejected fiduciary duty claims alleging the payment of excessive management fees under the Investment Company Act where plaintiffs failed to plead specific facts supporting their allegations. In *Fitzgerald* v. *Citigroup*, No. 03 Civ. 4305, 2007 WL 582965 (S.D.N.Y. Feb. 23, 2007), plaintiffs alleged that Smith Barney Fund Management and Citigroup Global Markets breached their fiduciary duties in part because the fees charged for investments in certain classes of Smith Barney funds were excessive. The Court observed that:

> To survive a motion to dismiss, a complaint may not simply allege in a conclusory manner that advisory fees are "excessive." Instead, a plaintiff must allege facts that, if true, would support a claim that the fees at issue are excessive.

*Id.* at *10 (citations omitted). Because plaintiffs had failed to allege specific facts supporting their claims, the Court dismissed the complaint. *See id.* at *11; *see also In re Salomon Smith Barney Mut. Fund Fees Litig.*, 528 F. Supp. 2d 332, 338-40 (S.D.N.Y. 2007) (dismissing breach of fiduciary duty claim under the Investment Company Act because plaintiffs had not stated a claim that defendant charged excessive fees). The Second Circuit has affirmed dismissals of similar claims for excessive fees under the Investment Company Act where plaintiffs "have not set forth those facts necessary to a finding that the fees were excessive." *Amron*, 464 F.3d at 344.[7]

---

[7] Decisions under the Investment Company Act are relevant to ERISA actions because both statutes impose fiduciary duties drawn from the same source, the law of trusts.

Finally, plaintiffs have also failed to satisfy the basic requirement of loss causation. *See Dura Pharms., Inc.* v. *Broudo*, 544 U.S. 336, 343-44 (2005). They fail to allege any connection between this alleged breach – authorizing the Plan to offer mutual funds that charged excessive fees – and any alleged losses suffered by the Plan. Plaintiffs' complaint requests that the Committee Defendants restore all losses suffered by the Plan, pursuant to ERISA § 409(a). (Am. Cplt. ¶¶ 79, 84.) Under that provision, plaintiffs are required to allege "both loss to the fund . . . and a causal connection between that loss and defendant's breach." *Salovaara* v. *Eckert*, No. 94 Civ. 3430, 1998 WL 276186, at *4 (S.D.N.Y. May 28, 1998). Plaintiffs have not met this standard. Plaintiffs have not pled facts alleging a loss to the Plan or a causal connection between any such loss and the alleged breach.

### III.

### PLAINTIFFS FAIL TO STATE A CLAIM WITH RESPECT TO PAYMENTS TO AFFILIATED SERVICE PROVIDERS

Plaintiffs' claims that the Plan's dealings with CitiStreet and Citibank violated ERISA §§ 406(a) and (b) and 404 should be dismissed because they have failed to allege facts essential to show a violation of those statutes.

### A.    Plaintiffs' Section 406 Claims Should Be Dismissed

Although the Court must accept as true on this motion to dismiss plaintiffs' allegations that the Plan pays fees to CitiStreet and Citibank, the evidence will demonstrate that that is false. The Plan pays CitiStreet only for its direct expenses and

---

*See Varity Corp.* v. *Howe*, 516 U.S. 489, 496 (1996) (fiduciary duties under ERISA "draw much of their content from the common law of trusts"); *In re Gartenberg*, 636 F.2d 16, 18 (2d Cir. 1980) (fiduciary duties under the Investment Company Act are adopted from the law of trusts).

does not pay any fees to CitiStreet. And the Plan does not pay fees or expenses to Citibank at all. Rather, Citigroup pays Citibank's fees directly.[8] But those claims can be dismissed at this stage because plaintiffs have not alleged sufficient facts to show a violation of Section 406.

### 1.    Plaintiffs Have Not Pled a Violation of Section 406(a)

Plaintiffs allege that the Plan's use of CitiStreet and Citibank "constituted sales or exchanges of property between the 401(k) Plan and parties in interest [and] the furnishing of services by parties in interest to the 401(k) Plan" in violation of ERISA § 406(a)(1)(A) and (C). (Am. Cplt. ¶ 77.) But any services provided by CitiStreet and Citibank are exempt from Section 406(a).

