UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                  :

MARYA J. LEBER, SARA L. KENNEDY, and    :
all others similarly situated                      :
                                  :
                  Plaintiffs,     :    07 Civ. 9329 (SHS)
                                  :
                                  :    <u>OPINION & ORDER</u>
        -against-                :
                                  :
CITIGROUP, INC., THE PLAN'S            :
ADMINISTRATIVE COMMITTEE OF        :
CITIGROUP INC., THE 401(K) PLAN      :
INVESTMENT COMMITTEE and DOE      :
DEFENDANTS 1-20,                 :
                                  :
                  Defendants.    :
                                  :
------------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

      Plaintiffs, two Citigroup employees, bring this putative class action pursuant to

the Employee Retirement Income Security Act ("ERISA" or "the Act"), 29 U.S.C. §

1001 <u>et seq.</u>, against their employer, Citigroup, as well as the Administrative Committee

and the Investment Committee of Citigroup's 401(k) retirement plan and the individual

members of those committees (collectively, "committee defendants"). The amended

complaint alleges the committee defendants, all of whom were fiduciaries of Citigroup's

401(k) retirement plan ("the Plan"), breached duties owed to the plaintiffs by failing to

act in the best interests of the Plan and by putting the interests of Citigroup ahead of those

of the Plan in at least two ways: first, the committee defendants selected Citigroup or

Citigroup-affiliated mutual funds as investments for the Plan that allegedly performed

less well and charged higher advisory fees than comparable funds offered by other

companies ("mutual fund" claims); second, the committee defendants selected a

Citigroup-affiliated service provider, CitiStreet, to provide management services for the

Plan ("management services" claims).  Plaintiffs allege that the above conduct violated

both section 404 of the Act, which imposes broad duties of loyalty and care on plan

fiduciaries and section 406, which prohibits specific conduct or transactions involving

plan assets.  29 U.S.C. §§ 1104, 1106.  Finally, plaintiffs allege that Citigroup itself,

while not a fiduciary, is liable for knowingly participating in each of the alleged breaches.

Defendants have moved to dismiss the complaint pursuant to Fed. R. Civ. P.

12(b)(6), contending, first, that the action is barred by ERISA's statute of limitations, and

alternatively, that if not time barred, plaintiffs' complaint fails to state a claim upon

which relief can be granted.  In particular, defendants argue that both the mutual fund and

management services claims cover conduct specifically exempted from section 406's

prohibitions by statutory or administrative provisions; that plaintiffs' remaining

allegations against the committee defendants, including claims brought pursuant to

section 404, fail to state a plausible claim to relief; and finally, that plaintiffs' claims

against Citigroup similarly fail to allege with specificity knowledge of wrongdoing by it.

Plaintiffs, in response, contend the amended complaint satisfies the pleading

requirements as construed in Bell Atl. V. Twombly, 550 U.S. 544 (2007) and that

defendants' specific objections—including the applicability of the statute of limitations or

statutory or administrative exemptions to ERISA—are affirmative defenses which turn on

information not contained in the complaint and are, accordingly, unsuitable for resolution

on this Rule 12(b)(6) motion.

Because the Court finds that plaintiffs validly state a plausible claim to relief pursuant to section 404 insofar as they allege the committee defendants acted imprudently by steering Plan assets to Citigroup affiliated mutual funds with higher investment advisory fees than those of competing funds, the motion to dismiss the complaint is denied with regard to those claims. While the ultimate survival of those claims will turn in part on resolution of the timeliness of the action, the Court agrees with plaintiffs that the issue cannot be resolved upon this Rule 12(b)(6) motion. However, because none of plaintiffs' other allegations—including plaintiffs' remaining section 404 claims, all of plaintiffs' section 406 claims, and plaintiffs' claims against non-fiduciary Citigroup—states a plausible claim to relief under any section of ERISA, defendants' motion to dismiss the complaint in those respects is granted.

## I.    BACKGROUND

Unless otherwise noted, all of the following facts are taken from the amended complaint ("complaint") and are presumed to be true:

### A.  The Parties

Citigroup, a Delaware corporation, sponsors a 401(k) retirement plan for its employees. (Am. Compl. ¶ 16.) The Plan, which is available to all eligible Citigroup employees, is an "employee benefit plan" within the meaning of ERISA and, accordingly, is subject to the restrictions and regulations imposed on covered plans by the Act. (Id. ¶¶ 8, 21), 29 U.S.C. § § 1002(3), 1003. Citigroup, as the Plan's sponsor, is a "party in interest" to the Plan within the meaning of the Act. (Am. Compl. ¶ 16); 29 U.S.C. § 1002(14).

The Plan is managed by two committees, an Administrative Committee responsible for the overall operation and administration of the plan, and an Investment Committee responsible for evaluating and selecting the investment options from which plan participants are able to choose.  (Id. ¶¶ 17-18, 21.)  Pursuant to ERISA, members of both committees are fiduciaries of the Plan.  (Id. ¶¶ 33-37), 29 U.S.C. § 1002(21)(A).

The complaint does not name any of the committee defendants nor does it specify their roles at or relationships with Citigroup.  Instead, it states simply that the "Committee Defendants are officers, employees, or agents of Citigroup" and that the "Administrative Committee and the Investment Committee are internal committees created and staffed by Citigroup."  (Id. ¶¶ 1, 39.)

