UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
MARYA J. LEBER, SARA L. KENNEDY, and  :
all others similarly situated,                              :
                                                                           :    07 Civ. 9329 (SHS)
                                            Plaintiffs,       :
                                                                           :    OPINION & ORDER
            -against-                                              :
                                                                           :
CITIGROUP, INC., THE PLAN'S                        :
ADMINISTRATIVE COMMITTEE OF               :
CITIGROUP INC., THE 401(K) PLAN              :
INVESTMENT COMMITTEE and DOE          :
DEFENDANTS 1-20,                                         :
                                                                           :
                                            Defendants.    :
------------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

      Plaintiffs bring this putative class action for alleged violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* This Court previously granted in part and denied in part defendants' motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. *Leber v. Citigroup, Inc.*, 07 Civ. 9329, 2010 U.S. Dist. LEXIS 25097 (S.D.N.Y. Mar. 16, 2010). Plaintiffs now move pursuant to Federal Rule of Civil Procedure 15(a) for leave to file a second amended complaint. For the reasons set forth below, plaintiffs' motion is granted in part and denied in part.

**I.    BACKGROUND**

      The Court presumes familiarity with the facts in this action but will summarize the procedural history.

A. <u>The Amended Complaint and this Court's Prior Opinion</u>

Plaintiffs filed the initial complaint in October 2007 and an amended complaint in July 2008, alleging three counts of wrongdoing. First, the amended complaint alleged that the Administrative Committee and the Investment Committee of Citigroup's 401(k) retirement plan (the "Plan") as well as the individual members of those committees (collectively, the "committee defendants")—all of whom are fiduciaries of the Plan—violated section 406 of ERISA by (1) selecting mutual funds offered and managed by subsidiaries of Citigroup (the "Affiliated Funds") for inclusion in the Plan, and (2) purchasing the services of Citigroup, a party in interest. Second, the amended complaint asserted that the committee defendants, through the same acts, violated the fiduciary duties imposed by section 404 of ERISA by putting the interests of Citigroup ahead of Plan participants and by failing to act with the prudence required of them. Third, the amended complaint alleged that Citigroup itself knowingly participated in each of the above alleged ERISA violations.

In August 2008, defendants moved to dismiss the amended complaint, contending that ERISA's statute of limitations barred plaintiffs' claims and, in the alternative, that plaintiffs had failed to state a claim upon which relief could be granted. The Court granted in part and denied in part defendants' motion in March 2010, dismissing all claims except for one section 404 claim. The section 404 claim that survived alleged "that the committee defendants acted imprudently by steering Plan assets to affiliated mutual funds with higher investment advisory fees than those of competing funds." *Leber*, 2010 U.S. Dist. LEXIS 25097 at *4. The Court noted, however, that the survival

of that claim would "turn on resolution of the timeliness of this action, an issue that cannot be resolved on this Rule 12(b)(6) motion." *Id.* at *42.

In an April 2010 Order, the Court directed the parties to conduct discovery related to the timeliness of plaintiffs' sole remaining claim and set a briefing schedule for defendants' motion for summary judgment. (*See* Order dated April 9, 2010, Dkt. No. 63.) That discovery closed in June 2010. Plaintiffs then moved for leave to file a second amended complaint in August 2010. Shortly thereafter, defendants moved for summary judgment on the ground that this action is time-barred. The Court has stayed the briefing on defendants' motion until after the Court decides plaintiffs' motion for leave to amend. (*See* Endorsed Letter dated Oct. 22, 2010, Dkt. No. 83.)

### B. The Proposed Second Amended Complaint

Plaintiffs' proposed second amended complaint asserts four section 404 fiduciary duty claims, set forth in Counts Two, Four, Five, and Six.[1]

Count Two alleges that throughout the class period—October 18, 2001 to September 4, 2007—the committee defendants breached their duties of loyalty and prudence by failing to remove, replace, and adequately monitor the Affiliated Funds offered in the Plan. (Proposed Sec. Am. Compl. ("SAC") ¶¶ 3, 9, 86.) Plaintiffs contend that the committee defendants should have replaced the Affiliated Funds with comparable

