**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------------x

MARYA J. LEBER, SARA L. KENNEDY, *and all*
*others similarly situated,*

                  07-cv-09329-SHS

         Plaintiffs,

                  SECOND AMENDED CLASS
      -against-                ACTION COMPLAINT

                  **JURY TRIAL DEMANDED**

THE CITIGROUP 401(k) PLAN INVESTMENT COMMITTEE;
JAMES COSTABILE;ROBERT GROGAN; ROBIN LEOPOLD;
GLENN REGAN;CHRISTINE SIMPSON; RICHARD TAZIK;
TIMOTHY TUCKER; LEO VIOLA; DONALD YOUNG;
MARCIA YOUNG; and DOE DEFENDANTS 1-20;

         Defendants.

-----------------------------------------------------------------------x

U S DISTRICT COURT SDNY
2011 NOV 15 P 4: 28
RECEIVED

## TABLE OF CONTENTS

I.  NATURE OF THE ACTION ..................................................................................... 1

II.  JURISDICTION AND VENUE ............................................................................... 4

III. PARTIES ................................................................................................................. 5

      A.     Plaintiffs. ...................................................................................................... 5

      B.     Defendants. ................................................................................................... 7

IV. FACTUAL BACKGROUND ................................................................................... 8

      A.     The 401(k) Plan. ........................................................................................... 8

      B.     Defendants are Fiduciaries and Parties in Interest. .................................... 10

      C.     Defendants' ERISA Violations. .................................................................. 11

V.  ERISA'S FIDUCIARY STANDARDS ................................................................. 19

VI.  CLASS ALLEGATIONS ..................................................................................... 23

VII. CLAIMS FOR RELIEF ....................................................................................... 26

               COUNT I ..................................................................................................... 26

               Breach of Duty of Prudence by Failing to Remove or Replace the Affiliated
Funds as 401(k) Plan Investment Vehicles during the Class Period, which Caused
Losses to the 401(k) Plan (Violation of § 404 of ERISA, 29 U.S.C. § 1104 by
Committee Defendants)

               COUNT II .................................................................................................... 27

               Breach of Duty of Prudence by Selecting Three of the Affiliated Funds as 401(k)
Plan Investment Vehicles during the Class Period, which Caused Losses to the
401(k) Plan (Violation of § 404 of ERISA, 29 U.S.C. § 1104 by Committee
Defendants)

               COUNT III ................................................................................................... 28

               Breach of Duty of Prudence by Approving, in March 2003, the Mapping of
401(k) Monies Invested in Unaffiliated Funds into Affiliated Funds, which
Caused Losses to the 401(k) Plan (Violation of § 404 of ERISA, 29 U.S.C. § 1104
by Committee Defendants)

*Second Amended Complaint*

VIII. PRAYER FOR RELIEF ...................................................................................................... 28

This action involves the Citigroup 401(k) Plan (the "401(k) Plan"), which is sponsored by Citigroup, Inc. ("Citigroup").  Plaintiffs Marya J. Leber and Sara L. Kennedy, allege the following on behalf of themselves and a class of similarly-situated participants in the 401(k) Plan.

## I. NATURE OF THE ACTION

1.      This case is about self-dealing and imprudent investment of retirement plan assets.  The 401(k) Plan Investment Committee ("Investment Committee") and its individual members (hereinafter, the Investment Committee and its members are the"Committee Defendants"), are fiduciaries of the 401(k) Plan.  The Committee Defendants are responsible for monitoring and making decisions with respect to investment options in the 401(k) Plan.  The Committee Defendants are officers and employees of Citigroup.

2.      As fiduciaries for the 401(k) Plan, Committee Defendants were required by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq.*, to act prudently and solely in the interest of the 401(k) Plan and its participants and beneficiaries when making decisions with respect to removing, replacing, and monitoring investment options in the 401(k) Plan.  They did not do so.  Instead, they put Citigroup's interests ahead of the interests of the 401(k) Plan's participants by repeatedly failing to remove or replace investment products offered and managed by Citigroup subsidiaries and affiliates which had poor performance and high fees.  Through these actions, they generated substantial revenues for Citigroup at great cost to the 401(k) Plan.

3.      More specifically, Committee Defendants failed to remove, replace, and adequately monitor certain investment options in the 401(k) Plan that were mutual funds offered and managed by Citi Fund Management, Inc. ("Citi Fund Management"), Smith Barney Fund

Management LLC ("Smith Barney"), and Salomon Brothers Asset Management, Inc. ("Salomon Brothers") (collectively "the Affiliated Entities").  All these entities were subsidiaries of Citigroup, Inc. at the time their funds were offered in the 401(k) Plan.

       4.      By repeatedly omitting to remove or replace the following nine mutual funds offered in the 401(k) Plan and offered and managed by the Affiliated Entities, Committee Defendants placed Citigroup's interests above the 401(k) Plan's interests: the Citi Institutional Liquid Reserves Fund, Smith Barney Government Securities Fund (subsequently renamed Legg Mason Partners Government Securities Fund), Smith Barney Diversified Strategic Income Fund, Smith Barney Large Cap Growth Fund (subsequently renamed Legg Mason Partners Large Cap Growth Fund), Smith Barney Large Cap Value Fund, Smith Barney Small Cap Value Fund (subsequently renamed Legg Mason Partners Small Cap Value Fund), Smith Barney International All Cap Growth Fund, Smith Barney Fundamental Value Fund (subsequently renamed Legg Mason Partners Fundamental Value Fund), and the Salomon Brothers High Yield Bond Fund (subsequently renamed Legg Mason Partners Global High Yield Bond Fund) ("Affiliated Funds").  There were, and are, many better-performing, lower-fee mutual funds and alternative investment options that Committee Defendants could have replaced the Affiliated Funds with.  In fact, *after* Citigroup sold, on or about December 1, 2005, its mutual fund business run through the Affiliated Entities to Legg Mason, it did eventually (on or about September 4, 2007) replace those funds (except for the Citi Institutional Liquid Reserves Fund) with lower cost alternatives.  However, those funds were replaced only after they were no longer affiliated with Citigroup subsidiaries, and only when Citigroup and its subsidiaries no longer received revenue from 401(k) Plan assets invested in those funds.

5.      The Committee Defendants met several times a year to monitor investment performance and consider whether changes should be made to the lineup of investment vehicles in the 401(k) Plan.  At each of these meetings, the Committee Defendants failed to take action to remove the Affiliated Funds from the 401(k) Plan until they were no longer affiliated with Citigroup subsidiaries.

