USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/30/2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARYA J. LEBER, SARA L. KENNEDY, *and all others similarly situated*,

                Plaintiffs,

-against-

THE CITIGROUP 401(k) PLAN INVESTMENT COMMITTEE, JAMES COSTABILE, ROBERT GROGAN, ROBIN LEOPOLD, GLENN REGAN, CHRISTINE SIMPSON, RICHARD TAZIK, TIMOTHY TUCKER, LEO VIOLA, DONALD YOUNG, MARCIA YOUNG, and DOE DEFENDANTS 1-20,

                Defendants.

---

07-Cv-9329 (SHS)

OPINION & ORDER

SIDNEY H. STEIN, U.S. District Judge.

    Defendants have moved for summary judgment, asking the Court to dismiss as untimely plaintiffs' putative class action alleging violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*. The Court previously granted in part and denied in part defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), and granted in part and denied in part plaintiffs' subsequent motion for leave to amend their complaint pursuant to Rule 15(a). *See Leber v. Citigroup, Inc.* ("*Leber I*"), No. 07 Civ. 9329 (SHS), 2010 WL 935442 (S.D.N.Y. Mar. 16, 2010); *Leber v. Citigroup, Inc.* ("*Leber II*"), No. 07 Civ. 9329 (SHS), 2011 WL 5428784 (S.D.N.Y. Nov. 8, 2011). For reasons explained in those opinions, the surviving claims all concern defendants' alleged breaches of their fiduciary duty of prudence pursuant to ERISA section 404, which requires that fiduciaries act "solely in the interest of the participants and beneficiaries." *See* 29 U.S.C. § 1104(a)(1). The gravamen of the Second Amended Complaint (the "Complaint") is that defendants included in Citigroup's 401(k) retirement plan (the "Plan") mutual funds offered and

managed by subsidiaries of Citigroup (the "Affiliated Funds" or "Funds") despite the fact that those Funds had "higher investment advisory fees than those of competing funds" with equal performance. *See Leber II* at *1 (quoting *Leber I* at *1).

After discovery limited to plaintiffs' compliance with the statute of limitations, defendants have moved for summary judgment on that issue pursuant to Rule 56(a). Defendants contend that the action is untimely because plaintiffs possessed "actual knowledge" of the alleged breach more than three years before they filed suit. *See* 29 U.S.C. § 1113. Specifically, defendants point to documents distributed to participants listing the fees and effectively disclosing the affiliated status of the Funds. Defendants, however, have presented no evidence—let alone undisputed evidence[1]—that plaintiffs knew that the Affiliated Funds' fees were higher than alternatives with comparable performance. Thus, defendants have not shown that plaintiffs acquired "actual knowledge" of the breach within the meaning of section 1113, and the motion is accordingly denied.

## I. BACKGROUND

Unless otherwise noted, the following facts are undisputed and drawn from defendants' and plaintiffs' Local Civil Rule 56.1 Statements of Undisputed Facts ("Defs.' 56.1" and "Pls.' 56.1"). However, because the parties have taken discovery only on timeliness issues, the Court continues to assume the truth of the substantive allegations in the Complaint for purposes of this motion, and so relies only on the Complaint for such facts.

---

[1] Summary judgment is warranted only upon a showing "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In determining whether there are genuine issues of material fact, "we are required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." . . . Summary judgment is appropriate "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."

*Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citations and alterations omitted).

### A. The Parties and the Plan

After the merger between Travelers Group and Citicorp that formed Citigroup, Citigroup in July 2001 merged the Travelers and Citicorp 401(k) plans into the Plan at issue. (Defs.' 56.1 ¶¶ 1-2; Pls.' 56.1 ¶¶ 1-2.) Plaintiffs allege that defendants are members of the Plan's Investment Committee and thus are Plan fiduciaries "responsible for selecting, monitoring, and evaluating the [] Plan's investment options." (Compl. ¶ 20.) Plaintiffs Marya J. Leber and Sarah L. Kennedy were Citigroup employees who participated in the Plan, which Citigroup offered employees as a retirement-savings option. (Compl. ¶¶ 14, 16; Ans. ¶¶ 14, 16.) Leber and Kennedy each invested in one of the Affiliated Funds, which they allege all charged excessive fees. (Compl. ¶¶ 14, 16.)

