UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------

MARYA J. LEBER, SARA L. KENNEDY,
*and all others similarly situated*,

                        Plaintiffs,

          -against-

THE CITIGROUP 401(k) PLAN
INVESTMENT COMMITTEE, JAMES
COSTABILE, ROBERT GROGAN, ROBIN
LEOPOLD, GLENN REGAN,
CHRISTINE SIMPSON, RICHARD
TAZIK, TIMOTHY TUCKER, LEO
VIOLA, DONALD YOUNG, MARCIA
YOUNG, and DOE DEFENDANTS 1-20,

                        Defendants.

--------------------------------------------------

07-Cv-9329 (SHS)

OPINION & ORDER

SIDNEY H. STEIN, U.S. District Judge.

    Plaintiffs bring this putative class action for alleged violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* This Court previously granted in part and denied in part defendants' motion to dismiss the first amended complaint pursuant to Fed. R. Civ. P. 12(b)(6); granted in part and denied in part plaintiffs' motion for leave to file a second amended complaint pursuant to Rule 15(a); and granted plaintiffs' motion for leave to file a third amended complaint pursuant to Rule 15(a). *See Leber v. Citigroup, Inc.* (*Leber I*), No. 07 Civ. 9329, 2010 WL 935442 (S.D.N.Y. Mar. 16, 2010); *Leber v. Citigroup, Inc.* (*Leber II*), No. 07 Civ. 9329, 2011 WL 5428784 (S.D.N.Y. Nov. 8, 2011); (Order dated March 28, 2013, Dkt. No. 113). For the reasons set forth in those opinions, the surviving claims all concern defendants' alleged breaches of their fiduciary duty of prudence pursuant to ERISA section 404, which requires that fiduciaries act "with the care, skill, prudence, and diligence under the circumstances then prevailing

that a prudent man acting in a like capacity and familiar with such matters would use." *See* 29 U.S.C. § 1104(a)(1)(B). The gravamen of the Third Amended Class Action Complaint is that defendants included in Citigroup's 401(k) retirement plan mutual funds offered and managed by subsidiaries of Citigroup (the "Affiliated Funds" or "Funds") despite the fact that those Funds had "higher investment advisory fees than those of competing funds." *See Leber II*, 2011 WL 5428784, at *1.  After discovery limited to plaintiffs' compliance with the statute of limitations, this Court denied defendants' motion for summary judgment on timeliness grounds. *Leber v. Citigroup 401(k) Plan Inv. Comm.* (*Leber III*), No. 07-Cv-9329, 2014 WL 4851816 (S.D.N.Y. Sept. 30, 2014).

Plaintiffs now move pursuant to Fed. R. Civ. P. 15(a) for leave to file a fourth amended complaint to add new claims, new named plaintiffs, and new defendants.  For the reasons explained below, plaintiffs' motion is granted in part and denied in part.

## I.  BACKGROUND

### A.  Procedural History

The following factual allegations are taken from plaintiffs' Third Amended Class Action Complaint (the "TAC").  Plaintiffs Marya J. Leber and Sarah L. Kennedy were Citigroup employees who participated in the Citigroup 401(k) retirement plan (the "Plan"), which Citigroup offered employees as a retirement-savings option. (TAC ¶¶ 14, 16.)  Plaintiffs allege that defendants were members of the Benefit Plans Investment Committee of Citigroup (the "BPIC"), or its successor, the Citigroup 401(k) Plan Investment Committee (the "4PIC") (collectively, the "committee defendants"), and thus were Plan fiduciaries "responsible for selecting, monitoring, and evaluating the [] Plan's investment options." (TAC ¶¶ 19A, 20, 36-38.)  Leber and Kennedy invested in one of the nine Affiliated Funds

at issue—the Citi Institutional Liquid Reserves Fund—which they allege charged excessive fees.[1] (*Id*. ¶¶ 14, 16.)

Plaintiffs filed their original complaint in October 2007 and an amended complaint in July 2008, alleging three counts of misconduct.  First, plaintiffs alleged that the committee defendants engaged in transactions prohibited by section 406 of ERISA by (1) selecting the Affiliated Funds as investment options and (2) purchasing the services of Citigroup, a party in interest.  Second, plaintiffs alleged that defendants, through the same acts, violated their fiduciary duties of loyalty and prudence imposed by section 404 of ERISA.  Third, plaintiffs alleged that Citigroup, Inc. itself knowingly participated in the asserted ERISA violations.

In August 2008, defendants moved to dismiss the amended complaint, contending that ERISA's statute of limitations, 29 U.S.C. § 1113, barred plaintiffs' claims, and alternatively, that plaintiffs failed to state a claim upon which relief could be granted.  The Court granted in part and denied in part defendants' motion, dismissing all claims except for one section 404 claim.  The surviving count alleged that "the committee defendants acted imprudently by steering Plan assets to Citigroup affiliated mutual funds with higher investment advisory fees than those of competing funds."  *Leber I*, 2010 WL 935442, at *1.  The Court dismissed plaintiffs' allegations that defendants breached their duty of prudence by selecting Affiliated Funds that substantially underperformed comparable funds offered by unaffiliated

---

[1]     The nine Affiliated Funds are the following: (1) Citi Institutional Liquid Reserves Fund; (2) Smith Barney Government Securities Fund; (3) Smith Barney Diversified Strategic Income Fund; (4) Smith Barney Large Cap Growth Fund; (5) Smith Barney Large Cap Value Fund; (6) Smith Barney Small Cap Value Fund; (7) Smith Barney International All Cap Growth Fund; (8) Smith Barney Fundamental Value Fund; and (9) Salomon Brothers High Yield Bond Fund. (TAC ¶ 4.)  Plaintiffs claim that Kennedy invested in another fund managed by a Citigroup affiliate: the Smith Barney Appreciation Fund. (*Id*. ¶ 16.)  Although Smith Barney was "affiliated" with Citigroup, that fund is not the subject of plaintiffs' allegations, and thus is not one of the Affiliated Funds as the Court has defined that term.

investment managers for lack of factual support. *Id*. at *14. Similarly, the Court found that plaintiffs had failed to state a plausible claim that defendants breached their duty of loyalty by selecting the Affiliated Funds because plaintiffs had alleged in conclusory fashion that defendants put Citigroup's interests above those of the 401(k) Plan's participants. *Id*. at *12-14 & n.4.

After discovery limited to the timeliness of plaintiffs' sole remaining claim, plaintiffs moved for leave to file a second amended complaint in August 2010. Shortly thereafter, defendants moved for summary judgment on the grounds that the action was time-barred. The Court stayed the briefing on defendants' summary judgment motion until the Court decided plaintiffs' motion for leave to amend.

