**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Marya J. Leber, Sara L. Kennedy, Leslie Highsmith, Sherri M. Harris *and all others similarly situated*, <br><br> Plaintiffs, <br><br> v. <br><br> The Citigroup 401(k) Plan Investment Committee, *et al*. <br><br> Defendants. | No. 07 Civ. 9329 (SHS) |

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO CERTIFY A CLASS

PAUL, WEISS, RIFKIND, WHARTON &
    GARRISON LLP
1285 Avenue of the Americas
New York, New York  10019-6064
(212) 373-3000

*Attorneys for Defendants*

**TABLE OF CONENTS**

**Page**

I.  NONE OF THE PROPOSED CLASS REPRESENTATIVES HAVE VIABLE
    CLAIMS WITH RESPECT TO EIGHT OF THE NINE FUNDS ................................... 7

    A.  Harris's Claims Are Time-Barred ........................................................................7

    B.  Plaintiffs Lack Standing To Bring Claims Regarding Funds in Which
        They Did Not Invest ............................................................................................9

        1.  Constitutional Standing ............................................................................. 10

        2.  Class Standing ........................................................................................... 14

    C.  The Only Viable Claims Relate to the Citi Institutional Liquid Reserves
        Fund During the Period April 21, 2003 – December 1, 2005 ...............................17

II. NO CLASS SHOULD BE CERTIFIED BECAUSE PLAINTIFFS DO NOT
    MEET THE TYPICALITY AND COMMONALITY REQUIREMENTS OF
    RULE 23(A) ................................................................................................................. 17

    A.  The Proposed Class Representatives' Claims are Atypical ...................................17

    B.  Litigation Will Focus on Individual Issues Rather Than Common
        Questions ..............................................................................................................19

III. THE PROPOSED CLASS CANNOT BE MAINTAINED UNDER RULE 23(B) ......... 22

    A.  Class Certification is Not Proper Under Rule 23(b)(1) .........................................22

    B.  Class Certification Is Not Proper Under Rule 23(b)(3) .........................................23

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amchem Products* v. *Windsor*,
  521 U.S. 591 (1997)...................................................................................................22

*American Pipe and Construction Co.* v. *Utah*,
  414 U.S. 538 (1974)......................................................................................................8

*Banyai* v. *Mazur*,
  No. 00-9806, 2007 WL 959066 (S.D.N.Y. Mar. 29, 2007)......................................12

*Braden* v. *Wal-Mart Stores, Inc.*,
  588 F.3d 585 (8th Cir. 2009)......................................................................................14

*Cent. States Se & Sw Areas Health & Welfare Fund* v. *Merck-Medco Managed
  Care, L.L.C.*,
  433 F.3d 181 (2d Cir. 2005).................................................................................6, 10

*Contract Buyers League* v. *F&F Inv.*,
  48 F.R.D. 7 (N.D. Ill. 1969).......................................................................................23

*Cornwell* v. *Robinson*,
  23 F.3d 694 (2d Cir. 1994)...........................................................................................9

*In re Direxion Shares ETF Trust*,
  279 F.R.D. 221 (S.D.N.Y. 2012) .................................................................................8

*In re Dreyfus Aggr. Growth Mut. Fund Litig.*,
  No. 98-4318, 2000 WL 1357509 (S.D.N.Y. Sept. 20, 2000) .................................16

*Falcon* v. *Philips Electronics N. Am. Corp.*,
  304 F. App'x 896 (2d Cir. 2008) ...............................................................................18

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  574 F.3d 29 (2d Cir. 2009)....................................................................................6, 17

*Fulghum* v. *Embarq Corp.*,
  785 F.3d 395 (10th Cir. 2015) .....................................................................................7

*Gary Plastic Packaging Corp.* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  903 F.2d 176 (2d Cir. 1990).......................................................................................19

*Hylaszek* v. *Aetna Life Ins. Co.*,
  No. 94 C 5961, 1998 WL 381064 (N.D. Ill. July 1, 1998).......................................23

*In re Initial Pub. Offering Sec. Litig.*,
   471 F.3d 24 (2d Cir. 2006)...........................................................................5, 6

*Kendall* v. *Emps. Ret. Plan of Avon Prods.*,
   561 F.3d 112 (2d Cir. 2009)............................................................................10

*Krinsk* v. *Fund Asset Mgmt., Inc.*,
   875 F.2d 404 (2d Cir. 1989)............................................................................18

*Krueger* v. *Ameriprise Fin.*,
   304 F.R.D. 559 (D. Minn. 2014)......................................................................14

*Kuwait Inv. Office* v. *Am. Int'l Group, Inc.*,
   ---F. Supp. 3d ---, 2015 WL 5294784 (S.D.N.Y. Sept. 10, 2015) .............................8

*L.I. Head Start Child Dev. Serv.* v. *Econ. Opp. Comm'n of Nassau Cnty.*,
   710 F.3d 57 (2d Cir. 2013)..............................................................................12

*Leber* v. *Citigroup 401(k) Plan Inv. Comm.*,
   ---F. Supp. 3d ---, 2015 WL 5244660 (S.D.N.Y. Sept. 8, 2015) ...............................9

*Leber* v. *Citigroup, Inc.*,
   *No.* 07 CIV. 9329 (SHS), 2010 WL 935442 (S.D.N.Y. Mar. 16, 2010)...................13

*Leroy* v. *Paytel III Mgmt. Ass'n, Inc.*,
   No. 91 Civ. 1933 (JFK), 1992 WL 367090 (S.D.N.Y. Nov. 24, 1992)...................19

*Lewis* v. *Casey*,
   518 U.S. 343 (1996) ......................................................................................10

*Lujan* v. *Defenders of Wildlife*,
   504 U.S. 555 (1992)..................................................................................10, 14

*Mahon* v. *Ticor Title Ins. Co.*,
   683 F.3d 59 (2d Cir. 2012)..............................................................................10

*McLaughlin* v. *American Tobacco Co.*,
   522 F.3d 215 (2d Cir. 2008)...............................................................20, 23, 24

*In re Morgan Stanley Mortg. Pass-Through Certs. Litig.*,
   23 F. Supp. 3d 203, 208 (S.D.N.Y. 2014)........................................................8, 9

*Mosley* v. *Vitalize Labs, LLC*,
   No. 13-CV-2470, 2015 WL 5022635 (E.D.N.Y. Aug. 24, 2015)............................16

*In re Northrop Grumman Corp. ERISA Litig.*,
   No. CV 06-06213 MMM JCX, 2011 WL 3505264 (C.D. Cal. Mar. 29, 2011) .................18

*Ortiz* v. *Fibreboard Corp.*,
 527 U.S. 815 (1999)............................................................................................23

*Connecticut* v. *Physicians Health Servs. of Connecticut, Inc.*,
 287 F.3d 110 (2d Cir. 2002)..............................................................................12

*Plumbers & Pipefitters, Nat'l Pens. Fund* v. *Burns*,
 967 F. Supp. 2d 1143 (N.D. Ohio 2013)............................................................16

