**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
MARYA J. LEBER, SARA L. KENNEDY,
LESLIE HIGHSMITH, SHERRI M. HARRIS,
     *and all others similarly situated*,

                                            ECF Case

             Plaintiffs,

         -against-

                                    07-cv-09329-SHS

THE CITIGROUP 401(k) PLAN INVESTMENT
COMMITTEE, et al.,

             Defendants.
-------------------------------------------------------------------x

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN**
**SUPPORT OF MOTION FOR CLASS CERTIFICATION**

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT ................................................................................................................. 1

    A.    Defendants' Reliance Upon *Taveras* and *UBS* to Challenge Plaintiffs' Standing is Misplaced Because Those Cases are Distinguishable and Non-Precedential.......... 1

    B.    Plaintiffs Satisfy Rule 23(a)'s Typicality and Commonality Requirements ........... 5

        1.    Typicality ..................................................................................................... 5

            (a) Plaintiffs' Claims are Not Fund Specific but Concern Defendants' Uniform Conduct with Respect to the Affiliated Funds ...................... 5

            (b) Defendants' Challenge to the Timeliness of Harris' Claims Does not Undermine Typicality ........................................................................ 8

        2.    Defendants Improperly Conflate the Predominance and Commonality Requirement, and Provide No Basis for Challenging Commonality ........ 10

    C.    This Action Can be Maintained as a Class Action under Either 23(b)(1) or 23(b)(3) ............................................................................................................ 11

        1.    This is Precisely the Type of Action Suitable for 23(b)(1) Certification . 11

        2.    23(b)(3) Certification is Also Appropriate ............................................... 12

            (a) Individual Issues do not Predominate ................................................. 13

                (i)    Plaintiffs' Claims do not Depend upon Identifying a Comparable Fund for Each Participant ...................................... 14

                (ii)    Defendants' Limitations Defenses do not Defeat Predominance ......................................................................... 15

                (iii) Releases do not Defeat Predominance ....................................... 18

    D.    Defendants' Attempt to Argue a Merits Issue — the Appropriate Level of Fund Fees — is Inappropriate and Misleading ............................................................. 20

i

## TABLE OF AUTHORITIES

**Cases**

Amchem Products v. Windsor, 521 U.S. 591 (1997) .................................................. 12

Banyai v. Mazur, No. 00-9806, 2007 WL 959066 (S.D.N.Y. Mar 29, 2007) ............................... 3

Bowles v. Reade, 198 F.3d 752 (9th Cir.1999) ........................................................ 18

Bridge v. Phx. Bond & Indem. Co., 553 U.S. 639 (2008) ............................................... 17

Brieger v. Tellabs, Inc., 245 F.R.D. 345 (N.D. Ill. 2007) ........................................... 18

Brown v. Am. Life Holdings, 190 F.3d 856, 859 (8th Cir. 1999) ....................................... 17

Brown v. Kelly, 609 F.3d 467 (2d Cir. 2010).................................................... 13, 15-16

CTS Corp. v. Waldburger, 134 S. Ct. 2175, 2183, 189 L. Ed. 2d 62 (2014).............................. 10

Donovan v. Bierwirth, 754 F.2d 1049 (2d Cir. 1985).................................................. 15

Duprey v. Conn. Dep't. of Motor Vehicles, 191 F.R.D. 329 (D.Conn. 2000) ............................ 15

Fremont Gen. Corp. Litig., No. 2:07-CV-02693, 2010 WL 3168088

  (C.D. Cal. Apr. 15, 2010)......................................................................... 19

Gary Plastic Packaging v. Merrill Lynch, Pierce, Fenner & Smith, 903 F.2d 176

  (2d Cir. 1990)..................................................................................... 8

Healthcare Strategies, Inc. v. ING Life Ins. & Annuity Co., No. 3:11-CV-282 JCH, 2012 WL

  10242276  (D. Conn. Sept. 27, 2012) .............................................................. 15

In re Aquila ERISA Litig., 237 F.R.D. 202 (W.D. Mo. 2006) ...................................... 18, 19

In re Dreyfus Aggr. Growth Mut. Fund Litig., No. 98-4318(HB), 2000 WL 1357509 (S.D.N.Y.

  Sept. 20, 2000) ................................................................................... 6

In re Flag Telecom Holdings Sec. Litig., 574 F.3d 29 (2d Cir.2009)................................... 6

In re Northrop Grumman Corp. ERISA Litig., No. CV 06-06213, 2011 WL 3505264 (C.D. Cal.

  Mar. 29, 2011)..................................................................................... 7

In re Omnicom Grp., Inc. Sec. Litig., No. 02 CIV. 4483 (RCC), 2007 WL 1280640 (S.D.N.Y.

  Apr. 30, 2007) .................................................................................... 8

In re Polaroid ERISA Litig., 240 F.R.D. 65 (S.D.N.Y. 2006) .................................................. 18-20

In re Qwest Sav. & Inv. Plan ERISA Litig., No. 02–RB–464 (CBS), 2004 U.S. Dist. LEXIS
    24647 (D.Colo. Sept. 27, 2004) ....................................................................................... 18

In re U.S. Foodservice Inc. Pricing Litig., 729 F.3d 108 (2d Cir. 2013) .................................... 16

In re UBS ERISA Litig., No. 08-cv-6696 (RJS), 2014 WL 4812387 (S.D.N.Y. Sept. 29, 2014).. 2

In re Visa Check MasterMoney Antitrust Litig., 280 F.3d 124 (2d Cir. 2001) ........................... 19

In re Williams Cos. ERISA Litig., 231 F.R.D. 416 (N.D. Okla. 2005) .................................. 18-19

In re WorldCom, Inc. Sec. Litig., 219 F.R.D. 267 (S.D.N.Y. 2003) .......................................... 16

Jermyn v. Best Buy Stores, L.P., 256 F.R.D. 418 (S.D.N.Y. 2009) ........................................... 15

Kanawi v. Bechtel, 254 F.R.D. 102 (N.D. Cal. 2008) ............................................................... 14

Koppel v. 4987 Corp., 191 F.R.D. 360 (S.D.N.Y. 2000) ............................................................ 8

Kruger v. Ameriprise Fin., 304 F.R.D. 559 (D. Minn. 2014) ...................................................... 3

L.I. Head Start Child Dev. Serv. v. Econ. Opp. Comm'n of Nassau County, 710 F.3d 57
    (2d Cir. 2013) .................................................................................................................... 2

LaRue v. DeWolf, Boberg & Assocs., 552 U.S. 248 (2008) ...................................................... 14

