UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| MARYA J. LEBER, SARA L. KENNEDY, LESLIE HIGHSMITH, SHERRI M. HARRIS, *and all others similarly situated*,<br><br>                                   Plaintiffs,<br><br>              -against-<br><br>THE CITIGROUP 401(k) PLAN INVESTMENT COMMITTEE; THE BENEFIT PLANS INVESTMENT COMMITTEE OF CITIGROUP,INC.; MICHAEL CARPENTER; PAUL COLLINS; JAMES COSTABILE; VIRGIL CUMMING; DAVID DODILLET; ROBERT GROGAN; WILLIAM HEYMAN; ROBIN LEOPOLD; ALAN MACDONALD; MICHAEL MURRAY; CHRISTINE SIMPSON; RICHARD TAZIK; TODD THOMSON; TIMOTHY TUCKER; DAVID TYSON; RONALD A. WALTER; GUY WHITTAKER; DONALD YOUNG; JAMES ZELTER; BRUCE ZIMMERMAN; and DOE DEFENDANTS 1-20<br><br>                                   Defendants. | 07-Cv-9329 (SHS)<br><br><u>OPINION & ORDER</u> |

SIDNEY H. STEIN, U.S. District Judge.

Plaintiffs are participants in Citigroup's 401(k) retirement plan (the "401(k) Plan" or the "Plan") and bring this putative class action against certain fiduciaries of the Plan, alleging that these fiduciaries violated their duties of prudence and loyalty pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*. Plaintiffs have now moved for class certification. For the reasons explained below, plaintiffs' motion is granted.

I. **BACKGROUND**

The Court assumes the parties' familiarity with this action's procedural history, which was recounted in detail in the Court's September 8, 2015, Opinion & Order on plaintiffs'

motion to amend the complaint. *See Leber v. Citigroup 401(k) Plan Inv. Comm.*, 129 F. Supp. 3d 4 (S.D.N.Y. 2015). In that Opinion & Order, the Court granted plaintiffs leave to file a fourth amended complaint ("4AC" or the "Fourth Amended Complaint"), which plaintiffs then filed on September 18, 2015. (4AC, ECF No. 211.) Plaintiffs now seek to certify the class proposed in their Fourth Amended Complaint under Federal Rule of Civil Procedure 23(b)(1) or, in the alternative, Rule 23(b)(3).

## A. The Plan

This action involves allegations of self-dealing and imprudent fiduciary conduct related to the administration of Citigroup's 401(k) Plan. The Plan is a defined contribution plan, within the meaning of 29 U.S.C. § 1002(34). (*See* 4AC ¶ 25; Answer, ECF No. 228, ¶ 25.) In a defined contribution plan, each participant maintains an individual account, chooses from a menu of specific investment options, and is entitled to only those benefits stemming from the amounts contributed to his or her account. *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439 (1999) (citing 29 U.S.C. § 1002(34)). In contrast to a defined contribution plan, the second type of pension plan covered by ERISA – a defined benefit plan – is comprised of a "general pool of assets rather than individual dedicated accounts" and employees are entitled to fixed payments upon retirement. *Hughes Aircraft*, 525 U.S. at 439.[1]

The three named plaintiffs – Marya J. Leber, Sara L. Kennedy, and Sherri M. Harris[2] – are all participants in the 401(k) Plan, and claim that the committees responsible for overseeing the Plan during the putative class period,[3] along with those committees' individual members and officers (collectively, "defendants"), breached their fiduciary duties of prudence and loyalty by persistently favoring certain investment options despite the fact that those options had higher management fees than comparable alternatives.

Defendants were responsible for monitoring the Plan and making decisions with respect to removing, replacing, or adding investment options offered to the participants. (4AC ¶¶ 1, 27, 40, 42; *see also* Answer ¶¶ 1, 40, 42.) During the putative class period –

---

[1] Although only Citigroup's 401(k) Plan – as noted, a defined contribution plan – is at issue in this case, the company also offered defined benefit plans to certain eligible employees during the same time period. (4AC ¶¶ 21, 53(D), 66.)

[2] When plaintiffs initially moved for class certification, there were four named plaintiffs. In the course of briefing the class certification motion, Leslie Highsmith withdrew as a named plaintiff because she learned that she had released all claims against Citigroup upon the termination of her employment with the company. (Defs.' Mem. in Opp'n to Pls.' Mot. to Certify Class, 4 n.5, ECF No. 233; *see also* Letter from Citibank N.A. to Leslie Y. Highsmith (Feb. 25, 2010), ECF No. 232, Ex. 14 (Highsmith's release of claims).)

[3] The Plan was administered by two investment committees during the proposed class period. At the beginning of the period, the relevant investment committee was called the Benefit Plans Investment Committee. Effective August 3, 2005, it was succeeded by the Citigroup 401(k) Plan Investment Committee. Both committees are named as defendants in this action. (4AC ¶¶ 21, 22.)

October 18, 2001, to September 4, 2007 – the Plan contained twenty-six different investment options, including Citigroup's corporate stock, money market funds, equity funds, and fixed income funds. (Expert Report of Atanu Saha 9, Oct. 23, 2015, ECF No. 232, Ex. 1 ("Saha Expert Report").)

As many as sixteen of those investment options were mutual funds that were offered and managed by Citigroup's subsidiaries ("proprietary funds").[4] According to plaintiffs, Citigroup had a financial stake in offering these proprietary funds as investment options to Plan participants because Citigroup – through its affiliates, Citi Fund Management, Inc., Smith Barney Fund Management LLC, and Salomon Brothers Asset Management, Inc. – received revenues from the funds' investment advisory fees. (4AC ¶ 3, *see also id.* at ¶¶ 2, 35, 52.)

On December 1, 2005, Citigroup sold Citigroup Asset Management ("CAM") – the division that included the managers of its proprietary funds – to Legg Mason, Inc. At that point, the proprietary funds ceased to be affiliated with Citigroup, but defendants did not immediately remove them from the Plan. (4AC ¶¶ 4, 48, 51.) Defendants finally eliminated each of the remaining (formerly) proprietary funds – except for the Citi Institutional Liquid Reserves Fund – from the Plan on September 4, 2007. (4AC ¶¶ 4, 51.)

## B.  The Claims

In their Fourth Amended Complaint, plaintiffs bring three counts, reflecting three different ways in which defendants are alleged to have improperly favored Citigroup's proprietary funds and thereby breached their duties of prudence and loyalty, in violation of the fiduciary standards outlined in sections 404(a) and 405 of ERISA, 29 U.S.C. §§ 1104(a), 1105.

In Count I, plaintiffs allege that defendants generally failed to "monitor the suitability of Plan investment options, and to remove or replace any investment option that was found to be imprudent, e.g.[,] because of high fees." (4AC ¶ 89.) Plaintiffs allege that the minutes of Plan committee meetings demonstrate that defendants performed "no or a purely perfunctory" review of the performance and fees of the Plan's investment options and instead focused their attention on Citigroup's defined benefit plans. (4AC ¶ 91.) According to the Fourth Amended Complaint, defendants only began to monitor the performance of the Plan's funds after Citigroup decided to sell CAM; at that point, defendants no longer

_____

[4] Neither the Fourth Amended Complaint nor the expert report provided by defendants specifies the total number of proprietary funds offered by the Plan. Nevertheless, during oral argument on plaintiffs' motion for class certification, defendants repeatedly represented that there were sixteen proprietary funds offered by the Plan at various times during the putative class period. Plaintiffs' counsel did not dispute this computation. (Oral Arg., Oct. 16, 2017, Tr. 19:7-15, 30:8-10, 32:16-17.)

had an interest in keeping the Plan's proprietary investment options free from scrutiny. (4AC ¶ 91.)

Plaintiffs allege that because of defendants' failure to monitor the Plan and to remove and replace imprudent investments, the Plan and its participants incurred "millions of dollars" in losses through the high fees of nine particular proprietary funds (the "Affiliated Funds").[5] (4AC ¶ 92.) These nine Affiliated Funds are a subset of the sixteen proprietary funds offered by the Plan. According to plaintiffs, the other proprietary funds did not experience losses during the putative class period and therefore could not sustain a suit seeking monetary damages. (Oral Arg., Oct. 16, 2017, Tr. 11:17-19, 12:10-13:3; *see also* Pls.' Resp. to Defs'. Subm'n of Suppl. Auth. 2, July 10, 2017, ECF No. 260.)