ERISA § 408 provides that "[t]he prohibitions" of ERISA § 406 "*shall not apply* to . . . [c]ontracting or making reasonable arrangements with a party in interest for office space, or legal, accounting, or other services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefor." 29 U.S.C. § 1108(b)(2) (emphasis added). Under the Department of Labor's regulations, Section 408(b)(2) exempts from the prohibitions of section 406(a) any payment by a plan to a party in interest for plan services if such service is (1) "necessary for the establishment or operation of the plan," (2) "furnished under a contract or arrangement

---

[8]    The 2006 trust agreement provides that "[t]he Company [Citigroup] shall pay the Trustee reasonable compensation for its services as Trustee hereunder . . . . In no event shall the Trustee be entitled to pay any compensation to itself from the assets of the Trust Fund." (Ex. 5 at 22.) Similarly, the prior trust agreement provides that Citibank (as the sponsor of the Plan prior to the merger with Travelers) "shall pay the Trustee reasonable compensation for its services as Trustee hereunder." (Ex. 4 at 29.) If this claim survives this motion to dismiss – and for the reasons explained below, it should not – it will nevertheless be defeated because of the plain terms of the trust agreements.

which is reasonable," and (c) "[n]o more than reasonable compensation is paid" for the service. 29 C.F.R. § 2550.408b-2(a). The regulations also permit an affiliated entity providing services to a plan to receive "reimbursement of direct expenses properly and actually incurred and not otherwise reimbursed." 29 C.F.R. § 2550.408c-2(b)(2).

Because engaging affiliated companies to provide necessary services for reasonable compensation is expressly permitted by ERISA § 408 and its regulations, the "critical analysis under section 406" is not simply – as plaintiffs would have it – whether services were furnished by a party in interest, but "whether more than reasonable compensation is paid to a party in interest." *Brock* v. *Robbins*, 830 F.2d 640, 644 (7th Cir. 1987). The Amended Complaint alleges that CitiStreet and Citibank receive fees for providing administrative, recordkeeping, and trust services to the Plan. But the Amended Complaint does not allege that the Plan paid "more than reasonable compensation" to CitiStreet or Citibank. Accordingly, plaintiffs have not alleged a violation of Section 406(a), nor have they pled facts showing a plausible claim for relief under Section 406(a).

### 2.    Plaintiffs Have Not Pled a Violation of Section 406(b)

Plaintiffs get no further with their claim that the use of CitiStreet and Citibank constituted prohibited "transactions with fiduciaries" in violation of ERISA § 406(b)(1) and (2). (Am. Cplt. ¶¶ 64, 77.)

Section 406(b)(1) provides that a fiduciary shall not "deal with the assets of the plan in his own interest or for his own account." Plaintiffs seem to suggest that the Committee Defendants dealt with the assets in the Plan for the benefit of their employer, Citigroup. But Section 406(b)(1), by its terms, applies only to self-dealing by the Committee Defendants for the benefit of the Committee Defendants. *See, e.g., Engelhart* v. *Consolidated Rail Corp.*, No. CIV.A. 92-7056, 1996 WL 526726, at *13 (E.D. Pa.

Sept. 18, 1996), *aff'd* 127 F.3d 1095 (1997) (finding that no Section 406(b)(1) claim lies against administration committee where committee did not receive remuneration from a contract it entered into on behalf of the plan to reimburse plan sponsor for administrative expenses). Plaintiffs have not pled any facts alleging that the Committee Defendants acted in their own interest or for their own account in using CitiStreet and Citibank as service providers for the Plan, and therefore have not pled a violation of Section 406(b)(1).

Section 406(b)(2) is just as unavailing for plaintiffs. That section provides that a fiduciary shall not "act in a transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries." It applies when the fiduciary acts for or represents the party on the other side of the transaction as the plan. *See, e.g., In re Consol. Welfare Fund ERISA Litig.*, 839 F. Supp. 1068, 1074 (S.D.N.Y. 1993) (fiduciary violates Section 406(b)(2) when he approves a plan's dealings with companies he owns at the same time that he sets the price charged by those companies to the plan). Plaintiffs have pled no facts alleging that the Committee Defendants represented or acted on behalf of either CitiStreet or Citibank in their engagement with the Plan. Thus, plaintiffs' Section 406(b) claim should be dismissed. *See Donovan* v. *Bierwirth*, 680 F.2d 263, 270 (2d Cir. 1982) (Section 406(b)(2) does not apply to pension plan trustees who purchased company stock because the trustees were acting on behalf of the company, not for or on behalf of a party with an adverse interest on the other side of the transaction).