Plaintiffs Marya J. Leber and Sara L. Kennedy are Citigroup employees and plan participants.  (Id. ¶¶ 12, 14.)  During the class period—defined by the complaint only as "2001 to present" (the complaint was filed in October 2007)—plaintiffs each invested in at least one of the mutual funds alleged to have been chosen because of its affiliation with Citigroup and, in Kennedy's case, despite the affiliated fund's allegedly excessive management fees.  (Id. ¶¶  12, 14, 29, 51.)[1]  Both plaintiffs contend they had no knowledge of any of the relevant facts underlying this litigation until October 2007.[2]

---

[1] The complaint specifically alleges only that Leber invested in the "Citi Institutional Liquid Reserves Fund," an affiliated fund about which the complaint provides no additional specific information, including whether or not the investment advisory fees associated with it were higher, lower, or roughly equal to those associated with comparable unaffiliated funds.  (Am. Compl. ¶ 12.)

[2]  According to the amended complaint, plaintiffs did not learn of any of the relevant facts underlying this litigation until "July 2008." (Id. ¶¶ 13, 15.)  Because the complaint was filed in October 2007, the Court will assume that the July 2008 is, as plaintiffs contend, a "drafting mistake" and that plaintiffs intended the amended complaint to read "October 2007" instead.  (Pls.' Mem. of Law. in Opp. to Defs.' Mot. to Dismiss at 7.)  As discussed below, the first date of plaintiffs' actual knowledge of the allegations is a factual issue that cannot be resolved at this time.

B.  ERISA's Statutory Requirements and Defendants' Alleged Violations

ERISA imposes a series of requirements on all plan fiduciaries, defined broadly by the Act as any person who "exercises discretionary authority or discretionary control respecting management of" a plan.  29 U.S.C. § 1002(21)(A).  In particular, those meeting that definition are subject to broad fiduciary duties and are restricted from engaging in specified prohibited transactions.  Section 404 of the Act imposes on plan fiduciaries a responsibility to "discharge his duties . . . solely in the interest of" plan participants, "for the exclusive purpose of providing benefits to the participants," and "with the care, skill, prudence, and diligence under the circumstances" of a "prudent man" acting in like capacity.  29 U.S.C. § 1104(a)(1)(A)-(B).

Section 406 supplements the requirements of section 404 by specifically prohibiting plan fiduciaries from engaging in certain transactions.  Section 406(a) prohibits certain transactions between the plan and a party in interest such as the "furnishing of goods [or] services . . . between the plan and a party in interest," while section 406(b) prohibits a fiduciary from engaging in certain forms of self-dealing, including acting "on behalf of a party . . . whose interests are adverse to the interests of the plan" in any transaction.  29 U.S.C. § 1106(a)-(b).

Despite those broad general duties to put the interests of the plan and its participants first and to avoid transactions between the plan and a party in interest, plaintiffs contend the committee defendants—who are fiduciaries—"put Citigroup's interests ahead of the 401(k) Plan's interests" in violation of section 404 (Am. Compl. ¶ 2) and engaged in transactions prohibited by section 406 in two ways: first, the committee defendants caused the Plan to invest assets in affiliated mutual funds rather

than comparable independent or unaffiliated funds, and second, the committee defendants selected an affiliated service provider, CitiStreet, to manage the fund.

### 1. The "Mutual Fund" Allegations

In a defined contribution plan such as the one offered by Citigroup, a plan's administrators are responsible for selecting a series of investment options to make available to plan participants who are then free to choose among the selected options when investing their own assets. (<u>Id.</u> ¶ 22.) In selecting those investment options, plan administrators—as fiduciaries—are bound to adhere to the general fiduciary duties of Section 404 as well as being constrained by the more specific prohibitions contained in Section 406.

In this case, the responsibility to choose investment options for the Plan fell on the committee defendants. (<u>Id.</u> ¶ 27.) Plaintiffs contend that, over the course of the class period, the committee defendants routinely selected funds run by Citigroup or one of its affiliated entities ("affiliated funds") in lieu of funds run by outside groups ("unaffiliated funds"). (<u>Id.</u> ¶¶ 40-42.) They did so, plaintiffs allege, because directing plan assets to affiliated funds generated income for Citigroup in the form of investment advisory fees, whereas investments in unaffiliated funds did not. (<u>Id.</u> ¶ 4.)

Further evincing the committee defendants' preference for affiliated funds, plaintiffs allege that on several occasions during the course of the class period, the committee defendants shifted plan assets from unaffiliated funds to affiliated ones, doing so, in at least one instance, only after the affiliated fund was sold to an outside company. (<u>Id.</u> ¶¶ 43, 45-46.) As a result of the committee defendants' investment choices, during

the course of the class period, nearly $2.5 billion in plan assets were invested annually in affiliated funds.  (Id. ¶ 30.)

    Plaintiffs contend that the committee defendants' preference for affiliated funds caused injury to the Plan and its participants in two ways: first, the affiliated funds charged higher investment advisory fees than comparable unaffiliated funds, and second, during the course of the class period, those comparable, unaffiliated funds outperformed the affiliated ones selected by the committee defendants.  (Id. ¶ 4.)

    Specifically, with respect to the investment advisory fees, plaintiffs contend that during the class period, the committee defendants caused the Plan to invest in the Smith Barney U.S. Government Securities fund, an affiliated fund which they aver charged fees 111 percent higher than those associated with a "comparable" unaffiliated Vanguard fund.  (Id. ¶ 51.)  Similarly, plaintiffs allege the committee defendants caused the Plan to invest in the Salomon Brothers Investment Fund and the Salomon Brothers High Yield Bond Fund which charged fees 62 percent and 227 percent higher fees, respectively, than those associated with comparable Vanguard Funds.  (Id.)   In total, plaintiffs point to at least eight specific affiliated funds selected by the committee defendants for Plan investment, all of which charged fees at least 24 percent higher than those associated with comparable unaffiliated Vanguard funds.  (Id.)