---

[1] Counts One and Three of the proposed second amended complaint consist of claims this Court previously dismissed without leave to amend. Plaintiffs do not seek leave to amend those claims. They include them in the proposed second amended complaint solely to preserve the right to appeal their dismissal. (*See* Pls.' Mem. of Law at 3.) There is no need for this precaution. The United States Court of Appeals for the Second Circuit, like "most other circuits," does "not require a party, in an amended complaint, to replead a dismissed claim in order to preserve the right to appeal the dismissal when the court has not granted leave to amend." *P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 96 (2d Cir. 2004); *see, e.g.*, *Young v. City of Mount Ranier*, 238 F.3d 567, 572-73 (4th Cir. 2001) ("[I]f a claim is dismissed without leave to amend, the plaintiff does not forfeit the right to challenge the dismissal on appeal simply by filing an amended complaint that does not re-allege the dismissed claim.").

funds that charged lower fees and performed better than the Affiliated Funds, but that the committee defendants did not do so because retaining the Affiliated Funds generated income to Citigroup affiliates. (*Id.* ¶ 87.)

Count Four alleges that the committee defendants breached their duties of loyalty and prudence in April 2003 by selecting three Affiliated Funds as investment options in the Plan, even though these Affiliated Funds charged higher fees and performed worse than other comparable unaffiliated funds. (*Id.* ¶¶ 96-98.) Plaintiffs assert that the committee defendants selected the Affiliated Funds because the funds were managed by Citigroup affiliates and selecting the funds would bring revenue to these affiliates. (*Id.* ¶¶ 97-98.)

Count Five alleges that the committee defendants breached their duties of loyalty and prudence in March 2003 by approving the transfer of "tens of millions of dollars that 401(k) Plan participants had invested in unaffiliated funds" to Affiliated Funds when the unaffiliated funds were eliminated from the Plan. (*Id.* ¶¶ 6, 102.) This automatic transfer—which is called "mapping"—occurred "without [Plan] participants taking action." (*Id.* ¶ 6.) Plaintiffs contend that the committee defendants approved the mapping not because it would benefit Plan participants, but because it benefited Citigroup affiliates by increasing their fee revenue. (*Id.* ¶¶ 6, 102.) The mapping was not prudent, according to plaintiffs, because the Affiliated Funds had high fees and poor returns relative to comparable unaffiliated funds. (*Id.*)

Finally, plaintiffs seek to add Count Six, an entirely new claim, which alleges that the committee defendants breached their duties of loyalty and prudence by failing to disclose to Plan participants an illegal scheme involving the provision of transfer agent

4

services—recordkeeping services for investment companies—which hurt the returns of the Affiliated Funds from 1999 to 2005. (*Id.* ¶¶ 7, 56.) According to plaintiffs, Citigroup Asset Management ("CAM")[2]—a division of Citigroup consisting of mutual fund businesses—had a contract with First Data, CAM's transfer agent, that was extremely profitable to First Data. (*Id.* ¶¶ 41, 56.) The fees for the services that First Data provided to CAM were paid out of the assets of the Affiliated Funds. (*Id.* ¶ 56.) Plaintiffs allege that when the contract between CAM and First Data expired in 1999, CAM created a subsidiary—Citigroup Trust Bank—to act as the transfer agent. The Affiliated Funds paid Citigroup Trust Bank for their transfer agent services at close to the same rate that First Data had been paid under its previous contract. But "Citigroup Trust Bank performed almost none of the work in exchange for the money it received." (*Id.* ¶ 57.) Instead, CAM purportedly subcontracted, via a side agreement, almost all the work to First Data at a significant discount compared to what CAM had previously paid First Data. (*Id.* ¶ 56.) Rather than passing these savings on to plaintiffs and other shareholders of the Affiliated Funds, CAM allegedly kept these savings as profits for itself. (*Id.*)

Plaintiffs allege that in December 2003 Citigroup partially disclosed the scheme in a prospectus supplement, which "noted that the side agreement [between CAM and First Data] had not been disclosed to the [Affiliated Funds'] board[s] when the original proposal was approved." (*Id.* ¶ 57.) As a result of this disclosure, plaintiffs assert that the committee defendants knew or should have known by January 2004 "that further investigation, which could reasonably have been expected to uncover the complete scheme and that millions of dollars in excess transfer agent fees were still being siphoned

---

[2] CAM is not a party to this litigation and plaintiffs have not alleged that it is a plan fiduciary.

from the Affiliated Funds, was warranted." (*Id.*) Plaintiffs urge that the committee defendants "breached their ERISA fiduciary duties of prudence and loyalty by failing to inform 401(k) Plan participants of the full nature of the scheme" prior to May 2005 when it was publicly disclosed by the SEC. (*Id.* ¶¶ 58, 107.)[3]

Defendants oppose plaintiffs' motion for leave to amend on the grounds that the claims asserted in the proposed second amended complaint are futile and—with the exception of Counts Four and Six—have already been dismissed by the Court. Defendants also argue that plaintiffs have unduly delayed seeking leave to amend despite full awareness of the facts underlying their claims.