6.      On or about March 21, 2003, tens of millions of dollars that 401(k) Plan participants had invested in unaffiliated funds were transferred, without participants taking action (a process termed "mapping"), to various Affiliated Funds when certain unaffiliated funds were eliminated from the 401(k) Plan.[1]  The Committee Defendants approved this automatic mapping of participant investments into Affiliated Funds, thereby enriching Citigroup and its affiliates with additional fee income.

7.      The Affiliated Funds were not only poor performers and expensive, their returns were also hurt by an illegal scheme involving provision of transfer agent services (a type of record keeping service for investment companies) that plagued the Affiliated Funds from at least October 1, 1999 through May 31, 2005.  The U.S. Securities and Exchange Commission ("SEC") brought an investigation, and a settlement was reached in May 2005 in which Citigroup was required to pay over $209 million.  The Committee Defendants were on inquiry notice that something was seriously awry by at least January 1, 2004.  On December 1, 2003, certain facts related to the scheme, including the failure to reveal critical information regarding the transfer

---

[1] The eliminated unaffiliated funds, and, in parentheses, the Affiliated Funds they were transferred into, were: the Van Kampen American Capital Enterprise Fund (Smith Barney Large Cap Growth Fund), the Van Kampen American Capital Comstock Fund (Smith Barney Fundamental Value Fund), the Van Kampen American Capital Government Securities Fund (Smith Barney Government Securities Fund), and the American Express Common Stock Fund (Citi Institutional Liquid Reserves Fund).

agent agreements to the funds' boards when they initially approved those arrangements, were partially disclosed in a prospectus supplement in response to an SEC investigation, but the scheme itself continued.  Committee Defendants knew or should have known that further investigation was warranted, in light of the partial disclosure, which could reasonably have been expected to uncover the complete scheme, and that millions of dollars in excess transfer agent fees were still being siphoned from the Affiliated Funds.  Yet they took no or inadequate action and did not remove the Affiliated Funds as investment options in the 401(k) Plan until years later, and only after their affiliation with Citigroup subsidiaries had terminated.

8.      This is a civil enforcement action under ERISA, and in particular under ERISA §§ 404, 406, and 409, 29 U.S.C. §§ 1104, 1106 and 1109, for losses to the 401(k) Plan caused by Committee Defendants' breaches of fiduciary duty.

9.      This class action is brought by the named Plaintiffs on behalf of the 401(k) Plan and its participants (and their beneficiaries) who invested in the Affiliated Funds at any time from October 18, 2001 through September 4, 2007 ("Class Period"), when most of the affiliated funds were removed from the 401(k) Plan, for losses to the plan caused by Committee Defendants' omissions and actions with respect to their failure to remove or replace the Affiliated Funds as investment vehicles in the 401(k) Plan, and related omissions and actions further described herein.

## II. JURISDICTION AND VENUE

10.     ERISA provides for exclusive federal jurisdiction over these claims.  The 401(k) Plan is an "employee benefit plan" within the meaning of § 3(3) of ERISA, 29 U.S.C. § 1002(3), and Plaintiffs are "participants" within the meaning of § 3(7) of ERISA, 29 U.S.C. § 1002(7), who is authorized pursuant to § 502(a)(2) and (3) of ERISA, 29 U.S.C. § 1132(a)(2) and (3) to

bring the present action on behalf of the participants and beneficiaries of the 401(k) Plan to

obtain appropriate relief under §§ 502 and 409 of ERISA, 29 U.S.C. §§ 1132 and 1109.

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§ 1331 (federal question) and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

12.     This Court has personal jurisdiction over the Defendants because the Court has

subject matter jurisdiction under ERISA.

13.     Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C.

§ 1132(e)(2) because Citigroup's principal place of business is located in this district.

### III. PARTIES

**A.     Plaintiffs.**

14.     **Plaintiff Marya J. Leber ("Leber").**  Plaintiff Leber is a resident of Sioux Falls,

South Dakota.  Plaintiff Leber is a participant in the 401(k) Plan.  During the Class Period, Leber

invested through her 401(k) Plan account in, among other investments, the Citi Institutional

Liquid Reserves Fund.

15.      Plaintiff Leber did not know any of the following facts until October 2007:  (a)

that the 401(k) Plan had fiduciaries; (b) the identity of the 401(k) Plan's fiduciaries; (c) that the

401(k) Plan's fiduciaries were responsible for prudently selecting investment options for the

401(k) Plan, with an eye-single to the best interests of the 401(k) Plan, its participants and

beneficiaries; (d) that ERISA generally prohibits transactions between affiliates and subsidiaries

of plan sponsors; (e) that Smith Barney and Salomon Brothers, managers of mutual funds

entrusted with 401(k) Plan assets, are (or were) affiliates or subsidiaries of Citigroup during the

Class Period; (f) what fees, if any, the Affiliated Funds charged the Plan, its participants and

beneficiaries, for Plan investments in the Affiliated Funds; (g) that the fees charged by the

Affiliated Funds were higher than comparable funds and excessive compared to other

comparable options that could have been selected for the 401(k) Plan; (h) that the performance of the Affiliated Funds was poor relative to appropriate benchmarks and other comparable options that could have been selected for the 401(k) Plan; (i) that an illegal transfer agent scheme had, from at least 1999 through 2005, adversely affected the returns of the Affiliated Funds and deprived them of tens of millions of dollars in cost savings

16.     **Plaintiff Sara L. Kennedy ("Kennedy").**  Plaintiff Kennedy is a resident of Gray, Tennessee.  Plaintiff Kennedy participated in the 401(k) Plan during the Class Period. During the Class Period, Kennedy invested through her 401(k) Plan account in, among other investments, the Citi Institutional Liquid Reserves Fund and the Smith Barney Appreciation Fund.