The Plan offered a range of funds in which participants could invest their Plan assets. At all relevant times, the available funds selected by the Investment Committee for inclusion in the Plan included some or all of the nine Affiliated Funds at issue,[2] as well as funds managed by entities unaffiliated with Citigroup ("unaffiliated funds"). Each of the Affiliated Funds became Plan options at one of two times: (1) July 2001, when the Plan began (Pls.' 56.1 ¶ 4); and (2) April 2003, when the Plan eliminated ten unaffiliated funds and added new funds, including three of the Affiliated Funds (Pls.' 56.1 ¶ 27). In April 2003, the Plan automatically transferred the balance of participants' investments in eliminated funds to new or remaining Plan funds; four of the funds to which investments were transferred were Affiliated Funds. (Pls.' 56.1 ¶ 28.)

---

[2]   The nine Affiliated Funds are the following: (1) Citi Institutional Liquid Reserve Fund; (2) Smith Barney Government Securities Fund; (3) Smith Barney Diversified Strategic Income Fund; (4) Smith Barney Large Cap Growth Fund; (5) Smith Barney Large Cap Value Fund; (6) Smith Barney Small Cap Value Fund; (7) Smith Barney International All Cap Growth Fund; (8) Smith Barney Fundamental Value Fund; and (9) Salomon Brothers High Yield Bond Fund. (Compl. ¶ 4.) Plaintiffs claim that Kennedy invested in another fund managed by a Citigroup affiliate: the Smith Barney Appreciation Fund. (*Id.* ¶ 16.) Although Smith Barney was "affiliated" with Citigroup, that fund is not the subject of plaintiffs' allegations, and so is not one of the Affiliated Funds as the Court has defined that term.

### B. The Alleged ERISA Violations

Plaintiffs' claims regarding defendants' decisions to offer the Affiliated Funds as part of the Plan, and not to remove them from the Plan, take three forms. First, defendants committed an ongoing breach-by-omission by failing to remove the Affiliated Funds from the Plan, starting in October 2001. Second, defendants breached their duty of prudence by selecting three Affiliated Funds when adding new funds in April 2003. Third, defendants imprudently transferred investments in four of the eliminated unaffiliated funds to four of the Affiliated Funds. (*See* Compl. ¶¶ 76-90.) Each of these claims is premised on two common allegations: that the funds at issue were affiliated with Citigroup, and that they charged fees that were excessive when compared to fees of funds that performed comparably. *See Leber II* at *4-5.

### C. Communications to Plan Members

The dispute at the heart of this motion concerns the extent of information that plaintiffs possessed more than three years before they filed suit on October 18, 2007. For purposes of this motion, the Court assumes, without deciding, that the record shows that Plan documents were sent to plaintiffs before October 2004 and contained, as defendants contend, two basic pieces of information: first, that the Funds were affiliated with Citigroup (*see* Defs.' 56.1 ¶¶ 19-25, 32-33, 36-38); and second, the precise management fees that the Affiliated Funds charged investors (*see* Defs.' 56.1 ¶¶ 26, 34-35, 39).[3] Plaintiffs, however, deny that they reviewed the documents on which defendants rely and have submitted affidavits to the effect that they were unaware of either the affiliated status of the Funds or the fees that they charged. (*See* Pls.' 56.1

---

[3] Plaintiffs offer a range of evidence and a variety of arguments to counter defendants' evidence that the Plan sent documents to plaintiffs containing the fees charged and affiliated status of the Funds. Plaintiffs, to take but one example, contend that a material dispute of fact exists regarding whether these documents were sent to plaintiffs because Kennedy testified that she saved everything she received, but she did not have or recall certain documents on which defendants rely. (*See* Pls.' 56.1 ¶ 55.) The Court, however, need not address these various factual assertions because the motion fails even assuming that the evidence defendants proffer is undisputed.