In November 2011, the Court granted in part and denied in part plaintiffs' motion for leave to amend the first amended complaint in order to assert a second amended complaint (the "SAC"). That proposed second amended complaint alleged four section 404 fiduciary duty claims, three of which—in circumscribed form—survived the motion. The three surviving claims centered on the committee defendants' breach of the duty of prudence in (1) failing to remove the Affiliated Funds from the Plan; (2) selecting three new Affiliated Funds as investment options in April 2003; and (3) approving the automatic transfer of Plan participants' investments from eliminated unaffiliated funds to four Affiliated Funds in March 2003. Each of these claims is premised on the common allegations that the Funds at issue were affiliated with Citigroup and that they charged fees that were excessive when compared to fees of comparable funds. *See Leber II*, 2011 WL 5428784, at *4-5.

The Court denied plaintiffs leave to resurrect their allegations predicated on the poor performance of the Affiliated Funds. Because ERISA's duty of prudence is one of conduct and not of performance, the Court found that "[p]laintiffs' performance allegations d[id] not plausibly establish that defendants, 'at the time they engaged in the challenged

transactions,' did not 'employ the appropriate methods to investigate the merits of the investment' in the Affiliated Funds." *Id.* at *3.  The Court also denied plaintiffs leave to add claims based on defendants' breach of their duty of loyalty because plaintiffs did not contend that they had cured the earlier deficiencies in those claims.  *Id.* at *3 n.4.

In April 2012, plaintiffs moved to amend the complaint a third time. Plaintiffs sought to add certain individual defendants identified in defendants' amended Rule 26 disclosures, and also to remove other individual defendants.  The Court granted plaintiffs' motion, as defendants had made no showing that plaintiffs acted in bad faith or that defendants would be unduly prejudiced by the amendments. (Order dated Mar. 28, 2013, Dkt. No. 113.)

After the Court denied defendants' motion for summary judgment on the timeliness of plaintiffs' claims in September 2014, merits discovery began in earnest.

**B.   The Proposed Fourth Amended Complaint**

In moving to amend the complaint a fourth time, more than seven years after the commencement of this lawsuit, plaintiffs remarkably propose seven changes to the TAC.

(1)   First, plaintiffs seek to revive the breach of the duty of loyalty claims that the Court previously dismissed for insufficient factual support. Plaintiffs assert specific examples of "disloyal" conduct, including, *inter alia*, allegations that committee defendants held a meeting in September 2002 regarding the restructuring of the Plan where (1) two representatives of Citigroup Asset Management ("CAM"), the division of Citigroup which included the investment managers of the Affiliated Funds, participated in deliberations, and (2) the committee defendants approved the addition of three new Affiliated Funds and the mapping of investments from unaffiliated to Affiliated Funds without considering lower cost alternatives. (Proposed Fourth Am. Compl. (the "FAC") ¶¶ 55(B)-(C).)  Plaintiffs also

allege that once CAM was sold to Legg Mason and the Affiliated Funds were no longer affiliated with Citigroup, the committee defendants engaged in much stricter monitoring of the Plan funds, evidenced by the creation of a new committee—the 4PIC—and an official watch list for underperforming funds. (*Id.* ¶ 56.)  Plaintiffs contend that these facts evince a breach of the duty of loyalty because they show that the committee defendants remained uninterested in monitoring the Affiliated Funds so long as they were generating fees for Citigroup affiliates. (*Id.* ¶¶ 55(D), 56.)

(2)   Second, plaintiffs seek to resurrect their breach of the duty of prudence claims predicated on the underperformance of seven of the Affiliated Funds.  Plaintiffs now allege that at the start of the class period and when committee defendants (1) selected new Affiliated Funds and (2) transferred investments from unaffiliated to Affiliated Funds, defendants failed to consider alternative, better performing funds. (*Id.* ¶¶ 62-63.)  In particular, plaintiffs allege that six of the Affiliated Funds were "significantly underperforming" comparable benchmarks and that one Affiliated Fund did not have sufficient performance history for a proper evaluation prior to the investment decision. (*Id.* ¶¶ 62(A)-(E), 63(A)-(B).)

Plaintiffs also seek to add three new counts, set forth in proposed Counts Four, Five, and Six.

(3)   In Count Four, plaintiffs allege that defendants breached their duties of loyalty and prudence in failing to adequately monitor the Plan investment options.  Although plaintiffs admit that this count is "implied as part of current Count I," which states that "Committee Defendants had the duty to continually monitor the suitability of Plan investment options," they have added monitoring as a separate count because "it is a separate duty" and "the recently produced Committee Minutes reflect extreme misconduct in this regard." (Pls.' Reply Mem. of Law in Support of Mot. for Leave to Amend Compl. ("Pls.' Reply") at 5, Dkt. No. 157.)  Proposed Count Four alleges that defendants "conducted no or purely perfunctory monitoring of

the performance and fees of 401(k) Plan investment options," as reflected in the committee meeting minutes. (FAC ¶ 108.)

(4)   In Count Five, plaintiffs allege breach of fiduciary duty and prohibited transaction violations as related to a separate Plan investment option, a trust fund known as the Stable Value Fund (the "SVF"). Plaintiffs bring this claim against the committee defendants as well as new defendants, Travelers Insurance and Annuity Company ("Travelers")—a wholly owned subsidiary of Citigroup—and the members of the SVF committee (collectively, the "SVF defendants"). Plaintiffs allege that the SVF defendants were "functional fiduciaries exercising discretion and control over assets of the Stable Value Fund during the Class Period." (*Id.* ¶ 26.) Plaintiffs contend that the committee and SVF defendants failed to remove the Stable Value Fund from the Plan investment options, even though defendants were paying wrap and administrative fees to Travelers, the SVF manager, which were almost three times greater than those paid to Travelers' eventual replacement, an unaffiliated manager. (*Id.* ¶¶ 112, 126-28.)

Plaintiffs also assert that the committee and SVF defendants caused the Plan to engage in prohibited transactions with conflicted parties, *i.e.*, Travelers and the SVF defendants. (*Id.* ¶¶ 114, 120, 129.) In support of their claim, plaintiffs allege that the committee defendants did not approve the SVF committee as the portfolio manager of the SVF until December 2002—although they had been investing in and coordinating the management of the fund prior to that time—and did not execute a written investment management agreement to invest in the SVF until February 1, 2006, after Citigroup sold Travelers. (*Id.* ¶ 114.) Consequently, plaintiffs claim that the SVF defendants had "unfettered discretion" to invest SVF assets any way they chose, and they ultimately invested the vast majority of assets in Travelers securities in contravention of their ERISA-imposed duties. (*Id.*)

(5)   Count Six alleges that defendants engaged in prohibited transactions by paying substantial brokerage and other fees to Citigroup

affiliates. (*Id.* ¶ 134.)  Specifically, plaintiffs claim that the SVF had "Citigroup brokerage relationships" that were not disclosed to participants. (*Id.* ¶¶ 135, 137.)