*Police & Fire Ret. Sys. of City of Detroit* v. *IndyMac MBS, Inc.*,
 721 F.3d 95 (2d Cir. 2013)...............................................................................8, 9

*In re Puda Coal Sec. Inc. Litig.*,
 No. 11 CIV. 2598 KBF, 2013 WL 5493007 (S.D.N.Y. Oct. 1, 2013) ....................8

*Ranke* v. *Sanofi-Synthelabo. Inc.*,
 436 F.3d 197 (3d Cir. 2006)..................................................................................8

*Ret. Bd. of the Policemen's Annuity and Benefit Fund of the City of Chicago* v.
 *Bank of N.Y. Mellon ("Bank of N.Y. Mellon")*,
 775 F.3d 154 (2d Cir. 2014).......................................................................*passim*

*Romero* v. *Flaum Appetizing Corp.*,
 No. 07 CIV. 7222 BSJ JCF, 2011 WL 812157 (S.D.N.Y. Mar. 1, 2011) ............21

*In re SLM Corp. ERISA Litig.*,
 No. 08 Civ. 4334, 2010 WL 3910566 (S.D.N.Y. Sept. 24, 2010).......................12

*Spann* v. *AOL Time Warner, Inc.*,
 219 F.R.D. 307 (S.D.N.Y.2003) ...................................................................21, 23

*Spano* v. *The Boeing Co.*,
 633 F.3d 574 (7th Cir. 2011) ...............................................................................18

*Taveras* v. *UBS AG*,
 612 F. App'x. 27 (2d Cir. 2015) .....................................................................10, 11

*Taylor* v. *United Tech. Corp.*,
 No. 3:06-1494, 2008 WL 2333120 (D. Conn. June 3, 2008) ...............................14

*Teamsters Local 445 Freight Div. Pension Fund* v. *Bombardier Inc.*,
 546 F.3d 196 (2d Cir. 2008)..................................................................................6

*Tussey* v. *ABB, Inc.*,
 No. 06-04305, 2007 WL 4289694 (W.D. Mo. Dec. 3, 2007)...............................14

*In re UBS ERISA Litig.*,
 No. 08-cv-6696, 2014 WL 4812387 (S.D.N.Y. Sept. 29, 2014) .................10, 11, 13

*Wal-Mart Stores, Inc.* v. *Dukes*,
   131 S. Ct. 2541 (2011) ...................................................................................................5, 6, 17, 18

*Walker* v. *Asea Brown Boveri, Inc.*,
   214 F.R.D. 58 (D. Conn. 2003) ......................................................................................................21

*Warth* v. *Seldin*,
   422 U.S. 490 (1975) ..........................................................................................................................6

*Weiss* v. *La Suisse, Societe D'Assurances Sur La Vie*,
   226 F.R.D. 446 (S.D.N.Y. 2005) ...................................................................................................19

**Statutes**

ERISA ..................................................................................................................................... *passim*

**Other Authorities**

Andrew Tangel, *Citi to cut 11,000 workers*, L.A. Times, Dec. 6, 2012, at B1. ..........................21

*Citigroup job cull to hit 75,000*, BBC News, Nov. 17, 2008, *available at*
   http://news.bbc.co.uk/2/hi/business/7733575.stm. ...................................................................21

Bloomberg News, *Citigroup to cut 4,500 workers*, L.A. Times, Dec. 7, 2011. ..........................21

Fed. R. Civ. P. 15 ..............................................................................................................................9

Fed. R. Civ. P. 23 ...................................................................................................................... *passim*

**Preliminary Statement**

Plaintiffs' motion to certify a class asks this Court to ignore the manifest unsuitability of the proposed class representatives.  The claims of the newest named plaintiff (Sherri Harris) are time-barred by ERISA's statute of repose because her claims were brought in 2015—well over six years after the last act that constituted a part of the alleged breaches of fiduciary duty.  Furthermore, each of the three proposed class representatives invested in only one of the nine unique funds at issue, suffered no injury with respect to the other funds, and lacks both constitutional and class standing to bring claims as to funds in which she did not invest.

Even if the proposed class representatives have viable claims, plaintiffs cannot satisfy the requirements for class certification under Rule 23.  The claims of the proposed class representatives are atypical and subject to unique defenses.  Individual issues will also predominate over common issues because the claims of many proposed class members will be time-barred or waived by agreement based on facts specific to each participant.  Moreover, plaintiffs' theory is predicated on the identification of a comparable fund to each fund at issue, but the characteristics of a suitable alternative fund will vary based on each investor's individual preferences, goals, and sophistication.

For all of these reasons, discussed more fully below, this Court should deny plaintiffs' motion for class certification.

**Background**

The 401(k) Plan

Citigroup's 401(k) Plan (the "Plan") is a defined contribution plan under ERISA and is available to employees of Citigroup and affiliated companies organized and operating in the United States.  (Compl. ¶¶ 25–26.)  Participants in the Plan have individual accounts and direct their own investments among the investment options available.  An investment committee

was responsible for determining what investment options would be made available to Plan participants.[1]  (*Id.* ¶¶ 21–22.)  Throughout the putative class period (October 18, 2001– September 4, 2007), Plan participants had at least 20 investment options to choose from at any given time.  (*See, e.g.*, King 1 (Saha Report) at ¶ 17.)[2]

The Funds

Plaintiffs try to recast their claims as an attempt to "recover losses *to the Plan*" arising from defendants allegedly "favoring Citigroup proprietary funds for the Plan, the high fees from which enriched Citigroup."  (Pls.' Mem. 1 (emphasis added).)  However, their claims are about management fees paid by Plan participants invested in nine specific funds offered by the Plan (among many other affiliated and unaffiliated investment options) during the putative class period.  Moreover, these nine funds were affiliated with Citigroup for only a portion of the putative class period.

The nine funds at issue are:  (1) Smith Barney Large Cap Value Fund; (2) Smith Barney Diversified Strategic Income Fund; (3) Smith Barney International All Cap Growth Fund; (4) Citi Institutional Liquid Reserves Fund; (5) Smith Barney Small Cap Value Fund; (6) Smith Barney Fundamental Value Fund; (7) Smith Barney Government Securities Fund; (8) Smith Barney Large Cap Growth Fund; and (9) Salomon Brothers High Yield Bond Fund. (Compl. ¶ 55.)  These funds were managed by Citigroup Asset Management ("CAM") prior to

---

[1]  For the first part of the putative class period (October 18, 2001–August 2, 2005) the Benefit Plans Investment Committee ("BPIC") was responsible for the Plan's investment options. For the second part of the putative class period (August 3, 2005–September 4, 2007), a newly-created 401(k) Plan Investment Committee ("4PIC") was responsible for the investment options.

[2]  Citations to "King Ex. __" refer to exhibits attached to the Declaration of Karen R. King in Support of Defendants' Opposition to Class Certification.

December 1, 2005, when Citigroup sold its asset management business to Legg Mason.  (*Id.*
¶¶ 47, 48.)  After that date, none of the funds in the Plan were affiliated with Citigroup.