Maher v. Strachan Shipping, 68 F.3d 951 (5th Cir. 1995) ......................................................... 17

McLaughlin v. Am. Tobacco Co., 522 U.S. 215 (2d Cir. 2008) ................................................. 17

NECA-IBEW Health & Welfare Fund v. Goldman Sachs, 693 F.3d 145 (2d Cir. 2012) ............. 6

New Jersey Carpenters Health Fund v. DLJ Mortgage Capital, Inc., No. 08 CIV. 5653 PAC,
    2014 WL 1013835 (S.D.N.Y. Mar. 17, 2014) .................................................................. 16

Ortiz v. Fibreboard Corp., 527 U.S. 815 (1999) ....................................................................... 12

PBGC v. Morgan Stanley Inv. Mgt., 712 F.3d 705 (2d Cir. 2013) .............................................. 7

Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, 721 F.3d 95 (2d Cir. 2013) ............. 9

Ret. Bd. of the Policeman's Annuity & Benefit Fund of the City of Chicago v. Bank of N.Y.
    Mellon, 775 F.3d 154 (2d Cir. 2014) .............................................................................. 3-4

Roach v. T.L. Canon Corp., 778 F.3d 401 (2d Cir. 2015) ......................................................... 13

Robidoux v. Celani, 987 F.2d 931 (2d Cir.1993) ....................................................................... 6

Rodriguez v. It's Just Lunch, Int'l, 300 F.R.D. 125 (S.D.N.Y. 2014) .......................................... 6

Romero v. Flaum Appetizing Corp., No. 07-7222, 2011 WL 812157

    (S.D.N.Y. Mar. 1, 2011) ................................................................................... 19

Spann v. AOL Time Warner, 219 F.R.D. 307 (S.D.N.Y. 2003).................................................... 20

Spano v. The Boeing Co., 294 F.R.D. 114 (S.D. Ill. 2013) ........................................................... 7

Spano v. The Boeing Co., 633 F.3d 574 (7th Cir. 2011) ........................................................... 6-7

Sykes v. Mel Harris & Assoc's, 285 F.R.D. 279 (S.D.N.Y. 2012) ................................................ 8

Taveras v. UBS, 612 Fed.Appx. 27 (2d Cir. 2015) ................................................................... 1-2

Taylor v. United Tech Corp., No. 3:06-1494, 2008 WL 2333120

    (D. Conn. June 3, 2008) ........................................................................... 3, 18-19

Tibble v. Edison Int'l, 729 F.3d 1110 (9th Cir. 2013) ................................................................ 17

Trief v. Dun & Bradstreet, 144 F.R.D. 193 (S.D.N.Y. 1992)........................................................ 8

Tussey v. ABB, No. 06-04305, 2007 WL 4289694 (W. D. Mo. Dec. 3, 2007) ............................ 3

Walker v. Asea Brown Boveri, 214 F.R.D. 58 (D. Conn. 2003)................................................... 20

**Statutes**

29 U.S.C. §1001(b) ................................................................................................... 10

29 U.S.C. §1113 ........................................................................................................ 10

29 U.S.C. §1132(a)(2)................................................................................................ 14

**Rules**

Fed. R. Civ. P. 23 .............................................................................................. passim

Fed. R. Civ. P. 23(a) .................................................................................. 1, 5-6, 10

Fed. R. Civ. P. 23(b)(1)........................................................................................ 11-12

Fed. R. Civ. P. 23(b)(1)(A) ....................................................................................... 12

Fed. R. Civ. P. 23(b)(3).............................................................................................. 13

Fed. R. Civ. P. 23(g) .................................................................................................... 5

**Other Authorities**

H.R.Rep. No. 93–533, 93d Cong., 1st Sess. 17 (1973), 1974 U.S.C.C.A.N. 4639 ...................... 10

## I.  INTRODUCTION

Defendants' opposition (Dkt. No. 233 ("Defs' Brf.")) to Plaintiffs' motion for class certification virtually ignores the many opinions certifying similar actions and fails to identify any similar case denying certification.  Moreover, Defendants' particular objections lack merit.

Their standing objection relies largely on two non-precedential opinions that are clearly inapposite, e.g. because neither involved the multiple fund scenario on which Defendants' standing argument is premised.  Their attack on typicality founders, *inter alia*, because the focus of a fiduciary breach case is on the fiduciaries' conduct, not the plaintiffs'.  They contest Rule 23(a)'s commonality requirement for lack of predominance, but predominance is only relevant to 23(b)(3) certification.  They also question predominance, but rely entirely on (i) affirmative defenses that are either class issues, are specious, or are the types of issues courts have held are not an obstacle to class certification, or (ii) a baseless mis-characterization of Plaintiffs' claims as requiring identification of a comparable fund for each participant.  Finally, Defendants improperly argue the merits of the case by comparing the Affiliated Fund fees to purported average fees.  This is largely irrelevant to the merits, since Plaintiffs need not prove that the fees were above average or unreasonable, but only, e.g., that Defendants disregarded lower cost options because they did not benefit Citigroup financially.  Regardless, filed herewith is a rebuttal expert report and evidence of Defendants' admission that fees were too high.

## II.  ARGUMENT

### A.  Defendants' Reliance Upon *Taveras* and *UBS* to Challenge Plaintiffs' Standing is Misplaced Because Those Cases are Distinguishable and Non-Precedential

Defendants argue that the named Plaintiffs only have standing to bring claims with respect to Affiliated Funds in which they invested.  However, Plaintiffs' opening brief emphasized that, pursuant to ERISA, they have expressly brought their claims in a representative

capacity on behalf of the Citigroup 401(k) Plan ("Plan") and for losses to the Plan; moreover, Plaintiffs do not bring separate claims with respect to individual funds, but bring claims challenging Defendants' common course of conduct and fiduciary breaches with respect to proprietary funds in general.  (Dkt. No. 214 ("Pls. Brf.") at 10-15).  Hence, investment in each particular fund is not a prerequisite to bring the claims Plaintiffs have asserted.