Counts II and III focus on specific decisions taken by defendants at a September 5, 2002, committee meeting, which was attended by representatives from Citigroup Asset Management ("CAM"), the Citigroup entity that would profit from any investment advisory fees paid to Affiliated Funds. In Count II, plaintiffs allege that defendants added three of the Affiliated Funds – the Citi Institutional Reserves Fund, the Smith Barney Small Cap Value Fund, and the Smith Barney Fundamental Value Fund – to the Plan after simply "rubber-stamp[ing]" CAM's recommendation. (4AC ¶ 95.) And in Count III, plaintiffs allege that, at that same September 5, 2002, meeting, defendants also "rubber-stamped" CAM's recommendation to transfer, or "map," assets that had previously been invested in non-proprietary funds into four of the Affiliated Funds – the Citi Institutional Liquid Reserves Fund, the Smith Barney Large Cap Growth Fund, Smith Barney Fundamental Value Fund, and the Smith Barney Government Securities Fund. (4AC ¶ 100.) According to plaintiffs, both the inclusion of new Affiliated Funds and the mapping of other funds' assets into the Affiliated Funds caused losses to the Plan through the Affiliated Funds' allegedly high fees. (4AC ¶¶ 98, 100-01.)

Plaintiffs bring each of their claims in a derivative capacity on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2).[6] Because section 1132(a)(2) "does not provide a remedy

---

[5] The nine Affiliated Funds are: (1) Citi Institutional Liquid Reserves Fund, (2) Smith Barney Government Securities Fund, (3) Smith Barney Diversified Strategic Income Fund, (4) Smith Barney Large Cap Growth Fund, (5) Smith Barney Large Cap Value Fund, (6) Smith Barney Small Cap Value Fund, (7) Smith Barney International All Cap Growth Fund, (8) Smith Barney Fundamental Value Fund, and (9) the Salomon Brothers High Yield Bond Fund. Certain of these Affiliated Funds were renamed after they were sold to Legg Mason on December 1, 2005. (4AC ¶ 49.)

[6] Section 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2), authorizes ERISA plan participants to seek "appropriate relief under [section 409 of ERISA, 29 U.S.C. § 1109]," and section 1109, in turn, provides that plan fiduciaries who breach their duties "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach," shall "restore to such plan any profits of such fiduciary," and "shall be subject to such other equitable or remedial relief as the court may deem appropriate," 29 U.S.C. § 1109(a).

for individual injuries distinct from plan injuries," *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008), any relief plaintiffs seek will "inur[e] to the Plan" and will only indirectly benefit individual participants, *L.I. Head Start Child Dev. Servs., Inc. v. Economic Opportunity Comm'n of Nassau Cty.*, 710 F.3d 57, 66 (2d Cir. 2013). Accordingly, plaintiffs are seeking disgorgement of investment advisory fees and restoration of all losses to the Plan, coupled with the designation of the putative class members as the ultimate recipients of the amounts disgorged and restored to the Plan.[7] (4AC at 39.)

## C. The Class

Because any plaintiff in a 29 U.S.C. § 1132(a)(2) suit must "take . . . steps to become a bona fide representative of other interested parties," the U.S. Court of Appeals for the Second Circuit has stated that plaintiffs who comply with the standards for class certification of Federal Rule of Civil Procedure 23 "will likely be proceeding in a 'representative capacity' properly for purposes of [section 1132(a)(2)]." *Coan v. Kaufman*, 457 F.3d 250, 259, 261 (2d Cir. 2006).

In this case, Leber, Kennedy, and Harris seek to represent a class that consists of "[a]ll participants in [the Plan]" – except for "[d]efendants, [d]efendants' beneficiaries, and [d]efendants' immediate families" – who invested in any of the nine Affiliated Funds between October 18, 2001, and September 4, 2007. (4AC ¶ 79.) The October 18, 2001, date represents the outer bound of ERISA's six-year limitations period and September 4, 2007, is the date on which all Affiliated Funds (except for the Citi Institutional Liquid Reserves Fund) were removed from the Plan. (4AC ¶ 4.) Plaintiffs seek to certify this proposed class pursuant to Federal Rule of Civil Procedure 23(b)(1) or, in the alternative, Rule 23(b)(3).

Notably, the named plaintiffs did not themselves invest in each of the nine Affiliated Funds through which they allege the Plan suffered losses. Leber and Kennedy both invested only in the Citi Institutional Liquid Reserves Fund, while Harris invested only in the Smith Barney Large Cap Growth Fund. (4AC ¶¶ 14, 16, 19; *see also* Answer ¶¶ 14, 16, 19.)

In opposition to plaintiffs' class certification motion, defendants argue that – as a threshold matter – the named plaintiffs do not have standing to raise claims concerning those Affiliated Funds in which they did not invest. Defendants further contend that, even if the named plaintiffs' claims were fully justiciable, they would not be typical of the claims of class members who invested in other Affiliated Funds. In addition, defendants argue that plaintiffs cannot satisfy Rule 23(a)'s commonality requirement and that their suit does not fall into any of the categories enumerated in Rule 23(b). Defendants also object to

---

[7] Plaintiffs also ask the Court to "[a]ward such other equitable or remedial relief as may be appropriate, including the permanent removal of [d]efendants from any positions of trust with respect to the 401(k) Plan." (4AC at 39.)

plaintiffs' extension of the class period beyond December 1, 2005, after which the Affiliated Funds were no longer affiliated with Citigroup. Separately, defendants urge the Court to find that Harris's claims were time-barred when she was added as a named plaintiff in 2015.

## II. TIMELINESS OF HARRIS'S CLAIMS

Prior to addressing plaintiffs' class certification motion, the Court must reevaluate, in light of *California Public Employees' Retirement System v. ANZ Securities, Inc.*, 137 S. Ct. 2042 (2017), its earlier decision to permit Harris to join the case as a named plaintiff.

This Court has the "power to reconsider its own decisions prior to final judgment" and is justified in doing so in situations where there has been "an intervening change of controlling law" or to "correct a clear error." *DiLaura v. Power Auth. of State of N.Y.*, 982 F.2d 73, 76 (2d Cir. 1992); *see also* Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.").

In this Court's Opinion & Order of September 8, 2015, the Court permitted Leber and Kennedy to amend their complaint to add Harris as a class representative. At the time, defendants opposed this amendment by arguing that Harris's claims were time-barred.[8] (Defs'. Mem. in Opp'n to Pls.' Mot. for Leave to File Fourth Am. Compl. 4-8, Mar. 25, 2015, ECF No. 155.) The Court disagreed, concluding that Harris's claims were subject to a principle called "*American Pipe* tolling," in which "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class." *Am. Pipe and Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974); *see also Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353-54 (1983). Although defendants argued then that Harris was not actually a "member of the class" because Leber and Kennedy lacked standing to raise claims related to the fund in which Harris had invested (ECF No. 155 at 5-6), the Court found that *American Pipe* tolling applied so long as Leber and Kennedy purported to assert claims on her behalf. *Leber v. Citigroup 401(k) Plan Inv. Comm.*, 129 F. Supp. 3d 4, 22 (S.D.N.Y. 2015) (citing, *inter alia, In re WorldCom Sec. Litig.*, 496 F.3d 245, 254-55 (2d Cir. 2007)).

In connection with plaintiffs' motion to amend, neither the parties nor the Court addressed the question of whether the ERISA statute was eligible for *American Pipe* tolling. At that time, it was well-established that only statutes of limitations – as opposed to statutes

---

[8] The last date of the putative class period is September 4, 2007, and the fund in which Harris invested – the Smith Barney Large Cap Growth Fund – was no longer offered by the Plan after that date. Therefore, any breaches alleged by Harris would have occurred more than six years prior to plaintiffs' March 2015 request to add her as a class representative. *See* ERISA § 413, 29 U.S.C. § 1113 (barring ERISA actions for breaches of fiduciary duty that are brought after the earlier of (i) six years from the breach, or (ii) three years from the earliest date of plaintiff's actual knowledge of the breach).

of repose – could be subject to equitable tolling.[9]  *See CTS Corp. v. Waldburger*, 134 S. Ct. 2175, 2183 (2014); *Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 106 (2d Cir. 2013).  However, it was not clear whether the six-year time bar in ERISA, 29 U.S.C. § 1113(1), was a statute of repose or a statute of limitations.  Nor was it clear whether *American Pipe* tolling was equitable or legal in nature.  *See IndyMac*, 721 F.3d at 109 (declining to decide the question).

In the 2017 *ANZ* decision, the Supreme Court addressed both of those issues.  First, the Supreme Court held that *American Pipe* tolling is in fact a species of "equitable tolling." *ANZ*, 137 S. Ct. at 2050-51.  As such, it could not be used to toll the statute of repose in Section 13 of the Securities Act.  *Id.* at 2052.  Although the *ANZ* case involved one particular statute of repose, the case's reasoning extends to other statutes of repose.  *See id.* at 2050 ("[T]he determination that the 3-year period [in the Securities Act] is a statute of repose is critical . . . ."); *see also SRM Global Master Fund Ltd. P'ship v. Bear Stearns Cos.*, 829 F.3d 173 (2d Cir. 2016) (applying the same reasoning to conclude that the statute of repose in the Exchange Act could not be tolled), *cert. denied*, 137 S. Ct. 2326 (2017) (denying certiorari the day after issuing the *ANZ* decision).