22

### B.    Plaintiffs Have Not Alleged Facts Sufficient To State a Claim for a Violation of Section 404

Plaintiffs allege that employing affiliated service providers constitutes a breach of the Committee Defendants' "duties of prudence and loyalty to the Plan" under ERISA § 404(a)(1)(A) and (B). (Am. Cplt. ¶ 82.) These sections require a fiduciary to "discharge his duties . . . (A) for the exclusive purpose of . . . providing benefits to participants and their beneficiaries; and . . . defraying reasonable expenses of administering the plan; (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims . . . ." 29 U.S.C. § 1104.

ERISA § 404 focuses on the process taken by plan fiduciaries, rather than the results of any action by plan fiduciaries. "ERISA's test of prudence is one of conduct, and not a test of the result of performance of action taken by the fiduciary. The focus of the inquiry is what steps the fiduciary took before making the decision to act, and not whether the action succeeded or failed." *Ulico Cas. Co.* v. *Clover Capital Mgmt.*, 335 F. Supp. 2d 335, 340 (N.D.N.Y. 2004); *see also Henry* v. *Champlain Enters., Inc.*, 445 F.3d 610, 618 (2d Cir. 2006) ("In determining whether a fiduciary has satisfied this requirement, '[t]he court's task is to inquire whether the individual trustees, at the time they engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment.'" (citation omitted)).

Even if a fiduciary acts in a way that benefits its employer, that alone does not mean that the fiduciary acted improperly. Rather, as the Second Circuit has held, the

23

fiduciary's action is imprudent only where the fiduciary did not follow a proper process

for taking that action. *See Bierwirth*, 680 F.2d at 271 ("officers of a corporation who are

trustees of its pension plan do not violate their duties as trustees by taking action which,

after careful and impartial investigation, they reasonably conclude best to promote the

interests of participants and beneficiaries *simply because it incidentally benefits the*

*corporation or, indeed, themselves*") (emphasis added).

Thus, plaintiffs -- in order to survive a motion to dismiss -- must raise their

right to relief above the speculative level by pleading specific facts alleging that the

Committee Defendants did not go through a proper process in retaining CitiStreet and

Citibank to provide services to the Plan. Plaintiffs have not done so. The Amended

Complaint alleges only that the Committee Defendants employed CitiStreet and Citibank

to perform services for the Plan and paid fees for those services. It does not plead any

facts concerning the process that the Committee Defendants went through to retain

CitiStreet and Citibank. Thus, plaintiffs have failed to allege facts that push their claim

across the line from speculative to plausible, and this claim should be dismissed.

## IV.

### PLAINTIFFS' CLAIM CONCERNING
### CITIGROUP SHOULD BE DISMISSED

Plaintiffs do not bring prohibited transactions or fiduciary breach claims

against Citigroup. Rather, plaintiffs claim that Citigroup knowingly participated in and

abetted the fiduciary breaches and prohibited transactions by the Committee Defendants.

(Am. Cplt. ¶ 87.) That claim should be dismissed. To hold Citigroup liable for knowing

participation in a fiduciary's breach, plaintiffs must establish (1) that the Committee

Defendants breached their duties; (2) that Citigroup knowingly participated in the

breaches and (3) that plaintiffs were damaged as a result. *See, e.g., Gruby* v. *Brady*, 838 F. Supp. 820, 834 (S.D.N.Y. 1993). Where, as here, plaintiffs' claims against the Committee Defendants fail, the claim against Citigroup fails as well.

Moreover, plaintiffs allege no facts showing that Citigroup knowingly participated in these alleged breaches. All plaintiffs allege is that Citigroup "created and staffed the Administrative and Investment Committees" and therefore "knew or should have known" that the committees were violating ERISA. (Am. Cplt. ¶ 56.) Although plaintiffs claim that Citigroup is liable for "its actions in participating in and abetting fiduciary breaches and prohibited transactions" (*Id.* ¶ 87), plaintiffs have alleged no such actions. Accordingly, this claim should be dismissed.

### Conclusion

For the foregoing reasons, defendants respectfully submit that their motion to dismiss be granted, and the Amended Complaint be dismissed with prejudice.

Dated: New York, New York
August 29, 2008

PAUL, WEISS, RIFKIND, WHARTON &
    GARRISON LLP


By:     /s/ Lewis R. Clayton
        Lewis R. Clayton
        Douglas M. Pravda
        Aliza J. Balog

1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000
Fax: (212) 757-3890
Email: lclayton@paulweiss.com

*Attorneys for Defendants*