    With respect to the performance of the affiliated funds, plaintiffs assert generally that the committee defendants overlooked many "better-performing" funds, and that the Plan's investments in affiliated funds "substantially under-performed" in comparison to "similar products available from unaffiliated investment managers."  (Id. ¶¶ 4, 32.)  While plaintiffs provide no specific factual allegations in support of that claim, they do

make the following indirect allegations: first, during the class period, the Plan was "by far" the largest investor in the relevant affiliated funds and "exceeded 50%" of the total investments in some of those funds.  (Id. ¶ 50.)  Accordingly, plaintiffs conclude that "the large pension plan market did not favor [the] Affiliated Funds," and by implication, therefore, it was a poor investment choice for the Plan.  (Id.)  Second, as noted, plaintiffs allege that, on occasion, the committee defendants terminated participation in affiliated funds once those funds were sold off and thus were no longer affiliated with Citigroup, ostensibly because the committee defendants concluded those funds were no longer the best investment choices for the Plan.  Accordingly, plaintiffs would have the Court conclude that those investments were never the best investment choices, but that the committee defendants failed to conduct an appropriately searching review of those same funds when they were affiliated—that is, when the Plan's investment in them "was generating fees for Citigroup."  (Id. ¶ 49.)

As a result, over the course of the class period, plaintiffs contend the Plan "invest[ed] billions of dollars in Affiliated Funds" and "suffered millions of dollars a year in losses" due to the combination of the higher fees charged by the affiliated funds and their allegedly comparatively lower performance.  (Id. ¶¶  55.)

### 2.  The "Management Services" Claims

In addition to selecting funds for plan participants to invest in, the committee defendants, and, in particular, the administrative committee and its members, had responsibility for selecting and monitoring service providers for the Plan.  (Id. ¶ 37.)  In so doing, the committee defendants were bound by both fiduciary duties and specific prohibitions contained in the Act.

Plaintiffs allege that, during the course of the class period, certain of the Plan's administrative and recordkeeping services were provided by CitiStreet—a joint venture between Citigroup and State Street Bank & Trust.  (Id. ¶ 29.)  Plaintiffs contend the committee defendants selected CitiStreet to provide those services and retained it throughout the class period solely because of its connection to Citigroup, thereby putting the interests of Citigroup ahead of those of the Plan and its participants while also engaging in a prohibited transaction between the Plan and a party in interest.

While plaintiffs contend the committee defendants "should have known" that similar administrative services were available from unaffiliated entities (id. ¶ 53), they do not allege the services provided by CitiStreet were deficient in any respect or that the fees paid to CitiStreet for those services were excessive, unwarranted, or unreasonable. Plaintiffs also do not allege any specific losses stemming from the committee defendants' selection of CitiStreet to provide administrative services for the Plan.

C. The Complaint

Plaintiffs filed the initial complaint in October 2007 and an amended complaint in July 2008, alleging three counts of wrongdoing.  Count One alleges that the committee defendants engaged in transactions prohibited by section 406(a) of the Act by causing the Plan to invest in mutual funds and to purchase services managed and provided by a party in interest, Citigroup.  (Id. ¶ 77); 29 U.S.C. 1106(a).  Count One can also be read to allege the committee defendants violated the specific prohibitions of section 406(b) through the same course of conduct by acting, in a transaction with the Plan, on behalf of another party—Citigroup—whose interests were "adverse" to those of the Plan and its participants.  (Am. Compl. ¶¶ 4, 77); 29 U.S.C. 1106(b).  As a result of these proscribed

transactions, plaintiffs contend the Plan and its participants suffered millions of dollars in losses annually during the course of the class period.  (Id. ¶ 78.)

Count Two alleges that the committee defendants, through the same acts, violated the broad fiduciary duties imposed by section 404 of the Act by putting the interests of Citigroup and its subsidiaries ahead of those of the Plan and its participants and by failing to act with the prudence and caution required of them.  (Id. ¶ 82.)  As a result of these breaches, plaintiffs contend the Plan and its participants suffered millions of dollars in losses annually during the course of the class period.  (Id. ¶ 83.)

Finally, Count Three alleges that Citigroup itself knowingly participated in each of the above breaches and ERISA violations, thereby causing the Plan and its participants millions of dollars in lost fees and investment returns.  (Id. ¶¶ 87-88.)  While Citigroup, as a non-fiduciary, cannot be liable under the Act for damages, plaintiffs instead seek disgorgement of all revenues received from the Plan.  (Id. ¶ 89.)


## II.    ANALYSIS

### A.  The Motion to Dismiss Standard

On a defendant's Rule 12(b)(6) motion to dismiss for failure to state a claim, a court assumes the truth of all facts asserted in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff.  See Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 154 (2d Cir. 2006); S.E.C. v. Lyon, 529 F. Supp. 2d 444, 449 (S.D.N.Y. 2007).  In so doing, a court is limited to the complaint and the facts alleged therein.

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp v. Twombly, 550 U.S.  544, 570 (2007).  Thus, if a plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." Id.; see also  Ashcroft v. Iqbal, -- U.S. --, 129 S.Ct.1937, 1950 (2009) ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss.")