## II.     DISCUSSION

### A.  Legal Standard

Federal Rule of Civil Procedure 15(a) provides that a court "should freely give leave" to amend a pleading when justice so requires. Nevertheless, a motion to amend should be denied if there is "an apparent or declared reason" such as undue delay, bad faith, dilatory motive, undue prejudice to the opposing party by virtue of the allowance of the amendment, or if the amendment would be futile. *Dluhos v. Floating & Abandoned Vessel Known as "New York,"* 162 F.3d 63, 69 (2d Cir. 1998).

The standards used to decide a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) govern whether a proposed claim is futile. *See A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*, 160 F. Supp. 2d 657, 666 (S.D.N.Y. 2001). In order to survive a motion to dismiss, a party must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To state a

---

[3] The proposed second amended complaint also drops all claims against the Administration Committee and provides the names of individual members of the Investment Committee.

6

plausible claim to relief, a claim's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555.  Thus, if a party "ha[s] not nudged [his] claim[] across the line from conceivable to plausible," the claim "must be dismissed." *Id.*; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

    B. Application

The Court now turns to the counts at issue in plaintiffs' proposed second amended complaint.

*1. Performance Allegations*

In the March 2010, opinion, the Court dismissed Section 404 prudence claims predicated on the alleged poor performance of the Affiliated Funds.[4]  *See Leber*, 2010 U.S. Dist. LEXIS 25097 at *38-39.  Plaintiffs attempt to restate this claim with the inclusion in the proposed second amended complaint of allegations that the Affiliated Funds' performance trailed certain benchmarks.  (SAC ¶ 51.)  "ERISA's test of prudence is one of conduct, and not a test of the result of performance of action taken by the fiduciary.  The focus of the inquiry is what steps the fiduciary took before making the decision to act, and not whether the action succeeded or failed."  *Ulico Casualty Co. v. Clover Capital Management, Inc.*, 335 F. Supp. 2d 335, 340 (N.D.N.Y. 2004).  Plaintiffs' performance allegations do not plausibly establish that defendants, "at the time they engaged in the challenged transactions," did not "employ[] the appropriate methods to investigate the merits of the investment" in the Affiliated Funds.  *Henry v. Champlain*

---

[4] The Court also dismissed all of plaintiffs' Section 404 claims for breach of the duty of loyalty. *See Leber*, 2010 U.S. Dist. LEXIS 25097 at *39 n.4.  Though plaintiffs include loyalty claims in the proposed second amended complaint, they do not contend that they have cured the deficiencies in those claims.  Thus to the extent the proposed second amended complaint alleges Section 404 loyalty claims that were previously dismissed, those claims are futile.

7

*Enterprises, Inc.*, 445 F.3d 610, 618 (2d Cir. 2006).  The performance allegations in the proposed amended complaint thus fail to state a claim.  Therefore, to the extent Counts Two, Four, and Five allege claims predicated on the alleged underperformance of the Affiliated Funds, they are futile.

        *2. Count Two*

In Count Two of the proposed second amended complaint plaintiffs plead the following factual allegations in support of their breach-by-omission claim: the committee defendants "had the duty to continually monitor the performance and suitability of Plan investment options, and to remove or replace any investment option that was found to be imprudent," (SAC ¶ 86); the committee defendants "met several times a year to monitor investment performance and consider whether changes should be made to the lineup of investment vehicles in the 401(k) Plan," (*id.* ¶ 5); and, at each of these meetings, the committee defendants "failed to take action to remove the Affiliated Funds from the 401(k) Plan until they were no longer affiliated with Citigroup subsidiaries," (*id.*).  According to plaintiffs, the Affiliated Funds charged investment advisory fees 36 to 228 percent higher than comparable unaffiliated funds offered by the Vanguard Group.  (*Id.* ¶¶ 4, 47.)  Such allegations are sufficiently concrete to plead a claim of breach-by-omission.  *See Koch v. Dwyer*, 98 Civ. 5519, 1999 U.S. Dist. LEXIS 11101, at *18-21 (S.D.N.Y. July 22, 1999); *Reich v. Glasser*, 95 Civ. 8288, 1996 U.S. Dist. LEXIS 6335, at *10 (S.D.N.Y. May 10, 1996).  Thus, insofar as it concerns a claim predicated on high fees, Count Two is not futile.