17.     Plaintiff Kennedy did not know any of the following facts until July 2008:  (a) that the 401(k) Plan had fiduciaries; (b) the identity of the 401(k) Plan's fiduciaries; (c) that the 401(k) Plan's fiduciaries were responsible for prudently selecting investment options for the 401(k) Plan, with an eye-single to the best interests of the 401(k) Plan, its participants and beneficiaries; (d) that ERISA generally prohibits transactions between affiliates and subsidiaries of plan sponsors; (e) that Smith Barney and Salomon Brothers, managers of mutual funds entrusted with 401(k) Plan assets, are (or were) affiliates or subsidiaries of Citigroup during the Class Period; (f) what fees, if any, the Affiliated Funds charged the Plan, its participants and beneficiaries, for Plan investments in the Affiliated Funds; (g) that the fees charged by the Affiliated Funds were higher than comparable funds and excessive compared to other comparable options that could have been selected for the 401(k) Plan; (h) that the performance of the Affiliated Funds was poor relative to appropriate benchmarks and other comparable options that could have been selected for the 401(k) Plan; (i) that an illegal transfer agent scheme had,

from at least 1999 through 2005, adversely affected the returns of the Affiliated Funds and deprived them of tens of millions of dollars in cost savings.

18.     Citigroup 401(k) Plan participants, including Plaintiffs Kennedy and Leber, were not provided any information, or access to information, regarding the substance of the deliberations of the Investment Committee during the relevant period, and as of August 2010 neither Kennedy nor Leber has any specific knowledge of the substance of those deliberations.

**B.     Defendants.**

19.     **Non-defendant Citigroup**.  Citigroup is the sponsor of the 401(k) Plan. Citigroup is a Delaware corporation with its principal place of business at 399 Park Avenue, New York, New York.

20.     **Defendant The 401(k) Plan Investment Committee (the "Investment Committee").**  The Investment Committee is responsible for selecting, monitoring, and evaluating the 401(k) Plan's investment options.  On information and belief, the members of the Investment Committee during the Class Period, individual Defendants herein, included the following, who were all Citigroup employees when they served on the committee:

    A. **James Costabile:**  positions included Senior Vice President and national sales manager for Alternative Investments at Citigroup's Smith Barney affiliate.

    B. **Robert Grogan**

    C. **Robin Leopold:**  positions included Director of Human Resources for Citi Smith Barney, and Director of Human Resources for the Citi Global Wealth Management business, which includes Citi Smith Barney's Private Client business, Investment Research, and the Private Bank.

    D. **Glenn Regan:**  positions included Senior Vice President and head of research at Citigroup affiliate Smith Barney Consulting Group.

E. **Christine Simpson:**  positions included Director at Citigroup affiliate Salomon Brothers, Managing Director and Head of Human Resources for the Global Banking Division at Citigroup.

F. **Richard Tazik:** positions included Vice President, Compensation & Benefits, Citigroup.

G. **Timothy Tucker:**  positions included manager in the research department of Citigroup affiliate Salomon Brothers, and Equity Group Research Manager at Citigroup.

H. **Leo Viola:**  positions included Managing Director and Chief Financial Officer Securities & Fund Services at Citigroup.

I. **Donald Young:**  positions included Vice President at Citigroup.

J. **Marcia Young:**  positions included Chief Administrative Officer of Markets and Banking Risk Management at Citigroup.

21.    **Doe Defendants.**  Doe Defendants include additional individual members of the Investment Committee during the Class Period whose names and identities are not presently known to Plaintiffs.

### IV. <u>FACTUAL BACKGROUND</u>

A.    **The 401(k) Plan.**

22.    The 401(k) Plan is an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A) and a defined contribution plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34).  Pursuant to ERISA, the relief requested in this action is for the benefit of the 401(k) Plan.

23.    The 401(k) Plan covers eligible employees of Citigroup and its subsidiaries and affiliates.

24.     In a defined contribution plan like the 401(k) Plan, the plan's fiduciaries are responsible for making decisions with respect to removing, replacing, or adding investment options made available to participants in the plan.

25.     When making decisions with respect to removing, replacing, or adding investment options for a defined contribution plan, fiduciaries must act solely in the interest of plan participants and with all due care, prudence, and diligence.

26.     After selecting the investment options for a defined contribution plan, the fiduciaries have a continuing duty to monitor those investment options to ensure that the options are prudent and in the best interests of plan participants.  Fiduciaries also have a duty to remove and/or replace any investment options where doing so would be prudent and in the best interest of participants.

27.     Once the fiduciaries have determined which investment options to make available, the participants direct how to allocate their salary deferrals among the various investment options.

28.     Citigroup is the sponsor of the 401(k) Plan.  ERISA § 3(16)(B), 29 U.S.C. § 1102(16)(B).

29.     Committee Defendants are responsible for  making decisions with respect to 401(k) Plan investment options.

30.     Citibank is the Trustee for the 401(k) Plan.  The 401(k) Plan pays fees, directly or indirectly, to Citibank.

31.     CitiStreet, formerly, until July 1, 2008 when it was sold to ING, a joint venture between Citigroup and State Street Bank & Trust, provided administrative and recordkeeping services to the 401(k) Plan until July 1, 2008.  The 401(k) Plan has paid CitiStreet millions of

Second Amended Complaint

dollars each year of the Class Period (2001 to the present).  Hewitt Associates LLC is the current 401(k) Plan recordkeeper.

32.     The 401(k) Plan has invested, pursuant to the direction of the Committee Defendants, billions of dollars in the Affiliated Funds, which investments have generated millions of dollars of investment advisory and other fees for Citigroup and its subsidiaries. During the Class Period the 401(k) Plan's investment in mutual funds affiliated with Citigroup averaged almost $2.5 billion a year.

33.     Considering that the 401(k) Plan also invested in GICs offered by Citigroup's Travelers affiliate and in Citigroup common stock, as much as 74% of the 401(k) Plan's assets in some years of the Class Period were invested in stock or investment products affiliated with Citigroup.

**B.      Defendants are Fiduciaries and Parties in Interest.**

34.     ERISA requires every plan to provide for one or more named fiduciaries of the Plan pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1002(21)(A).

35.     ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under ERISA § 402(a)(1), but also any other persons who in fact perform fiduciary functions.  ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i) (stating that a person is a fiduciary "to the extent . . . he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . .").

36.     The Committee Defendants are fiduciaries to the 401(k) Plan and owe fiduciary duties to the 401(k) Plan and its participants under ERISA in the manner and to the extent set forth in the documents governing the 401(k) Plan, through their conduct, and under ERISA.

37.     The Administrative Committee is the administrator of the 401(k) Plan and a Named Fiduciary of the 401(k) Plan pursuant to ERISA §§ (3)(16)(A) and 402(a)(2), 29 U.S.C. §§ 1002(16)(A) and 1029(a)(2), and the documents governing the 401(k) Plan.