¶ 55; Aff. of Sarah L. Kennedy dated Feb. 5, 2012 ¶¶ 4(g)-(h), 4(k)-(l), Dkt. No. 99; Aff. of Marya J. Leber dated Feb. 13, 2012 ¶¶ 4(g)-(h), 4(k)-(l), Dkt. No. 100.) Thus, for purposes of this motion, the Court proceeds on the basis that plaintiffs possessed documents that described the Funds' affiliated status and fees more than three years before filing, but had not read them. Defendants, however, offer no evidence that plaintiffs were aware of comparable funds with smaller fees.

## II. DISCUSSION

### A. ERISA's Three-Year Statute of Limitations Applies if Plaintiffs Acquired "Actual Knowledge" of the Breach.

Except for claims of fraud or concealment, ERISA requires that an action for breach of fiduciary duty must be commenced by the earlier of the following two dates:

> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2) three years after the earliest date on which the plaintiff had *actual knowledge of the breach or violation* . . . .

29 U.S.C. § 1113 (emphasis added). In other words, all plaintiffs must file suit no later than six years after the breach, but a plaintiff who acquires "actual knowledge of the breach" cannot sleep on his rights; he must bring his claim within three years of acquiring "actual knowledge."

### B. ERISA's Three-Year Statute of Limitations Applies if Plaintiffs Acquired "Actual Knowledge" of the Breach.

"[A] plaintiff has 'actual knowledge of the breach or violation' within the meaning of [the statute] when he has knowledge of all material facts necessary to understand that an ERISA fiduciary has breached his or her duty or otherwise violated the Act." *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 193 (2d Cir. 2001). Although the plaintiff need not know the law, "he must have knowledge of all facts necessary to constitute a claim." *Id.* Whether a fact is material depends on context; such facts "could include necessary

5

opinions of experts, knowledge of a transaction's harmful consequences, or even actual harm." *Id.* (quoting *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1177 (3d Cir. 1992)); *see also Martin v. Consultants & Adm'rs, Inc.*, 966 F.2d 1078, 1086 (7th Cir. 1992). Even so, "[t]he disclosure of a transaction that is not inherently a statutory breach of fiduciary duty . . . cannot communicate the existence of an underlying breach." *Caputo*, 267 F.3d at 193 (alterations in original).

Because actual knowledge is "strictly construed," *L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cnty., Inc.*, 710 F.3d 57, 67 (2d Cir. 2013), what plaintiffs "*should have known*" or what they suspected must be distinguished from what they actually knew. *Caputo*, 267 F.3d at 194 (emphasis in original). Reading "actual knowledge" as equivalent to "constructive knowledge" would be "repugnant to the plain language of the statute as well as its legislative history." *Id.* Even where a plaintiff has reason to believe that defendants have violated ERISA, he might not know all the facts material to his claim. In *Caputo*, for example, the plaintiffs alleged that their employer had misled them as to whether they planned to offer an early retirement plan that included a severance package. *Id.* at 184. Even when they learned that the employer had offered the very package it said it would not offer, they did not have "actual knowledge" of the breach; at that time, "they *thought* (not knew) that [the employer] lied." *Id.* at 194 n.6 (emphasis in original). Only when they confirmed their suspicions that the earlier statements were lies—as opposed to true plans that later changed—did they actually know of the breach. *Id.* at 194. Clearly what matters are the facts plaintiffs possess, not the facts they suspect or could discover.[4]