(6)   In addition to the new SVF defendants, plaintiffs seek to name two additional defendants, Ronald A. Walter and Bruce Zimmerman.  Plaintiffs allege that Walter served as the Secretary of the BPIC from at least the beginning of the Class Period through on or about October 27, 2003. (*Id.* ¶ 24.)  Plaintiffs also allege that Zimmerman served as the Secretary of the BPIC from on or about March 22, 2004 through on or about June 23, 2005 and as the Chief Investment Officer of the Plan from on or about September 23, 2005 through July 23, 2007.  (*Id.* ¶ 25.)  Defendants consent to the addition of Walter and Zimmerman as defendants. (Defs.' Mem. of Law in Opp'n to Pls.' Mot. for Leave to File a Fourth Am. Compl. ("Defs.' Mem.") at 1-2, Dkt. No. 155.)

(7)   Finally, plaintiffs seek to add two additional named plaintiffs, Leslie Highsmith and Sherri M. Harris, who invested in the Smith Barney Large Cap Growth Fund.[2] (FAC ¶¶ 19, 20.)  Plaintiffs contend that they "only recently" learned of Harris and Highsmith's identities. (Pls.' Mem. of Law in Support of Mot. for Leave to Amend Compl. ("Pls.' Mem.") at 2, Dkt. No. 152.)

Defendants oppose plaintiffs' motion on several fronts.  Chiefly, they assert that the Court should deny plaintiffs' motion because the new claims could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Defendants contend that (1) the previously dismissed claims related to the breach of the duty of loyalty and the underperformance of the Affiliated Funds still fail to state a plausible claim; (2) the claims related to the SVF are time-barred; and (3) the claims of the new named plaintiffs are time-barred.

---

[2] Highsmith also invested in the Citi Institutional Liquid Reserves Fund. (*See* Ex. 3 to Decl. of James A. Moore in Supp. of Pls.' Mot. for Leave to Amend Compl., dated April 1, 2015 ("Moore Decl."), Dkt. No. 157-4.)

Therefore defendants urge the Court to deny plaintiffs' motion on the basis that the amendments are futile.

## II. LEGAL STANDARD

Fed. R. Civ. P. 15(a)(2) provides that a Court "should freely give leave [to amend a pleading] when justice so requires." Although leave to amend is liberally granted, it may properly be denied for "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Loreley Fin. No. 3 Ltd. v. Wells Fargo Sec., LLC*, __ F.3d __, 2015 WL 4492258, at *25 (2d Cir. July 24, 2015). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. Int'l Bus. Mach. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002); *see also Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999) ("[W]here the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied.").

## III. DISCUSSION

### A. The Court grants plaintiffs leave to assert breach of the duty of loyalty claims in Counts One through Three of the Fourth Amended Complaint

As explained above, plaintiffs seek to resurrect their claims based on defendants' purported breach of the duty of loyalty. They allege that plaintiffs placed the interests of Citigroup and its affiliates above those of Plan participants by adopting wholesale the proposal of CAM representatives to (1) add three new Affiliated Funds to the Plan and (2) map investments from unaffiliated to Affiliated Funds without considering lower cost alternative investments. Plaintiffs also allege that the BPIC

devoted the majority of its meetings to the consideration of defined benefit pension plan investments—as opposed to the 401(k) Funds—because Citigroup bore the risk of underperformance of the defined benefit pension plan investments.  Only after deciding to sell CAM to an unaffiliated entity did defendants create a new committee dedicated solely to monitoring the 401(k) Plan and develop a watch list for underperforming funds. (FAC ¶¶ 55-56.)  Plaintiffs contend that these actions comport with a breach of the duty of loyalty because they show that defendants remained uninterested in scrutinizing the soundness of the Affiliated Funds while they were generating fees for Citigroup.

Section 404 of ERISA sets forth the standard of care that all fiduciaries must apply in administering an employee benefit plan.  Specifically, Section 404(a)(1) provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1).  This is commonly known as a fiduciary's duty of loyalty.  As the U.S. Court of Appeals for the Second Circuit has explained:

> Although officers of a corporation who are trustees of its pension plan do not violate their duties as trustees by taking action which, after careful and impartial investigation, they reasonably conclude best to promote the interests of participants and beneficiaries simply because it incidentally benefits the corporation, or indeed, themselves, their decisions must be made with *an eye single to the interests of the participants and beneficiaries*. . . . This, in turn, imposes a duty on the trustees to avoid placing themselves in a position where their acts as officers or directors of the corporation will prevent their functioning with the complete loyalty to participants demanded of them as trustees of a pension plan.

*Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir. 1982) (emphasis added) (citations omitted).  A fiduciary must always "wear the fiduciary hat when

making fiduciary decisions" even when that fiduciary represents a plan sponsor or those who provide services to the ERISA plan. *Pegram v. Herdrich*, 530 U.S. 211, 225 (2000).

This Court must determine whether the proposed fourth amended complaint "alleges *nonconclusory* factual content raising a *plausible* inference" that defendants breached their duty of loyalty such that the complaint may withstand a later Rule 12(b)(6) challenge. *Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc. (PBGC)*, 712 F.3d 705, 718 (2d Cir. 2013).  This Court finds that the new allegations in plaintiffs' proposed fourth amended complaint, namely paragraphs 55 and 56, permit a plausible inference that defendants breached their duty of loyalty when monitoring, adding, and mapping assets into the Affiliated Funds.

Plaintiffs' new allegations detail the divided loyalties of the Plan's fiduciaries, which may have motivated defendants to place Citigroup's interests above those of Plan participants. For instance, defendant Cumming both sat on the BPIC and served as chief operating officer for affiliates of CAM. (FAC ¶ 22(C).)  Plaintiffs allege that defendants—including Cumming—approved CAM's restructuring proposal without considering lower cost alternatives to the Affiliated Funds because CAM would "receive a direct financial benefit" if Plan assets were invested in the funds it offered. (*Id.* ¶ 55.)