Each of the nine funds at issue was an actively managed fund and was governed
by its own prospectus, which set forth its investment strategy, benchmark, management team,
fees and expenses, and past performance.  (*See* King Ex. 1 (Saha Report) at ¶¶ 13, 16; *see, e.g.*,
Exs. 5–13.)  **Table 1** below sets forth each fund, the time period during which the fund was an
investment option in the Plan, the expense ratio for the fund, as well as the average expense ratio
for all potentially comparable funds.[3]  In all but one instance, the expense ratio for the funds at
issue was lower than the expense ratio for potentially comparable funds.  (*See also* King Ex. 1
(Saha Report) at ¶ 30.)  With respect to the Smith Barney High Yield Bond fund, the expense
ratio was only 0.09% higher than the expense ratio for all potentially comparable funds.  (*Id.*at
Table 3.)

---

[3]   In contrast to plaintiffs' approach of cherry-picking one Vanguard fund to use as a
comparator (Compl. ¶ 55), defendants have included all potentially comparable funds based
on categorization by an independent, widely used, industry source (Morningstar).  (King Ex.
1 (Saha Report) at ¶¶ 28–30, Appendix C.)

**Table 1**

| Fund | Time Period in 401(k) Plan | Expense Ratio[4] | Avg. Expense Ratio for Comparables |
|---|---|---|---|
| Smith Barney Large Cap Value Fund | Pre-Class Period – 4/21/03 | 0.59% | 0.94% |
| Smith Barney Diversified Strategic Income Fund | Pre-Class Period – 4/21/03 | 0.68% | 0.79% |
| Smith Barney International All Cap Growth Fund | Pre-Class Period – 4/21/03 | 0.92% | 1.15% |
| Citi Institutional Liquid Reserves Fund | 4/21/03 – Post-Class Period *(no longer affiliated with Citi after 12/1/05)* | 0.15% | 0.36% |
| Smith Barney Small Cap Value Fund *(renamed Legg Mason Partners Small Cap Value Fund as of 11/6/2006)* | 4/21/03 – 9/4/07 *(no longer affiliated with Citi after 12/1/05)* | 0.80% | 0.99% |
| Smith Barney Fundamental Value Fund *(renamed Legg Mason Partners Fundamental Value Fund of 11/6/2006)* | 4/21/03 – 9/4/07 *(no longer affiliated with Citi after 12/1/05)* | 0.67% | 0.80% |
| Smith Barney Government Securities Fund *(renamed Legg Mason Partners Government Securities Fund as of 11/6/2006)* | Pre-Class Period – 9/4/07 *(no longer affiliated with Citi after 12/1/05)* | 0.57% | 0.62% |
| Smith Barney Large Cap Growth Fund *(renamed Legg Mason Partners Large Cap Growth Fund as of 11/6/2006)* | Pre-Class Period – 9/4/07 *(no longer affiliated with Citi after 12/1/05)* | 0.76% | 0.96% |
| Salomon Brothers High Yield Bond Fund *(renamed Legg Mason Partners Global High Yield Bond Fund as of 11/6/2006)* | Pre-Class Period – 9/4/07 *(no longer affiliated with Citi after 12/1/05)* | 0.86% | 0.77% |

Named Plaintiffs[5]

The three named plaintiffs in this action are all former employees of Citigroup who participated in the Plan during all or a portion of the putative class period. Each named plaintiff invested in only one of the nine funds at issue. Two of the named plaintiffs (Leber and

---

[4]   The expense ratio listed is the average expense ratio over the period in which the fund was in the Plan. (King Ex. 1 (Saha Report) at ¶ 18, Appendix C.)

[5]   On October 12, 2015, plaintiffs' counsel informed defendants that Leslie Highsmith was withdrawing as a named plaintiff, after defendants produced a March 3, 2010 waiver agreement signed by Highsmith in connection with her termination of employment at Citigroup in which she released all claims and potential claims against Citigroup, including claims under ERISA. (King Ex. 14 at ¶ 5.)

Kennedy) invested in the Citi Institutional Liquid Reserves Fund.  (Compl. ¶¶14, 16.)  The other named plaintiff (Harris) invested in the Smith Barney Large Cap Growth Fund.  (*Id.* ¶ 19.)  None of the named plaintiffs invested in the other seven funds at issue in this litigation.  None of the named plaintiffs invested in any of the nine funds at issue prior to March 2003.

      1.  <u>Marya Leber</u>.  Leber was a participant in the 401(k) Plan during the entire class period.  (King Ex. 2.)  Of the nine funds at issue in this case, Leber invested only in the Citi Institutional Liquid Reserves Fund (from August 2003 through the end of the class period).  (*Id.*)  Leber was the only named plaintiff in the original complaint filed in this action on October 18, 2007.  (Docket No. 1.)

      2.  <u>Sara Kennedy</u>.  Kennedy was a participant in the 401(k) Plan from the beginning of the class period until April 28, 2005.  (King Ex. 3.)  Of the nine funds at issue, she invested only in the Citi Institutional Liquid Reserves Fund (from April 2003 until April 2005).  (*Id.*)  Kennedy first appeared as a named plaintiff in this action on July 19, 2008, when the First Amended Class Action Complaint was filed.  (Docket No. 15.)

      3.  <u>Sherri Harris</u>.  Harris was a participant in the 401(k) Plan from March 2003 until the end of the class period.  (King Ex. 4.)  Of the nine funds at issue, she invested only in the Smith Barney Large Cap Growth Fund (from March 2003 until the end of the class period).  (*Id.*)  Harris joined this litigation, and asserted her claims for the first time, on September 18, 2015, when the Fourth Amended Class Action Complaint was filed.  (Docket No. 211.)

## **Legal Standard**

      In ruling on a Rule 23 motion for class certification, courts should perform a "rigorous analysis" to ensure that each of the Rule 23 requirements has been met.  *Wal-Mart Stores, Inc*. v. *Dukes*, 131 S. Ct. 2541, 2552 (2011); *In re Initial Pub. Offering Sec. Litig.*("*IPO*"), 471 F.3d 24, 33, 41 (2d Cir. 2006).  Plaintiffs bear the burden of satisfying each

Rule 23 requirement by a "preponderance of the evidence." *Teamsters Local 445 Freight Div.*
*Pension Fund* v. *Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008); *see Dukes*, 131 S. Ct. at
2551 ("Rule 23 does not set forth a mere pleading standard.").

Inevitably, the required rigorous analysis "will entail some overlap with the merits
of the plaintiff's underlying claim" because "[t]he class determination generally involves
considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause
of action." *Dukes*, 131 S. Ct. at 2551–52 (citation and quotation marks omitted); *see also In re*
*Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 38 (2d Cir. 2009) ("[L]ower courts have an
'obligation' to resolve factual disputes relevant to the Rule 23 requirements and to determine
whether the requirements are met, an obligation 'not lessened by overlap between a Rule 23
requirement and a merits issue, even a merits issue that is identical with a Rule 23
requirement.'") (*quoting IPO*, 471 F.3d at 41).