With respect to constitutional standing, Defendants' argument to the contrary is based almost entirely upon two opinions in a single case:  In re UBS ERISA Litig., No. 08-cv-6696 (RJS), 2014 WL 4812387 (S.D.N.Y. Sept. 29, 2014) and the opinion that affirms it, Taveras v. UBS, 612 Fed.Appx. 27 (2d Cir. 2015).  Neither of these opinions have been officially reported, and neither has precedential effect.  *See* Second Circuit LR 32.1.1(a) ("Rulings by summary order do not have precedential effect").  Furthermore, contrary to Defendants' contention that the "reasoning of Taveras applies directly here," (Defs' Brf. at 11), Taveras is clearly distinguishable.  As the Taveras district court noted, with respect to the standing issue, the case involved a single named plaintiff who had not even alleged an investment in the one and only fund at issue in the case (the UBS company stock fund), let alone a loss resulting from that investment.  In re UBS ERISA Litig., 2014 WL 4812387 at *6.  The case, which was decided on a 12(b)(1) motion, is thus clearly distinguishable because it involved only a single fund, and the plaintiff, unlike in this case, failed to allege any individual injury-in-fact resulting from the Defendants' conduct.  Taveras thus lends no support to Defendants' argument — as indicated by their unreported status, they are routine dismissals for failure to allege injury-in-fact.

Defendants also protest that Plaintiffs' constitutional standing arguments "rely on several cases regarding defined benefit plans", citing L.I. Head Start Child Dev. Serv. v. Econ. Opp. Comm'n of Nassau County, 710 F.3d 57 (2d Cir. 2013) and Banyai v. Mazur, No. 00-9806, 2007

2

WL 959066 (S.D.N.Y. Mar 29, 2007), and then recite differences between defined contribution and defined benefit plans.  (Defs' Brf. at 12-13).  There are two problems with Defendants' assertions.  First, as Defendants' own parentheticals note, neither of the cases they protest involve defined benefit plans:  the first concerned "a multi-employer employee welfare benefits plan," (*id.* at 12), the second a "union's death benefit fund."  *Id.*  Second, Defendants virtually ignore three defined contribution plan cases that are directly on point and that rejected Defendants' argument that named plaintiffs need have invested in every relevant fund to have standing to assert their claims.  (*See* Pls Brf. at 12-14 (citing Kruger v. Ameriprise Fin., 304 F.R.D. 559 (D. Minn. 2014); Taylor v. United Tech Corp., No. 3:06-1494, 2008 WL 2333120 (D. Conn. June 3, 2008); and Tussey v. ABB, No. 06-04305, 2007 WL 4289694 (W. D. Mo. Dec. 3, 2007))).  As Defendants fail to cite a single case on point upholding their position, they offer no credible basis to depart from prior precedent on this issue.

With respect to this circuit's "class standing" doctrine, Defendants do not contest that it provides an alternative basis to reject their arguments since it allows named plaintiffs, so long as they have individual Article III standing against the defendants, to bring claims on behalf of absent class members for which the named plaintiffs themselves lack Article III standing.[1]  But they contend that the named Plaintiffs here "lack class standing to assert claims on behalf of absent members relating to mutual funds in which the named plaintiffs did not invest."  (Defs' Brf. at 14).  Defendants cite as support Ret. Bd. of the Policeman's Annuity & Benefit Fund of the City of Chicago v. Bank of N.Y. Mellon, 775 F.3d 154 (2d Cir. 2014) ("BNYM").  (Defs' Brf. at 15-16).  Their contention that the "facts here are very similar to the facts in" BNYM, *id.*

---

[1] To be clear, Plaintiffs of course maintain above and in their initial brief that they do have Article III standing to bring all claims in this case.

at 15, misses the mark.  Unlike the instant case, <u>BNYM</u> was *not* an ERISA case, was *not* brought in a representative capacity on behalf of a single retirement plan, was *not* brought on behalf of a class of participants in a single plan, and was *not* brought against fiduciaries of a single plan with respect to a common course of conduct in administering that single plan.  Instead, <u>BNYM</u> was brought on behalf of a class of investors who had nothing in common except that they "purchased certificates from any one of…530 [residential mortgage-backed securities] trusts [for which BNYM served as trustee]."  <u>BNYM</u>, 775 F.3d at 156.  Furthermore, the <u>BNYM</u> plaintiffs' claims included, *inter alia*, claims seeking "to hold BNYM responsible for the losses allegedly caused by Countrywide's breaches of its representations and warranties," *id.* at 156, and claims asserting "that BNYM failed to meet its contractual obligation to ensure that the loans held by the trusts were properly documented," *id.* at 157.  Defendants' liability here does not depend upon any contracts or the language of any representations or warranties made to individual plaintiffs.  It was precisely such factual variances, essential to determining BNYM's liability, in the 530 trusts at issue that led the <u>BNYM</u> panel to find that class standing was not satisfied:

> whether [BNYM] was obligated to repurchase a given loan requires examining which loans, in which trusts, were in breach of the representations and warranties. And whether a loan's documentation was deficient requires looking at individual loans and documents.  We see no way in which answering these questions for the trusts in which Plaintiffs invested will answer the same questions for the numerous trusts in which they did not invest.

<u>BNYM</u> at 162.  In contrast, the focus in this case is on a single plan with a single plan document, and a single governing investment committee.  Proof of Plaintiffs' claims will involve proving Defendants' common course of conduct and their propensity to favor Citigroup proprietary funds when lower cost and better performing alternative funds were readily available.

4

**B.  Plaintiffs Satisfy Rule 23(a)'s Typicality and Commonality Requirements**

Defendants contest typicality and purport to contest commonality.  Their arguments fail.

Defendants do not contest the other Rule 23(a) and (g) requirements:  numerosity, adequacy of

the named Plaintiffs to serve as class representatives, and adequacy of counsel.

   **1.      Typicality**

      **(a)      Plaintiffs' Claims are Not Fund Specific but Concern Defendants'
                 Uniform Conduct with Respect to the Affiliated Funds**

Defendants contend the named Plaintiffs are not typical because (i) they did not invest in

all of the funds at issue, and (ii) "the central issue in this case — the reasonableness of the fees

and expenses for each of nine funds — depends on multiple factors specific to each fund…."

(Defs' Brf. at 18).  Defendants' argument founders, *inter alia*, because it is settled in this circuit

that named plaintiffs need not be invested in the same funds as class members to be typical,

minor variances in individual claims do not defeat typicality, and the second contention is wrong.

Defendants' argument that the named plaintiffs' claims are atypical because they did not

invest in all the funds that class members did ignores controlling Second Circuit law rejecting the

notion that there must be a congruity of investments between named plaintiffs and the class:

> **[The District Court] also erred to the extent it based its conclusion on the
> (mistaken) assumption that "only when ... other people bought the same
> securities that the plaintiff bought" may a "practically identically situated
> plaintiff serve as their "class representative."** J.A. at 162; *see Hevesi v.
> Citigroup Inc.,* 366 F.3d 70, 82–83 (2d Cir.2004) (observing that "a class
> representative can establish the requisite typicality under Rule 23 if the
> defendants committed the same wrongful acts in the same manner against all
> members of the class," even if the class representative lacks standing to sue on
> every claim asserted by the class).