Second, the Supreme Court clarified that 29 U.S.C. § 1113(1) was a statute of repose. *ANZ*, 137 S. Ct. at 2050.  The *ANZ* majority used the ERISA statute as an illustrative example of statutes of repose that permit tolling only in "certain circumstances" envisioned by the legislature.  *Id*.[10]

Plaintiffs attempt to distinguish *ANZ* by pointing out that it involved a plaintiff who had opted out of a class in order to file an individual suit, while "Harris was simply added by amendment as a named plaintiff to an existing class action suit."  (Pls.' Resp. to Defs'. Subm'n of Suppl. Auth.; *see also* Oral Arg. Tr. 6:1-3.)  But the holding of *ANZ* cannot be limited to cases that share its procedural posture.  *American Pipe* tolling applies not only to

---

[9] Statutes of limitations and statutes of repose "serve distinct purposes."  *Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 106 (2d Cir. 2013).  Statutes of limitations are "designed to encourage plaintiffs to pursue diligent prosecution of known claims" and "begin to run when the cause of action accrues."  *ANZ*, 137 S. Ct. at 2049 (quotation marks omitted).  In contrast, statutes of repose "effect a legislative judgment that a defendant should be free from liability after the legislatively determined period of time" and "begin to run on the date of the last culpable act or omission of the defendant."  *Id.* (quotation marks omitted).

[10] Although plaintiffs contend that the ERISA statute's express reference to tolling in the case of fraud or concealment somehow leaves the statute open to equitable tolling (Plaintiffs' Response to Defendants' Submission of Supplemental Authority, July 10, 2017, ECF No. 260), there is no basis for such an interpretation.  *ANZ* discussed the fraud exception as a type of legal tolling and contrasted it with the "doctrine of equitable tolling."  *ANZ*, 137 S. Ct. at 2050-51.  The *ANZ* decision nowhere suggests that statutes of repose that are subject to legal tolling somehow become eligible for equitable tolling.  *Cf. IndyMac*, 721 F.3d at 106 ("[A] statute of repose is subject *only* to legislatively created exceptions, and not to equitable tolling." (emphasis added) (alterations, quotation marks, and citations omitted)).

opt-out plaintiffs who elect to file individual suits, but also to putative class members seeking to intervene in a pre-existing class action. *See American Pipe*, 414 U.S. 538 (establishing the tolling doctrine in a case involving intervention by putative class members); *see also ANZ*, 137 S. Ct. at 2057 (Ginsburg, J., dissenting) (observing that the majority's decision incentivizes unnamed putative class members "to file a protective claim, in a separate complaint *or in a motion to intervene*, before the three-year period [of repose] expires") (emphasis added).

In order to account for changes in controlling law and to correct a prior error, the Court must revise its prior determination that *American Pipe* tolling applied to Harris's claims. Because Harris was time-barred from raising any individual claims at the time of her entry into this case and because she was not yet a member of a certified class, she should not have been permitted to serve as a lead plaintiff.[11] Of course, striking Harris as an improperly added named plaintiff does not preclude her from remaining a member of any class that is certified by this Court. A statute of repose "puts an outer limit on the right to bring a civil action," *CTS*, 134 S. Ct. at 2182; it does not cut off a class action that was timely initiated.

## III. STANDING

Before moving on to the requirements of Rule 23, this Court must resolve the "threshold question" of whether the remaining named plaintiffs – Leber and Kennedy – have standing to bring claims regarding those Affiliated Funds in which they did not personally invest. *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

### A. Legal Standards

The doctrine of standing is derived from Article III of the Constitution, which limits federal courts' jurisdiction to "Cases" and "Controversies," U.S. Const. art. III, § 2, and exists to "ensure that a plaintiff has a sufficiently personal stake in the outcome of the suit so that the parties are adverse," *Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chi. v. Bank of N.Y. Mellon* (*Retirement Board*), 775 F.3d 154, 159 (2d Cir. 2014) (quotation marks omitted). A plaintiff must demonstrate standing for "each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

In order to establish the "irreducible constitutional minimum of standing," a plaintiff must show that he or she has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable

---

[11] Plaintiffs were also precluded from using the relation-back doctrine to include Harris in an amended pleading pursuant to Fed. R. Civ. P. 15(c). In the Second Circuit, "a newly added plaintiff's claims relate back pursuant to Rule 15(c) [only] if there was a mistake that caused the party to be omitted from the original complaint." *Merryman v. J.P. Morgan Chase Bank, N.A.*, 319 F.R.D. 468, 473 (S.D.N.Y. 2017) (citing *Levy v. U.S. Gen. Accounting Off.*, 175 F.3d 254, 255 (2d Cir. 1999)). Plaintiffs never attributed their omission of Harris to a mistake of identity.

judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quotation marks omitted) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). To establish the first requirement – injury in fact – a plaintiff must "show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1547-48 (quoting *Lujan*, 504 U.S. at 560).

Because the three standing requirements are "not mere pleading requirements but rather an indispensable part of the plaintiff's case," a plaintiff must support them "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. At the class certification stage, the Second Circuit has approved of evaluating standing by relying on the pleadings and "constru[ing] the complaint in favor of the complaining party." *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006) (quotation marks omitted).

In the context of class actions, a named plaintiff who has constitutional standing to raise claims based on his own injuries may also have "class standing" to assert "other claims, unrelated to those injuries," on behalf of unnamed class members. *Retirement Board*, 775 F.3d at 160. In *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, the Second Circuit established a two-part test for class standing:

> [I]n a putative class action, a plaintiff has class standing if he plausibly alleges (1) that he personally has suffered some actual injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants.

693 F.3d 145, 162 (2d Cir. 2012) ("*NECA-IBEW*") (quotation marks, citations, and alterations omitted).[12] If this two-pronged test is satisfied, "the named plaintiff's litigation incentives are sufficiently aligned with those of the absent class members [such] that the named plaintiff may properly assert claims on their behalf." *Retirement Board*, 775 F.3d at 161.

## B. Discussion

Plaintiffs have standing to assert all of the claims brought in this action even though they did not invest in each of the Affiliated Funds at issue. In this Circuit, plaintiffs do not need to point to individualized injuries with respect to each Plan investment in order to establish constitutional standing in a derivative suit brought pursuant to 29 U.S.C. § 1132(a)(2). In *Long Island Head Start Child Development Services, Inc. v. Economic Opportunity Commission of Nassau County, Inc.*, the Second Circuit held that plaintiffs who "asserted their claims in a derivative capacity" on behalf of a plan established "injury-in-

---

[12] The class standing inquiry "derives from constitutional standing principles," *Retirement Board*, 775 F.3d at 161, and is distinct from the question of whether a putative class representative may serve as an adequate representative under Fed. R. Civ. P. 23(a), *NECA-IBEW*, 693 F.3d at 158 n.9.

fact sufficient for constitutional standing" by alleging injuries to that plan. 710 F.3d 57, 67 n.5 (2d Cir. 2013).

Although the applicability of *Long Island Head Start* to actions involving defined contribution plans has been called into question, the decision has not been displaced as Second Circuit precedent. *See Allen v. Bank of Am. Corp.*, No. 15 Civ. 4285, 2016 WL 4446373, at *5 (S.D.N.Y. Aug. 23, 2016) ("[T]he Second Circuit's holding in [*Long Island*] *Head Start* is neither ambiguous nor dictum."), *argued*, No. 16-3327 (2d Cir. June 22, 2017); *see also Fletcher v. Convergex Grp., LLC*, 679 F. App'x 19, 21 (2d Cir. 2017) (summary order), *petition for cert. filed*, No. 17-343 (Sept. 1, 2017). Defendants highlight *In re UBS ERISA Litigation*, No. 08-cv-6696, 2014 WL 4812387, at *7 (S.D.N.Y. Sept. 29, 2014), *aff'd sub nom. Taveras v. UBS AG*, 612 F. App'x 27 (2d Cir. 2015) (summary order), in which a district court held that a loss to the plan is insufficient to establish injury-in-fact for a defined contribution plan because the plan can lose value even while the plaintiff's individual account does not. The court distinguished *Long Island Head Start*, which addressed an "ERISA welfare benefits plan," in which a breach of fiduciary duties would have "necessarily caused the value of the plan to diminish, to the detriment of all plan participants." *In re UBS ERISA Litig.*, 2014 WL 4812387, at *7. Although the Second Circuit endorsed the district court's reasoning, it did so in a non-precedential summary order that relied on pre-*Long Island Head Start* authority. *See Taveras*, 612 F. App'x at 29 (citing *Kendall v. Emps. Ret. Plan of Avon Prods.*, 561 F.3d 112, 119 (2d Cir. 2009)).