 To state a plausible claim to relief, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555. As the U.S. Supreme Court most recently clarified, that Twombly standard "asks for more than a sheer possibility that a defendant acted unlawfully."  Iqbal, -- U.S. at --, 129 S.Ct. at 1949.  Accordingly, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief," and the complaint must therefore be dismissed. Id. at 1950 (quotations and citations omitted).

### B.  ERISA's Statute of Limitations

No ERISA action may be brought after the earlier of (1) six years from the date of the "last action which constituted a part of the breach or violation"  or (2) three years after "the earliest date on which the plaintiff had actual knowledge of the breach or violation."  29 U.S.C. §  1113.  Because the Act bars actions based on the earlier of the two limitations periods, courts must consider whether either the six-year or the three-year actual knowledge period expired before the action was commenced.

Defendants maintain both the six-year and three-year windows closed before October 2007 when plaintiffs commenced this action because most if not all of the acts

giving rise to plaintiffs' claims occurred—and were fully disclosed to plan participants—no later than July 2001. Plaintiffs assert that neither the six-year nor three-year period bars this action, but in direct response to defendants' motion argue primarily that the Court, when constrained to the four corners of the complaint as it must be on a Rule 12(b)(6) motion, cannot conclusively find to the contrary at this time.

### 1.    The Six-Year Period

ERISA's six-year statutory period starts to run from the "last action which constituted a part of the breach or violation." 29 U.S.C. § 1113(1). In this case, the relevant "last actions" were the committee defendants' selections of affiliated funds as investment options for the Plan and their selection of the affiliated service provider, CitiStreet, in lieu of an outside entity. The complaint, however, is silent as to when virtually all of those actions occurred. While the complaint provides general date ranges for several of the transactions in question (e.g., Am. Compl. ¶¶ 43-46), it does not state with any specificity when the committee defendants selected for investment any of the funds specifically identified as having higher management fees than comparable unaffiliated funds or when the committee defendants selected CitiStreet to provide management and administrative services to the Plan.

The U.S. Court of Appeals for the Second Circuit has found that "[t]he pleading requirements in the Federal Rules of Civil Procedure . . . do not compel a litigant to anticipate potential affirmative defenses, such as the statute of limitations, and to affirmatively plead facts in avoidance of such defenses." Abbas v. Dixon, 480 F.3d 636, 640 (2d Cir. 2007). Dismissal of claims as barred by the statute of limitations on a Rule

12(b)(6) motion is therefore appropriate only where it is apparent from the face of the complaint that an action will be time barred.  Id.

Accordingly, the Court is unable at this stage to properly determine whether or not the action is barred as untimely.  While defendants in their present motion aver that many of the actions at issue in this litigation—including the challenged investment decisions and the selection of CitiStreet as a service provider—were made no later than July 2001, on a Rule 12(b)(6) motion, as noted, the Court is constrained to the pleadings which artfully make no mention of when most, if not all, of the relevant breaches occurred.  Dismissal at this stage would therefore be improper.

Plaintiffs concede that any breaches that fully occurred more than six years before this action was commenced are barred by statute but argue instead that defendants' cumulative course of conduct amounted to a "continuing violation," and, accordingly, that no "final action" was taken more than six years before this suit was filed.

The "continuing violation" doctrine, which stems from the ongoing nature of the duty imposed on ERISA fiduciaries, allows plaintiffs to bring suit for a course of conduct dating back beyond the statutory period provided the fiduciaries engaged in some sort of repeated and ongoing conduct that stretched into the six-year period.  See Buccino v. Cont'l Assurance Co., 578 F. Supp. 1518, 1521-22 (S.D.N.Y. 1983) (collecting cases); see also Brown Park Estates-Fairfield Dev. Co. v. United States, 127 F.3d 1449, 1456 (Fed. Cir. 1997).  By contrast, "the continuing claims doctrine does not apply to a claim based on a single distinct event which has ill effects that continue to accumulate over time."  Miele v. Pension Plan of N.Y. State Teamsters Confrence Pension & Ret. Fund, 72 F. Supp. 2d 88, 102 (E.D.N.Y. 1999) (collecting cases).

Although the complaint's core allegations rest on the cumulative harms from single events—i.e., selection of affiliated investment options and service providers—and therefore would not appear to give rise to a "continuing violation" for statute of limitations purposes, the Court cannot conclusively find from the pleadings alone that plaintiffs' action is based on breaches or actions taken outside of the six-year statutory window. Accordingly, the Court cannot conclude at this time that the action is in fact time-barred.

2.    *The Three-Year "Actual Knowledge" Period*

For purposes of ERISA's statute of limitations, a person has "actual knowledge" of the breach or violation when he has knowledge of "all material facts necessary to understand that an ERISA fiduciary has breached his or her duty or otherwise violated the Act." Caputo v. Pfizer, Inc., 267 F.3d 181, 193 (2d Cir. 2001). As the Second Circuit has explained, "actual knowledge" does not mean knowledge of the law but rather of "all the facts necessary to constitute a claim." Id. The Circuit has expressly rejected a "constructive knowledge" standard, instructing instead that "plaintiffs must have had specific knowledge of the actual breach upon which they sued." Id. (internal citations, alterations omitted).

As noted, plaintiffs aver in the complaint that they had no knowledge of any of the relevant facts—including that Plan funds were affiliated with Citigroup, or what, if any fees those funds charged investors—until the complaint in this action was filed in October 2007. (Am. Compl. ¶¶ 13, 15.) Defendants contend those claims are implausible on their face and are further belied by a series of documents sent to all plan

14

participants explicitly revealing all the relevant facts relating to the alleged breaches as early as 2001.