Defendants assert that the Court, in its March 2010 opinion, considered and dismissed plaintiffs' breach-by-omission claim.  Defendants are incorrect.  The Court's

8

opinion addressed plaintiffs' claim that the committee defendants' breached their fiduciary duties by *selecting* the Affiliated Funds for inclusion in the Plan.  The claim stated in proposed Count Two is different because it specifically alleges that—after the initial selection of the Affiliated Funds—the committee defendants breached their fiduciary duties by failing to (1) adequately monitor Plan investments, and (2) remove the Affiliated Funds from the Plan over the course of the class period, even though it should have been clear to the committee defendants that such investments were unsound because of their high fees.

The Court also finds unavailing defendants' contention that plaintiffs' omission claim is indistinguishable from their selection claim.  Defendants ignore the continuing nature of a plan fiduciary's duty pursuant to ERISA to "dispose of improper investments."  *Morrissey v. Curran*, 567 F.2d 546, 548-49 n.9 (2d Cir. 1977).  Under ERISA, a trustee's fiduciary responsibilities do not terminate upon the initial investment decision.  *See Whitfield v. Cohen*, 682 F. Supp. 188, 196 (S.D.N.Y. 1988).  Rather, plan fiduciaries are required to monitor a plan investment "with reasonable diligence and to withdraw the investment if it bec[omes] clear or should have become clear that the investment [is] no longer proper for the Plan."  *Id.*; *see Bona v. Barasch*, 01 Civ. 2289, 2003 U.S. Dist. LEXIS 4186, at *56 (S.D.N.Y. Mar. 20, 2003); *Buccino v. Cont. Assurance Co.*, 578 F. Supp. 1518, 1521 (S.D.N.Y. 1983) (describing an "ERISA fiduciary's duty to purge a benefit plan of bad investments"); *see also Martin v. Consultants & Admrs.*, 966 F.2d 1078, 1087-88 (7th Cir. 1992) (finding that plan fiduciaries have a continuing duty under ERISA to "review plan investments and

eliminate imprudent ones"). The Court thus finds that plaintiffs' breach-by-omission claim is distinct from their selection claim.

### 3. Count Four

Count Four alleges that in April 2003 the committee defendants breached their duties to act prudently by selecting three Affiliated Funds—Smith Barney Small Cap Value Fund, Smith Barney Fundamental Value Fund, and Citi Institutional Liquid Reserves Fund—for inclusion in the Plan that charged higher advisory fees than comparable unaffiliated funds charged. Plaintiffs have simply dropped their allegations regarding those funds that the committee defendants added to the Plan prior to October 2001. For the same reasons set forth in the Court's March 2010 opinion, Count Four states a claim for relief.

### 4. Count Five

Count Five alleges that in March 2003 the committee defendants approved the automatic transfer of millions of dollars that Plan participants had invested in unaffiliated funds into Affiliated Funds without seeking approval from Plan participants. While defendants are correct that the amended complaint referenced this automatic transfer of funds, the facts alleged in the proposed second amended complaint amplify plaintiffs' allegations. (*Compare* Am. Compl. ¶ 43, *with* SAC ¶¶ 6, 101-103.) The Court finds that plaintiffs have plausibly stated a claim for breach of fiduciary duty under section 404 of ERISA based on their allegations that the four Affiliated Funds that the monies were transferred into—Smith Barney Large Cap Growth Fund, Smith Barney Fundamental Value Fund, Smith Barney Government Securities Fund, and Citi Institutional Liquid

10

Reserves Fund—charged investment advisory fees ranging from 60 to 140 percent higher than comparable, unaffiliated Vanguard Funds charged. (SAC ¶¶ 6, 47, 101-103.)