38.     The Investment Committee is responsible for selecting, monitoring, and evaluating the 401(k) Plan's investment options.  In its capacity to select and monitor investments for the 401(k) Plan, the Investment Committee has the discretion and authority to suspend, eliminate, replace, add to, or reduce any of the 401(k) Plan's investments, including investments managed or offered by Citigroup subsidiaries and affiliates.

39.     Citigroup is the sponsor of the 401(k) Plan and, thus, by statutory definition a party in interest.  In addition, the Administrative Committee and the Investment Committee are internal committees created and staffed by Citigroup.

C.      **Defendants' ERISA Violations.**

40.     The Committee Defendants had the sole discretion to make decisions with respect to the investment options available under the 401(k) Plan, including the decision to remove or replace investment options.  Over many years, through their omissions and actions in failing to remove or replace the Affiliated Funds as investment options in the Plan until they were no longer affiliated with Citigroup, Committee Defendants caused billions of dollars of 401(k) Plan assets to be directed into the Affiliated Funds, which had poor performance and high fees compared to comparable funds.

41.     At virtually every turn, the Committee Defendants placed Citigroup's interests ahead of the 401(k) Plan's interests.  When the Committee Defendants terminated an investment option, the assets in that investment option were almost always moved into a fund managed by a Citigroup affiliate.  (See the discussion of the March 21, 2003 mapping discussed above).

42.     On December 1, 2005, Citigroup sold Citigroup Asset Management ("CAM") to Legg Mason, Inc.  CAM consisted largely of the mutual fund businesses operated and managed by Smith Barney, Salomon Brothers, and Citi Fund Management.  The sale meant that the Affiliated Funds were no longer managed or offered by Citigroup affiliates.  Citigroup retained the brokerage divisions of Smith Barney and Salomon Brothers.

43.     Effective November 20, 2006, as a result of the sale to Legg Mason, Smith Barney and Salomon Brothers funds in which the 401(k) Plan invested were renamed Legg Mason funds.

44.     After selling CAM to Legg Mason, the Committee Defendants conducted an extensive review of the 401(k) Plan's investments and researched new investment options.  The review considered various factors, including investment management fees, the current investment options available under the 401(k) Plan, and performance.  The ostensible goal of the review was to improve performance, reduce 401(k) Plan expenses, and provide greater diversification.

45.     The review culminated in the Committee Defendants' decision to terminate all the Affiliated Funds (except the Citi Institutional Liquid Reserves Fund) as investment options in the Plan, and replace them with collective index funds, target date retirement funds, and select actively managed funds in various asset classes.  This change became effective on or about September 4, 2007.

46.     The review and ultimate decision to terminate the Affiliated Funds occurred only after Citigroup had sold CAM to Legg Mason, in other words, after Citigroup was no longer generating fees from its own 401(k) Plan with respect to those funds.  The Committee Defendants failed to undertake any such review of the 401(k) Plan's investments when the

401(k) Plan's investments in the Affiliated Funds were generating fees for Citigroup.  This despite the fact that the Investment Committee met several times every year to monitor and evaluate the prudence of retaining the Plan's investment options.

47.     During the Class Period, the 401(k) Plan routinely invested in Affiliated Funds that charged investment advisory fees that were higher than comparable funds.  For example, the following Affiliated Funds had expense ratios that were much higher than those charged by comparable funds offered by the Vanguard Group, Inc.:

--Salomon Brothers High Yield Bond Fund— 228% higher fees than comparable Vanguard fund;

--Smith Barney Diversified Strategic Income Fund — 223% higher fees than comparable Vanguard fund;

--Smith Barney U.S. Government Securities Fund— 140% higher fees than comparable Vanguard fund;

--Smith Barney Fundamental Value Fund— 105% higher fees than comparable Vanguard fund;

--Citi Institutional Liquid Reserves Fund — 100% higher fees than comparable Vanguard fund;

--Smith Barney International All Cap Growth fund — 100% higher fees than comparable Vanguard fund;

--Smith Barney Large Cap Value Fund — 76% higher fees than comparable Vanguard fund;
--Smith Barney Large Cap Growth Fund— 60% higher fees than comparable Vanguard fund; and

--Smith Barney Small Cap Value Fund — 36% higher fees than comparable Vanguard fund.

48.     The effect of excess fees on retirement savings is quite significant.  Higher fees not only reduce plan assets but hinder the growth of savings through the opportunity costs of

having less to re-invest.  Under typical assumptions, the effect of an additional 1% in fees can reduce the effective life of a retirees savings balance by ten years.

49.     Figure 1 below illustrates the plan balance of a typical retiree through the working/savings and retirement/spending phases of the portfolio.

Figure 1



50.     Figure 1 considers the portfolio trajectory for a typical employee. In this example, an individual starts saving at age 25 and continues so until age 65. At that time, savings are withdrawn until the balance reaches $0.  As illustrated, the effective life of the assets moves from age 88 to age 78 if fees are increased by 1%.[2]

---

[2] A note about other assumptions in this analysis: The participant earns $40 thousand per year and saves 5% annually towards retirement. Inflation is assumed to be 2.5%, which increases salary and annual contributions accordingly. Investment returns are assumed to be 9%, and at retirement, the participant withdraws 70% of their projected salary on an inflation adjusted basis.

51.     During the Class Period, the Affiliated Funds also significantly underperformed relevant benchmarks and comparable funds during the time that they were offered in the 401(k) Plan.[3]  In aggregate, 401(k) Plan participants would have earned over $40 million more if they had earned, on the money invested in the Affiliated Funds, the returns of the relevant passive benchmark index for each of the Affiliated Funds, rather than the returns of the Affiliated Funds themselves.  Moreover, if they had instead earned the *average* return of comparable investment vehicles available to institutional investors such as the 401(k) Plan (such as separately managed accounts), participants would have earned over $80 million more.  And if they had instead invested in top performing mutual funds available during the period, they would have earned over $200 million more.  Specific examples of underperformance during the Class Period include:

— the Smith Barney Small Cap Value Fund, which from 4/21/03-9/4/07 earned $15 million less for participants than they would have earned if they had instead earned the returns of a relevant benchmark index, the Russell 2000 Total Return index (and over $30 million less than would have been earned in a comparable alternative fund);

— the Smith Barney Large Cap Value Fund (from 10/18/01-4/21/03 over $15 million less than relevant benchmark index, the Russell 1000 Value Total Return index);