---

[4] Plaintiffs also contend that "'[a]ctual knowledge' requires that the plaintiff read and understand" the communications. *Harris v. Finch, Pruyn & Co., Inc.*, No. 1:05-CV-951, 2008 WL 2064972, at *3 (N.D.N.Y. May 13, 2008) (citing cases). The Court need not address this argument in order to deny the motion. But the Court notes that courts have largely rejected such a rule because it would reward participants' willful blindness to important information. *See, e.g., Edes v. Verizon Commc'ns, Inc.*, 417 F.3d 133, 142 (1st Cir. 2005); *Young v. Gen. Motors Inv. Mgmt. Corp.*, 550 F. Supp. 2d 416, 419 n.3 (S.D.N.Y. 2008), *aff'd on other grounds*, 325 F. App'x 31 (2d Cir. 2009); *but see Fish v. GreatBanc Trust Co.*, 749 F.3d 671, 685 (7th Cir. 2014) ("If willful blindness has a place

### C.  Plaintiffs Lacked "Actual Knowledge" Because They Did Not Possess All Facts Necessary to Constitute the Claims.

Defining the universe of plaintiffs' imputed knowledge only begs the question: Did the Plan's communications contain "all facts necessary to constitute a claim"? *See Caputo*, 267 F.3d at 193. The Court's view should not surprise the parties because the Court delineated the central allegations when deciding both defendants' motion to dismiss and plaintiffs' motion to amend: "by causing plan assets to be invested in affiliated mutual funds that charged higher fees and performed less well than comparable unaffiliated funds, the committee defendants acted in the interests of Citigroup rather than the Plan and failed to act with the skill, prudence, and care required." *Leber I* at *13. Essential to the plausibility of plaintiffs' claims was the allegation that the Affiliated Funds "charged higher fees than those charged by comparable Vanguard funds—in some instances fees that were more than 200 percent higher than those comparable funds." *Id.*; *see also Leber II* at *4.

Actual knowledge requires "knowledge of all material facts necessary to understand that an ERISA fiduciary has breached his or her duty." *Caputo*, 267 F.3d at 193.  A fact that is necessary to render a claimed breach plausible must, perforce, be one of the facts "necessary to understand that" a breach has occurred. *Id.* It is, by definition, one of "facts necessary to constitute [the] claim." *Id.* Thus, to demonstrate plaintiffs' actual knowledge of the breach, defendants must show either that plaintiffs possessed, through Plan communications or otherwise, comparisons of the Affiliated Funds to the alternatives or knew in some other way that the

---

in the analysis of the "actual knowledge" three-year statute of limitations under § 1113(2)—a question we do not decide here—it would almost certainly present a genuine issue of material fact to be resolved by the finder of fact at trial."). Nor need the court consider defendants' contention that plaintiffs had actual knowledge of plan documents that were not sent to them, but to which they had access. *See, e.g., Brown v. Owens Corning Inv. Review Comm.*, 622 F.3d 564, 571 (6th Cir. 2010). That rule takes one step closer to the "constructive knowledge" standard that courts have universally rejected. Because nothing in the other documents on which defendants rely disclosed the key fact missing from defendants' proffered evidence—the fees of comparable funds—the Court need not, and does not, address the significance of plaintiffs' access to other Plan documents.

fees were excessive.[5] Defendants' motion for summary judgment must fail because defendants have not even attempted to offer evidence that plaintiffs possessed the fee data for comparable alternative funds.

Defendants urge the Court to find that knowledge of the Affiliated Funds' fees alone constitutes actual knowledge of all the material facts of the breach, citing *Young v. General Motors Investment Management Corp.*, 550 F. Supp. 2d 416, 420 (S.D.N.Y. 2008). In *Young*, the plaintiffs advanced claims similar to these, and the court found them untimely because their knowledge of the fees for other funds in the plan provided knowledge that the fees were generally high. *Id.* at 420 & n.5. The *Young* court, however, did not consider the significance of comparisons between the fees for the funds at issue and those of alternative funds with similar types of assets and equivalent performance, nor explain whether that comparison was part of the claimed breach.[6] Even assuming that plaintiffs had actual knowledge of the fees of the unaffiliated funds offered by the Plan,[7]