Moreover, plaintiffs allege that Citigroup engaged in robust evaluations of defined benefit plan investments throughout the class period, but failed to scrutinize the 401(k) Plan in the same or similar manner. (*Id.*)  Since shortfalls of the defined benefit plan had to be made up by Citigroup, plaintiffs allege that defendants acted in a self-interested manner by spending their committee deliberations analyzing the defined benefit plan options and not those of the 401(k) Plan, which were simultaneously generating large fees for Citigroup affiliates. (*Id.*)

Plaintiffs also allege that around the time Citigroup stopped receiving fees from the Affiliated Funds—because it sold CAM to Legg Mason—defendants engaged in far stricter monitoring of the performance and fees of Plan investments.  (*Id.* ¶¶ 52, 54.)  For example, defendants created a new committee dedicated solely to the review of 401(k) Plan funds, appointed a 401(k) Plan Chief Investment Officer, and created a watch list for underperforming funds, which included several of the previously-Affiliated Funds. (*Id.* ¶¶ 56, 108.)  In addition, after selling CAM to Legg Mason, defendants conducted an "extensive review of the 401(k) Plan's investments" with the goal of "reduc[ing] 401(k) Plan expenses," and eventually removed all but one Affiliated Fund as an investment option. (*Id.* ¶¶ 52-53.)

These allegations raise a plausible inference that the committee defendants did not act solely in the interests of the Plan's beneficiaries during the class period.  The Court may infer that defendants chose not to scrutinize the Affiliated Funds and their fee structure for fear that had they done so, they could not offer them as Plan investments and would lose the fees they generated.  This conflict, in turn, harmed plaintiffs by allowing them to invest in Funds the Plan would not have otherwise offered that charged excessively high fees.  The Court therefore grants plaintiffs' request to add breach of the duty of loyalty allegations to Counts One through Three as set forth in the proposed fourth amended complaint.

In permitting this amendment, the Court recognizes that the duty of loyalty and the duty of prudence, *see* 29 U.S.C. § 1104(a)(1)(B), are interrelated and overlapping. *See PBGC*, 712 F.3d at 715; *Donovan*, 680 F.2d at 271; *Leber I*, 2010 WL 935442, at *13.  Ultimately, the claims in Counts One through Three will rise or fall on whether plaintiffs can prove that defendants acted imprudently in making the challenged fiduciary decisions based, in part, on whether defendants acted in a self-interested manner or whether they acted with "an eye single to the interests" of the Plan's participants.  *Donovan*, 680 F.2d at 271.

### B. The Court denies plaintiffs leave to add the allegations relating to the underperformance of funds as set forth in Counts One through Three of the Proposed Fourth Amended Complaint

Plaintiffs also attempt to revive their allegations that defendants breached their fiduciary duties by steering assets into Affiliated Funds that underperformed other comparable investments.  Plaintiffs contend that they have cured the earlier factual defects by alleging (1) a history of poor performance at the inception of the Class Period and (2) that defendants did not appropriately investigate this underperformance at the time of the challenged transactions.

Section 404 of ERISA requires that fiduciaries investigate plan options with the "care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B); *see Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 618 (2d Cir. 2006).  "[T]his standard 'focuses on a fiduciary's conduct in arriving at an investment decision, not on its results, and asks whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment.'"  *PBGC*, 712 F.3d at 716.

To state a claim for a breach of the fiduciary duty of prudence, the plaintiff must "allege[] *non-conclusory* factual content raising a *plausible* inference of misconduct and [may] not rely on 'the vantage point of hindsight.'" *PBGC,* 712 F.3d at 718.  So long as "the complaint 'alleges facts that, if proved, would show that an adequate investigation would have revealed to a reasonable fiduciary that the investment at issue was improvident,'" the claim will survive a motion to dismiss "even absent any well-pleaded factual allegations relating directly to the methods employed by the ERISA fiduciary." *Id*.  "Because the content of the duty of prudence turns on 'the circumstances . . . prevailing' at the time the fiduciary acts,

§ 1104(a)(1)(B), the appropriate inquiry will necessarily be context specific."
*Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2471 (2014).

Plaintiffs offer two types of allegations to bolster their underperformance allegations. First, plaintiffs have added facts suggesting that the process by which defendants evaluated the performance of the Affiliated Funds was flawed. Plaintiffs allege that at the time defendants decided to add three Affiliated Funds as Plan investment options and map participants' assets from unaffiliated to Affiliated Funds, committee defendants failed to consider alternative, better-performing funds and essentially "rubber-stamped" CAM's restructuring proposal. (*See* FAC ¶¶ 55(C), 63, 97, 102.) Similarly, plaintiffs allege that, based on their review of the BPIC meeting minutes, defendants were performing little to no monitoring of the performance of the Affiliated Funds throughout the Class Period, until those Funds were no longer affiliated with Citigroup. (*See* FAC ¶¶ 55(D), 56, 62.)

Second, plaintiffs have alleged a history of poor (or insufficient) performance for some of the Affiliated Funds at (1) the inception of the Class Period and (2) when defendants elected to add new Affiliated Funds or map participants' assets from unaffiliated to Affiliated Funds. (*See* FAC ¶¶ 62-63.)

Nonetheless, Second Circuit precedent requires that plaintiffs' allegations raise a plausible inference that "the investments at issue were *so plainly risky* at the relevant times that an adequate investigation would have revealed their imprudence, or that a superior alternative investment was readily apparent such that an adequate investigation would have uncovered that alternative"; that is, that "a prudent fiduciary in like circumstances would have acted differently." *PBGC*, 712 F.3d at 719-20 (emphasis added). Plaintiffs' allegations of the Funds' alleged underperformance in average annual returns as compared to certain benchmark indices or alleged insufficient performance history (*see* FAC ¶¶ 62-63) do not raise a plausible inference that a prudent fiduciary would have found those Funds to be "so

plainly risky" as to render the investments in them imprudent. *PBGC*, 712 F.3d at 719; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)); *Laboy v. Bd. of Trustees of Bldg. Serv. 32 BJ SRSP*, 513 F. App'x 78, 79-80 (2d Cir. 2013) (affirming the dismissal of performance allegations where the plaintiffs alleged both that the defendants failed to implement a procedure for reviewing the fund's performance and that the fund had underperformed comparable funds by 6-22% during the class period because "allegations of poor results alone do not constitute allegations sufficient to state a claim for" a fiduciary breach).

Thus, even if defendants had adequately investigated the performance of the Funds at the time of the challenged transactions, plaintiffs' allegations do not reveal the Funds to be so improvident that a prudent fiduciary would have either removed them or never added them to the Plan's offerings in the first place. *See PBGC*, 712 F.3d at 718-20. Accordingly, this Court denies plaintiffs' request to add the underperformance allegations to Counts One through Three of the fourth amended complaint as futile.