If the proposed class representatives have no viable claims, or if their claims are
not representative of other class members, no class can be certified. *Id.* at 39 ("[W]hen a claim
cannot succeed as a matter of law, the Court should not certify a class on that issue."); *Cent.*
*States Se & Sw Areas Health & Welfare Fund* v. *Merck-Medco Managed Care, L.L.C.,* 433 F.3d
181, 199 (2d Cir. 2005) (holding that "if none of the named plaintiffs purporting to represent a
class establishes the requisite case or controversy with the defendant," then "none may seek
relief on behalf of himself or any other member of the class." (internal quotation marks
omitted)). *See also Warth* v. *Seldin*, 422 U.S. 490, 502 (1975) (holding that proposed class
representatives "must allege and show that they personally have been injured, not that injury has
been suffered by other, unidentified members of the class to which they belong and which they
purport to represent.").

**Argument**

**I.**

**NONE OF THE PROPOSED CLASS REPRESENTATIVES HAVE VIABLE CLAIMS
WITH RESPECT TO EIGHT OF THE NINE FUNDS**

This Court should deny class certification because the proposed class

representatives are unsuitable.  The claims of the newest named plaintiff (Harris) are time-barred

by ERISA's statute of repose.  Moreover, each named plaintiff lacks standing to bring claims

with respect to funds in which she did not invest.  The only viable claims in this action relate to

the Citi Institutional Liquid Reserves Fund—a money market fund (with an average expense

ratio of only 0.15%) that was added to the Plan menu in 2003 (1.5 years after the start of the

putative class period) and which was no longer affiliated with Citigroup after December 1, 2005.

      **A.**      **Harris's Claims Are Time-Barred**

No ERISA action for breach of fiduciary duty may be brought after the *earlier* of

(1) six years from the "last action which constituted a part of the breach or violation" or (2) three

years after "the earliest date on which the plaintiff had actual knowledge of the breach or

violation."  ERISA § 413, 29 U.S.C. § 1113.

Harris first raised her claims for breaches of fiduciary duty in plaintiffs' March

13, 2015 motion to further amend the complaint.  That was 7.5 years after the end of the putative

class period, and 7.5 years after the Smith Barney Large Cap Growth Fund—the only fund at

issue in which Harris invested—was removed as an investment option from the Plan.  Because

the alleged breaches of duty occurred more than six years ago, Harris's claims are time-barred by

ERISA's statute of repose.  *See, e.g.*, *Fulghum* v. *Embarq Corp.*, 785 F.3d 395, 413 (10th Cir.

2015) (six-year limitation under 29 U.S.C. § 1113 is a statute of repose that operates to

extinguish a plaintiff's cause of action whether or not the plaintiff should have discovered within

that period that there was a violation or an injury); *Ranke* v. *Sanofi-Synthelabo. Inc.*, 436 F.3d 197, 205 (3d Cir. 2006) (same).

Although commencement of a class action typically suspends statutes of limitations as to members of the purported class, *American Pipe and Construction Co.* v. *Utah*, 414 U.S. 538, 553 (1974), such tolling does not apply to statutes of repose. *See Police & Fire Ret. Sys. of City of Detroit* v. *IndyMac MBS, Inc.* ("*IndyMac*"), 721 F.3d 95, 109 (2d Cir. 2013), *cert. granted sub nom. Pub. Emps' Ret. Sys. of Mississippi* v. *IndyMac MBS, Inc.*, 134 S. Ct. 1515 (2014) *and cert. dismissed as improvidently granted sub nom. Pub. Emps.' Ret. Sys. of Mississippi* v. *IndyMac MBS, Inc.*, 135 S. Ct. 42 (2014) (holding that "*American Pipe*'s tolling rule, whether grounded in equitable authority or on Rule 23, does not extend to [a] statute of repose[,]" which is a substantive right extinguishing claims after a defined period); *In re Morgan Stanley Mortg. Pass-Through Certs. Litig.* ("*Morgan Stanley*"), 23 F. Supp. 3d 203, 208 (S.D.N.Y. 2014) ("[A] plaintiff whose claim is untimely under a statute of repose cannot look to the pendency of a putative class action to revive its direct claim against the defendant."); *Kuwait Inv. Office* v. *Am. Int'l Group, Inc.*, ---F. Supp. 3d ---, 2015 WL 5294784, at *7–*9 (S.D.N.Y. Sept. 10, 2015) (holding that *IndyMac*, "the controlling authority in this Circuit," precludes reliance on the tolling principle with respect to statutes of repose).[6]

---

[6]   In addition, tolling is not available where the original plaintiffs lacked standing to bring the claims at issue. *In re Puda Coal Sec. Inc. Litig.*, No. 11 CIV. 2598 KBF, 2013 WL 5493007, at *10, *14 (S.D.N.Y. Oct. 1, 2013) (denying motion to intervene as untimely because original named plaintiffs lacked standing to pursue the claims that intervenor was trying to assert after the statute of limitations had run); *In re Direxion Shares ETF Trust*, 279 F.R.D. 221, 231–32 (S.D.N.Y. 2012) (denying motion to intervene on the ground that neither *American Pipe* nor the relation-back doctrine under Fed. R. Civ. P. 15 toll claims where the complaint and procedural history made clear that the original plaintiffs lacked standing as to funds in which they did not purchase shares). Thus, Harris's claims as to the Smith Barney Large Cap Growth Fund are also time-barred because the original plaintiffs (Leber and Kennedy) had no standing to bring claims about that fund. *See infra* § I.B.

The direct claims asserted by Harris also do not "relate back" to the original complaint for purposes of avoiding the statute of repose. *See IndyMac*, 721 F.3d at 110–12 (holding that intervening plaintiffs' claims do not "relate back" to original complaint for purposes of the statute of limitations because procedural rules cannot abridge, enlarge, or modify any substantive right); *Morgan Stanley*, 23 F. Supp. 3d at 208–09 (direct claims asserted by newly added plaintiffs were not revived by rules governing relation back of amendments and joinder of real party in interest). Where, as here, an amendment involves a new party, the relation back doctrine under Rule 15 applies only if failure to name the party in the first instance was the product of mistaken identity. *See Cornwell* v. *Robinson*, 23 F.3d 694, 705 (2d Cir. 1994); *Morgan Stanley*, 23 F. Supp. 3d at 208. There is no allegation here that there was a mistake of identity.

Because Harris has no viable claim, she cannot serve as a class representative.

**B.     Plaintiffs Lack Standing To Bring Claims Regarding
Funds in Which They Did Not Invest**

As this Court has previously recognized, there are also "serious issues regarding the constitutional and class standing of the current named plaintiffs." *Leber* v. *Citigroup 401(k) Plan Inv. Comm.*, ---F. Supp. 3d ---, 2015 WL 5244660, at *16 (S.D.N.Y. Sept. 8, 2015). Of the nine funds at issue in this case, Leber and Kennedy invested in only the Citi Institutional Liquid Reserves Fund, and Harris invested in only the Smith Barney Large Cap Growth Fund. None of the named plaintiffs invested in any of the other seven funds at issue.