NECA-IBEW Health & Welfare Fund v. Goldman Sachs, 693 F.3d 145, 158 n. 9 (2d Cir. 2012) (emphasis added).[2]  Moreover, typicality does not require that the named plaintiffs' and the class' claims be *identical*, but only that they involve proof of a common course of conduct and *similar* legal arguments and facts.[3]  As discussed above, Plaintiffs have not asserted claims with respect to individual funds, but claims concerning Defendants' fiduciary breaches and common course of conduct in illicitly favoring Citigroup proprietary funds.  Although some facts regarding specific Affiliated Funds may in some circumstances be relevant to Plaintiffs' claims, e.g. identifying comparable non-proprietary funds in particular asset classes that could have been selected Plan fiduciares, such minor factual variations do not defeat typicality.  Hence, typicality is satisfied as the similar cases cited above and in Plaintiffs' initial brief have so held.

Defendants' reliance upon a case from another circuit, Spano v. The Boeing Co., 633 F.3d 574 (7th Cir. 2011), as support for their argument is misplaced.  While Spano did suggest that, under the facts of that case, typicality required the named plaintiffs to have invested in the same funds as class members, Spano is distinguishable.  Spano was not a proprietary fund case, but a case in which the plaintiffs alleged separate breaches with respect to two very different

---

[2] *See also* In re Dreyfus Aggr. Growth Mut. Fund Litig., No. 98-4318(HB), 2000 WL 1357509 at *3 (S.D.N.Y. Sept. 20, 2000) ("[c]ourts have repeatedly certified classes where the class representatives had not invested in all of the subject securities [collecting cases];" "class representatives need not have invested in each security so long as the plaintiffs have alleged a single course of wrongful conduct with regard to each security").

[3] *See*, *e.g.*, Rodriguez v. It's Just Lunch, Int'l, 300 F.R.D. 125, 136 (S.D.N.Y. 2014) (Stein, J.) ("When it is alleged that the same unlawful conduct ... affected both the named plaintiff and the class sought to be represented, *the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims*" (emphasis added)); In re Flag Telecom Holdings Sec. Litig., 574 F.3d 29, 35 (2d Cir. 2009) ("To establish typicality under Rule 23(a)(3), the party seeking certification must show that 'each class member's claim arises from the same course of events and each class member makes *similar* legal arguments to prove the defendant's liability' " (emphasis added)).

kinds of funds:  a technology mutual fund, and a company stock fund.  *Id.* at 586.  They

contended that the technology fund was imprudent for the plan because it was undiversified, and

that the company stock fund held too much cash, which hurt its performance and caused it to

incur excess fees.  *See* Spano v. The Boeing Co., 294 F.R.D. 114, 117-18 (S.D. Ill. 2013).

Hence, unlike the instant case, there was no common course of conduct that resulted in the

alleged breaches with respect to each fund.[4]

Furthermore, Defendants' contention that congruity of investments is necessary for

typicality because "reasonableness of the fees and expenses" is a "central issue in this case" is

inaccurate.  They cite no authority for the issue's centrality, and that omission is telling.

Plaintiffs' central claim is not that the fees, standing alone, were excessive or unreasonable; they

have not brought any claim against the funds themselves for charging excessive fees.  Instead,

Plaintiffs allege that many lower-cost and better options were available, and that Defendants

disregarded these because including them in the Plan would not benefit Citigroup, (4AC (Dkt.

No. 208), ¶90).  Hence, Plaintiffs need not prove that the fees of each fund were unreasonable —

they need only prove that Defendants imprudently or disloyally disregarded lower cost options

because they did not benefit Citigroup.  *See* PBGC v. Morgan Stanley Inv. Mgt., 712 F.3d 705,

719 (2d Cir. 2013) (plaintiffs allege a breach of the ERISA investment duty of prudence by

claiming "that a superior alternative investment was readily apparent such that an adequate

---

[4] *See also* Krueger v. Ameriprise Fin., 304 F.R.D. 559, 573 (D. Minn. 2014) (rejecting
Defendants' Spano-based argument that the named plaintiffs needed to be invested in all the
same funds as class members and finding typicality requirement satisfied because "class
members are seeking redress of similar grievances under the same legal and remedial theories");
In re Northrop Grumman Corp. ERISA Litig., No. CV 06-06213, 2011 WL 3505264, at *11 n.
72 (C.D. Cal. Mar. 29, 2011) ("*Spano* reflects a heightened sensitivity to speculative conflicts
among class members that is contrary to the law of this Circuit" (quotation marks omitted)).

investigation would have uncovered that alternative").  As this will involve proof of a common course of conduct with respect to all class members and funds, it is suitable for class treatment.

**(b)**   <u>**Defendants' Challenge to the Timeliness of Harris' Claims Does not Undermine Typicality**</u>

Defendants also contest typicality because "the proposed class representatives…are subject to unique defenses," (Defs' Brf. at 18), but reference, in their typicality discussion, only their contention that "Harris's claims are time-barred by ERISA's statute of repose," *id.* at 19.

The purpose of considering "unique defenses" in the class certification context is "to protect [the] plaintiff class — not to shield defendants from a potentially meritorious suit." <u>Koppel v. 4987 Corp.</u>, 191 F.R.D. 360, 365 (S.D.N.Y. 2000); <u>Trief v. Dun & Bradstreet</u>, 144 F.R.D. 193, 200 (S.D.N.Y. 1992) (same).  Purported "unique defenses" become an obstacle to class certification *only* when they "threaten to become the focus of the litigation."  <u>Gary Plastic Packaging v. Merrill Lynch, Pierce, Fenner & Smith</u>, 903 F.2d 176, 180 (2d Cir. 1990).[5] Moreover, a unique defense is an issue for class certification "only when [the court is] confronted with a sufficiently clear showing of the defense's applicability to the representative plaintiff."  <u>In re Omnicom Grp., Inc. Sec. Litig.</u>, No. 02 CIV. 4483 (RCC), 2007 WL 1280640, at *4 (S.D.N.Y. Apr. 30, 2007).  Defendants' unique defense argument fails for multiple reasons.

**First**, since Defendants do not assert their "unique defense" against Leber or Kennedy, it presents no problem for class certification, but, at most, a problem for Harris' typicality.