The persuasive value of *In re UBS ERISA Litigation* – and the summary order affirming it – is limited. Nothing in the *Long Island Head Start* decision indicates that the Court of Appeals relied on any unique characteristics of defined benefit plans to reach its conclusion about standing. In fact, neither *In re UBS ERISA Litigation* nor *Taveras* addresses the primary basis of *Long Island Head Start*'s reasoning: the derivative nature of the suit before it. Although defendants would prefer it to be otherwise, a 29 U.S.C. § 1132(a)(2) suit brought on behalf of a defined contribution plan is no less derivative than one brought on behalf of a defined benefit plan. *See LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008) ("[29 U.S.C. § 1132(a)(2)] authorize[s] recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account."); *see also LaRue*, 552 U.S. at 262 (Thomas, J., concurring) ("The allocation of a plan's assets to individual accounts for bookkeeping purposes does not change the fact that all the assets in the [defined contribution] plan remain plan assets.").

Because the holding of *Long Island Head Start* remains binding on this Court, plaintiffs can establish constitutional standing to bring representative claims by pointing to injuries to Plan assets. *See Carver v. Bank of N.Y. Mellon*, No. 15-CV-10180, 2017 WL 1208598, at *3-4 (S.D.N.Y. Mar. 31, 2017) (applying *Long Island Head Start* to claims asserted on behalf of defined contribution plans).

Here, plaintiffs have sued in a representative capacity and allege that the Plan suffered millions of dollars a year in losses as a result of defendants' disloyal and imprudent

decisions to offer the nine Affiliated Funds as investments. (4AC ¶¶ 70, 92, 98, 102.) The fact that only some of these alleged losses manifested themselves in the named plaintiffs' individual accounts does not deprive plaintiffs of their standing to seek redress on behalf of the Plan for the broader injuries the Plan incurred. *See Cryer v. Franklin Templeton Res., Inc.*, No. C 16-4265, 2017 WL 4023149, at *4 (N.D. Cal. July 26, 2017) ("[I]n determining constitutional standing, courts look not to individual funds but to the nature of the claims and allegations to determine whether the pleaded injury relates to the defendants management of the Plan *as a whole*." (quotation marks omitted)), *request to appeal filed*, No. 17-80213 (9th Cir. Oct. 18, 2017); *McDonald v. Edward D. Jones & Co.*, No. 4:16 CV 1346, 2017 WL 372101, at *2 (E.D. Mo. Jan. 26, 2017) ("In a suit brought pursuant to 29 U.S.C. § 1132(a)(2), a plan participant may seek recovery for the plan even where the participant did not personally invest in every one of the funds that caused an injury to the plan."); *Taylor v. United Techs. Corp.*, No. 3:06CV1494, 2008 WL 2333120, at *3 (D. Conn. June 3, 2008) ("[T]he loss to the Plan assets due to excessive fees or impaired returns represents a concrete and actual injury to satisfy standing."); *Tussey v. ABB, Inc.*, No. 06-04305-cv, 2007 WL 4289694, at *2 (W.D. Mo. Dec. 3, 2007) ("The Fidelity Defendants' argument that Tussey cannot advance any claims for investment options which he never elected is not persuasive because the losses occurred to the Plan as a whole.").

Even if *Long Island Head Start* did not control and plaintiffs needed to allege individualized harm related to each fund at issue to establish constitutional standing,[13] an application of the Second Circuit's class standing test would similarly permit plaintiffs to bring claims related to all nine Affiliated Funds. *See NECA-IBEW*, 693 F.3d at 158 (applying class standing analysis where plaintiff "clearly lack[ed] standing" to assert claims arising out of financial products that did not cause injuries to plaintiff).

As noted above, to establish class standing, a plaintiff must show that (1) the plaintiff has "personally suffered" an injury-in-fact as a result of the defendant's conduct, and (2) the defendant's conduct "implicates the same set of concerns as the conduct alleged to have caused injury" to the other putative class members. *NECA-IBEW*, 693 F.3d at 162 (quotation marks omitted).

---

[13] The Court acknowledges that the Second Circuit's eschewal of an individualized injury requirement in *Long Island Head Start* makes it an outlier among its sister circuits. *See Perelman v. Perelman*, 793 F.3d 368, 375-76 (3d Cir. 2015) (collecting cases and noting that the "reasoned consensus" of federal appellate courts is that individualized injuries are required even in actions brought "in a 'derivative' or 'representative' capacity on behalf of the Plan"); *see also Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 433 F.3d 181, 200 (2d Cir. 2005) (citing approvingly to *Harley v. Minn. Mining & Mfg. Co.*, 284 F.3d 901, 906-07 (8th Cir. 2002), which held that "an ERISA Plan participant or beneficiary must plead a direct injury in order to assert claims on behalf of a Plan"). Nonetheless, *Long Island Head Start* is the law in this Circuit.

Plaintiffs satisfy the first prong of the class standing test by alleging that they personally paid excessive fees as a result of having invested in the Citi Institutional Liquid Reserves Fund, an Affiliated Fund that is implicated in all three of the counts alleged in the Fourth Amended Complaint. *See Moreno v. Deutsche Bank Ams. Holding Corp.*, 15 Civ. 9936, 2017 WL 3868803, at *10 (S.D.N.Y. Sept. 5, 2017) (plaintiffs adequately alleged actual injury by alleging that "[t]hey were charged excessive fees and were offered an unlawful menu of investments, assembled for the benefit of Defendants"), *appeal filed*, No. 17-2911 (2d Cir. Sept. 19, 2017); *cf. Taveras*, 612 F. App'x at 29 (plaintiff failed to demonstrate injury-in-fact because she did not allege that her individual account was impacted by defendants' alleged breach).

Plaintiffs also satisfy the second prong of the Second Circuit's class standing test because the allegedly disloyal and imprudent conduct of defendants "implicates the same set of concerns" for investors in all nine Affiliated Funds. *NECA-IBEW*, 693 F.3d at 162. Plaintiffs allege that they and all other Plan participants who invested in the Affiliated Funds were injured in the same manner when defendants failed to monitor the Plan or to investigate alternatives before selecting Affiliated Funds or mapping monies into them from other funds. (4AC ¶¶ 91, 95, 100.) In addition, the allegation that defendants' behavior was motivated by their divided loyalties and improper preference for funds affiliated with Citigroup serves to further unite the claims of all Plan participants who invested in any of the Affiliated Funds. As another district court found in a case involving similar allegations, "[b]ecause the alleged harms are premised on the process Defendants used to manage the Plan, the claims involve similar inquiries and proof, and thus implicate the same set of concerns." *Moreno*, 2017 WL 3868803, at *10.

Defendants vigorously contest the notion that their conduct toward the nine Affiliated Funds "implicates the same concerns" for all class members. Defendants analogize the circumstances of this case to those in *Retirement Board*, where class standing was lacking. In *Retirement Board*, plaintiffs brought breach of contract and fiduciary duty claims against Bank of New York Mellon ("BNYM"), a trustee of residential mortgage-backed securities trusts, including those trusts in which plaintiffs did not invest. The Second Circuit held that plaintiffs did not have a "sufficiently personal and concrete stake" in proving the claims of those class members who invested in other trusts because BNYM's alleged misconduct – the failure to detect and report material breaches of the agreements governing those trusts – had to be "proved loan-by-loan and trust-by-trust." *Retirement Board*, 775 F.3d at 162-63.

In the case *sub judice*, plaintiffs *do* have a clear path to demonstrating defendants' misconduct without undertaking the kind of fund-by-fund analysis that was unavoidable in *Retirement Board.* Proving the "interrelated and overlapping" duty of prudence and loyalty claims that are at issue in this case, *Leber v. Citigroup 401(k) Plan Inv. Comm.*, 129 F. Supp. 3d 4, 13 (S.D.N.Y. 2015), will require an inquiry into defendants' conduct in managing the Plan, which plaintiffs allege was uniform and not dependent on the idiosyncratic characteristics of any proprietary funds.