In particular, defendants point to documents distributed to all plan participants as early as July 2001 disclosing that the investment options selected by the committee defendants were affiliated with Citigroup. Defendants also point to similar documents distributed as early as May 2001 revealing that CitiStreet, which had been retained to provide management services to the Plan, was a joint venture between Citigroup and the State Street Corporation. Accordingly, defendants contend that plaintiffs must have known of each of the alleged breaches or ERISA violations far more than three years before commencing this action in late 2007.

While defendants' arguments are compelling and their proffered evidence seemingly quite strong, the Court is once again unable to conclude on a Rule 12(b)(6) motion that the action is time barred because it cannot look beyond the facts as alleged in the pleadings and, in particular, cannot rely on documents not attached to or expressly relied on or quoted in the complaint. See Broder v. Cablevision Sys. Corp., 418 F.3d 187, 196 (2d Cir. 2005). Limited as such, and taking the facts alleged in the complaint as true, the Court must accept at this point that plaintiffs had no knowledge of the facts underlying their claims until October 2007, and accordingly, that they brought suit within the three-year window allowed by ERISA.

In sum, the Court cannot conclude on the basis of the pleadings that plaintiffs' claims are untimely.

C. Plaintiffs' Section 406 Prohibited Transaction Claims

Count One of the complaint alleges the committee defendants, by selecting affiliated mutual funds and service providers, engaged in transactions prohibited by section 406(a) and, in the process, violated 406(b) by acting "on behalf of" a party whose interests were "adverse" to those of the Plan—i.e, Citigroup.  Defendants contend the transactions were exempted from the proscriptions of that section and that plaintiffs otherwise fail to state a claim under either sub-section.

### 1. Section 406(a) Prohibited Transactions Claims

ERISA section 406(a) prohibits plan fiduciaries from causing a plan to engage in many types of transactions with a party in interest, including the "furnishing of goods, services, or facilities between the plan and a party in interest."  29 U.S.C. § 1106(a)(1)(C). Section 406, however, is subject to both statutory and administrative "exemptions."  In particular, section 408(b) of the Act enumerates specific transactions exempted from the prohibitions of section 406 ("statutory exemptions"), while section 408(a) gives the Secretary of Labor broad authority to create additional exemptions provided they are "in the interests of" and "protective of the rights" of  plan participants and beneficiaries ("administrative exemptions").  29 U.S.C. § 1108(a)-(b).

Defendants contend two exemptions are relevant here.  First, with respect to plaintiffs' mutual fund claims, defendants point to prohibited transaction exemption ("PTE") 77-3 which provides that the "restrictions of section[] 406 . . . shall not apply" to the investment of plan assets in affiliated mutual funds provided certain conditions are met.  PTE 77-3, 42 Fed. Reg. 18,734 (1977).  Second, with respect to plaintiffs' management service claims, defendants point to section 408(b)(2) of the Act which similarly exempts from section 406 contracts with a party in interest for "services

necessary for the establishment or operation of the plan" so long as "no more than reasonable compensation is paid therefor."  29 U.S.C. § 1108(b)(2).

Defendants therefore contend that all of the transactions covered by the complaint were specifically excluded from the prohibitions of section 406 and urge that plaintiffs' complaint, which fails to allege the contrary, is fatally defective.  Plaintiffs contend the exemptions are affirmative defenses which must be established by defendants through evidence and thus cannot be resolved on this Rule 12(b)(6) motion.

While the question of whether ERISA's statutory and administrative exemptions are affirmative defenses to be established by defendants or pleading requirements to be overcome by plaintiffs is not free from dispute, compare Mehling v. New York Life Ins. Co., 163 F. Supp. 2d 502, 510 (E.D. Pa. 2001) (dismissing complaint that failed to allege ERISA exemption did not apply), with Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 600-01 (8th Cir. 2009) (reversing dismissal for failure to allege an exemption did not apply because "the statutory exemptions established by § 1108 are defenses which must be proven by the defendant"), in light of those exemptions and on these facts, the Court finds plaintiffs' pleadings insufficient to state a plausible claim to relief.

a.    PTE 77-3 and Plaintiffs' Mutual Fund Claims

First adopted by the Secretary in 1977, PTE 77-3 provides that "the restrictions of section[] 406 . . . shall not apply to the acquisition or sale of shares of an open-end investment company registered under the Investment Company of Act of 1940"—i.e., a mutual fund—"by an employee benefit plan covering only employees of such investment company."  PTE 77-3, 42 Fed. Reg. 18,734 (1977).  For the exemption to apply, four additional conditions must be met: first, the plan must pay no "investment management,

investment advisory or similar fee" to the mutual fund, although the mutual fund itself may pay such fees to its managers; second, the plan must not pay "a redemption fee" when selling its shares; third, the plan must not pay a sales commission in connection with the sale or acquisition; and fourth, all other dealings between the plan and the affiliated fund must be "on a basis no less favorable to the plan than such dealings are with other shareholders." Id.

Defendants contend the allegations contained in the complaint fail to state a claim to relief because even in the light most favorable to plaintiffs, the complaint asserts nothing more than that defendants purchased shares in an affiliated mutual fund, a transaction to which "the restrictions of section[] 406 . . . shall not apply." The Court agrees.