### 5. *Count Six*

Count Six alleges that the committee defendants breached their duties of loyalty and prudence under section 404 of ERISA by failing to disclose the alleged illegal transfer agent scheme to Plan participants. Plaintiffs contend that the committee defendants were aware—or should have been aware—that "intensive investigation" into CAM's transfer agent arrangements was warranted because a prospectus supplement that Citigroup issued in December 2003 revealed that the side agreement between CAM and First Data "had not been disclosed to the [Affiliated Funds'] board[s] when the original proposal was approved." (SAC ¶¶ 57, 106.) Plaintiffs maintain that if the committee defendants had conducted further investigation, they could reasonably have been expected to uncover the complete scheme, which—once uncovered—should have been disclosed to Plan participants.

The Court finds that Count Six is futile because plaintiffs have not alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. To begin with, plaintiffs have not plausibly alleged that the committee defendants were aware—or should have been aware—of the alleged illegal transfer scheme before it was publicly disclosed by the SEC in May 2005. Nor have plaintiffs plausibly alleged that the information disclosed in the prospectus supplement should have put the committee defendants on notice that the Affiliated Funds might be adversely impacted by the side agreement such that further investigation was warranted. The prospectus supplement, as plaintiffs describe it, did not indicate that illegal—or even harmful—

11

activity was afoot. It did not provide the terms of the side agreement—e.g., how much First Data was being paid or the services that First Data agreed to provide to CAM—nor did it suggest that the side agreement had any effect on the returns of the Affiliated Funds. Moreover, plaintiffs themselves do not contend that the side agreement itself was in fact illegal or suspect. Rather, the allegedly illegal aspect of the scheme was that "Citigroup Trust Bank performed almost none of the work in exchange for the money it received," a fact which plaintiffs concede was not disclosed in the prospectus supplement. (SAC ¶ 57.)

Furthermore, the burden is on plaintiffs to explain their delay in asserting this entirely new claim—which has minimal factual overlap with plaintiffs' previous allegations—almost three years after they filed their original complaint, two years after amending that complaint, and on the eve of defendants' motion for summary judgment. *See MacDraw, Inc. v. CIT Group Equip. Fin.*, 157 F.3d 956, 962 (2d Cir. 1998) ("The burden to explain a delay is on the party that seeks leave to amend."). Mere delay, absent a showing of undue prejudice or bad faith, is insufficient to deny a request to amend a pleading. *See State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981). However, a "[c]ourt may deny a motion to amend when the movant knew or should have known of the facts upon which the amendment is based when the original pleading was filed, particularly when the movant offers no excuse for the delay." *Berman v. Parco,* 986 F. Supp. 195, 217 (S.D.N.Y. 1997). Here, plaintiffs have not offered *any* explanation for their failure to assert this claim earlier, even though plaintiffs concede that the SEC publicly disclosed "the full extent of the illegal scheme" almost two-and-half years before the commencement of this action, (SAC ¶¶ 58, 107). Because

there is no indication that the "proposed claim is . . . predicated on facts learned after the pleading stage of [this] litigation, the resulting delay is not excusable." *Priestley v. Am. Airlines, Inc.,* 89 Civ. 8265, 1991 U.S. Dist. LEXIS 4804, at *4 (S.D.N.Y. Apr. 12, 1991).

Finally, the inclusion of this new claim would prejudice defendants. The Court has ordered that discovery proceed solely on the statute of limitations issues that defendants raised in their motion to dismiss this action. That discovery has now closed and defendants have moved for summary judgment on timeliness grounds. This proposed new claim in Count Six raises new statute of limitations concerns, the resolution of which would require additional discovery into when plaintiffs became aware of the alleged transfer agent scheme. The Court sees no reason to permit plaintiffs to add this new claim given their unexplained delay in asserting it and the resulting prejudice to defendants.

In sum, the Court denies plaintiffs' request to include Count Six in the second amended complaint on the grounds that: (1) the claim is futile; (2) plaintiffs have not explained their undue delay in asserting the claim; (3) and inclusion of the claim would prejudice defendants.

### III. CONCLUSION

For the foregoing reasons, plaintiffs' motion for leave to file a second amended complaint (Dkt. No. 67) is granted in part and denied in part. Plaintiffs' second amended complaint may include proposed Counts Two, Four, and Five, which are not futile insofar as they allege breaches of the duty of prudence through the selection or retention of Affiliated Funds with high fees, but may not include Count Six. Plaintiffs are directed to

file a revised second amended complaint as set forth in this opinion, with only the surviving claims, on or before November 15, 2011.

Dated: New York, New York
      November 8, 2011

SO ORDERED:

_____
Sidney H. Stein, U.S.D.J.

14