— the Smith Barney International All Cap Growth Fund (from 10/18/01-4/21/03 over $5 million less than would have been earned in comparable Vanguard index fund, the Vanguard Total International Stock Index (VGSTX), and over $11 million less than would have been earned in a comparable alternative fund);

[3] The Affiliated Funds were offered in the 401(k) Plan through on or about the following time periods (if no beginning time is stated the fund was in the 401(k) Plan at the beginning of the class period (10/18/01):  Smith Barney Government Securities Fund (through 9/4/07), Smith Barney Diversified Strategic Income Fund (through 4/21/03), Smith Barney Large Cap Growth Fund (through 9/4/07), Smith Barney Large Cap Value Fund (through 4/21/03), Smith Barney Small Cap Value Fund (4/21/03-9/4/07), Smith Barney International All Cap Growth Fund (through 4/21/03), Smith Barney Fundamental Value Fund (4/21/03-9/4/07), and the Salomon Brothers High Yield Bond Fund (through 9/4/07).  The  Citi Institutional Liquid Reserves Fund has been in the 401(k) Plan from 4/21/03 through the present; however, it is included within the class period only through 9/4/07 — after that time it was not offered or managed by a Citigroup-affiliated entity.

— the Salomon Brothers High Yield Bond Fund (from 10/18/01-9/4/07 over $4 million less than relevant benchmark index, the BARCAP High Yield Corporate Bond Index, and over $11 million less than would have been earned in a comparable alternative fund);

— the Smith Barney Government Securities Fund (from 10/18/01-9/4/07 over $3.5 million less than relevant benchmark index, BARCAP Aggregate Bond Total Return index, and over $7 million less than would have been earned in a comparable alternative fund);

— Smith Barney Large Cap Growth Fund (from 10/18/01-9/4/07 over $3 million less than comparable Vanguard index fund, the Vanguard Growth Index fund (VIGRX), and over $100 million less than would have been earned in a comparable alternative fund);

— Smith Barney Fundamental Value Fund (from 4/21/03-9/4/07 almost $2 million less than relevant benchmark index, the Russell 1000 Total Return, and over $15 million less than would have been earned in another fund in the same category);

— Smith Barney Diversified Strategic Income Fund (from 10/18/01-4/21/03 almost $1 million less than relevant benchmark index, the BARCAP Aggregate Bond Total Return index, and over $3.5 million less than could have been earned in another fund in the same category); and

— Citi Institutional Liquid Reserves Fund (from 4/21/03-9/4/07 roughly half a million dollars less than a comparable Vanguard money market fund, the Vanguard Prime Money Market Fund (ticker symbol VMMXX)).

52.     The Affiliated Entities received tens of millions of dollars in annual fees for investment advisory and related services to the 401(k) Plan.

53.     Committee Defendants knew or should have known that similar, lower cost, and better performing investment funds were available from unaffiliated entities.  Further, with billions to invest in investment funds, the Defendants could have negotiated single client or separate account investment funds with essentially the same investment style at substantially lower rates.  Mutual funds generally carry higher expense ratios than competing investment products such as collective trusts or pooled separate accounts.

54.     Moreover, when a 401(k) plan invests in a single client, collective trust, or pooled separate account fund, the assets of the fund are considered to be plan assets.  Thus, a pension

plan can seek relief under ERISA if the investment manager mismanages the fund.  Mutual fund

assets, however, are not plan assets.  Therefore a plan cannot sue a mutual fund manager under

ERISA for mismanaging the mutual fund.  Thus, plans give up valuable ERISA rights and

remedies when they invest in mutual funds.  Further, the investment advisor for a mutual fund,

here the Affiliated Entities, are generally protected from suit under ERISA.  The Defendants

knew or should have known this, but put the interests of Citigroup's mutual fund business ahead

of the 401(k) Plan's interests.

55.     The 401(k) Plan's investments in the Affiliated Funds were prohibited

transactions under ERISA.

56.     The Affiliated Funds were not only poor performers and expensive, their returns

were also hurt by an illegal scheme involving provision of transfer agent services that plagued

the Affiliated Funds from at least October 1, 1999 through May 31, 2005.  In 1997, a division of

Citigroup, Citigroup Asset Management ("CAM"; CAM includes the advisors to the Affiliated

Funds), began to investigate options for the Affiliated Funds when its current transfer agent

contract expired in mid-1999.  The current transfer agent, First Data, had a contract that, for

various reasons, was extremely profitable to it, essentially providing it a windfall.  Since the fees

for the transfer agent were paid out of the assets of the funds, which belonged to the

shareholders, the expiration of the contract provided an opportunity to save the shareholders

money by negotiating a less costly contract with the same or another provider.  However, CAM

instead devised a scheme to funnel the savings not to the shareholders but instead to it.  It did this

by creating a subsidiary, Citicorp Trust Bank, which acted as the nominal transfer agent.  It was

paid by the funds at close to the same rate as the previous transfer agent.  However, other than

manning a small call center, it subcontracted, via a side agreement, almost all the work to the

previous transfer agent, First Data.  However, it paid First Data a significant discount from what First Data had been receiving — a discount First Data agreed to accept because it could afford to reduce its fees well below the original fees since the original fees gave it windfall profits.  The discount started at 33.5% and increased to as much as 60% over the term of the contract.  But instead of passing the savings on to shareholders, CAM kept these savings as profits, for itself.

57.     The Committee Defendants were on inquiry notice that something was awry by at least January 1, 2004.  On September 30, 2003, a former Citigroup employee turned whistleblower alerted the SEC staff of the scheme, and the SEC initiated an investigation.  On December 1, 2003, the scheme was partially disclosed in a prospectus supplement.  The supplement noted that the side agreement had not been disclosed to the funds' board's when the original proposal was approved.  Though the scheme was not fully disclosed at this time, for example it was not disclosed that Citicorp Trust Bank performed almost none of the work in exchange for the money it received, the Committee Defendants knew or should have known that further investigation, which could reasonably have been expected to uncover the complete scheme and that millions of dollars in excess transfer agent fees were still being siphoned from the Affiliated Funds, was warranted.  Yet they took no or inadequate action and did not remove the Affiliated Funds as investment options in the 401(k) Plan until years later, and only after their affiliation with Citigroup subsidiaries had terminated.