---

[5] Defendants' own prior argument belies the sincerity of their position here that the comparisons between the fees and performance of the Affiliated Funds on one hand and those of comparable funds on the other are not essential to knowledge of defendants' breaches. In moving previously to dismiss, defendants contended that those very comparisons between the Affiliated Funds and comparable funds, even if augmented with certain details, failed to raise the claims above the level of the implausible or speculative. (*See* Defs.' Mem. in Support of Motion to Dismiss at 17, Dkt. No. 21.) A plaintiff without enough facts to do more than speculate that a breach has occurred hardly has "actual knowledge" of that breach. The Court is also mindful that a plaintiff must possess more facts to know of a breach than she must possess to plausibly allege that breach on information and belief. *See, e.g.*, *Caputo*, 267 F.3d at 195. Because the motion fails for the reasons stated, the Court need not determine what if any additional facts are essential to plaintiffs' claims, nor consider plaintiffs' alternative factual or legal arguments.

[6] Such an analysis was likely unnecessary given that the plaintiffs in *Young* failed to allege "facts concerning other factors relevant to determining whether a fee is excessive" including comparative fee structures. *See Young*, 325 F. App'x 31, 33 (2d Cir. 2009).

[7] Although defendants assert that participants received fund prospectuses each time a new fund was added to the Plan and such documents were available on Citigroup's website (*see* Ex. 49 to Declaration of Kira A. Davis, dated January 10, 2012,

8

defendants do not contend that the unaffiliated funds were similar to the Affiliated Funds and had comparable performance. Moreover, it is not clear on its face that the fees were so excessive that they were "inherently suspect . . . [or] constitute[d] a breach of fiduciary duty." *Caputo*, 267 F.3d at 193; *cf. Chao v. Emerald Capital Mgmt., Ltd.*, 01-CV-6356T, 2006 WL 2620055, at *6-7 (W.D.N.Y. Sept. 13, 2006).

In any event, *Young* is not binding authority. Plaintiffs could not have known that the fees were excessive, and thus a basis for an ERISA claim, without the relevant comparison point for assessing excessiveness: fees for comparable funds. At most, a comparison of the Affiliated Funds' fees with those of unaffiliated funds in the Plan would have given them "notice that something was awry." *Caputo*, 267 F.3d at 193. More is required to find that plaintiffs had "'specific knowledge of the actual breach of duty'" of prudence, *see id.*,[8] and defendants offer no evidence that plaintiffs knew any more. Accordingly, defendants have not shown that plaintiffs knew, rather than suspected or could have known, all the material facts of their claims three years before filing suit.

### III. CONCLUSION

Because defendants have failed to demonstrate pursuant to 29 U.S.C. § 1113 that plaintiffs had "actual knowledge" of the alleged breaches three years before commencing the action, defendants' motion for summary judgment on the issue of timeliness (Dkt. No. 93) is denied. The parties

---

¶¶ 6-8), defendants offer no evidence of the fees of unaffiliated funds or plaintiffs' actual knowledge of those fees.

[8]  The Court notes here that other courts have found knowledge of additional facts necessary to prove actual knowledge of a breach of fiduciary duty. *See Zang v. Paychex, Inc.*, 728 F. Supp. 2d 261, 268 (W.D.N.Y. 2010) ("It is not enough that plaintiff could have surmised that Paychex may have been motivated by self-interest; he must have had actual knowledge that Paychex was so motivated."); *see also Brown v. Am. Life Holdings, Inc.*, 190 F.3d 856, 859 (8th Cir. 1999).

shall submit an agreed upon schedule for the remaining discovery in this action on or before October 17, 2014.

Dated: New York, New York
       September 30, 2014

SO ORDERED:

_____
Sidney H. Stein, U.S.D.J.