### C.  The Court denies plaintiffs leave to add Count Four to the Fourth Amended Complaint

Plaintiffs also seek leave to add a separate failure to monitor claim "to make clear [that] it is a separate duty and because the recently produced Committee Minutes reflect extreme misconduct in this regard." (Pls.' Reply at 5.)  Plaintiffs rely on the now-familiar allegations that defendants conducted either no monitoring or purely perfunctory monitoring of the Plan investment options based on BPIC meeting minutes. (FAC ¶ 55(D).) Plaintiffs allege that such cursory review stands in stark contrast to the more robust monitoring of (1) other pension plans on which defendants—as opposed to Plan participants—bore the risk of underperformance and (2) the Affiliated Funds once they were no longer affiliated with Citigroup. (*Id.*

¶¶ 55-56, 108.)  Plaintiffs also claim that a Citigroup internal audit report identified serious procedural deficiencies in the way defendants selected and monitored investment options. (Pls.' Reply at 5-6; *see also* Ex. 1 to Moore Decl.)

As plaintiffs acknowledge in their papers, this cause of action is currently part of Count One of the TAC, which alleges that "[a]t all relevant times, Committee Defendants had the duty to continually monitor the suitability of Plan investment options, and to remove or replace any investment option that was found to be imprudent." (TAC ¶ 78; *see also* Pls.' Reply at 5.)  In *Leber II*, the Court underscored that this cause of action has two components:  failure to "(1) adequately monitor Plan investments, *and* (2) remove the Affiliated Funds from the Plan over the course of the class period." 2011 WL 5428784, at *4 (emphasis added).  The Court noted that "[u]nder ERISA, a trustee's fiduciary responsibilities do not terminate upon the initial investment decision . . . . Rather, plan fiduciaries are required to monitor a plan investment 'with reasonable diligence and to withdraw the investment if it becomes clear or should have become clear that the investment is no longer proper for the Plan.'" *Id.* (citation omitted); *see also Bona v. Barasch*, No. 01 CIV. 2289, 2003 WL 1395932, at *19 (S.D.N.Y. Mar. 20, 2003) (noting the interrelation of the duties to monitor and remove imprudent investment contracts), *on reconsideration sub nom. Martinez v. Barasch*, 2004 WL 1555191 (S.D.N.Y. July 12, 2004).

Plaintiffs are not alleging a new legal theory or asserting a different breach of duty, as the breach—and the harm—is the same for Count One as it is for Count Four of the FAC.  Instead, plaintiffs are merely attempting to reiterate the same count in stronger terms.  The Court will allow plaintiffs to add the new factual allegations regarding defendants' deficient monitoring—as set forth in paragraph 108 of the FAC—to Count One, but otherwise denies leave to add a separate Count Four on the grounds that it is duplicative of Count One.

### D.   The Court denies plaintiffs leave to add Count Five to the Fourth Amended Complaint

Next, plaintiffs seek leave to add a new cause of action, alleging that defendants breached their fiduciary duties and engaged in prohibited transactions in connection with the Plan's investment in an entirely new fund—the Stable Value Fund—during the class period.  Plaintiffs bring this claim against the committee defendants as well as the SVF defendants.  The SVF defendants are Travelers, David Tyson, Robb Barnum, Michael Connelly, Link Richardson, and Lisa Thomas. (FAC ¶ 26.)

The SVF, a trust fund managed by Travelers, was the second largest fund offered in the Plan. (FAC ¶ 112.)  According to plaintiffs, the committee defendants did not appoint the SVF committee as the portfolio manager until December 2002—although they had been making investment decisions prior to that time—and did not execute a written investment management agreement to invest in the SVF until February 2006, after Citigroup sold Travelers and appointed a non-affiliated entity as investment manager. (*Id*. ¶¶ 114, 116, 118-19, 126.)  These decisions, plaintiffs contend, gave the SVF defendants "unfettered discretion to invest [the majority of the] SVF assets" in Travelers securities and constituted prohibited transactions between fiduciaries and the Plan pursuant to section 406 of ERISA. (*Id*. ¶¶ 112, 114, 116.)  Plaintiffs also allege that the committee and SVF defendants breached their fiduciary duties to Plan participants by failing to monitor and remove the SVF, which charged wrap and administrative fees that were almost three times what the Plan paid to Travelers' non-affiliated replacement. (*Id*. ¶¶ 112, 127-28.)

Plaintiffs assert that proposed Count Five is timely because it relates back to the original complaint pursuant to Fed. R. Civ. P. 15(c).  Plaintiffs also claim that they only learned certain critical facts related to Count Five in recent discovery, *i.e.*, that the administrative fees paid to Travelers were excessive and that there was no written investment agreement regarding the management of the SVF for most of the class period.

Defendants oppose plaintiffs' request on the grounds that the amendment is futile because the allegations are time-barred[3] and do not satisfy the requirements of the relation back rule pursuant to Fed. R. Civ. P. 15(c).  To the extent plaintiffs assert that they only learned about this claim in recent discovery, defendants respond that (1) plaintiffs have been able to assert many of the same allegations against other funds without the benefit of discovery and (2) paragraph 16 of the FAC concedes that Leber knew, as of October 2007, the allegations relating to the SVF, including plaintiffs' excessive fees claim. (FAC ¶ 16.)

Rule 15(c)(1) permits relation back to the date of the original pleading when:

> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(B)-(C).

---

[3] 29 U.S.C. § 1113 requires that a plaintiff file suit by the earlier of the following two dates:  (1) six years after the ERISA violation; or (2) three years after the earliest date on which the plaintiff had actual knowledge of the violation.  *See Leber III*, 2014 WL 4851816, at *3.  Thus, plaintiffs should have brought claims related to the SVF by October 2010, three years after they learned of the SVF violations (*see* FAC ¶ 16), and certainly no later than January 2012, six years after the restructuring of the SVF, following Citigroup's sale of Travelers to an unaffiliated entity (*see id.* ¶¶ 126-27).

 "The purpose of Rule 15 is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities." *Slayton v. Am. Express Co.*, 460 F.3d 215, 228 (2d Cir. 2006*), as amended* (Oct. 3, 2006) (internal quotation marks omitted).  "For a newly added action to relate back, the basic claim must have arisen out of the conduct set forth in the original pleading. . . . Under Rule 15, the central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading."  *Id.* (citations and internal quotation marks omitted); *see also U.S. ex rel. Kirk v. Schindler Elevator Corp.*, 926 F. Supp. 2d 510, 518 (S.D.N.Y. 2013).