Constitutional standing and class standing are distinct inquiries. *See NECA-IBEW Health & Welfare Fund* v. *Goldman Sachs & Co.* ("*NECA*" or "*Goldman Sachs*"), 693 F.3d 145, 158 (2d Cir. 2012). As discussed below, each proposed class representative lacks both

constitutional and class standing to litigate claims about funds in which she did not invest and therefore did not suffer any injury.

        1.   <u>Constitutional Standing</u>

      It is well-established that a plaintiff must demonstrate standing for each claim she seeks to press.  *Mahon* v. *Ticor Title Ins. Co.*, 683 F.3d 59, 64 (2d Cir. 2012).   The "irreducible constitutional minimum" of standing requires, *inter alia*, that (1) the plaintiffs "have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical," and (2) the injury be "fairly trace[able] to the challenged action of the defendant."  *Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (internal citations omitted); *see Taveras* v. *UBS AG*, 612 F. App'x  27, 29 (2d Cir. 2015) (same); *Ret. Bd. of the Policemen's Annuity and Benefit Fund of the City of Chicago* v. *Bank of N.Y. Mellon ("Bank of N.Y. Mellon")*, 775 F.3d 154, 159–60, 163 (2d Cir. 2014) (same); *Kendall* v. *Emps. Ret. Plan of Avon Prods.*, 561 F.3d 112, 118–119 (2d Cir. 2009) (obtaining restitution or disgorgement under ERISA requires that a plaintiff satisfy the strictures of constitutional standing by demonstrating individual loss); *Cent. States Se. & Sw. Areas Health & Welfare Fund*, 433 F.3d at 200 (same).   The fact that this lawsuit is a class action "adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis* v. *Casey*, 518 U.S. 343, 357 (1996) (internal quotation marks omitted).

      The Second Circuit recently addressed constitutional standing in the context of a defined contribution plan, and affirmed the district court's holding that a participant must have invested in the investment option at issue, and suffered injury to her individual account, in order to have constitutional standing.  *Taveras*, 612 F. App'x at 29; *see also In re UBS ERISA Litig.*,

No. 08-cv-6696, 2014 WL 4812387, at *6 (S.D.N.Y. Sept. 29, 2014).  The plaintiff in *Taveras*

alleged that fiduciaries of an ERISA plan sponsored by UBS breached their fiduciary duty by

failing to remove UBS stock as an investment option.  The complaint failed to allege that

Taveras had invested in UBS stock and Taveras was denied leave to amend her complaint.  The

Second Circuit held that Taveras's attempt to "demonstrate injury-in-fact by showing diminution

in the value of [the plan's] assets generally," as opposed to injury to her own account, was

insufficient.  *Taveras*, 612 F. App'x at 29.  The Second Circuit observed that, because plan

participants "directed their own investment choices from a menu of options selected by [the

plan's] fiduciaries[,] [i]t was possible that the [plan] lost value while Taveras's individual

account did not." *Id.*  In addition, even if Taveras had purchased UBS stock and suffered losses

in her account, she failed to allege facts connecting her loss to the fiduciaries' alleged breaches.

*Id.*  The Court of Appeals concluded that "[f]ailure to allege individualized harm goes directly to

constitutional standing and is fatal to Taveras's Amended Complaint."  *Id.*

   The reasoning of *Taveras* applies directly here.  Plaintiffs cannot allege

"individualized harm" caused by allegedly excessive fees charged to funds in which they did not

invest.  Nor could any injury they allegedly suffered be "fairly traceable" to the defendants'

action concerning those funds.  Plaintiffs cannot establish constitutional standing by pointing to

alleged losses to the plan or other participants supposedly caused by fees charged by funds in

which plaintiffs did not invest. *See generally In re UBS ERISA Litig.*, 2014 WL 4812387, at *7–

*8 (finding that plaintiff failed to allege any facts "as to whether or when [she] directed the

[plan] to purchase or sell shares of the [fund at issue] on her behalf," and therefore concluded

that "Plaintiff lacks standing to sue under ERISA because she has not alleged the existence of a

constitutionally cognizable injury.").

Indeed, the standing doctrine's requirements aim to "ensure that a plaintiff has a sufficiently personal stake in the outcome of the suit so that the parties are adverse." *Bank of N.Y. Mellon*, 775 F.3d at 159–60, 163 (concluding that plaintiffs lacked standing to assert claims related to trusts in which they did not invest, and noting that the "core question is whether a plaintiff who has a personal stake in proving her own claims against the defendant has a sufficiently personal and concrete stake in proving other, related claims against the defendant.") (citing *W.R. Huff Asset Mgmt. Co.* v. *Deloitte & Touche LLP*, 549 F.3d 100, 107 (2d Cir. 2008)). Here, the named plaintiffs have no personal stake in determining whether the mutual funds in which they did not invest charged excessive fees.  Any relief recovered as to those other mutual funds would not flow to the named plaintiffs, but rather to other unidentified Plan participants. *See Connecticut* v. *Physicians Health Servs. of Connecticut, Inc.,* 287 F.3d 110, 118 (2d Cir. 2002) (finding lack of Article III standing because the remedies being sought would not flow to the plaintiff); *see also In re SLM Corp. ERISA Litig.*, No. 08 Civ. 4334, 2010 WL 3910566, at *12 (S.D.N.Y. Sept. 24, 2010) (finding lack of Article III standing where recovery would flow to other individuals and not to plaintiffs).

Plaintiffs do not address *Taveras*, and instead rely on several cases regarding *defined benefit plans* to argue that individualized injury is not required for Article III standing in suits brought against fiduciaries on behalf of an ERISA plan.  (Pls.' Br. at 10–12); *see, e.g.*, *L.I. Head Start Child Dev. Serv.* v. *Econ. Opp. Comm'n of Nassau Cnty.* ("*LIHS*"), 710 F.3d 57 (2d Cir. 2013) (addressing claims of breach of fiduciary duty in connection with a multiemployer employee welfare benefits plan), and *Banyai* v. *Mazur*, No. 00-9806, 2007 WL 959066 (S.D.N.Y. Mar. 29, 2007) (addressing claims of breach of fiduciary duty in connection with a workers' union's death benefit fund).  Defined benefit plans, however, are fundamentally

different from defined contribution plans.  Participants in a defined benefit plan (a pension plan, for example), are guaranteed retirement benefits to be paid from a co-mingled pool of assets managed by the plan's trustees.  (King Ex. 1 (Saha Report) at ¶¶ 10–11, 15.)  In a defined benefit plan, therefore, "each participant's financial fortune [is] tied to the plan's overall success (or failure)." *In re UBS ERISA Litig.*, 2014 WL 4812387, at *7.  In contrast, participants in a defined contribution plan make their own contributions to individual accounts and direct their own investments in those accounts.  *See Leber* v. *Citigroup, Inc., No.* 07 CIV. 9329 (SHS), 2010 WL 935442, at *3 (S.D.N.Y. Mar. 16, 2010); (King Ex. 1 (Saha Report) at ¶¶ 10–11, 15.)  A breach of fiduciary duty with respect to one investment option has consequences only to those participants who invested in that option.  Thus, cases involving plan-wide injuries have no relevance here and plaintiffs' heavy reliance on *L.I. Head Start*, 710 F.3d 57 (Pls.' Br. 11–12), is misplaced.  As the court stated in *In re UBS ERISA Litig.*:

> Plaintiff  . . . contends that an individual plaintiff need only allege some interest in the recovery by the plan, relying on legal authority suggesting that an ERISA plan participant need not show a direct, individualized injury to establish standing.  But that reliance is misplaced, since those decisions involved ERISA plans that managed assets on behalf of plan participants, with each participant's financial fortune tied to the plan's overall success (or failure)….
>
> Here, by contrast, the ERISA plan at issue—the SIP—did not involve the direct and active management of the participants' assets, but instead simply empowered the SIP's fiduciaries to present investment options to the SIP participants. Thus, the SIP could not sustain plan losses that would necessarily injure each participant. In this context, where the SIP's participants made their own investment decisions about their individual accounts, albeit based on options selected by the SIP fiduciaries, the Second Circuit's clear command in *Kendall* requires Plaintiff to allege that she did, in fact, suffer an individualized harm through her investment….

2014 WL 4812387, at *7 (internal quotations and citations omitted).

The few cases cited by plaintiffs that involve defined contribution plans are outside the Second Circuit and/or pre-date *Taveras*.  (Pls.' Br. 9–14.)[7]  Moreover, although the Eighth Circuit in *Braden* v. *Wal-Mart Stores, Inc.*, 588 F.3d 585, 593 (8th Cir. 2009), permitted a 401(k) plan participant to represent other participants who invested in the same fund but in other time periods, it did not find that a plan participant has standing to represent participants who invested in different funds entirely.

Because this Circuit's law, consistent with Supreme Court precedent, *Lujan*, 504 U.S. at 561, requires that participants in a defined contribution plan suffer direct, individualized injury in order to have constitutional standing, the named plaintiffs lack Article III standing as to funds in which they did not invest.

2.  <u>Class Standing</u>

Named plaintiffs also lack class standing to assert claims on behalf of absent members relating to mutual funds in which the named plaintiffs did not invest.  "[I]n a putative class action, a plaintiff has class standing if he plausibly alleges (1) that he personally has suffered some actual injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *Bank of N.Y. Mellon*, 775 F.3d at 160–61 (citation omitted).

---

[7]   *Krueger* v. *Ameriprise Fin.*, 304 F.R.D. 559 (D. Minn. 2014) and *Tussey* v. *ABB, Inc.*, No. 06-04305, 2007 WL 4289694 (W.D. Mo. Dec. 3, 2007) pre-date *Taveras* and are outside the Second Circuit.  *Taylor* v. *United Tech. Corp.*, No. 3:06-1494, 2008 WL 2333120 (D. Conn. June 3, 2008) predates *Taveras* and relies on language from cases outside the Second Circuit (that now conflicts with Second Circuit authority) or that discuss plan-wide damages for a defined benefit plan.  *Id.* at *3.  All three cases also include claims relating to fees for plan administration, which impact all plan participants.  Such claims are not present in this action.

14

The facts here are very similar to the facts in *Bank of N.Y. Mellon*, in which the

Second Circuit held, as a matter of first impression, that named plaintiffs in a putative class

action do not have class standing to assert claims relating to trusts in which they did not invest.

The court reasoned that answering the threshold questions for the trusts in which plaintiffs

invested would not answer the same questions for the numerous trusts in which they did not

invest. *Id.* at 162. The same reasoning applies to this case, where each fund was unique, was

actively managed, was governed by its own prospectus, and had its own investment strategy,

managers, and expense ratios. (King Ex. 1 (Saha Report) at ¶¶ 13, 16; *see, e.g.*, Exs. 5–13.)

Thus, answering the threshold question of whether expense ratios were excessive for any one

fund will not answer that same question as to any other fund.

Despite arguing that "this Circuit's 'class standing' doctrine supports plaintiffs'

standing" (Pls. Br. 16), plaintiffs do not mention or address *Bank of N.Y. Mellon*, and instead

focus on an earlier Second Circuit decision, *NECA-IBEW Health & Welfare Fund* v. *Goldman

Sachs & Co.* ("*NECA*" or "*Goldman Sachs*"), 693 F.3d 145 (2d Cir. 2012), which is discussed at

length in *Bank of N.Y. Mellon*. 775 F.3d at 159–63. Plaintiffs' reliance on *NECA* is misplaced.

Although the Second Circuit in *NECA* held that the plaintiff, a purchaser of mortgage backed

certificates, had standing to assert Securities Act class claims on behalf of purchasers of other

certificates that were backed by mortgages from the same lenders that originated the mortgages

backing plaintiff's certificates, it also found that the plaintiff *lacked standing* to represent

purchasers of certificates that were backed by mortgages from *different lenders* than those that

originated the mortgages backing plaintiff's certificates. *NECA*, 693 F.3d at 163–64. Here, even

more so than with certificates backed by mortgages from different lenders, the nine mutual funds

had distinct investment strategies and goals, different risk profiles, and their own management teams and fees.  (King Ex. 1 (Saha Report) at ¶¶ 13, 16; *see, e.g.*, Exs. 5–13.)[8]

The fact that plaintiffs allege a "common course of conduct" by fiduciaries does not create class standing.  The same argument was made by plaintiffs in *Bank of N.Y. Mellon*, and rejected by the Second Circuit:

> Plaintiffs claim that evidence of BNYM's policy of 'inaction' in the face of widespread defaults will be applicable to all of the trusts at issue.  But as Plaintiffs recognize, even proof that BNYM *always* failed to act when it was required to do so would not prove their case, because they would still have to show which trusts actually had deficiencies that required BNYM to act in the first place.

*Bank of N.Y. Mellon*, 775 F.3d at 162 (emphasis in original).  That reasoning applies with equal force here.  Even if (contrary to fact) defendants failed to properly consider management fees, plaintiffs still must show which funds had excessive expense ratios relative to comparable funds such that the fiduciaries were required to take action in the first place.

Because each of the nine funds is a unique investment, and determining the reasonableness of the expense ratio for each fund is an individualized inquiry, the named plaintiffs cannot assert claims on behalf of absent members relating to funds in which they did not invest.