---

[5] *See also* <u>Sykes v. Mel Harris & Assoc's</u>, 285 F.R.D. 279, 292 (S.D.N.Y. 2012) (finding typicality satisfied where limitations defense applicable to named plaintiff did not threaten to become the focus of litigation), *aff'd* 780 F.3d 70 (2d Cir. 2015); *see also* <u>Trief</u>, 144 F.R.D. at 200-201 ("it is beyond reasonable dispute that a representative may satisfy the typicality requirement even though that party may later be barred from recovery by a defense particular to him that would not impact other class members").

8

**Second**, Defendants admit their "unique defense" is not unique to Harris at all, but rather applies to all "those who invested in funds other than the Citi Institutional Liquid Reserves Fund." (Defs' Brf. at 20).  Since the defense is not unique, it does not make Harris' claims atypical; moreover, the defense should be susceptible to straightforward resolution on a class-wide basis, since the only relevant facts are when and what funds participants were invested in.  **Third**, the defense is predicated upon Defendants' contention that Leber and Kennedy only have standing to assert claims with respect to the Citi Institutional Liquid Reserves Fund; Defendants are wrong as discussed above and in Plaintiffs' initial brief, so the defense fails.  **Fourth**, the defense is also without merit for the reasons discussed below.

Defendants contend Harris' claim is untimely because (i) <u>Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS</u>, 721 F.3d 95 (2d Cir. 2013) ("<u>IndyMac</u>") held that <u>American Pipe</u> tolling never applies with respect to any statute of repose, (ii) ERISA's six-year statute of limitations is a strict statute of repose, and therefore (iii) Harris' claims are barred by ERISA's six-year statute of repose.  Both premises (i) & (ii) are incorrect, so Defendants' argument fails.  Regarding premise (i), <u>IndyMac</u> describes its holding as "<u>American Pipe</u>'s tolling rule, whether grounded in equitable authority or on Rule 23, does not extend to ***the statute of repose in Section 13***." <u>IndyMac</u>, 721 F.3d at 109 (emphasis added).  The emphasized language makes clear the holding is limited to a specific section of the Securities Act of 1933.  Defendants attempt to rewrite the holding as a sweeping legal principle by replacing the italicized language with "a statute of repose." (Defs' Brf. at 8, line 11).  That <u>IndyMac</u> intended its holding to be limited to the securities laws is reflected in the fact that it cites reasons specific to those laws in support. <u>IndyMac</u>, 721 F.3d at 107, 112  (noting that holding is consistent with the purposes of the securities law, long history of holding that Section 13's statute of repose is absolute and does not

admit of tolling, and citing specific statutory language indicating that Section 13's statute of repose does not admit of exceptions).  Defendants provide no basis for interpreting <u>IndyMac</u>'s holding as a sweeping general principle of breathtaking scope, and cite no case that applies it outside the securities law context, let alone to the ERISA context.  Furthermore, applying it to ERISA would be contrary to the congressional intent in enacting ERISA, which includes providing "ready access to the federal courts" and removing "jurisdictional and procedural obstacles" that in the past had "hampered effective enforcement of fiduciary responsibilities."[6]

Defendants' assumption that ERISA's six-year limitations period is a strict statute of repose is also incorrect.  The statute itself describes the relevant section with the words "Limitation of Actions," 29 U.S.C. §1113, and it provides an exception for fraud or concealment, i.e. equitable tolling, in the statute:  "except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation," *id*.  *See* <u>CTS Corp. v. Waldburger</u>, 134 S. Ct. 2175, 2183, 189 L. Ed. 2d 62 (2014) ("[s]tatutes of limitations, but not statutes of repose, are subject to equitable tolling").

**2.      Defendants Improperly Conflate the Predominance and Commonality Requirement, and Provide No Basis for Challenging Commonality**

In their discussion of Rule 23(a) requirements, Defendants argue that this Court "should also deny class certification because individual issues predominate over common questions." (Defs' Brf. at 19).  But Rule 23(a) does not require predominance of common questions — that

---

[6] ERISA's stated purpose is "to protect...the interests of participants in employee benefit plans and their beneficiaries...by providing...**ready access to the federal courts**."  ERISA, 29 U.S.C. §1001(b) (emphasis added).  In enacting ERISA Congress intended "**to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities**...."  H.R.Rep. No. 93–533, 93d Cong., 1st Sess. 17 (1973), 1974 U.S.C.C.A.N. 4639, 4655 (emphasis added).

is only a requirement for certification under section 23(b)(3).  Accordingly, Plaintiffs address

Defendants' commonality arguments in their discussion of predominance under 23(b)(3) *infra*.

Defendants offer no other reasons to question commonality.

**C.**     **This Action Can be Maintained as a Class Action under Either 23(b)(1) or 23(b)(3)**

      **1.**     **This is Precisely the Type of Action Suitable for 23(b)(1) Certification**

Defendants contend that 23(b)(1) certification is inappropriate because "virtually all

significant elements of plaintiffs' case will require determination of individual questions" —

"questions of whether an individual class members' claims are time-barred, whether an

individual class member has released her claims, and what individual damages that class member

has suffered."  (Defs' Brf. at 23).  Defendants' argument offers no credible objection to 23(b)(1)

certification because Defendants again ignore the fact that predominance of common questions is

only a requirement for 23(b)(3) certification.  Moreover, Defendants' cited examples do not

support their claim that individual questions will be required to resolve "all significant elements

of plaintiffs' case" because none of the examples concern the *elements* required to prove

plaintiffs' claims:  two of the examples concern affirmative defenses, and the last concerns

calculation of damages.  Furthermore, though Defendants state that individual issues regarding

calculation of "individual damages" were "described above," there is no such discussion in

Defendants' brief.  In any event, calculation of "individual damages", i.e. the amount of any

monetary relief to be distributed from an award to the Plan to each participant account, will be a

straightforward affair that can be achieved via applying mathematical formulas to the investment

history of each participant, similar to securities class actions.  This has been achieved without

difficulty in similar class actions that have been certified and were cited in Plaintiffs' initial brief.

Defendants' objections to 23(b)(1) certification also distort several case holdings to make it appear that the scope of 23(b)(1) certification is narrower than it is.  For example, they state "Rule 23(b)(1) certification is proper only where a defendant 'is obliged by law to treat the members of the class alike,' Amchem Products v. Windsor, 521 U.S. 591, 614 (1997)."  (Defs' Brf. at 22).  This quote cuts off the second half of the sentence, which reads in full:

> Rule 23 (b)(1)(A) "takes in cases where the party is obliged by law to treat the members of the class alike (a utility acting toward customers; a government imposing a tax), *or* where the party must treat all alike as a matter of practical necessity (a riparian owner using water as against downriver owners)." Kaplan, Continuing Work 388 (footnotes omitted).