The duty of prudence standard focuses "on a fiduciary's conduct in arriving at an investment decision, not on its results." *Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.* (*PBGC*), 712 F.3d 705, 716 (2d Cir. 2013) (quoting *In re Unysis Sav. Plan Litig.*, 74 F.3d 420, 434 (3d Cir. 1996)); *see also Katsaros v. Cody*, 744 F.2d 270, 279 (2d Cir. 1984); *Leber*, 129 F. Supp. 3d at 14 (quoting *PBGC*, 712 F.3d at 716); *Taylor v. United Techs. Corp.*, No. 3:06cv1494, 2009 WL 535779, at *10 (D. Conn. Mar. 3, 2009), *aff'd*, 354 F. App'x 525 (2d Cir. 2009). Showing that any given Affiliated Fund had cheaper alternatives or that it had unreasonably excessive fees may allow a trier of fact to "reasonably infer . . . that the [defendants'] process was flawed," but it is not dispositive of the ultimate question regarding the "methods employed by the ERISA fiduciary" to investigate, select, or monitor investments. *PBGC*, 712 F.3d at 718 (quotation marks omitted).

Similarly, the standard for evaluating breach of loyalty claims "focuses . . . on the fiduciary's conduct," and asks whether the fiduciary took "all steps necessary to prevent conflicting interests from entering into the decision-making process." *Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 298 (5th Cir. 2000) (citing, *inter alia*, *Donovan v. Bierwirth*, 680 F.2d 263, 276 (2d Cir. 1982)). "Although a fiduciary's ultimate choice may be evidence that the duty of loyalty has been breached, the proper inquiry has as its central concern the extent to which the fiduciary's conduct reflects a subordination of beneficiaries' and participants' interests to those of a third party." *Id.*

Defendants insist that even a focus on their conduct in managing the Plan does not eliminate the need to consider the unique characteristics of the individual Affiliated Funds. In *Retirement Board*, the Second Circuit panel rejected the plaintiffs' contention that BNYM's misconduct could be proven by establishing a common "policy of 'inaction' in the face of widespread defaults." *Retirement Board*, 775 F.3d at 162. The panel explained that "even proof that BNYM *always* failed to act when it was required to do so would not prove their case, because [plaintiffs] would still have to show which trusts actually had deficiencies that required BNYM to act in the first place." *Id.* According to defendants, the same reasoning applies to this case. They posit that "[e]ven if . . . [defendants] failed to properly consider management fees, plaintiffs still must show which funds had excessive expense ratios relative to comparable funds such that the fiduciaries were required to take action in the first place." (Defs.' Mem. in Opp'n to Pls.' Mot. to Certify Class 16, ECF No. 233.) According to defendants, plaintiffs' decision to bring claims related to only a subset of Citigroup's proprietary funds serves as an implicit acknowledgment that a fund-by-fund analysis is needed "in order to determine if there [was] an actionable violation." (Oral Arg. Tr. 32:12-22.)

However, defendants' argument overlooks a fundamental distinction between the allegations in this case and those in *Retirement Board*. In *Retirement Board*, the plaintiffs could not show that BNYM breached its obligations without establishing that BNYM failed to take certain actions when its duty to do so was triggered. But here, plaintiffs' allegations

are centered on breaches of the duty to administer the Plan solely in the interest of its participants and the duty to monitor Plan investments. These are constant duties; they need not be triggered by the characteristics of any Affiliated Fund.

Although plaintiffs will have to engage in a fund-specific inquiry to establish that the fiduciary breaches actually caused losses to the Plan – a prerequisite to establishing liability for any fiduciary breach, *see Silverman v. Mut. Benefit Life Ins. Co.*, 138 F.3d 98, 105 (2d Cir. 1998) (Jacobs, *J.* and Meskill, *J.*, concurring) ("Causation of damages is . . . an element of the claim, and the plaintiff bears the burden of proving it.") – this type of inquiry does not preclude a finding of class standing. First, *NECA-IBEW* and *Retirement Board* do not require every single element of a claim to be provable on a class-wide basis. After all, Rule 23 certification – which presupposes the existence of class standing – does not require a plaintiff to establish that "each element of her claim is susceptible to classwide proof." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013) (quotation marks and alterations omitted). Instead, the Second Circuit's class standing doctrine focuses on the *conduct* of the defendant and whether that conduct implicates the same concerns for all putative class members. *See NECA-IBEW*, 693 F.3d at 162. Here, despite the variations between the Affiliated Funds, investors in all nine funds have the "same necessary stake in litigating" whether defendants' conduct amounted to a breach of their fiduciary duties. *Id.* at 164 (quotation marks omitted). Proving the existence and quantum of losses incurred by each Affiliated Fund is therefore a secondary inquiry. It is analogous to the damages inquiry, and "it is well-established that the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification under Rule 23(a), let alone class standing." *Id.* at 164-65 (quotation marks omitted).

Second, the derivative posture of this action eliminates the Second Circuit's ultimate concern about situations in which misconduct must be proved on a fund-by-fund basis. In *Retirement Board*, the Second Circuit needed to be "reassure[d] . . . that Plaintiffs themselves have any real interest in litigating the absent class members' claims." 775 F.3d at 163. But in this litigation, plaintiffs are suing in a representative capacity and can prevail on behalf of the Plan so long as they show that defendants breached their duties of loyalty and prudence with respect to *any* of the Plan's investment options. *See Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, No. 8:15-cv-1614, 2017 WL 2655678, at *5 (C.D. Cal. June 15, 2017). Therefore, while plaintiffs will ultimately need to establish liability by proving that the Plan suffered losses through individual funds, this does not preclude them from satisfying the Second Circuit's class standing test.

Because plaintiffs asserting 29 U.S.C. § 1132(a)(2) claims in a derivative capacity can establish injury-in-fact by pointing to Plan losses and because, in any event, plaintiffs have class standing to assert breach of duty of loyalty and prudence claims on behalf of all Plan participants injured by defendants' common course of conduct, the Court concludes that plaintiffs have standing to bring all claims asserted in their Fourth Amended Complaint.

## IV. CLASS CERTIFICATION

A court may certify a class action only if the court determines that a class satisfies the four prerequisites of Federal Rule of Civil Procedure 23(a) – numerosity, commonality, typicality, and adequacy of representation – as well as "at least one of the three provisions for certification found in Rule 23(b)." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 117 (2d Cir. 2013). Rule 23 "does not set forth a mere pleading standard," so the "party seeking class certification must affirmatively demonstrate his compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). In addition, because "certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied," a district court must evaluate even those components of Rule 23 that defendants do not contest. *Id.* at 350-51 (quotation marks omitted); *see also Douglin v. GreatBanc Tr. Co.*, 115 F. Supp. 3d 404, 409 (S.D.N.Y. 2015).

### A. Rule 23(a)

#### 1. Numerosity

Federal Rule of Civil Procedure 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Defendants do not dispute that plaintiffs have met the numerosity requirement. (Oral Arg. Tr. 40:15-16.) In this Circuit, numerosity is "presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). According to plaintiffs, the Plan had 189,470 participants at the beginning of 2005 and "thousands" of their accounts were invested in the nine proprietary funds. (Pls.' Mem. in Supp. of Mot. for Class Cert. 6, ECF No. 214 (citing Form 5500 for Plan Year 2005, at 2, Oct. 16, 2006, ECF No. 215, Ex. 3).) This is sufficient evidence to satisfy the numerosity requirement. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 74 (S.D.N.Y. 2006).

#### 2. Commonality

##### a. Legal standards

The commonality requirement of Rule 23(a)(2) is satisfied when plaintiffs' grievances raise "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Because "[a]ny competently crafted class complaint literally raises common 'questions,'" the Supreme Court has defined a common question as one that is "capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 349-50 (quotation marks omitted). In other words, the key issue is "not the raising of common questions – even in droves – but, rather the capacity of a classwide proceeding to generate common *answers*." *Id.* at 350 (quotation marks omitted). However, a "single common question" capable of generating a common answer is only sufficient to meet the requirements of Rule 23(a)(2) if that question is central to the determination of liability. *Id.* at 359 (quotation

marks and alterations omitted); *see also Ruiz v. Citibank, N.A.*, 93 F. Supp. 3d 279, 289-90 (S.D.N.Y. 2015).

        *b.*   *Discussion*

        i.   Existence of common questions

In this case, plaintiffs identify multiple questions that they claim are susceptible to common proof:

> [1] Whether [d]efendants were fiduciaries to the Plan; [2] Whether [defendants'] fiduciary duties included responsibility for selecting, monitoring, and replacing Plan investments; [3] Whether the fees charged by the funds at issue were reasonable compared to alternatives . . . ; [4] Whether [defendants] breached their duties of loyalty and prudence by failing to remove the funds at issue from the 401(k) Plan; [5] Whether the Plan suffered losses as a result of [d]efendants' fiduciary breaches; [6] Whether [d]efendants improperly favored Citigroup proprietary investment products for the 401(k) Plan in order to financially benefit Citigroup at the expense of Plan participants; and [7] Whether [d]efendants prudently and loyally monitored the funds at issue.

(Pls.' Mem. 7.)