A complaint must allege conduct that is plausibly actionable under the relevant statute and must go beyond creating a "sheer possibility that a defendant has acted unlawfully." Iqbal, -- U.S. at --, 129 S.Ct. at 1949. Accordingly, where the complaint does not allege any basis for presuming that a defendant's conduct fell outside a statutory exemption—and therefore that a defendant's conduct might plausibly entitle plaintiff to relief—it is deficient.

Plaintiffs' complaint here fails in just that regard. The complaint alleges the very type of activity that the exemption expressly allows to occur—the investment by a plan in its affiliated mutual funds on the terms generally available to other investors. It makes no allegations to support a finding that the conduct fell beyond the exemption and accordingly would be actionable under section 406. Indeed, plaintiffs' only specific allegations of wrongdoing with respect to those investments involve the advisory fees

those funds paid their own managers, fees the exemption expressly allows to be paid. <u>See</u> PTE 77-3(a), 42 Fed. Reg. 18,735 ("This condition does not preclude the payment of investment advisory fees by the [mutual fund] under the terms of its investment advisory agreement.").  Accordingly, plaintiffs provide no plausible basis for presuming their claims will be actionable under section 406 and they therefore fail to state a claim.

Plaintiffs' contention that the exemptions are affirmative defenses on which defendants carry the burden of proof misstates their own burden: while establishing that a challenged transaction meets each of the four conditions necessary for PTE 77-3 to apply might be a defendant's burden <u>if in dispute</u>, a complaint must allege a course of conduct actionable under the relevant statute.  Where, as here, the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but not shown—that the pleader is entitled to relief," <u>Iqbal</u>, -- U.S. at --, 129 S.Ct. at 1950 (quotations and citations omitted), and accordingly must be dismissed.  <u>See also</u> <u>Id.</u> at 1949 (allegations that are "merely consistent" with conceivable liability "stop[] short of the line between possibility and plausibility").

Plaintiffs instead point to the finding of the Second Circuit that a "fiduciary charged with a violation of Section 406(b)(3) . . . must prove by a preponderance of the evidence that the transaction in question fell within an exemption." <u>Lowen v. Tower Asset Mgmt., Inc.</u>, 829 F.2d 1209, 1215 (2d Cir. 1987); <u>see also</u> <u>Reich v. Valley Nat'l Bank</u>, 837 F. Supp.1259, 1272 (S.D.N.Y. 1993) (same).  However, the Circuit's finding in <u>Lowen</u> was in the very different context of an alleged violation of section 406(b)(3), which covers self-dealing by plan fiduciaries, an area so fraught with potential for misconduct that many courts have found that the exemptions of section 408 do not apply

19

at all.  See, e.g., Patelco Credit Union v. Sahni, 262 F.3d 897, 910-11 (9th Cir. 2001);

Chao v. Linder, 421 F. Supp. 2d 1129, 1134-35 (N.D. Ill. 2006); Whitfield v. Tomasso,

682 F. Supp. 1287, 1304 (S.D.N.Y. 1988).  Moreover, and critically, the plaintiffs in

Lowen put applicability of the statutory exemption in dispute by expressly alleging that

compensation paid in that case to plan fiduciaries had not been paid in accordance with

the terms of the statutory exemption, and accordingly, that the investment was actionable

pursuant to section 406.  Lowen, 829 F.2d at 1216.  Here, of course, plaintiffs allege no

such thing.

> b.      Section 408 and Plaintiffs' Management Services Claims

Plaintiff's pleadings with respect to its management services claims are similarly

deficient.  Section 408(b)(2) of the Act provides that section 406 "shall not apply" to

contracts with parties in interest for the provision of "services necessary for . . . operation

of the plan, if no more than reasonable compensation is paid therefor."  29 U.S.C. §

1108(b)(2).  Here, plaintiffs make no allegations that the services provided were

unnecessary to the operation of the plan or that unreasonable compensation was paid.

Indeed, plaintiffs do not contend there was anything wrong or improper with the selection

of CitiStreet other than the fact that it was an affiliated service provider furnishing

services under circumstances section 408(b)(2) expressly exempts from the reach of

section 406.

Accordingly, absent any allegation that defendants' conduct falls beyond the

reach of the statutory exemption—and thus might plausibly be actionable under section

406—plaintiffs fail to state a valid claim.

As was true with regard to the PTE 77-3 exemption, the Court is aware of no contrary controlling authority, and indeed, its conclusions are bolstered by the recent findings of several other courts in this district applying <u>Twombly</u> in the context of different ERISA provisions that "the 12(b)(6) 'plausibility' standard would be undercut by sustaining a complaint that does not suggest a basis for overcoming the statutorily-based presumption [against liability]." <u>In re Avon Products, Inc.</u>, No. 05-civ.-6803, 2009 WL 848083, at *10 (S.D.N.Y. Mar. 3, 2009 ) (magistrate's report and recommendation) (collecting cases), <u>adopted by</u> 2009 WL 884687, at *1 (S.D.N.Y. Mar. 30, 2009) ("[T]he Court agrees . . .that a plaintiff must allege facts that, if true, would be sufficient to overcome that presumption in order to state a legally sufficient claim for relief.").

Accordingly, the complaint fails to state a plausible claim to relief pursuant to section 406(a).