58.     The SEC brought an investigation and a settlement was reached in May 2005 in which Citigroup was required to pay over $200 million.  It was only on May 31, 2005, in conjunction with the settlement, that the full extent of the illegal scheme was publicly disclosed.

59.     Due to the Affiliated Funds poor performance, high fees, and the illegal transfer agent scheme, the 401(k) Plan has suffered millions of dollars a year in losses because

Committee Defendants failed to remove or replace the Affiliated Funds as Plan investment options, thereby causing the 401(k) Plan to invest billions of dollars in the Affiliated Funds, which resulted in millions of dollars of revenue for Citigroup while delivering poor investment returns for the 401(k) Plan.  ERISA prohibits a plan from investing in the plan sponsor's investment products or paying the plan sponsor fees for services provided to the plan unless the fiduciary or sponsor can prove that the transactions are exempt.  Even if Defendants can prove the transactions are exempt from ERISA § 406, 29 U.S.C. § 1106, ERISA does not permit such arrangements when they are not solely in the interest of the plan or when a prudent, unconflicted fiduciary would choose differently.

60.     Citigroup, as 401(k) Plan sponsor was a party in interest.  It also created and staffed the Administrative and Investment Committees.  Citigroup knew or should have known that the Committee Defendants were breaching their duties under ERISA and engaging in prohibited transactions by causing the 401(k) Plan to do business with Citigroup subsidiaries and affiliates.  In fact, Citigroup welcomed and participated in the Committee Defendants' violations of ERISA.

## V. ERISA'S FIDUCIARY STANDARDS

61.     ERISA imposes strict fiduciary duties of loyalty and prudence upon the Defendants as fiduciaries of the Plan.   ERISA § 404(a), 29 U.S.C.§ 1104(a), states, in relevant part, that:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and —
>
> (A)     for the exclusive purpose of
>
> > (i)     providing benefits to participants and their beneficiaries; and
> >
> > (ii)    defraying reasonable expenses of administering the plan;

(B)     with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims;

(C)     by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

(D)     in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and Title IV.

62.     ERISA also imposes explicit co-fiduciary duties on plan fiduciaries.  ERISA § 405, 29 U.S.C. § 1105, states, in relevant part, that:

In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:

(1)     if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; or

(2)     if, by his failure to comply with section 404(a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3)     if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

63.     Under ERISA, fiduciaries that exercise discretionary authority or control over the selection of plan investments and the selection of plan service providers must act prudently and solely in the interest of participants in the plan when selecting investments and retaining service providers.  Thus, "the duty to conduct an independent investigation into the merits of a particular investment" is "the most basic of ERISA's investment fiduciary duties."  *In re Unisys Savings Plan Litig.*, 74 F.3d 420, 435 (3d Cir. 1996).  As the Department of Labor explains,

> [T]o act prudently, a plan fiduciary must consider, among other factors, the
> availability, riskiness, and potential return of alternative investments for his or her
> plan. [Where an investment], if implemented, causes the Plan to forego other
> investment opportunities, such investments would not be prudent if they provided
> a plan with less return, in comparison to risk, than comparable investments
> available to the plan, or if they involved a greater risk to the security of plan
> assets than other investments offering a similar return.

DoL Ad. Op. No. 88-16A.

64.     Pursuant to these duties, fiduciaries must ensure that the services provided to the

plan are necessary and that the fees are reasonable:

> Under section 404(a)(1) of ERISA, the responsible Plan fiduciaries must act
> prudently and solely in the interest of the Plan participants and beneficiaries both
> in deciding … which investment options to utilize or make available to Plan
> participants or beneficiaries. In this regard, the responsible Plan fiduciaries must
> assure that the compensation paid directly or indirectly by the Plan to [service
> providers] is reasonable … .

DoL Ad. Op. 97-15A; DoL Ad. Op. 97-16A

65.     A fiduciary's duty of loyalty requires a fiduciary to act solely in the interest of

plan participants and beneficiaries.  As the Department of Labor has repeatedly warned:

> We have construed the requirements that a fiduciary act solely in the interest of,
> and for the exclusive purpose of providing benefits to, participants and
> beneficiaries as prohibiting a fiduciary from subordinating the interests of
> participants and beneficiaries in their retirement income to unrelated objectives.
> Thus, in deciding whether and to what extent to invest in a particular investment,
> a fiduciary must ordinarily consider only factors relating to the interests of plan
> participants and beneficiaries in their retirement income. A decision to make an
> investment may not be influenced by [other] factors unless the investment, when
> judged solely on the basis of its economic value to the plan, would be equal or
> superior to alternative investments available to the plan.

DoL Ad. Op. No. 98-04A; DoL Ad. Op. No. 88-16A.

66.     The Department of Labor counsels that fiduciaries are responsible for ensuring

that a plan pays reasonable fees and expenses and that fiduciaries need to carefully evaluate

differences in fees and services between prospective service providers:

While the law does not specify a permissible level of fees, it does require that fees charged to a plan be "reasonable." After careful evaluation during the initial selection, the plan's fees and expenses should be monitored to determine whether they continue to be reasonable.

In comparing estimates from prospective service providers, ask which services are covered for the estimated fees and which are not. Some providers offer a number of services for one fee, sometimes referred to as a "bundled" services arrangement. Others charge separately for individual services. Compare all services to be provided with the total cost for each provider. Consider whether the estimate includes services you did not specify or want. Remember, all services have costs.

Some service providers may receive additional fees from investment vehicles, such as mutual funds, that may be offered under an employer's plan. For example, mutual funds often charge fees to pay brokers and other salespersons for promoting the fund and providing other services. There also may be sales and other related charges for investments offered by a service provider. Employers should ask prospective providers for a detailed explanation of all fees associated with their investment options.

*Meeting Your Fiduciary Responsibilities* (May 2004) (available at

http://www.dol.gov/ebsa/publications/fiduciaryresponsibility.html).

In a separate publication, the Department of Labor writes:

Plan fees and expenses are important considerations for all types of retirement plans. As a plan fiduciary, you have an obligation under ERISA to prudently select and monitor plan investments, investment options made available to the plan's participants and beneficiaries, and the persons providing services to your plan. Understanding and evaluating plan fees and expenses associated with plan investments, investment options, and services are an important part of a fiduciary's responsibility. This responsibility is ongoing. After careful evaluation during the initial selection, you will want to monitor plan fees and expenses to determine whether they continue to be reasonable in light of the services provided.