Nonetheless, "where an amended complaint tracks the legal theory of the first complaint, claims that are based on an 'entirely distinct set' of factual allegations will not relate back." *Slayton,* 460 F.3d at 228.  That is, an amended pleading will not relate back where the new claims are based on "different conduct, in a different location, and attributable to different entities than the claims set forth" in the original pleading.  *ASARCO LLC v. Goodwin*, 756 F.3d 191, 203 (2d Cir.), *cert. denied*, 135 S. Ct. 715 (2014); *see also Hirsch v. Suffolk Cnty.*, No. 08–CV–2660, 2015 WL 1275461, at *8 (E.D.N.Y. Mar. 18, 2015) ("[W]here the new claims arise from conduct that is separate from yet related to the conduct alleged in the earlier pleading, the new claims will not relate back.").

The standard for adding additional defendants is more stringent, as plaintiffs must satisfy the requirements of Rule 15(c)(1)(C) in addition to Rule 15(c)(1)(B).  The Second Circuit "has interpreted the rule to preclude relation back for amended complaints that add new defendants, where the newly added defendants were not named originally [except as defendant Does] because the plaintiff did not know their identities." *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) (citing, *inter alia*, *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 470 (2d Cir. 1995)).  Even where the plaintiff exercises due diligence in attempting to ascertain the names of the defendants through discovery and the defendants thwart such efforts, the Second Circuit has

routinely dismissed claims against newly-named Doe defendants because "the lack of knowledge of a John Doe defendant's name does not constitute 'a mistake of identity'" for purposes of Rule 15(c)(1)(C). *See Hogan*, 738 F.3d at 518-19; *Scott v. Vill. of Spring Valley*, 577 F. App'x 81, 82-83 (2d Cir. 2014) (distinguishing *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538 (2010)).

A review of the procedural history as well as the evolution of the pleadings is helpful to the Court's Rule 15 analysis.  In the original complaint filed in October 2007, plaintiffs allege that the committee defendants caused the 401(k) Plan to invest in "a Stable Value Fund offered and managed by Travelers Life & Annuity," a Citigroup subsidiary. (Original Compl. ¶¶ 3, 5.)  Those allegations repeat in the first amended complaint filed in July 2008, but they are absent from plaintiffs' proposed second amended complaint filed in August 2010, the actual second amended complaint filed in November 2011, and the operative third amended complaint filed in April 2013.  Moreover, there are no specific factual allegations of misconduct regarding the SVF in the original or amended complaint.  Tellingly, plaintiffs' definition of Affiliated Funds plainly excludes the SVF, which is not a "Smith Barney and Salomon Brothers mutual fund[]" but a trust fund managed by Travelers. (*See* Original Compl. ¶ 4.)

For this reason, in the motion to dismiss briefing in August 2008, defendants noted that "[p]laintiffs also allege that the Plan offered . . . a Stable Value Fund . . . , but do not appear to allege ERISA violations based on" that investment. (Mem. of Law in Supp. of Defs.' Mot. to Dismiss the First Am. Compl. at 4, Dkt. No. 21.)  When plaintiffs failed to contest defendants' statement in their opposition to defendants' motion to dismiss—which is limited to arguments regarding the Affiliated Funds and the services provided by Citistreet and Citibank—defendants asked the Court to confirm that no claim based on the SVF was at issue in this case. (*See* Reply Mem. of Law in Further Supp. of Defs.' Mot. to Dismiss the First Am. Compl. at 5 n.4, Dkt. No. 25.)  Although the Court did not specifically

address the SVF allegations in its March 2010 opinion, *see* 2010 WL 935442, the clear import of the briefing and the Court's opinion is that there was no claim, as there were no specific facts alleging misconduct based on the SVF.[4] (*See, e.g.*, Original Compl. ¶¶ 51-53.)  Thereafter, plaintiffs voluntarily dropped any reference to the SVF from the second and third amended complaints.

*Tese-Milner v. Diamond Trading Co.*, No. 04 CIV. 5203, 2011 WL 4501336 (S.D.N.Y. Sept. 29, 2011) is instructive.  In that case, the plaintiff filed an amended complaint three years after the original complaint, in which she omitted the factual allegations involving one antitrust theory and instead asserted a new antitrust theory based on a different set of facts.  *Id.* at *7. The district court dismissed the amended complaint as time-barred because the newly-asserted claims introduced a distinct set of operative facts and therefore did not relate back to the original complaint. *Id.*  The plaintiff then filed a second amended complaint, resurrecting the original claim that plaintiff had "abandoned three years earlier" and with which the "[d]efendant had not been presented for nearly six years." *Id.*  As here, the plaintiff asked the court to find that the claims in the third complaint relate back to the first complaint, even though they were omitted from the second complaint.  The district court rejected this argument, explaining that "[r]elation-back cannot be used as a mechanism to revive abandoned claims." *Id.* at *8.  The holding was predicated on the finding that the defendants did not have notice of the abandoned claims, but were instead preparing to defend against claims arising out of an entirely "different set of operative facts" rather than an alternative legal theory.  *Id.*

In a summary order, the Second Circuit agreed with the district court in *Tese-Milner* that "most of the allegations in the first and second amended complaints do not relate back to the original complaint" and affirmed the

---

[4] To the extent proposed Count Five alleges a prohibited transaction violation, this Court indeed dismissed those claims, without leave to replead, in *Leber I*.  *See Leber II*, 2011 WL 5428784, at *2 n.1.

dismissal of those claims. *W.B. David & Co. v. De Beers Centenary AG*, 507 F. App'x 67, 70 (2d Cir. 2013). However, the Second Circuit found that the one claim that had appeared in all three complaints survived because the defendants "had notice of this claim through all three pleadings, and the claim thus relates back to the filing of the original complaint." *Id.* (underscoring that "an amended pleading that lays out the allegations of a previous pleading in more definite and precise terms will relate back, but claims based on an 'entirely distinct set' of factual allegations will not").

Taken to its logical conclusion, plaintiffs' argument would mean that they could file a complaint alleging a breach of an ERISA duty based on one set of facts, then file numerous amended complaints alleging breaches based on entirely different sets of facts, and then years later, file a complaint alleging a breach of duty based on the original facts, "asserting that the newest complaint relates back to the original complaint simply because the original complaint contained those same facts. That result," the *Tese-Milner* court explained, "is clearly not envisaged by the Federal Rules of Civil Procedure." 2011 WL 4501336, at *8 n.7.; *see also Glover v. FDIC*, 698 F.3d 139, 148 (3d Cir. 2012) ("The absence of any limit in the application of Rule 15(c) to such expansive pleadings 'could cause defendants' liability to increase geometrically and their defensive strategy to become far more complex long after the statute of limitations has run.'").