---

[8]  The circumstances here are thus very different from the district court cases cited by plaintiffs where one investor was found to have class standing to represent investors in other products because the claims of all class members were based on the same alleged misrepresentations by defendants. *See, e.g.*, *Plumbers & Pipefitters, Nat'l Pens. Fund* v. *Burns*, 967 F. Supp. 2d 1143 (N.D. Ohio 2013) (purchaser of company stock has standing to represent purchaser of company bonds); *In re Dreyfus Aggr. Growth Mut. Fund Litig.*, No. 98-4318, 2000 WL 1357509 (S.D.N.Y. Sept. 20, 2000) (plaintiff has class standing to represent investors in all securities alleging the same misstatements and omissions); *Mosley* v. *Vitalize Labs, LLC*, No. 13-CV-2470, 2015 WL 5022635 (E.D.N.Y. Aug. 24, 2015) (purchaser of one energy product has standing to represent purchasers of other energy products over "nearly identical misrepresentations").

**C.   The Only Viable Claims Relate to the Citi Institutional Liquid Reserves Fund During the Period April 21, 2003 – December 1, 2005**

Because the claims by Harris are time-barred, and because Leber and Kennedy have standing to bring claims only as to funds in which they themselves invested, the only viable claims in this case relate to the Citi Institutional Liquid Reserves Fund.  That fund was added to the Plan effective April 21, 2003, and was no longer affiliated with Citigroup after December 1, 2005.  (Compl. ¶¶ 4, 6.)  It also had one of the lowest expense ratios in its class throughout the relevant period, at 0.15%.  (King Ex. 1 (Saha Report) at ¶ 30, Table 3.)

Even if the Rule 23 requirements for class certification are met (and they are not—*see infra* §§ II, III), this Court should only consider certifying a class of all 401(k) Plan participants who invested in the Citi Institutional Liquid Reserves Fund during the period April 21, 2003 through December 1, 2005.

## II.

## NO CLASS SHOULD BE CERTIFIED BECAUSE PLAINTIFFS DO NOT MEET THE TYPICALITY AND COMMONALITY REQUIREMENTS OF RULE 23(A)

In order to ensure "that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate," a class may be certified pursuant to Rule 23 only if all four requirements are satisfied: numerosity, commonality, typicality, and adequate representation.  *Wal-Mart Stores, Inc.* v. *Dukes*, 131 S. Ct. 2541, 2550 (2011); Fed. R. Civ. P. 23(a).  If any one of the four requirements is not satisfied, a class cannot be certified.  *Id.*

**A.   The Proposed Class Representatives' Claims are Atypical**

To establish typicality under Rule 23(a)(3), plaintiffs must show that "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009).  Plaintiffs' claims are atypical because the facts giving rise

17

to their claims are specific to the funds in which they invested, and named plaintiffs are subject to unique defenses.

*First*, because each proposed class representative invested in only one of the nine funds at issue (and the two named plaintiffs whose claims are not time-barred invested only in the Citi Institutional Liquid Reserves Fund), their claims—by definition—are atypical of the class.  "[T]here must be a congruence between the investments held by the named plaintiff and those held by members of the class he or she wishes to represent."  *Spano* v. *The Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011).  "[A] class representative in a defined-contribution case would at a minimum need to have invested in the same funds as the class members."  *Id.; see also Dukes*, 131 S. Ct. at 2551 (requiring plaintiff to demonstrate that class members have suffered the same injury, which "does not merely mean that they have all suffered a violation of the same provision of law"); *In re Northrop Grumman Corp. ERISA Litig.*, No. CV 06-06213 MMM JCX, 2011 WL 3505264, at *9 (C.D. Cal. Mar. 29, 2011) (plaintiffs withdrew claim as to fund in which no named plaintiff invested in response to claims that inclusion of such funds destroyed typicality).

Although the investment committee had responsibility for all investment options in the Plan, the central issue in this case—the reasonableness of the fees and expenses for each of nine funds—depends on multiple factors specific to each fund, including investment strategy, performance, quality of management, benchmark, fees for comparable funds, and negotiations with the fund management.  *Krinsk* v. *Fund Asset Mgmt., Inc.*, 875 F.2d 404, 409 (2d Cir. 1989) (listing factors for determining whether fees are excessive).  Thus, the claims with respect to one fund are independent, and not typical, of claims with respect to other funds.

*Second*, the claims of the proposed class representatives are also atypical because they are subject to unique defenses.  *See Falcon* v. *Philips Electronics N. Am. Corp.*, 304 F.

App'x 896, 897 (2d Cir. 2008) ("When a putative class representative is subject to unique defenses which threaten to become the focus of the litigation, she cannot serve as a class representative.") (internal quotations omitted).  As described above, Harris's claims are time-barred by ERISA's statute of repose.  (*See supra* § I.A.)  Courts have held that where there are statute of limitations issues, the class representative is not typical of the class, and the class may not be certified.  *See Weiss* v. *La Suisse, Societe D'Assurances Sur La Vie*, 226 F.R.D. 446, 454 (S.D.N.Y. 2005) (holding that breach of contract claims did not satisfy typicality requirement because "in order to consider [the] statute of limitations defenses, the court will have to take into account the timing of each plaintiff's transactions and interactions with [defendant].");  *Leroy* v. *Paytel III Mgmt. Ass'n, Inc.*, No. 91 Civ. 1933 (JFK), 1992 WL 367090, at *3 (S.D.N.Y. Nov. 24, 1992) (holding that factual dispute concerning when plaintiff learned of fraud "subjects [the proposed class representative] to statute of limitations defenses that prevent him from having claims typical of the other class members or adequately representing the class.").

**B.    Litigation Will Focus on Individual Issues Rather Than Common Questions**

This Court should also deny class certification because individual issues predominate over common questions.  Although plaintiffs summarily allege that their "claims arise from the same course of conduct and employ the same legal theories as do the claims of all class members" (Pls.' Br. 8), they make no mention of any individual defenses to these claims—defenses that affect large numbers of participants within the proposed class.  The Second Circuit has long recognized that no class should be certified where the major focus of the litigation will be on individual defenses rather than on common issues.  *See, e.g.*, *Baffa*, 222 F.3d at 59; *Gary Plastic Packaging Corp.* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990).  In addition, the foundation of plaintiffs' theory is based on a comparison between each fund at issue and an alternative, allegedly comparable fund with lower fees.  However,

identification of a suitable alternative fund is a highly individualized inquiry that must be tailored to—among other things—an investor's preferences, goals, and sophistication.

*First*, the claims of a substantial number of proposed class members are time-barred, which counsels in favor of denying class certification. *See McLaughlin* v. *American Tobacco Co.*, 522 F.3d 215, 233 (2d Cir. 2008) (overturning class certification because "a substantial number of class members were on notice of defendants' alleged fraud before the class period"). As discussed above, those who invested in funds other than the Citi Institutional Liquid Reserves Fund are time-barred by the statute of repose. *See supra* § I.A. Their claims may also be time-barred by the three-year statute of limitations if they had knowledge prior to October 18, 2004 (more than three years before this action was commenced) that Smith Barney and Salomon Brothers were affiliated with Citigroup, and that the expense ratios of the nine funds were higher than the expense ratios of some comparable funds on the market. Given that: (1) Plan participants were employees of Citigroup and were likely familiar with Citigroup's businesses, (2) plaintiffs' class includes Plan participants who worked directly for Smith Barney and Salomon Brothers as well as Plan participants who interacted with those entities as part of their jobs with Citigroup, (3) the prospectus for each fund includes the expense ratio for that fund, and (5) many Plan participants worked in the financial industry, had access to market information, and were likely familiar with mutual fund products (particularly well-known fund families like Vanguard), the claims of many members of the proposed class will be time-barred.