Amchem, 521 U.S. at 614 (emphasis added).  Defendants also misrepresent the holding in Ortiz v. Fibreboard Corp., 527 U.S. 815 (1999), suggesting that it stands for the proposition that Rule 23(b)(1)(B) certification applies only in a "limited fund case."  (Defs' Brf. at 23.)  But Ortiz makes clear that the "limited fund class action" is but one of the "traditional varieties of representative suit encompassed by Rule 23(b)(1)(B)."  527 U.S. at 834.  Ortiz also points to "actions charging a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of beneficiaries, requiring an accounting or similar procedure to restore the subject of the trust," saying such cases are also "classic examples" of suits appropriate for 23(b)(1)(B) certification.  527 U.S. at 833-34.  This is just such an action.

## 2.  23(b)(3) Certification is Also Appropriate

Defendants contend the superiority requirement for 23(b)(3) certification is not satisfied, but the only reason they offer is the purported predominance of individual issues.  (Defs' Brf. at 23-24).  Accordingly, Plaintiffs address only the predominance requirement below.

(a)   **Individual Issues do not Predominate**

Predominance does not require absence of individual issues, but merely that "resolution of *some* of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and [that] these particular issues [be] more substantial than the issues subject only to individualized proof." Roach v. T.L. Canon Corp., 778 F.3d 401, 405 (2d Cir. 2015) (emphasis added).  Here, Defendants' liability can be established through generalized proof since this case exclusively involves Defendants' actions with respect to Plan-wide administration of Plan investments; the case does not concern any actions directed at individual participants.  Hence, the substantial issues in this case are clearly susceptible to generalized proof, and the predominance requirement is met.

Furthermore, the fact that individual issues or defenses may arise with respect to some class members is no obstacle to 23(b)(3) class certification where common issues are at the core of the litigation.  As the Second Circuit has stated, "[a]lthough a defense may arise and may affect different class members differently, this does not compel a finding that individual issues predominate over common ones. As long as a sufficient constellation of common issues binds class members together, variations in the sources and application of a defense will not automatically foreclose class certification under Rule 23 (b)(3)." Brown v. Kelly, 609 F.3d 467, 483 (2d Cir. 2010) (internal quotation marks and citations omitted; alterations incorporated).

Defendants' argument that predominance is not satisfied is little more than a list of three categories of purported individual issues.  One category is specious and is premised upon the mischaracterization of Plaintiffs' claims.  The other two concern affirmative defenses that arise in virtually every ERISA class action — actions which nevertheless are routinely certified.  None of Defendants' purported individual issues defeat predominance.

13

**(i)** **Plaintiffs' Claims do not Depend upon Identifying a Comparable Fund for Each Participant**

As noted above, Plaintiffs allege that despite the availability of better lower cost options, Defendants breached their duties by favoring the Affiliated Funds.  Defendants contend that individual issues arise because "identification of a 'comparable [investment] option' is an exercise that must be tailored to the individual investor." (Defs' Brf. at 21).  But this ignores the context of Plaintiffs' claims; the breaches alleged concern Defendants' selection and retention of investment options for the Plan as a whole, so the breaches have nothing to do with selecting a fund for an individual participant — this is not a case about individual investment advice.  Defendants' only support for their claim is their own expert, Atanu Saha, a nonlawyer with a Ph.D. in applied economics.  Saha's report repeatedly opines upon legal matters, such as the nature of harm in ERISA actions and the interpretation of Plaintiffs' causes of action; it thus should carry no weight.  The report is also flawed for the following reasons.

First, Saha asserts, without authority, that "Plaintiffs allege that all class members were harmed because the Funds at Issue had higher fees than available alternatives." (Saha Rpt. ¶12).[7] As noted above, Plaintiffs have actually brought their claims for harm to their Plan, not to individual participants.  Saha also contends that when a participant in a 401(k) plan loses money in his account, the harm is "suffered not by the Plan but rather by the participants of the 401k plan." *Id.* ¶10.  The Supreme Court disagrees.[8]

---

[7] Expert Report of Atanu Saha, Ph.D. (Doc 232-1).

[8] *See* LaRue v. DeWolf, Boberg & Assocs., 552 U.S. 248, 256 (2008) (ERISA, 29 U.S.C. §1132(a)(2), [under which Plaintiffs here bring their claims], "does not provide a remedy for individual injuries distinct from plan injuries…, [but] does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account"); Kanawi v. Bechtel, 254 F.R.D. 102, 109 (N.D. Cal. 2008) (citing LaRue and rejecting argument that

Second, Saha wrongly contends, again without citation, that Plaintiffs' theory of harm is based on an assumption that "all Plan participants would necessarily have chosen a lower-fee fund instead of the Funds at issue." (Saha Rpt. ¶12). This is a fundamental misunderstanding of Plaintiffs' claims and the case. As already noted, Plaintiffs' seek relief for harm to the Plan, not individual participants. Moreover, it was the fiduciaries who were determining the options that the Plaintiffs could invest in; and if the fiduciaries had instead offered low-cost funds, participants would necessarily have "selected" lower cost funds because only such funds would have been available. Furthermore, when determining losses for breaches of ERISA fiduciary duties "uncertainties in fixing damages will be resolved against the wrongdoer." Donovan v. Bierwirth, 754 F.2d 1049, 1056 (2d Cir. 1985). In such cases, "[w]here several alternative investment strategies were equally plausible, *the court should presume* that the funds would have been used in the most profitable of these." *Id.* (emphasis added). Thus, determining the extent of Plan losses in this case is simply a matter of determining the most profitable investment that could have been offered to the Plan as a whole. Finally, Plaintiffs also seek disgorgement of all fees paid, (Dkt. No. 208 at 39 §b), a remedy that requires no comparison to alternative funds.

### (ii)      **Defendants' Limitations Defenses do not Defeat Predominance**

"Courts have consistently held that a statute of limitations defense as to some class members does not defeat certification." Healthcare Strategies, Inc. v. ING Life Ins. & Annuity Co., No. 3:11-CV-282 JCH, 2012 WL 10242276 at *7 (D. Conn. Sept. 27, 2012) (citing Jermyn v. Best Buy Stores, L.P., 256 F.R.D. 418, 430 (S.D.N.Y. 2009); Duprey v. Conn. Dep't. of Motor Vehicles, 191 F.R.D. 329, 340–41 (D.Conn. 2000); Brown v. Kelly, 609 F.3d 467, 483 (2d Cir.