Some of the questions enumerated by plaintiffs are inadequate to establish commonality. For instance, asking whether the fees charged by the funds at issue were reasonable compared to alternatives requires fund-by-fund analysis and cannot generate answers that are common to the entire class plaintiffs seek to represent. Meanwhile, other questions, "though [capable of] generating common answers, are not apt to drive the resolution of the litigation." *Ruiz*, 93 F. Supp. 3d at 289.

Nevertheless, plaintiffs have established commonality by identifying at least two questions that are capable of classwide resolution: whether defendants improperly favored proprietary funds in order to benefit Citigroup at the expense of Plan participants (number 6, *supra*), and whether defendants failed to prudently and loyally monitor the Plan's investments (number 7, *supra*). "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137-38 (2d Cir. 2015) (quoting *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014)). Here, if an examination of defendants' conduct in managing the Plan shows that they failed to monitor its investments or that they did not take steps to avoid conflicts of interest, it would not only generate answers applicable to all class members, but would also address the heart of the claims at issue in

this litigation.[14] *See Moreno v. Deutsche Bank Ams. Holding Corp.*, 15 Civ. 9936, 2017 WL 3868803, at *5-6 (S.D.N.Y. Sept. 5, 2017) (finding commonality where common questions included "whether Defendants' process for assembling and monitoring the Plan's menu of investment options, including the proprietary funds, was tainted by a conflict of interest or imprudence"), *appeal filed*, No. 17-2911 (2d Cir. Sept. 19, 2017); *see also Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 571 (D. Minn. 2014) (finding commonality after rejecting defendants' argument that "imprudent selection and retention, disloyalty, and excessive fee claims all require evidence specific to both the funds and the participants").

### ii. Effect of individual defenses

Defendants contend that, even if common issues exist, "no class should be certified where the major focus of the litigation will be on individual defenses rather than on common issues." (Defs.' Mem. 19.) Specifically, defendants point out that litigation will focus on (i) the fact that some class members' claims are likely time-barred either by ERISA's six-year statute of repose or by its three-year statute of limitations – which begins to run on the "earliest date on which the plaintiff had actual knowledge of the breach," 29 U.S.C. § 1113(2) – and (ii) the fact that some class members released their claims upon the termination of their employment with Citigroup. (Defs.' Mem. 20-21.)

Defendants' argument mistakenly applies the predominance standard in Rule 23(b)(3) and is not a proper basis for contesting commonality. *See Dukes*, 564 U.S. at 359; *Johnson*, 780 F.3d at 138. Moreover, to the extent that individual defenses are relevant to the Rule 23(a) inquiry, cases generally analyze them in the context of the typicality or adequacy prerequisites. In that context, only individual defenses asserted by class representatives – not putative class members – pose a barrier to certification. *See Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990), *abrogated on other grounds by Microsoft Corp. v. Baker*, 137 S. Ct. 1702 (2017); *see also Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000). Here, because neither of the "unique" defenses identified by defendants is applicable to the class representatives, there is no "danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Gary Plastic*, 903 F.2d at 180.

---

[14] Defendants argue that questions about a fiduciary's selection of investment options for the Plan cannot lead to common answers because individual participants choose investments based on combinations of factors that "vary considerably from one individual to the next." (Defs.' Mem. 21 (citing King Decl., Ex. 1 (Saha Expert Report) ¶¶ 13, 19-24, 27).) This argument has been roundly rejected. *See Spano v. The Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011) (finding that the assertion that a plan fiduciary "failed to satisfy its fiduciary duties in its selection of investment options . . . describe[s] [a] problem[ ] that would operate across the plan rather than at the individual level"); *Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 571 (D. Minn. 2014); *see also Figas v. Wells Fargo & Co.*, No. CIV. 08-4546, 2010 WL 2943155, at *5 (D. Minn. Apr. 6, 2010) (rejecting identical argument in the context of the typicality inquiry); *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 110 (N.D. Cal. 2008) (same).

In any event, whether analyzed under commonality, typicality, or adequacy, the defenses identified by defendants will not preclude certification. First, because plaintiffs have standing to raise claims related to all nine Affiliated Funds, those class claims are timely under ERISA's six-year statute of repose. Defendants posit that "many members of the proposed class" will nonetheless be time-barred by ERISA's three-year statute of limitations because they are likely to have been aware of the material facts of their claims prior to October 18, 2004 – three years prior to the commencement of this action. (Defs.' Mem. 20.) But "bald speculation that some class members might have [had] knowledge" cannot be "enough to forestall certification." *U.S. Foodservice*, 729 F.3d at 122; *N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, No. 08 Civ. 5653, 2014 WL 1013835, at *9 (S.D.N.Y. Mar. 17, 2014).

Moreover, the basis of defendants' speculation is that class members – who were Citigroup employees – would be aware that the Affiliated Funds were proprietary and would also be privy to their expense ratios. (Defs.' Mem. 20.) This does not suffice to establish the kind of "specific knowledge of the actual breach of duty" required to start the clock on ERISA's three-year limitations period. *Leber v. Citigroup 401(k) Plan Inv. Comm.*, No. 07-Cv-9329, 2014 WL 4851816, at *5 & n.8 (S.D.N.Y. Sept. 30, 2014) (citing *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 193 (2d Cir. 2001)); *see also Moreno*, 2017 WL 3868803, at *6 (finding that statute of limitations issues did not impede certification in a similar case because "[t]he record on this motion does not show that any named Plaintiff or class member had – or even could have – 'actual knowledge' of [the fiduciaries'] process" for selecting and monitoring investment options).

Second, the fact that Citigroup employees "routinely" sign releases waiving all claims against Citigroup, including claims brought under the ERISA statute (*see* Letter from Citibank N.A. to Leslie Y. Highsmith § 5(b) (Feb. 25, 2010), ECF No. 232, Ex. 14 (Highsmith's release of claims)), does not preclude certification. In cases brought on behalf of a plan, most courts have held that "individuals do not have the authority to release a defined contribution plan's right to recover for breaches of fiduciary duty"; the consent of the plan is required for a release of 29 U.S.C. § 1132(a)(2) claims. *In re Polaroid ERISA Litig.*, 240 F.R.D. at 75 (collecting cases); *see also Taylor v. United Techs. Corp.*, No. 3:06CV1494, 2008 WL 2333120, at *4 (D. Conn. June 3, 2008) ("[A]mple case law holds that the signing of releases does not affect typicality where ERISA claims allege damage to the Plan as a whole rather than to individuals."); *Loomis v. Exelon Corp.*, No. 06 C 4900, 2007 WL 2060799, at *6 (N.D. Ill. 2007) (same); *In re Aquila ERISA Litig.*, 237 F.R.D. 202, 210-11 (W.D. Mo. 2006) (same); *In re JDS Uniphase Corp. ERISA Litig.*, No. 03-04743, 2006 WL 2597995, at *1 (N.D. Cal. Sept. 11, 2006) (same).[15]

---

[15] The two cases relied upon by defendants, *Spann v. AOL Time Warner, Inc.*, 219 F.R.D. 307, 316-24 (S.D.N.Y. 2003), and *Walker v. Asea Brown Boveri, Inc.*, 214 F.R.D. 58, 64-66 (D. Conn. 2003), are

Because plaintiffs have raised common questions capable of generating common answers and because the individual issues identified by defendants do not pose an obstacle for certification, the Court concludes that the commonality prerequisite is satisfied.

### 3. Typicality

#### a. Legal Standards

Like commonality, the typicality requirement in Federal Rule of Civil Procedure 23(a)(3) serves as a "guidepost[ ] for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Dukes*, 564 U.S. at 349 n.5.

"To establish typicality under Rule 23(a)(3), the party seeking certification must show that each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (internal quotation marks omitted); *accord Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007).

Typicality also "requires that the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *Mazzei v. Money Store*, 829 F.3d 260, 272 (2d Cir. 2016) (alterations and quotation marks omitted). Accordingly, "[w]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).

#### b. Discussion

The named plaintiffs have established that their claims are typical of the other class members because their claims "arise[ ] from the same course of events and each class member makes similar legal arguments." *In re Flag Telecom*, 574 F.3d at 35 (quotation marks omitted). First, both the named plaintiffs and the class members they seek to represent participated in the same Plan and invested in proprietary funds. They were therefore subject to the same course of conduct by the same defendants in managing the Plan. Second, the class asserts claims based on identical legal arguments – that defendants breached their fiduciary duties of prudence and loyalty by failing to properly monitor and

---

distinguishable because they involved individual ERISA claims; neither was brought on behalf of a plan. *See In re Polaroid ERISA Litig.*, 240 F.R.D. at 75 n.3 (distinguishing *Spann* and *Walker*).

investigate the Plan's investments because they were motivated by divided loyalties. *See Krueger*, 304 F.R.D. at 573 ("[A]s Plan participants alleging breaches of the fiduciary duties Defendants owed to the Plan, the class members are seeking redress of similar grievances under the same legal and remedial theories.").