2.    *"Dual Loyalty Doctrine" Section 406(b) Claims*

Plaintiffs additionally contend that the committee defendants' course of conduct violated section 406(b), and in particular, section 406(b)(2), which prohibits a fiduciary from acting "in any transaction involving the plan on behalf of a party . . . whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries." 29 U.S.C. § 1106(b)(2). The section is designed to prevent a fiduciary "from being put into a position where he has dual loyalties, and therefore, he cannot act exclusively for the benefit of a plan's participants and beneficiaries." <u>NLRB v. Amax Coal Co.</u>, 453 U.S. 322, 333-34 (1981) (quoting legislative history). Plaintiffs contend the committee defendants found themselves in just such a position when acting on transactions between

the Plan and Citigroup, ultimately choosing to act for the benefit of Citigroup rather than the Plan and its participants.

While defendants concede that, as noted, neither the statutory nor administrative exemptions discussed above apply to alleged violations of section 408(b), they instead argue plaintiffs' complaint fails to adequately plead a section 406(b) violation because it fails to allege, first, that any of the committee defendants acted "on behalf of" either Citigroup or CitiStreet, or second, that Citigroup (or CitiStreet) was a party with interests "adverse" to those of the Plan. The Court agrees in both respects.

First, plaintiffs fail to allege with any specificity whatsoever that the committee defendants acted on behalf of Citigroup or its affiliates. The complaint fails to name any of the committee defendants, to identify with specificity any ties they might have to Citigroup, or to provide any factual allegations supporting a possible motivation for why the committee defendants might have acted "on behalf of" Citigroup. The complaint, taken in the light most favorable to plaintiffs, alleges simply that the "committee defendants are officers, employees, or agents of Citigroup" and that Citigroup "created and staffed" the committees. (Am. Compl. ¶¶ 1, 56.) Those general assertions, which do little to distinguish the Citigroup Plan and its fiduciaries from those of virtually any other plan covered by the Act, are simply insufficient to support the entirely conclusory allegation that, in making the relevant decisions, "the Committee Defendants placed Citigroup's interests ahead of the 401(k) Plan's interests." (Id. ¶ 42.). See Iqbal, -- U.S. at --, 129. S.Ct. at 1950 ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

Second, plaintiffs' complaint fails to allege that Citigroup was a party with interests "adverse" to those of the Plan. The Second Circuit has read section 406(b)(2) "narrowly, holding that a transaction between the plan and a party having an adverse interest is required." Gruby v. Brady, 838 F. Supp. 820, 833 (S.D.N.Y. 1993) (citing Donovan v. Bierwirth, 680 F.2d 263, 270 (2d Cir. 1982)). In Donovan, the Circuit found the section "[did] not apply" to a plan fiduciary's choice to invest in the stock of the plan's sponsor company because the plan and its sponsor company did not have "adverse" interests for purposes of the Act. Donovan, 680 F.2d at 270. While the Circuit did not define "adverse," it did note that section 406(b) covered "self-dealing" and saw "no reason to think Congress intended the expansive interpretation of the various specific prohibitions of § 406 urged by [the plaintiff] particularly in light of the inclusion of the sweeping requirements of prudence and loyalty contained in § 404." Id.

Here, plaintiffs allege no facts to support a claim that Citigroup or its various affiliates were parties with "adverse interests" to those of the Plan. With respect to plaintiffs' mutual fund claims, the complaint can be read to allege at most that Citigroup sold investment securities to the Plan at prevailing market rates, conduct Donovan instructs is insufficient to render the Plan's interests "adverse" to those of the sponsor company. With regard to the management services claims, plaintiffs' allegations are even weaker. Plaintiffs do not contend the management services provided by CitiStreet were insufficient, unreasonably costly, or otherwise deficient. Indeed, they provide no plausible grounds for concluding the interests of CitiStreet differed from the interests of the Plan in securing professional, cost-appropriate management services.

Accordingly, the Court finds plaintiffs fail to state a plausible claim to relief pursuant to section 406(b) of the Act.

### D.  Plaintiffs' Section 404 Fiduciary Duty Claims

Sections 404(a)(1)(A) and (B) impose three different although overlapping standards.  A fiduciary must discharge his duties "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose" of providing benefits to them.  Finally, he must act "with the care, skill, prudence, and diligence under the circumstances then prevailing" of a "prudent man." 29 U.S.C. § 1104(a)(1)(A)-(B); Donovan, 680 F.2d at 270. The Second Circuit has deemed the duties of ERISA fiduciaries to be "the highest duty known to the law." La Scala v. Scrufari, 479 F.3d 213, 220 (2d Cir. 2007) (internal quotations omitted).[3]

Plaintiffs contend the committee defendants breached their duties in two now familiar ways: first, by causing plan assets to be invested in affiliated mutual funds that charged higher fees and performed less well than comparable unaffiliated funds, the committee defendants acted in the interests of Citigroup rather than the Plan and failed to act with the skill, prudence, and care required.  Second, by selecting an affiliated service provider—CitiStreet—to provide management services to the Plan, defendants similarly breached the duties owed the Plan and its participants.  Defendants contend plaintiffs' allegations are insufficient to state a plausible claim to relief.

---

[3] Neither the administrative nor the statutory exclusions from section 406 discussed above are determinative of defendants' potential liability pursuant to section 404.  See, e.g., PTE 77-3, 42 Fed. Reg. 18,734 ("The fact that a transaction is the subject of an exemption granted under section 408(a) of the Act . . . does not relieve a fiduciary . . . from certain other provisions of the Act . . . including . . . the general fiduciary responsibility provisions of section 404 of the Act.").  Accordingly, irrespective of whether such exemptions bar actions pursuant to section 406, actions for the same conduct may be brought pursuant to section 404 provided the complaint states a valid claim to relief thereunder.