* * *

By far the largest component of plan fees and expenses is associated with managing plan investments. Fees for investment management and other related services generally are assessed as a percentage of assets invested. Employers should pay attention to these fees. They are paid in the form of an indirect charge against the participant's account or the plan because they are deducted directly from investment returns. Net total return is the return after these fees have been deducted. For this reason, these fees, which are not specifically identified on statements of investments, may not be immediately apparent to employers.

*Understanding Retirement Plan Fees and Expenses* (May 2004) (available at

http://www.dol.gov/ebsa/publications/undrstndgrtrmnt.html.)

 67. A fiduciary's duty of loyalty and prudence require it to disregard plan documents

or directives that it knows or reasonably should know would lead to an imprudent result, or

would otherwise harm plan participants or beneficiaries. ERISA § 404(a)(1)(D), 29 U.S.C.

§ 1104(a)(1)(D).  Thus, a fiduciary may not blindly follow plan documents or directives that

would lead to an imprudent result or that would harm plan participants or beneficiaries, nor allow

others, including those whom they direct or who are directed by plan documents to do so.

## VI. <u>CLASS ALLEGATIONS</u>

 68. Representative Plaintiffs bring this action on behalf of a class defined as:

> All participants in the Citigroup 401(k) Plan who invested in any of
> the following funds from from October 18, 2001 to September 4,
> 2007:  Citi Institutional Liquid Reserves Fund, Smith Barney
> Government Securities Fund (subsequently renamed Legg Mason
> Partners Government Securities Fund), Smith Barney Diversified
> Strategic Income Fund, Smith Barney Large Cap Growth Fund
> (subsequently renamed Legg Mason Partners Large Cap Growth
> Fund), Smith Barney Large Cap Value Fund, Smith Barney Small Cap
> Value Fund (subsequently renamed Legg Mason Partners Small Cap
> Value Fund), Smith Barney International All Cap Growth Fund, Smith
> Barney Fundamental Value Fund (subsequently renamed Legg Mason
> Partners Fundamental Value Fund), and the Salomon Brothers High
> Yield Bond Fund (subsequently renamed Legg Mason Partners Global
> High Yield Bond Fund).  Excluded from the class are Defendants,
> Defendants beneficiaries, and Defendants immediate families.

 69. Class certification is appropriate under Fed. R. Civ. P. 23(a) and (b)(1), (b)(2),

and/or (b)(3).

 70. The class satisfies the numerosity requirement because it is composed of

thousands of persons, in numerous locations.  The 401(k) Plan has almost 190,000 participants,

most of which have invested in at least one of the Affiliated Funds during the Class Period.  The

number of class members is so large that joinder of all its members is impracticable.

      Second Amended Complaint

71.     Common questions of law and fact include:

A.      Whether Defendants caused the 401(k) Plan to invest its assets in mutual funds and other investment products offered or managed by Citigroup subsidiaries and affiliates;

B.      Whether Committee Defendants were fiduciaries responsible for monitoring and making decisions with respect to the investments in the 401(k) Plan;

C.      Whether Committee Defendants breached their fiduciary duties to the 401(k) Plan by causing the 401(k) Plan to invest its assets in mutual funds and other investment products offered or managed by Citigroup subsidiaries and affiliates; and

D.      Whether the 401(k) Plan and its participants suffered losses as a result of Committee Defendants' fiduciary breaches.

72.     Plaintiffs' claims are typical of the claims of the Class.  They have no interests that are antagonistic to the claims of the Class.  Plaintiffs understand that this matter cannot be settled without the Court's approval.  Plaintiffs are not aware of another suit pending against Defendants arising from the same circumstances.

73.     Plaintiffs will fairly and adequately protect the interests of the Class.  Plaintiffs are committed to the vigorous representation of the Class.  Plaintiffs' counsel, McTigue & Veis LLP, Bailey & Glasser LLP, and David Preminger of Keller Rohrback LLP are experienced in class action and ERISA litigation.  Counsel have agreed to advance the costs of the litigation.  Counsel are aware that no fee can be awarded without the Court's approval.

74.     A class action is the superior method for the fair and efficient adjudication of this controversy.  Joinder of all members of the Class is impracticable.  The losses suffered by some of the individual members of the Class may be small, and it would therefore be impracticable for

individual members to bear the expense and burden of individual litigation to enforce their rights.  Moreover, Committee Defendants, as fiduciaries of the 401(k) Plan, were obligated to treat all Class members similarly as 401(k) Plan participants pursuant to written plan documents and ERISA, which impose uniform standards of conduct on fiduciaries.  Individual proceedings, therefore, would pose the risk of inconsistent adjudications.  Plaintiffs are unaware of any difficulty in the management of this action as a class action.

75.     This Class may be certified under Rule 23(b).

A.     23(b)(1).  As an ERISA breach of fiduciary duty action, this action is a classic 23(b)(1) class action.  Prosecution of separate actions by individual members would create the risk of (A) inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for the defendants opposing the Class, or (B) adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests.

B.     23(b)(2).  This action is suitable as a class action under 23(b)(2)  because the Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final injunctive, declaratory or other appropriate equitable relief with respect to the Class.

C.     23(b)(3).  This action is suitable to proceed as a class action under 23(b)(3) because questions of law and fact common to the members of the Class predominate over individual questions, and this class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Given the nature of

the allegations, no class member has an interest in individually controlling the

prosecution of this matter, and Plaintiffs are aware of no difficulties likely to be

encountered in the management of this matter as a class action.

## VII. <u>CLAIMS FOR RELIEF</u>

### <u>COUNT I</u>

**Breach of Duty of Prudence by Failing to Remove or Replace
the Affiliated Funds as 401(k) Plan Investment Vehicles during the Class Period,
which Caused Losses to the 401(k) Plan
(Violation of § 404 of ERISA, 29 U.S.C. § 1104 by Committee Defendants)**

76.     All previous averments are incorporated herein.

77.     At all relevant times, Committee Defendants acted as fiduciaries within the

meaning of ERISA § 3(21)(A), 29 U.S.C.§ 1002(21)(A), by exercising discretionary authority

and control with respect to the management of the 401(k) Plan and authority or control with

respect to the management or disposition of the 401(k) Plan's assets.