Whether this Court compares the current allegations to the operative pleading—which contains no reference to the SVF—or the original complaint—which contains at most a peripheral reference to the SVF—it is clear that proposed Count Five alleges a new claim "based on an 'entirely distinct set' of factual allegations." *Slayton*, 460 F.3d at 228. The SVF is a different type of fund—a trust fund—managed by a different subsidiary (Travelers) and a different committee (the SVF defendants), involving a different set of fees. None of the facts concerning any misconduct related to the SVF was alleged in the original complaint or any subsequent complaint until the proposed fourth amended complaint.

Moreover, even if the Court found that in the most general sense the original complaint provided notice that the committee defendants caused the Plan to invest in products managed by affiliates—such as the SVF—and paid the affiliates related fees in dereliction of their fiduciary duties, plaintiffs have not mentioned the SVF, the SVF committee, or any breaches of duty related to those entities in the past seven years and two amended complaints.  It would therefore be "*highly* prejudicial" to defendants to relate back the SVF allegations to the original complaint.  *Tese-Milner*, 2011 WL 4501336, at *8 (emphasis in original); *see also Glover*, 698 F.3d at 148 ("Pleadings are not like magic tricks, where a plaintiff can hide a claim with one hand, only to pull it from her hat with the other."  Where the facts appeared "entirely peripheral to the Complaint's central allegations," then "even under the most generous reading," they will not provide fair notice to defendants.); *Dumont v. Litton Loan Serv., LP*, No. 12–cv–2677, 2014 WL 815244, at *15-16 (S.D.N.Y. Mar. 3, 2014).

Given that plaintiffs never alleged any misconduct related to the SVF in the original complaint and dropped any oblique reference to the SVF in the second and third amended complaints, this Court finds that Count Five does not relate back pursuant to Fed. R. Civ. P. 15(c)(1)(B).  *See, e.g., Goodwin*, 756 F.3d at 202-03; *Hirsch*, 2015 WL 1275461, at *8.  Accordingly, the SVF claim is untimely and plaintiffs' request to add Count Five to the fourth amended complaint is denied as futile.[5]

Finally, to the extent that plaintiffs allege that the statute of limitations should be tolled because defendants fraudulently concealed their breaches

_____

[5] Although the Court finds that the claim itself is untimely, Second Circuit case law would also preclude relation back of the newly-named SVF defendants because the lack of knowledge of the identities of the SVF defendants does not constitute a mistake of identity pursuant to Fed. R. Civ. P. 15(c)(1)(C). *See, e.g., Hogan*, 738 F.3d at 517-18.  It should be noted that David Tyson, who is one of the SVF defendants (FAC ¶ 26), remains in this action because he has been named as a defendant in the TAC due to his role as a member of the BPIC (TAC ¶ 19A(H)).

of duty by failing to turn over discovery earlier in the litigation (FAC ¶ 132), their contention is meritless.  Plaintiffs actually admit to knowing the relevant facts (*i.e.*, "that the fees charged by the . . . Stable Value Fund were higher than comparable funds and excessive compared to other comparable options") by October 2007. (FAC ¶ 16.)

Moreover, to successfully plead the fraud or concealment exception to ERISA's six-year statute of limitations, "a complaint must allege that a fiduciary either (1) breached its duty by making a knowing misrepresentation or omission of a material fact to induce an employee/beneficiary to act to his detriment; or (2) engaged in acts to hinder the discovery of a breach of fiduciary duty." *Janese v. Fay*, 692 F.3d 221, 228 (2d Cir. 2012) (internal quotation marks omitted).  These allegations must be pled with particularity, *see* Fed. R. Civ. P. 9(b), "requiring a plaintiff to specify the time, place, speaker, and content of the alleged misrepresentations, as well as how the misrepresentations were fraudulent and those events which give rise to a strong inference that the defendant had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Janese*, 692 F.3d at 228 (internal quotation marks omitted). Plaintiffs fail to plead that defendants intended to defraud or fraudulently concealed key documents earlier in this litigation; they merely disagree with defendants' discovery responses and objections. (*See* FAC ¶ 132.)

### E. The Court denies plaintiffs leave to add Count Six to the Fourth Amended Complaint

Next, plaintiffs seek to add a prohibited transaction claim in connection with the brokerage fees charged by Citigroup affiliates pursuant to 29 U.S.C. § 1106, which prohibits transactions between a Plan and a party in interest and between a Plan and fiduciary.  Plaintiffs allege that the Plan paid "substantial" brokerage fees to Citigroup affiliates that were never disclosed to participants.  (FAC ¶ 134.)  The only specific allegation is related to the Stable Value Fund:  "The Citigroup brokerage relationship with the SVF was never disclosed to participants." (*Id.* ¶ 137.)

Plaintiffs contend that this claim "simply adds specifics from recent discovery to the claim in Count I of the original complaint that Committee Defendants caused the Plan to engage in prohibited transactions by causing it to 'purchase Citigroup-affiliated products and services, and pay . . . investment management and other fees in connection therewith.'" (Pls.' Reply at 9 (quoting Original Compl. ¶ 74).)  But plaintiffs fail to realize that the Court dismissed Count One of the original complaint in its March 2010 opinion without leave to replead.  *See Leber II*, 2011 WL 5428784, at *2 n.1.

In addition, granting leave to add Count Six would be futile because any allegations relating to the SVF are time-barred. *See* discussion, *supra*. Moreover, there are no specific allegations regarding the Affiliated Funds as to permit a relation back analysis, nor are there allegations setting forth any actionable course of conduct.  *See Leber I*, 2010 WL 935442, at *10-11.  The Court therefore denies plaintiffs' request to include Count Six in the fourth amended complaint.

### F.   The Court grants plaintiffs leave to add two named plaintiffs to the Fourth Amended Complaint

Plaintiffs also seek leave to add two new named plaintiffs—Leslie Highsmith and Sherri M. Harris—who invested in the Smith Barney Large Cap Growth Fund. (FAC ¶¶ 19-20.)  Plaintiffs contend that the claims of the new named plaintiffs are timely because they are members of the current putative class and their claims are tolled based on the doctrine outlined in *American Pipe and Construction Co. v. Utah*, 414 U.S. 538 (1974).