*Second*, many members of the proposed class have released their claims. Citigroup employees routinely sign releases in which they waive all claims against the company—including claims under ERISA—when they accept severance benefits. Because there have been substantial workforce reductions at Citigroup since 2001, especially during the credit

crisis and its aftermath, it is likely that a sizeable number of class members have released their

claims.  *See, e.g.*, Andrew Tangel, *Citi to cut 11,000 workers*, L.A. Times, Dec. 6, 2012, at B1;

Bloomberg News, *Citigroup to cut 4,500 workers*, L.A. Times, Dec. 7, 2011; *Citigroup job cull

to hit 75,000*, BBC News, Nov. 17, 2008, *available at* http://news.bbc.co.uk/2/hi/business/7733575.stm.

Indeed, over the course of this litigation, two out of five named plaintiffs (Michael Cohn and

Leslie Highsmith) withdrew from this case after discovering that they had signed agreements

releasing their claims against Citigroup.  (*See* King Ex. 14; Docket No. 103.)  Where individual

defenses like a waiver affect a substantial portion of the proposed class, class certification should

be denied.  *See, e.g.*, *Romero* v. *Flaum Appetizing Corp.*, No. 07 CIV. 7222 BSJ JCF, 2011 WL

812157, at *6 (S.D.N.Y. Mar. 1, 2011) (holding that releases signed by class members destroyed

typicality and class certification was inappropriate); *Spann* v. *AOL Time Warner, Inc.*, 219

F.R.D. 307, 316–24 (S.D.N.Y.2003) (finding no typicality, adequacy, predominance or

superiority in an ERISA case, where some, but not all, putative class members executed releases;

explaining that "the Releases insert individual issues into this lawsuit, and those individualized

issues prevent a finding that the Plaintiffs' claims are typical of those brought for the benefit of

the Class"); *Walker* v. *Asea Brown Boveri, Inc.*, 214 F.R.D. 58, 64–66 (D. Conn. 2003) (same).

   *Third*, plaintiffs' claims are built on a comparison between the fees of the nine

funds at issue and the fees charged by allegedly "comparable options."  However, identification

of a "comparable option" is an exercise that must be tailored to the individual investor.  The

factors that impact fund choice (including past performance, level of risk, fees, manager

reputation, fund family, and recommendation) vary considerably from one individual to the next,

and is particularly complex with respect to actively managed funds where the experience and

investment philosophy of fund managers are defining features of the fund.  (King Ex. 1 (Saha

Report) at ¶¶ 13, 19–24, 27.)  Thus, even within the universe of potentially comparable funds based on asset class and investment strategy, each individual fund will have differing characteristics such as riskiness, performance, manager reputation, name recognition, etc.  (*Id.* at ¶ 27.)  The weight given to each of these characteristics in identifying a proper comparator fund will depend on the individual investor.  Plaintiffs' approach of using the fund with the lowest expense ratio as the alternative fund is not economically sound and ignores the many factors, other than fees, that impact an individual investor's fund selection.  (*Id.* at ¶¶ 19–24; 27, 31–32.)  The predominance of individualized factors in mutual fund selection is particularly important here because of the heterogeneity and wide diversity of preferences of Plan participants.  (*Id.* at ¶¶ 21, 23, 24, 32.)

## III.

## THE PROPOSED CLASS CANNOT BE MAINTAINED UNDER RULE 23(B)

Plaintiffs have also failed to establish that this case properly falls within any of the Rule 23(b) subsections.[9]

### A.    Class Certification is Not Proper Under Rule 23(b)(1)

Rule 23(b)(1) certification is proper only where a defendant "is obliged by law to treat the members of the class alike," *Amchem Products* v. *Windsor*, 521 U.S. 591, 614 (1997), and "should be confined to those cases where there are no, or few, individual questions," *Hylaszek* v. *Aetna Life Ins. Co.*, No. 94 C 5961, 1998 WL 381064, at *6 (N.D. Ill. July 1, 1998).  It is not proper where "the threat of inconsistent adjudications" is not substantial because "different results as to adjudications involving different individuals could be distinguished on the

---

[9]   Plaintiffs have not argued that they meet the requirements of Rule 23(b)(2).

grounds of different facts." *Contract Buyers League* v. *F&F Inv.*, 48 F.R.D. 7, 14 (N.D. Ill. 1969).

Here, virtually all significant elements of plaintiffs' case will require determination of individual questions. As described above, questions of whether an individual class member's claims are time-barred, whether an individual class member has released her claims, and what individual damages that class member has suffered all preclude certification under this provision. *See Spann*, 219 F.R.D. at 322 (denying certification under 23(b)(1)(A) because the action sought to certify a class "with claims to monetary recovery which must be determined on an individual basis."). Nor is this a limited fund case that might warrant certification under Rule 23(b)(1)(B). *See Ortiz* v. *Fibreboard Corp.*, 527 U.S. 815, 838–41 (1999) (holding that "limited fund" theory applies only when aggregate of claims exceeds available assets and the entire fund is to be devoted to those claims).

### B.    Class Certification Is Not Proper Under Rule 23(b)(3)

Plaintiffs' proposed class also does not qualify for certification pursuant to Rule 23(b)(3). Under this provision, class actions must be "superior" to all other available methods of adjudication. Here, however, defendants' statute of limitations and release defenses stand as a barrier to Rule 23(b)(3) certification.

The Second Circuit's decision in *McLaughlin*, 522 F.3d at 234, is again instructive. Pointing to several facts suggesting that the claims by certain class members would be time-barred, as well as plaintiffs' failure to offer any "reliable means of collectively determining how many class members' claims are time-barred," the court found that the predominance requirement of Rule 23(b)(3) had not been satisfied. *Id.* at 234.

This case is no different from *McLaughlin*. Here, there is no doubt that many potential class members' claims are time-barred. *See supra* II.B. And plaintiffs have offered no

means, much less a *reliable means*, of identifying how many class members' claims are time-barred.  Thus, as in *McLaughlin*, common issues do not predominate over individual issues, and the class should not be certified pursuant to Rule 23(b)(3).

## Conclusion

For the foregoing reasons, defendants respectfully submit that Plaintiffs' motion for class certification be denied.

Date:   New York, New York
        October 23, 2015

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

By:
  *s/ Lewis R. Clayton*
  Lewis R. Clayton(lclayton@paulweiss.com)
  Karen R. King (kking@paulweiss.com)

  1285 Avenue of the Americas
  New York, New York 10019-6064
  Telephone:  212-373-3000
  Facsimile:  212-757-3990

  *Attorneys for Defendants*