---

individualized investment strategies preclude certification of 401(k) Plan excessive fee class).

2010)).  "[E]ven a meritorious statute of limitations defense does not necessarily defeat

certification…[provided there is] a constellation of common issues that predominate over any

individual questions."  In re WorldCom, Inc. Sec. Litig., 219 F.R.D. 267, 303-04 (S.D.N.Y.

2003) (internal quotation marks omitted).

Defendants raise two limitations issues.  The first has been discussed above with respect

to Plaintiff Harris, and is premised upon Defendants' argument that Leber and Kennedy lack

standing to bring claims except those related to the Citi Institutional Liquid Reserves Fund.  As

discussed above, this argument is without merit because, *inter alia*, Leber and Kennedy have

standing.  In any event, on Defendants' theory the claims of all class members except those who

invested in the Citi Institutional Liquid Reserves Fund are time-barred.  (Defs' Brf. at 20).  This

defense thus raises common issues, and does not undermine predominance.

Second, despite the fact that Defendants lost their summary judgment motion contending

that Leber and Kennedy's claims were time-barred by ERISA's actual knowledge limitations

provision, (*see* Dkt. No. 133), Defendants claim predominance is not satisfied because, they

contend, there is a *possibility* that some class members *might* have had actual knowledge "prior

to October 18, 2004."  (Defs' Brf. at 20).  Obviously, Defendants' speculation is no basis for

denying class certification.[9]  Moreover, though this Court did not reach the issue in its opinion,

(*see* Dkt. No. 133 at 9 n. 8), Plaintiffs would argue this defense fails on a class-wide basis

---

[9] In re U.S. Foodservice Inc. Pricing Litig., 729 F.3d 108, 122 (2d Cir. 2013) ("bald speculation
that some class members might have knowledge" is not a reason to deny certification); New
Jersey Carpenters Health Fund v. DLJ Mortgage Capital, Inc., No. 08 CIV. 5653 PAC, 2014 WL
1013835 at *9 (S.D.N.Y. Mar. 17, 2014) ("Nor does Defendants' speculation that certain
sophisticated investors may have had special knowledge…undermine a finding of predominance.
…such speculation, without more, is insufficient to defeat a finding of predominance…).

because no class member had knowledge of the Citigroup internal fiduciary processes and deliberations which constituted the breaches Plaintiffs have alleged.[10]

In support of their contention that limitations issues undermine predominance, Defendants cite McLaughlin v. Am. Tobacco Co., 522 F.3d 215 (2d Cir. 2008), *abrogated in part by* Bridge v. Phx. Bond & Indem. Co., 553 U.S. 639 (2008), asserting that "this case is no different from McLaughlin," (Defs' Brf. at 23).  In fact, it would be difficult to select a case *more different* than McLaughlin.  McLaughlin was a federal RICO fraud case brought against a cigarette maker.  The court stated that the "gravamen of plaintiffs' complaint is that defendants' implicit representation that Lights were healthier led them to buy Lights...at an artificially high price, resulting in plaintiffs' overpayment for cigarettes." *Id.* at 220.  McLaughlin emphasized that "under RICO, *each* plaintiff must prove reliance, injury, and damages." *Id.*  Only 23(b)(3) certification was at issue in McLaughlin, and the court denied certification for lack of predominance.  McLaughlin cited statute of limitations issues as but one of many individual issues, including reliance, loss causation, injury, and calculation of damages.  In other words, it found the core elements of the plaintiffs' case depended on highly individualized issues.  Hence, McLaughlin provides no basis for finding predominance is not satisfied here, since, as discussed above, the core elements of this case are susceptible to common proof. *See* Brieger v. Tellabs,

---

[10] *See* Tibble v. Edison Int'l, 729 F.3d 1110, 1120-21 (9th Cir. 2013) (plaintiffs lacked actual knowledge of breaches related to inclusion of high cost fund share classes in the plan where they lacked knowledge of the fiduciaries' selection process), *reversed in part on other grounds*, 135 S.Ct. 1823 (2015); Brown v. Am. Life Holdings, 190 F.3d 856, 859 (8th Cir. 1999) ("if the fiduciary made an *imprudent* investment, actual knowledge of the breach would usually require some knowledge of how the fiduciary selected the investment"); Maher v. Strachan Shipping, 68 F.3d 951, 956 (5th Cir. 1995) (ERISA plaintiffs "must have been aware of the process utilized by [the fiduciary in making an investment decision] in order to have had actual knowledge of the resulting breach of fiduciary duty")

Inc., 245 F.R.D. 345, 355 (N.D. Ill. 2007) (in ERISA class action, court rejected Defendants'

analogy to statute of limitations difficulties in a tobacco class action suit as inapposite).

### (iii)    Releases do not Defeat Predominance

Defendants state without support that "Citigroup employees routinely sign releases in

which they waive all claims against the Company—including claims under ERISA—when they

accept severance benefits." (Defs' Brf. at 20). They thus speculate that "it is likely that a sizable

number of class members have released their claims." *Id.* at 21. Even if the Court were to

accept this speculation, it does not undermine predominance for the following reasons.

First, as noted above, the claims asserted in this action are not individual claims, but

claims brought on behalf of the Plan for relief to the Plan. (Pls. Brf. at 10-15). Numerous courts

have held that an individual participant, acting in her individual capacity, such as when signing

an individual release, cannot release plan claims. In re Polaroid ERISA Litig., 240 F.R.D. 65, 75

(S.D.N.Y. 2006) ("under ERISA, individuals do not have the authority to release a defined

contribution plan's right to recover for breaches of fiduciary duty").[11] The only way individual

participants could release Plan claims would be through consent of the plan, *id.,* (or equivalent

judicial authorization, such as the Rule 23 process). Hence, Defendants' speculation regarding

releases raises no individual issues because the releases are irrelevant to the Plan claims asserted

---

[11] *See also* Taylor v. United Technologies Corp., No. 3:06CV1494 (WWE), 2008 WL 2333120,
at *4 (D. Conn. June 3, 2008); Bowles v. Reade, 198 F.3d 752, 759–61 (9th Cir.1999) (plaintiff
cannot release claims brought on behalf of a plan without the consent of the plan); In re Aquila
ERISA Litig., 237 F.R.D. 202, 211 (W.D. Mo. 2006) (finding as a matter of law that individuals
cannot release claims brought on behalf of a plan); In re Williams Cos. ERISA Litig., 231 F.R.D.
416, 423 (N.D. Okla. 2005) (same); In re Qwest Sav. & Inv. Plan ERISA Litig., No. 02–RB–464
(CBS), 2004 U.S. Dist. LEXIS 24647, at *14 (D.Colo. Sept. 27, 2004) (same).

in this action; individuals who signed releases will still have the same right to recover through

the Plan any monies awarded to the Plan.  *See id.* (including cases cited in n. 11 of this brief).