Echoing their contentions regarding class standing, defendants argue that plaintiffs cannot be typical if they incurred losses through funds that are different from those in which other class members had invested. However, this fact does not suffice to destroy typicality. While plaintiffs will ultimately have to establish loss causation and damages through an analysis that might yield different answers for each fund, the primary "disputed issues of law or fact" presented in this case – whether defendants' conduct in managing the Plan amounted to breaches of their duties of prudence and loyalty – "occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *Mazzei*, 829 F.3d at 272 (quotation marks and alteration omitted); *see also Taylor*, 2008 WL 2333120, at *4 ("Typicality is met even though the individual participants may have some differing interests as to damages because the shared interest in establishing the fiduciary defendants' liability to the Plan outweighs any such slight divergence." (quotation marks omitted)); *Cryer v. Franklin Templeton Res., Inc.*, No. C 16-4265, 2017 WL 4023149, at *6 (C.D. Cal. July 26, 2017) (finding typicality after rejecting defendants' argument that plaintiff "would be preoccupied with establishing the imprudence of the specific funds in which he invested and demonstrating his losses" (quotation marks omitted)), *request to appeal filed*, No. 17-80213 (9th Cir. Oct. 18, 2017).

Defendants make their typicality argument by relying heavily on a distinguishable case from outside the Second Circuit. In *Spano v. The Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011), the U.S. Court of Appeals for the Seventh Circuit held that "a class representative in a defined-contribution case would at a minimum need to have invested in the same funds as the class members." The court explained that the possibility that only some investment vehicles were imprudent – while others were not – creates a potential lack of "congruence" between the claims of the named plaintiffs and those of absent class members who invested in other funds. *Id*.

However, the Second Circuit does not have a *per se* rule requiring exact congruence of investments. *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 158 n.9 (2d Cir. 2012) ("[The district court] erred to the extent it based its conclusion on the (mistaken) assumption that 'only when other people bought the same securities that the plaintiff bought' may a 'practically identically situated' plaintiff serve as their 'class representative.'" (alteration omitted)); *see also Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071, 2003 WL 21672085, at *3 (S.D.N.Y. July 16, 2003). Here, as in most other jurisdictions, the "typicality inquiry focuses on the nature of the class representative's claim or defense and not on the specific facts from which that claim or defense arose." 7 Newberg on Class Actions § 22:71 (5th ed. 2017). As other district courts have found, the fact that "Plan participants may . . . invest in different funds . . . does not change the nature of their claims

or the legal arguments they would make to prove [d]efendants' liability." *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, No. 8:15-cv-1614, 2017 WL 2655678, at *5 (C.D. Cal. June 15, 2017); *see also Krueger*, 304 F.R.D. at 573.

Furthermore, while *Spano* stated its holding categorically, the Seventh Circuit's decision was driven by concerns specific to that case. The plaintiffs in *Spano* were alleging a multitude of objections to defendants' management of an ERISA plan, including the imprudent retention of two particular funds (the Technology Fund and the Boeing Stock Fund) in the defined contribution plan. But there was no common course of conduct alleged that united the plaintiffs' prudence claims; the Technology Fund was allegedly imprudent because it was "imprudently selected, undiversified and excessively (unnecessarily) risky," while the Boeing Stock Fund was allegedly imprudent because it had excessive fees and "held excessive levels of cash." *Spano v. The Boeing Co.*, 294 F.R.D. 114, 124, 126 (S.D. Ill. 2013). Proving liability in *Spano* would not only have required the consideration of a fiduciary's conduct with respect to each individual fund, but would have also required plaintiffs to prove their claims through separate inquiries making use of distinct metrics.

By contrast, in this case, the funds that plaintiffs seek to represent are all proprietary funds and each of the claims concerns allegedly disloyal and imprudent conduct that impacted them in the same manner. In these circumstances, the Court concludes that plaintiffs' claims have the requisite level of congruence with those of the putative class members despite the fact that all class members did not all invest in the same funds. *See Robidoux*, 987 F.2d at 936-37 ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.").

The Court concludes that the typicality requirement of Rule 23(a)(3) has been met.

### 4. Adequacy

Federal Rule of Civil Procedure 23(a)(4) requires the Court to find that the named plaintiffs "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Adequacy is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006). Although the adequacy inquiry is designed to uncover conflicts of interest between named plaintiffs and the class they seek to represent, "[i]n order to defeat a motion for certification, . . . the conflict must be fundamental." *Flag Telecom*, 574 F.3d at 35 (quotation marks omitted). In addition, courts consider whether "plaintiff's attorneys are qualified,

experienced and able to conduct the litigation" as part of the Rule 23(a)(4) inquiry. *Id.* (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)).[16]

As defendants implicitly acknowledge by declining to contest adequacy, plaintiffs have an interest in pursuing the class's claims and do not have fundamental conflicts of interest with the other class members. Plaintiffs Leber and Kennedy have demonstrated their commitment to prosecuting this action by remaining class representatives for the course of this decade-long litigation. Moreover, even though Leber and Kennedy only have a clear financial stake in proving the claims of class members who invested in the Citi Institutional Liquid Reserves Fund, there is no fundamental conflict between their interests and those of class members who invested in other funds. Because plaintiffs allege that all class members' injuries were caused by paying their chosen funds' excessive fees, "[n]o participant could have taken advantage of the high fees of [any] funds to eke out gains at the expense of other participants." *In re Northrop Grumman Corp. ERISA Litig.*, No. CV 06-06213, 2011 WL 3505264, at *11 n.72 (C.D. Cal. Mar. 29, 2011) (noting that there is a relatively low likelihood of intra-class conflicts in cases of "excessive fee claims"); *see also Moreno*, 2017 WL 3868803, at *7.

Plaintiffs have also demonstrated their capacity to protect the interests of the class by their appointment of qualified counsel. *See Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 111 (N.D. Cal. 2008) (citing *Baffa*, 222 F.3d at 61-62). The qualifications of plaintiffs' counsel are addressed in this Court's discussion of Rule 23(g). *See infra*; *see also Kalish v. Karp & Kalamotousakis, LLP*, 246 F.R.D. 461, 463 (S.D.N.Y. 2007) (the analysis of the adequacy of class counsel is "largely the same" under Rule 23(a)(4) and 23(g)).

## B. Rule 23(b)

Once the threshold requirements of Federal Rule of Civil Procedure 23(a) are satisfied, plaintiffs must establish that their putative class action falls into one of the categories of suits enumerated in Rule 23(b). Plaintiffs ask the Court to certify their class pursuant to Rule 23(b)(1), but they also argue that Rule 23(b)(3) certification would be appropriate in the alternative. The difference between these certifications is significant: unlike Rule 23(b)(3) class actions, suits that are certified pursuant to Rule 23(b)(1) are "not subject to the Rule 23(c) provision for notice to absent class members or the opportunity for potential class members to opt out of membership as a matter of right." *In re Simon II Litig.*, 407 F.3d 125, 133 (2d Cir. 2005).

_____

[16] Courts in the Second Circuit have continued to consider the adequacy of class counsel under Rule 23(a)(4) despite the 2003 Amendments to Rule 23, which "shift[ed] the court's examination of the adequacy of counsel to coincide with its new duty to appoint class counsel under Rule 23(g)." *Kalish v. Karp & Kalamotousakis, LLP*, 246 F.R.D. 461, 463 (S.D.N.Y. 2007); *see also* 1 Newberg on Class Actions § 3:80 (5th ed. 2017) ("Rule 23(g) migrated the discussion of counsel's adequacy away from 23(a)(4).").

A court may certify a class under Rule 23(b)(1) if "prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications . . . that would establish incompatible standards of conduct for [defendants]; or (B) adjudications with respect to individual class members that . . . would be dispositive of the interests of [non-party members] or would substantially impair or impede their ability to protect their interests."  Fed. R. Civ. P. 23(b)(1).  Accordingly, Rule 23(b)(1)(A) "considers possible prejudice to the defendants, while 23(b)(1)(B) looks to possible prejudice to the putative class members."  *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 453 (S.D.N.Y. 2004) (quotation marks omitted).  Certification under Rule 23(b)(3) is proper if the "questions of law or fact common to class members predominate over any questions affecting only individual members" and if "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

When a class is eligible for certification under both Rules 23(b)(1) and (b)(3), courts find that Rule 23(b)(1) controls.  *Doe v. Karadzic*, 176 F.R.D. 458, 463 (S.D.N.Y. 1997); *see also Robertson v. Nat'l Basketball Ass'n*, 556 F.2d 682, 685 (2d Cir. 1977).  To hold otherwise would "directly contraven[e]" the stated purpose of Rule 23(b)(1)(B) and could open the door to separate litigation by individual members of the class.  7AA Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1772 (3d ed. 2017) (quotation marks omitted).