Plaintiffs' allegations that the committee defendants breached their duties to act prudently and in the best interests of the plan by selecting affiliated mutual funds that charged higher advisory fees than comparable unaffiliated funds is sufficiently concrete and supported by sufficient factual allegations to state a valid claim. Plaintiffs make specific factual allegations that eight affiliated funds selected by the committee defendants charged higher fees than those charged by comparable Vanguard funds—in some instances fees that were more than 200 percent higher than those comparable funds—and accordingly, they nudge those claims across the line from merely conceivable to plausible. Of course, defendants will be free to argue in subsequent proceedings, as they do in their moving papers, that the higher fees were justified, that the Vanguard funds were not actually comparable, or that investment decisions were ultimately in the best interests of the Plan. But such arguments are premature at this stage. The complaint, viewed in the light most favorable to the plaintiffs, states a valid claim.

All of plaintiffs' other claims brought pursuant to section 404, however, fail because plaintiffs fail to amplify them with sufficient factual allegations to nudge them across the line from conceivable to plausible. First, plaintiffs' allegation that the committee defendants breached duties of prudence and care by selecting affiliated mutual funds that "substantially under-performed similar products available from unaffiliated investment managers" is supported by nothing beyond plaintiffs' bare assertion. (Am. Compl. ¶ 32.) Plaintiffs make no specific factual allegations regarding performance of the funds selected by the committee defendants, nor do they provide any basis for evaluating or comparing that performance. Plaintiffs' indirect allegations—i.e., that the

Plan was the largest investor in many of the affiliated funds chosen—lack specificity and alone are insufficient to state a plausible claim that the selected funds underperformed.[4]

Second, plaintiffs' allegations that the committee defendants breached duties owed to the Plan and its participants by retaining CitiStreet to provide management services fails because, as discussed above, the complaint contains no allegations that the selection of CitiStreet was "imprudent," that the services provided were deficient, that the costs associated with those services were unreasonable, or that the selection was in any other respect at odds with the best interests of Plan or its beneficiaries. Accordingly, those claims must also be dismissed.

E.  Citigroup's "Knowing Participation" in Fiduciaries' Breaches

Finally, plaintiffs claim that Citigroup, while not a plan fiduciary and accordingly not bound by the provisions of sections 404 or 406, knowingly participated in the fiduciaries' breaches and other ERISA violations and therefore should be liable for restitution. Section 503(a)(3) authorizes suits against non-fiduciaries who knowingly participate in transactions violative of the Act for "appropriate equitable relief" including restititution. 29 U.S.C. § 1132(a)(3); see also Harris Trust & Sav. Bank v. Salomon Smith Barney, 530 U.S. 238, 246-47 (2000) (non-fiduciary can be liable for knowing participation of violation of section 406(a)); Gerosa v. Savasta & Co., 329 F.3d 317, 320-21 (2d Cir. 2003) (non-fiduciary can be liable for knowing participation in ERISA violations and restitution available as an equitable remedy).

---

[4] For the reasons set forth in section III.C.2 above, plaintiffs fail to state a plausible claim that the committee defendants violated duties of loyalty by putting the interests of Citigroup ahead of those of the Plan and its participants. Accordingly, any such claims brought pursuant to section 404 are similarly dismissed.

Defendants contend here that plaintiffs' claim must fail because plaintiffs cannot establish that Citigroup <u>knowingly</u> participated in the breach. Knowing participation turns on a showing that defendants (1) knew of the primary violator's status as a fiduciary and (2) knew that the primary violator's conduct contravened a fiduciary duty. <u>Diduck v. Kaszycki & Sons Contractors, Inc.</u>, 974 F.2d 270, 282-83 (2d. Cir. 1992).

Here, plaintiffs fail to state a claim because their complaint contains nothing beyond a bare assertion that Citigroup "knew or should have known" that the committee defendants "were breaching their duties." (Am. Compl. ¶ 56.) Plaintiffs fail to plead with any specificity how or why Citigroup knew or should have known of the alleged breaches, or who at Citigroup would have had such knowledge. Plaintiffs' only relevant allegations—that the committees "were created and staffed by Citigroup" (<u>id.</u>)—at most provide some factual basis for concluding that Citigroup knew of the primary violator's status as a fiduciary. They have no bearing, however, on the second, and far more critical element of a "knowing participation" claim—that Citigroup knew that the primary violator's conduct violated a fiduciary duty. On that second point, plaintiffs plead no specific facts at all.

Accordingly, standing alone and not amplified by any specific factual allegations, plaintiffs' bare assertion is insufficient to state a plausible claim to relief and should therefore be dismissed.

## III.    CONCLUSION

Because the Court finds that plaintiffs validly state a plausible claim to relief pursuant to section 404 insofar as they allege that the committee defendants acted imprudently by steering Plan assets to affiliated mutual funds with higher investment

advisory fees than those of competing funds, the motion to dismiss the complaint is denied with regard to those claims. As noted, however, survival of those claims will turn on resolution of the timeliness of the action, an issue that cannot be resolved on this Rule 12(b)(6) motion.

None of plaintiffs' other allegations—including plaintiffs' remaining section 404 claims, all of plaintiffs' section 406 claims, and plaintiffs' claims against non-fiduciary Citigroup—states a plausible claim to relief under any section of ERISA, and accordingly, defendants' motion to dismiss the complaint in those respects is granted.

Dated: New York, New York
       March 16, 2010

SO ORDERED:

Sidney H. Stein, U.S.D.J.