78.     At all relevant times, Committee Defendants had the duty to continually monitor

the suitability of Plan investment options, and to remove or replace any investment option that

was found to be imprudent, e.g. because of high fees.  Committee Defendants met several times

each year during the Class Period.  These meetings had among their purposes monitoring the

fees, and evaluating the suitability, of the Plan's investment options.

79.     Committee Defendants, by their omissions in repeatedly failing to remove or

replace the Affiliated Funds (except after those funds were no longer affiliated with Citigroup)

during the Class Period breached their duty of prudence under ERISA § 404(a)(1) (B), 29 U.S.C.

§ 1104(a)(1) (B).  The Committee Defendants omitted to remove these funds because they were

affiliated with Citigroup and retaining them as Plan investment options generated income to

Citigroup affiliates.  The Committee Defendants failed to remove these funds despite the fact

that they offered participants high fees.  Committee Defendants knew that many lower cost funds were available as alternatives to the Affiliated Funds.

80.     As a direct and proximate result of these breaches of duty, the 401(k) Plan, and indirectly Plaintiffs and the 401(k) Plan's other participants and beneficiaries, lost millions of dollars to the Affiliated Funds' high fees.

81.     Pursuant to ERISA § 502(a)(2) and 409(a), 29 U.S.C. § 1132(a)(2) and 29 U.S.C. § 1109(a), Committee Defendants are liable to restore all losses suffered by the 401(k) Plan caused by their breaches of fiduciary duty.

## COUNT II

**Breach of Duty of Prudence by Selecting Three of
the Affiliated Funds as 401(k) Plan Investment Vehicles during the Class Period,
which Caused Losses to the 401(k) Plan
(Violation of § 404 of ERISA, 29 U.S.C. § 1104 by Committee Defendants)**

82.     All previous averments are incorporated herein.

83.     Three of the Affiliated Funds were added to the 401(k) Plan on April 21, 2003: the Smith Barney Small Cap Value Fund, the Smith Barney Fundamental Value Fund, and the Citi Institutional Liquid Reserves Fund.

84.     The Committee Defendants were required to prudently and loyally select funds for the 401(k) Plan.

85.     By selecting these three funds for the 401(k) Plan, Committee Defendants breached their duty of prudence.  These funds offered high fees.  The Committee Defendants nevertheless selected them because they were managed and offered by Citigroup affiliates, and selecting them would bring millions of dollars in additional revenue to Citigroup affiliates.

86.     Committee Defendants breaches in selecting these three funds caused millions of dollars in losses to the 401(k) Plan.

## COUNT III

**Breach of Duty of Prudence by Approving, in March 2003, the Mapping of 401(k) Monies Invested in Unaffiliated Funds into Affiliated Funds, which Caused Losses to the 401(k) Plan**
**(Violation of § 404 of ERISA, 29 U.S.C. § 1104 by Committee Defendants)**

87.     All previous averments are incorporated herein.

88.     Committee Defendants approved the mapping, which occurred on or about March 21, 2003, of tens of millions of dollars 401(k) Plan participants had invested in unaffiliated funds into Affiliated Funds (specifically the Smith Barney Large Cap Growth Fund, Smith Barney Fundamental Value Fund, Smith Barney Government Securities Fund, and the Citi Institutional Liquid Reserves Fund), as discussed above.

89.     In approving this mapping, Committee Defendants breached their duties of prudence and loyalty.  They approved the mapping not because it would benefit participants, but because it benefited Citigroup affiliates by increasing their fee revenue.  The mapping was not prudent because the investment vehicles into which the funds were mapped had high fees.

90.     By approving this mapping, Committee Defendants caused losses to the 401(k) Plan.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1.     Declare that Committee Defendants breached their fiduciary duty of prudence under ERISA;

2.     Issue an order compelling the disgorgement of all investment advisory fees paid and incurred, directly or indirectly, to Citigroup subsidiaries and affiliates by the 401(k) Plan, including disgorgement of profits thereon;

3.      Issue an order compelling Committee Defendants to restore all losses to the 401(k) Plan arising from Committee Defendants' violations of ERISA;

4.      Order equitable restitution and other appropriate equitable monetary relief against Defendants;

5.      Award such other equitable or remedial relief as may be appropriate, including the permanent removal of Defendants from any positions of trust with respect to the 401(k) Plan, the appointment of independent fiduciaries to administer the 401(k) Plan, and rescission of the 401(k) Plan's investments in Affiliated Funds;

6.      Certify this action as a class action, designate the Class to receive the amounts restored or disgorged to the 401(k) Plan, and impose a constructive trust for distribution of those amounts to the extent required by law;

7.      Enjoin Defendants collectively from any further violations of their ERISA fiduciary responsibilities, obligations, and duties;

8.      Award Plaintiffs their attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g) and/or the Common Fund doctrine; and

9.      Award such other and further relief as the Court deems equitable and just.

DATED:    New York, New York
           November 15, 2011

By: _____
David S. Preminger (DP 1057)
**Keller Rohrback, L.L.P.**
770 Broadway
Second Floor
New York, NY 10003
Tel: (646) 495-6198
Fax: (646) 495-6197

J. Brian McTigue (*Pro hac vice*)
Bryan T. Veis (*Pro hac vice*)

           Second Amended Complaint

James A. Moore(*Pro hac vice*)
**MCTIGUE & VEIS LLP**
4530 Wisconsin Avenue, NW
Suite 300
Washington, DC  20016
Tel:  (202) 364-6900
Fax: (202) 364-9960
bmctigue@mctiguelaw.com
bveis@mctiguelaw.com
jmoore@mctiguelaw.com

Gregory Yann Porter (*Pro hac vice*)
**BAILEY & GLASSER LLP**
910 17th Street, NW
Suite 800
Washington, DC 20006
Tel: (202) 543-0226
Fax:  (202) 434-8252
gporter@baileyglasser.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the date set forth below the foregoing **Second Amended Class Action Complaint** was filed with the Court and served this same day via electronic mail upon the following counsel of record:

Lewis R. Clayton
Paul, Weiss, Rifkind, Wharton & Garrison LLP1285
Avenue of the Americas
New York, New York 10019-6064
 (212) 373-3215
DPravda@paulweiss.com

Aliza Jordana Balog
Paul, Weiss, Rifkind, Wharton &
Garrison LLP (NY)
1285 Avenue of the Americas
New York , NY 10019
(212)-373-3787
Email: abalog@paulweiss.com

November 15, 2011

_David T. Bond_

David T. Bond