Defendants vigorously oppose the addition of these two plaintiffs. Defendants' argument unfolds as follows:  (1) *American Pipe* tolling is not available where the named plaintiffs lack standing to bring the claim in question; (2) Leber and Kennedy—the named plaintiffs—did not invest in the Smith Barney Large Cap Growth Fund and therefore have no constitutional standing to assert claims on behalf of participant-investors in the Smith Barney Large Cap Growth Fund, *see Kendall v. Emps. Ret. Plan of*

*Avon Prods.*, 561 F.3d 112, 119-21 (2d Cir. 2009); *Taveras v. UBS AG*, __ F. App'x __, 2015 WL 1934576, at *1 (2d Cir. Apr. 30, 2015); and (3) Since Leber and Kennedy lack standing, defendants' argument proceeds, *American Pipe* tolling does not apply to Harris and Highsmith's claims, which are otherwise untimely pursuant to 29 U.S.C. § 1113.[6]  Accordingly, defendants contend that this Court should deny plaintiffs leave to add the new named plaintiffs on futility grounds.

In *American Pipe and Construction Co. v. Utah*, 414 U.S. 538 (1974), the U.S. Supreme Court held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Id.* at 554.  The Supreme Court has further explained that "[o]nce the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied. At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action." *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 354 (1983).

The Court is sensitive to defendants' concerns and concurs that there are serious issues regarding the constitutional and class standing of the current named plaintiffs.  Nonetheless, defendants are not currently moving to dismiss the claims related to the eight Affiliated Funds in which Leber and Kennedy did not invest.  The question of the named plaintiffs' standing is appropriate for resolution upon plaintiffs' motion for class certification.[7] (*See* Nov. 18, 2011 Tr. at 10-11, Ex. 2 to Moore Decl.)

———————————————

[6] Because the Smith Barney Large Cap Growth Fund was not offered as an investment option after September 4, 2007 (FAC ¶ 53), any alleged breach related to that fund occurred more than six years ago and is therefore time-barred pursuant to 29 U.S.C. § 1113.

[7] The Court, however, recognizes that the question of class—as well as constitutional—standing is "distinct from the criteria that govern whether a named plaintiff is an adequate class representative under Rule 23(a)." *Ret. Bd. of the Policemen's Annuity &*

Since Leber and Kennedy have asserted claims on behalf of the participant-investors in all nine Affiliated Funds, and the Court has not yet ruled on the issues of standing or class certification, *American Pipe* tolling is applicable to Harris and Highsmith's claims.  *See Parker*, 462 U.S. at 354; *In re WorldCom Sec. Litig.*, 496 F.3d 245, 254-55 (2d Cir. 2007) ("Because members of the asserted class are treated for limitations purposes as having instituted their own actions, at least so long as they continue to be members of the class, the limitations period does not run against them during that time."); *Int'l Fund Mgmt. S.A. v. Citigroup Inc.*, 822 F. Supp. 2d 368, 379 (S.D.N.Y. 2011).[8]  The Court therefore grants plaintiffs' request to add Harris and Highsmith as named plaintiffs to the fourth amended complaint.

---

*Benefit Fund of the City of Chicago v. Bank of New York Mellon,* 775 F.3d 154, 161 (2d Cir. 2014); *see also NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.* (*NECA*), 693 F.3d 145, 158 n.9 (2d Cir. 2012).

[8] In opposing this request, defendants cite to two opinions by Judge Katherine Forrest in which she declined to extend *American Pipe* tolling to claims of putative class members who sought to intervene at the same time she dismissed claims of the named plaintiffs for lack of standing. *See In re Puda Coal Sec. Inc. Litig.*, No. 11 Civ. 2598, 2013 WL 5493007, at *13-14 (S.D.N.Y. Oct. 1, 2013); *In re Direxion Shares ETF Trust*, 279 F.R.D. 221, 237 (S.D.N.Y. 2012).  District courts in this circuit are split on the question of whether *American Pipe* tolling applies to claims initiated by named plaintiffs when non-named plaintiffs move to intervene after the original claims have been dismissed for lack of standing.  *See In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152, 160 (S.D.N.Y. 2012); *see also Monroe Cnty. Emps.' Ret. Sys. v.YPF Sociedad Anonima*, 980 F. Supp. 2d 487, 488-89 & nn.4-5 (S.D.N.Y. 2013).  Most courts that have extended *American Pipe* tolling rely on the same efficiency rationale that underpins *American Pipe*—*i.e.*, if such tolling were unavailable where the named plaintiffs lacked standing, "putative class members would be unable to rely on their purported representatives . . . [and] instead would be forced to . . . anticipate or timely remedy the standing deficiencies" and "make protective filings to preserve their claims."  *Smith Barney*, 884 F. Supp. 2d at 160 (internal quotation marks omitted).  But unlike those cases where the courts have dismissed (or plaintiffs have dropped) claims for lack of standing, the claims at issue here are still alive because this motion is not the appropriate procedural vehicle for the Court to rule on the named plaintiffs' standing or lack thereof.

**IV. CONCLUSION**

For the foregoing reasons, plaintiffs' motion for leave to file a fourth amended complaint (Dkt. No. 151) is granted in part and denied in part. Plaintiffs' motion is granted to the extent that plaintiffs may add the following in their fourth amended complaint: (1) new defendants Walter and Zimmerman; (2) new plaintiffs Highsmith and Harris; and (3) breach of the duty of loyalty allegations in Counts One through Three. Plaintiffs' motion is denied to the extent that they seek to add (1) underperformance allegations to Counts One through Three; (2) a separate failure to monitor claim (Count Four) (although plaintiffs may add FAC paragraph 108 to Count One); (3) a claim based on the SVF (Count Five); and (4) a prohibited transactions claim (Count Six). Plaintiffs are directed to file a revised fourth amended complaint as set forth in this Opinion and Order on or before September 18, 2015. Defendants are directed to answer the revised fourth amended complaint on or before October 9, 2015.[9]

Dated:   New York, NY
         September 8, 2015

SO ORDERED:

Sidney H. Stein, U.S.D.J.

---

[9] Although defendants state that they reserve their right to move to dismiss the fourth amended complaint, this Court has resolved this motion on futility grounds, *i.e.*, by asking whether plaintiffs' claims withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Accordingly, defendants are ill-advised to move to dismiss the fourth amended complaint pursuant to Rule 12(b)(6). To the extent defendants may wish to move to dismiss for lack of standing, the Court will resolve the standing *vel non* of the four named plaintiffs upon plaintiffs' motion for class certification. *See supra* pp. 26-27.