Second, Defendants describe the execution of such releases as being "routine," which

suggests all or many involve the same or similar language.  This means that any issues relating to

such releases can be resolved on a common basis.  Hence, they do not defeat predominance.  *See,*

*e.g.*, In re Polaroid ERISA Litig., 240 F.R.D. 65, 75 n. 3 (S.D.N.Y. 2006) (finding releases

presented no obstacle to certification where "Defendants do not point to any reason why [the

releases'] validity is unlikely to be subject to treatment on a class-wide basis").

Third, in the unlikely event conflicts arise between those who have and have not signed

releases, subclasses can be created.[12]

For these reasons, courts routinely certify ERISA class actions alleging claims on behalf

of the plan despite class members executing individual releases.[13]  None of the three cases

denying certification that Defendants cite, (Defs' Brf. at 21), are on point.  Romero v. Flaum

Appetizing Corp., No. 07-7222, 2011 WL 812157 (S.D.N.Y. Mar. 1, 2011) is a wage and hour

---

[12] *See* In re Visa Check MasterMoney Antitrust Litig., 280 F.3d 124, 141 (2d Cir. 2001)
(approving of the use of subclasses to manage class action litigation); Harris v. Koenig, 271
F.R.D. 383, 391 (D.D.C. 2010) (conflicts created by class member releases in ERISA class
action present no obstacle to certification because "in the event that such a conflict does arise,
the Court has discretion to consider creating sub-classes"); Fremont Gen. Corp. Litig., No. 2:07-
CV-02693, 2010 WL 3168088 at *9 (C.D. Cal. Apr. 15, 2010) (in ERISA class action court
noted that "[s]hould it become apparent that…holders of releases should be part of a subclass,
the Court will modify the class certification order as needed).

[13] In re Polaroid ERISA Litig., 240 F.R.D. 65, 75-76 (S.D.N.Y. 2006); Taylor v. United
Technologies Corp., No. 3:06CV1494(WWE), 2008 WL 2333120 at *4 (D. Conn. June 3, 2008);
Fremont Gen. Corp. Litig., No. 2:07-CV-02693, 2010 WL 3168088 at *9 (C.D. Cal. Apr. 15,
2010); In re Aquila ERISA Litig., 237 F.R.D. 202, 211 (W.D. Mo. 2006) (certifying class despite
the fact that "many employees… signed a severance agreement agreeing to release all claims
under ERISA against" the plan sponsor); In re Williams Cos. ERISA Litig., 231 F.R.D. 416,
423-24 (N.D. Okla. 2005).

case involving New York labor laws.  The other two cases — <u>Spann v. AOL Time Warner</u>, 219

F.R.D. 307 (S.D.N.Y. 2003) and <u>Walker v. Asea Brown Boveri</u>, 214 F.R.D. 58 (D. Conn. 2003)

— asserted individual claims, not claims on behalf of the plan.  *See* <u>In re Polaroid ERISA Litig.</u>,

240 F.R.D. 65, 75 n. 3 (S.D.N.Y. 2006) (distinguishing the same cases for the same reason).

### D.  <u>Defendants' Attempt to Argue a Merits Issue — the Appropriate Level of Fund Fees — is Inappropriate and Misleading</u>

Defendants contend that the average expense ratio for comparable funds shows that most

of the Affiliated Funds had below average fees.  (Defs. Brf. at 3-4, and Table 1.)  Assuming,

*arguendo*, the accuracy of Defendants' calculations and data, Defendants' contention is improper

and misleading because:  (i) it has nothing to do with class certification and is an improper

attempt to influence the Court on the merits; (ii) once the Affiliated Funds were sold to Legg

Mason, Citigroup 401(k) staff themselves concluded the fees were too high and took steps to

negotiate lower fees with Legg Mason, (2d Moore Decl., ¶2 & Ex. 1);[14] (iii) during the Class

Period, Citigroup's own paid consultants cited "cost-effectiveness of the Plan's current

investment vehicles" as a "key issue" that merited "detailed fiduciary review…going forward,"

(2d Moore Decl., Ex. 2); (iv) Defendants' averages are not asset-weighted, include many funds

not appropriate for the Citigroup 401(k) Plan, and are thus inflated (2d Moore Decl., Ex. 3,

"Rebuttal Report of Steve Pomerantz, Ph.D."); and (v) as noted above, to prove their claims

Plaintiffs need only show that Defendants ignored better lower cost options because they did not

benefit Citigroup — simply settling for average or slightly below average fees does not insulate a

fiduciary from liability.  Plaintiffs will, of course, have more to say on these issues at the merits

stage.

---

[14] *Second Declaration of James A. Moore in Support of Plaintiffs' Motion for Class Certification*, filed herewith.

Respectfully submitted,


By:  /s/ James A. Moore
J. Brian McTigue (*Pro hac vice*)
James A. Moore(*Pro hac vice*)
**MCTIGUE LAW LLP**
4530 Wisconsin Avenue, NW
Suite 300
Washington, DC  20016
Tel:  (202) 364-6900
Fax: (202) 364-9960
bmctigue@mctiguelaw.com
jmoore@mctiguelaw.com


Gregory Yann Porter (*Pro hac vice*)
**BAILEY & GLASSER LLP**
910 17th Street, NW
Suite 800
Washington, DC 20006
Tel: (202) 543-0226
Fax:  (202) 434-8252
gporter@baileyglasser.com


*Counsel for Plaintiffs*


David S. Preminger (DP 1057)
**KELLER ROHRBACK, LLP**
1140 Avenue of the Americas, Ninth Floor
New York, NY 10036
Tel: 646-380-6690
Fax: 646-380-6692
dpreminger@kellerrohrback.com


*Liaison Counsel for Plaintiffs*

21

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the date set forth below, a copy of the foregoing document was filed electronically with the Court and served by operation of the Court's ECF notification system upon Defendants' counsel of record.

Dated:  November 16, 2015

_/s/James A. Moore_____
James A. Moore