Most courts that have certified ERISA class actions alleging breaches of fiduciary duties have done so under Rule 23(b)(1)(B).[17]  "[T]he structure of ERISA favors the principles enumerated under Rule 23(b)(1)(B), since the statute creates a 'shared' set of rights among the plan participants by imposing duties on the fiduciaries relative to the plan, and it even structures relief in terms of the plan and its accounts, rather than directly for the individual participants."  *Kindle v. Dejana*, 315 F.R.D. 7, 12 (E.D.N.Y. 2016) (quoting *Douglin*, 115 F. Supp. 3d at 412).  Because defendants' alleged mismanagement of the Plan is "the same as to all Plan participants, resolution of one action against one Plan participant would necessarily affect the resolution of any concurrent or future actions by other Plan participants."  *Urakhchin*, 2017 WL 2655678, at *8.

The only argument offered by defendants against Rule 23(b)(1)(B) certification is that this case does not involve a limited fund.  (Defs.' Mem. 23.)  But limited fund cases – which involve situations in which a fund's assets are insufficient to satisfy all claims – are just one of the "traditional varieties of representative suit encompassed by Rule 23(b)(1)(B)."  *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834-35 (1999).  Rule 23(b)(1)(B) also envisions "actions

---

[17] *See, e.g., Moreno*, 2017 WL 3868803, at *7; *Koch v. Dwyer*, No. 98 Civ. 5519, 2001 WL 289972, at *5 (S.D.N.Y. Mar. 23, 2001); *Urakhchin*, 2017 WL 2655678, at *7-9; *see also Krueger*, 304 F.R.D. at 576-78; *Yost v. First Horizon Nat'l Corp.*, No. 08-2293, 2011 WL 2182262, at *13-14 (W.D. Tenn. June 3, 2011); *Northrop Grumman*, 2011 WL 3505264, at *15-18; *Taylor*, 2008 WL 2333120, at *6; *Tussey v. ABB, Inc.*, No. 06-04305, 2007 WL 4289694, at *8 (W.D. Mo. Dec. 3, 2007).

charging 'a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class' of beneficiaries, requiring an accounting or similar procedure 'to restore the subject of the trust.'" *Id.* at 834 (quoting Fed. R. Civ. P. 23 advisory committee's note to 1966 amendment). That is precisely the kind of action at issue here. *See Moreno*, 2017 WL 3868803, at *7-8 ("[C]ourts regularly certify 23(b)(1)(B) class actions in non-limited fund situations, particularly in ERISA cases alleging breach of a fiduciary duty . . . ." (quoting 3 Newberg on Class Actions § 4:20 (5th ed. 2017))); *Krueger*, 304 F.R.D. at 577-78. Accordingly, certification under Rule 23(b)(1)(B) is appropriate and the Court need not address whether certification is also proper under either Rule 23(b)(1)(A) or Rule 23(b)(3).

### C. Definition of the certified class

The class that plaintiffs seek to have the Court certify extends from October 18, 2001, to September 4, 2007. (Pls.' Mem. 3.) September 4, 2007, is the date on which defendants removed all of the Affiliated Funds (except the Citi Institutional Liquid Reserves Fund) from the Plan. (4AC ¶ 51.) However, none of the Affiliated Funds were actually "managed or offered by Citigroup affiliates" after December 1, 2005 – the date on which Citigroup sold its asset management business to Legg Mason. (4AC ¶ 48.) Accordingly, defendants ask the Court to cut off the class period at December 1, 2005. (Defs.' Mem. 17.)

The Court agrees with defendants that none of the claims in this case are viable after December 1, 2005. Plaintiffs' duty of loyalty claims are premised on defendants' lack of interest in monitoring and investigating the Plan's investments while they were generating fees for Citigroup. (*See* 4AC ¶¶ 53(D), 54, 90, 91, 97, 101.) But plaintiffs acknowledge – as they must – that any "conflict of interest was vitiated after 2005." (Oral Arg. Tr. 20:21-22, 21:12-13.) Meanwhile, plaintiffs' duty of prudence claims are predicated on defendants' conduct in failing to monitor or investigate Plan investment options. At oral argument, plaintiffs attempted to justify their proposed class period by arguing that "the monitoring did not improve" despite the Affiliated Funds' sale to Legg Mason and that defendants "should have taken action sooner to remove these funds." (Oral Arg. Tr. 21:16-18.) However, this explanation is at odds with plaintiffs' own complaint, which alleges that defendants "got much more serious about monitoring 401(k) Plan investments" shortly after deciding to sell the Affiliated Funds to Legg Mason around June of 2005. (4AC ¶ 54; *see also* ¶¶ 50, 91.) The evidence plaintiffs produced in support of their class certification motion also indicates that defendants were already actively engaged in monitoring the Plan's investments by the end of 2005. (*See* Memorandum from Leonardo R. Rodriguez to Defendant Citigroup 401(k) Plan Investment Committee 1-2, Mar. 22, 2006, ECF No. 239, Ex. 1.) Because plaintiffs have no basis for asserting claims related to the period from December 1, 2005, to September 4, 2007, the period of the certified class is truncated accordingly.

### D. Rule 23(g)

After certifying a class, the Court must also appoint class counsel that will "fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(4).  Pursuant to Federal Rule of Civil Procedure 23(g)(1)(A), the Court "must consider" the following factors when appointing class counsel:  "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."  *Id.* (g)(1)(A).  The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  *Id.* (g)(B).

Plaintiffs request the appointment of J. Brian McTigue and James Moore of McTigue LLP and Gregory Porter of Bailey & Glasser LLP as class counsel, as well as David S. Preminger of Keller Rohrback LLP – whose office is located in the Southern District of New York – as liaison counsel.  Mr. McTigue, Mr. Porter, and Mr. Preminger have provided competent representation for plaintiffs since this action's initiation and Mr. Moore has actively participated in the matter since 2010.  Counsel has defended against defendants' motions to dismiss the complaint and partial summary judgment, conducted extensive discovery, and moved to amend the complaint on multiple occasions in order to assert new claims and incorporate new factual allegations based on evidence uncovered during discovery.  In addition, counsel has repeatedly submitted letters identifying legal developments relevant to pending motions.  It is evident that counsel has competently "identif[ied]" and "investigat[ed] potential claims in the action" and that they have "knowledge of the applicable law."  Fed. R. Civ. P. 23(g)(1)(A)(i, iii).

Furthermore, counsel and their respective firms have significant prior experience litigating ERISA class actions involving similar fiduciary breach claims.  (Decl. of James A. Moore in Supp. of Mot. to Certify Class, ECF No. 215, Exs. 4, 5, 6.)  *See* Fed. R. Civ. P. 23(g)(1)(A)(ii).  Their ability to prosecute this action over an extended period of time, including during resource-intensive phases such as discovery, also demonstrates that they have the resources necessary to adequately represent the class.  *See* Fed. R. Civ. P. 23(g)(1)(A)(iv).  Accordingly, the Court appoints J. Brian McTigue and James Moore of McTigue LLP and Gregory Porter of Bailey & Glasser LLP as class counsel and David S. Preminger of Keller Rohrback LLP as liaison counsel.

## V. CONCLUSION

For the foregoing reasons, plaintiffs' motion to certify a class is granted, with the following terms and conditions:

(1) The following class is certified pursuant to Fed. R. Civ. P. 23(b)(1)(B):

All participants in the Citigroup 401(k) Plan who invested in any of the following funds from October 18, 2001 to December 1, 2005:   Citi

Institutional Liquid Reserves Fund, Smith Barney Government Securities Fund, Smith Barney Diversified Strategic Income Fund, Smith Barney Large Cap Growth Fund, Smith Barney Large Cap Value Fund, Smith Barney Small Cap Value Fund, Smith Barney International All Cap Growth Fund, Smith Barney Fundamental Value Fund, and the Salomon Brothers High Yield Bond Fund. Excluded from the class are Defendants, Defendants' beneficiaries, and Defendants' immediate families.

(2) Plaintiffs Marya J. Leber and Sara L. Kennedy are appointed to serve as class representatives, while plaintiff Sherri M. Harris is stricken as a named plaintiff; and

(3) J. Brian McTigue and James Moore of McTigue Law LLP and Gregory Y. Porter of Bailey & Glasser LLP are appointed as class counsel, and David M. Preminger of Keller Rohrback LLP is appointed as liaison counsel for the class.

Dated:   New York, New York

November 27, 2017

SO ORDERED:

Sidney H. Stein, U.S.D.J.

26