UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *Leber, et. al*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| *The Citigroup 401(k) Plan Investment* ) | Civ. A. No. 07-cv-9329-SHS |
| *Committee, et. al*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

This Settlement is the culmination of over a decade of litigation, resulting in a $6.9 million Settlement Fund for the benefit of employees and retirees of Citigroup. Because of the records available, class members were reached by e-mail and/or mailed notice and class members will automatically receive their monetary distribution without the need to complete or submit a claim form or prove eligibility.[1] Out of over 300,000 class members notified, only one has objected to the settlement, and that appears to be based on a misunderstanding. The settlement has also been found reasonable by Newport Trust Company, an Independent Fiduciary, pursuant to ERISA's regulatory requirements.

In light of the litigation risks further prosecution of this action would inevitably entail, it is proper for the Court to approve the Settlement.

**I.     THE CLAIMS IN THE CASE**

Plaintiffs alleged that Defendants were fiduciaries of the Plan and that Defendants engaged in breaches of fiduciary duty under 29 U.S.C. § 1104(a). Plaintiffs allege, in summary,

---

[1] The fully executed settlement agreement, dated August 1, 2018, ("Settlement") was previously filed at Dkt. 281-1.

1

that the fiduciaries responsible for overseeing the Plan (the individual defendants) breached their duties under the Employee Retirement Income Security Act of 1974 (ERISA) by allowing the Plan to pay unduly high fees to Citigroup by including Citigroup-affiliated investments in the Plan, a practice which ended in December 2005. Defendants deny any breaches or ERISA violations.

The Settlement was the product of extensive arms-length negotiation following protracted litigation, including an appeal to the Second Circuit and nearly 300 separate docket entries.

Citigroup denies the claims and all liability. Defendants argue, among other things, that (a) the investment options selected for the Plan were reasonable in that they included a variety of investments offered to investors both within the Plan and outside of the Plan within the mutual fund marketplace; (b) the Plan offered an appropriate investment mix for participants, across different asset classes, risk profiles, fee structures, and outcome opportunities; (c) the fees charged by the investment options in the Plan were reasonable and often lower than the fees charged by competitors for similar products; (d) the investment options in the Plan provided participants with a reasonable expectation of satisfactory performance; and (e) the practice of including some proprietary investments within a 401(k) menu is consistent with industry practice among investment management firms.

**II.     THE ACTION**

Plaintiffs filed their initial complaint October 18, 2007. Doc. 1.  Plaintiffs subsequently filed an Amended Complaint, which included claims that the conduct at issue constituted prohibited transactions in violation of 29 U.S.C. § 1106.  Doc.  15.  Defendants moved to dismiss and Plaintiffs moved for class certification.  Docs.  20 & 26.  The Court granted the motion to dismiss as to the prohibited transaction claim, and dismissed the motion to certify without prejudice, finding that timeliness issues needed to be resolved first via a summary judgment

motion. Docs. 61-62.  Plaintiffs filed a Second Amended Complaint, Doc. 89, and Defendants filed a motion for summary judgment on timeliness grounds on January 10, 2012, arguing that Plaintiffs had "actual knowledge" of the alleged fiduciary breaches more than three years prior to the commencement of this litigation and, accordingly, their claims were barred by ERISA's statute of limitations, 29 U.S.C. § 1113, Doc 93.  On September 30, 2014, the Court denied Defendants motion for summary judgment, and fact discovery began.  Doc. 133.

Fact discovery was extensive and continued for over a year.  It included production and review of over 300,000 pages of documents, 14 depositions, and Plaintiffs filed three motions to compel, (Docs. 130, 165, 199).  Towards the end of fact discovery, Plaintiffs moved to amend and subsequently filed their fourth amended complaint.  Doc. 211.  Defendants answered, still denying liability on all claims.  Doc. 228.   Plaintiffs moved for the second time for class certification on September 18, 2015. Doc. 213.  Plaintiffs' Motion for Class Certification was granted on November 27, 2017 (doc. 266), with the Court certifying a class consisting of those Plan participants who invested in the Affiliated Funds from the beginning of the statutory period until the time the Affiliated Funds were no longer affiliated with Citigroup. This represents a four-year period from October 18, 2001 to December 1, 2005. *Id*. at 26. Defendants' Rule 23(f) appeal was denied by the Second Circuit. Doc. 269.

The parties commenced settlement negotiations in earnest in December 2017. The settlement negotiations took approximately six months to complete, during which time the parties exchanged expert reports. By the time the negotiations on the principal terms of the settlement had concluded, fact discovery had been completed for some time, a class had been certified, and expert reports served. Thus, both parties were well-informed of the facts, legal issues, and risks and benefits of continued litigation. During the course of settlement

negotiations, the parties exchanged numerous settlement proposals. As with any settlement, the parties made material compromises to agree on settlement terms.

The Court entered the order granting preliminary approval of the settlement on October 3, 2018. Dkt. 283. Consistent with the Settlement Agreement and the Court's order, Defendants deposited $350,000 in the qualified settlement fund established for this settlement and will deposit the additional $6,550,000 within five business days after entry of this Court's Final Approval Order. On November 2, 2017, the administrator selected by the parties — Epiq Class Action & Claims Solutions, Inc. ("Epiq") — e-mailed notices, consistent with the Settlement Agreement and the Preliminary Approval Order, to 115,022 individuals for whom Citigroup had e-mail addresses. Dkt. 285-1 at ¶4. The notices were substantially in the form approved by this Court in the Order granting preliminary approval and alerted the participants not only to the key terms of the settlement, but also of their right to object. On November 12, 2018, Epiq mailed similar notices to 252,360 individuals for whom email addresses were not available. *Id*. at ¶ 5. A total of 16,480 email notices were returned to Epiq as undeliverable, and Epiq mailed first-class notice to the individuals with those email addresses on November 30, 2018. Id. at ¶ 6. Epiq also conducted a LexisNexis address search for all notices returned as undeliverable and succeeded in locating and remailing notices to 4,252 people out of 5,776 mailed notices returned undeliverable. *Id*. at ¶7. Thus, well over 99% of the class received email or mailed notice.

The Notice also directed participants to a website, www.citi401ksettlement.com, which has been available at all times since November 2, 2018, and which includes links to the relevant filings pertaining to the settlement. The website had received over 13,000 hits since it became available online. *Id*. at ¶ 10. A toll-free telephone number was also established, which received nearly 1,000 telephone calls from class members. *Id*. at ¶¶ 11–12.

On December 6, 2018, after extensive research and interviews with attorneys for both sides, the Independent Fiduciary, Newport Trust Company, issued its determination letter pursuant to Prohibited Transaction Class Exemption 2003-39, as amended, 75 Fed. Reg. 33,830 (June 15, 2010). It is attached hereto as Exhibit A to the Declaration of Gregory Porter. Newport determined that "the settlement terms, including the scope of the release of claims, the $6.9 million Settlement amount provided for in the Settlement, and the amount of any attorneys' fee award of any other sums to be paid from the recovery, are reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims foregone." Ex. A at p. 2.

## III.  ARGUMENT

The Settlement Agreement satisfies all applicable criteria for approval. The Settlement Agreement should be approved as fair, reasonable, and adequate in all respects.

### A.  The Applicable Legal Standards

"If the [settlement] would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). There is a strong judicial policy that favors the negotiated resolution of litigation. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116–17 (2d Cir. 2005); *TBK Partners, Ltd. V. W. Union Corp.*, 675 F.2d 456, 461 (2d Cir. 1982). This is especially true with respect to class actions. *Wal-Mart Stores, Inc.*, 396 F.3d at 117. For these reasons, "the compromise of complex litigation is encouraged by the courts and favored by public policy." *Id.*; see also *Bano v. Union Carbide Corp.*, 273 F.3d 120, 129–30 (2d Cir. 2001).

### B. The Settlement Is Fair, Reasonable, and Adequate Under the Relevant Factors

There is an initial strong presumption that a proposed class action settlement is fair and reasonable when it is the result of arm's-length negotiations. *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173–74 (S.D.N.Y. 2000); *Newberg on Class Actions* §11.41 at 11-88 (3d ed. 1992). When the requirement of arm's-length negotiations is satisfied, counsel's endorsement of a proposed settlement is entitled to significant weight. *In re Veeco Instruments Inc. Sec. Litig.*, No. 05-MDL-1695, 2007 WL 4115809, at *12 (S.D.N.Y. Nov. 7, 2007) ("courts should "consider the opinion of experienced counsel with respect to the value of the settlement"); *see also In re PaineWebber Ltd. P'shps Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

The proposed Settlement here is the result of lengthy, contentious and complex litigation and arm's-length negotiations between the parties. Counsel on both sides are experienced and thoroughly familiar with the factual and legal issues presented. Class Counsel are very experienced in class action litigation generally and, in particular, class litigation arising from breaches of fiduciary duties to retirement plans under ERISA. In settlement discussions, the Class was represented by multiple attorneys, each with a decade of experience bringing, settling, and trying cases on behalf of retirement plan participants alleging imprudence, disloyalty, and prohibited transactions under ERISA. Class Counsel is intimately familiar with this unique and complex area of law and it is Class Counsel's opinion that the proposed Settlement is fair and reasonable. Dkt. 282-1 at ¶ 10.

Moreover, in connection with their settlement negotiations, the Parties exchanged information regarding their views on the merits, strengths, and weaknesses of the Action, risks of litigation, available insurance, and the financial impact to Defendants, the Class, and the Plan,

6

with respect to any judgment or settlement. They also exchanged expert reports. Based on these communications, the Parties were able to negotiate a fair settlement that they believe to be in their respective best interests. Because the Settlement is the product of serious, informed, non-collusive negotiations, preliminary approval should be granted.

> **1. The strength of the Plaintiffs' case on the merits balanced against the benefits to the class provided by the settlement**

As discussed above, a significant theory for recovery alleged by Plaintiffs is based on Defendants' selection and retention of proprietary investment products in the Plans. Class Counsel continue to believe in the merits of these claims. However, there are significant legal obstacles and defenses which render recovery in this case uncertain and that may affect the amount if there is a recovery. Defendants deny Plaintiffs' claims, deny that they committed or participated in any fiduciary breaches or other wrongdoing, vigorously contested Plaintiffs' claims, and would continue to do so. Other cases concerning alleged self-dealing in the selection and maintenance of plan investment options have been dismissed or resulted in defense verdicts. *Meiners*, 2017 WL 2303968 (dismissing proprietary funds 401k case); *Brotherston,* 2017 WL 2634361 (entering judgment for Defendant in case concerning use of proprietary funds in employee 401(k) plan). Meanwhile, the $6.9 million settlement represents 39 % of the claimed excess fee damages. Declaration of Gregory Porter at ¶ 6. This is a very good result for a class action settlement of this type. *See, e.g., Urakhchin v. Allianz Asset Management, L.P.*, No. 15-1614, 2018 WL 3000490 at *4 (C.D. Cal. Feb. 6, 2018) (seeing approval of ERISA class action settlement regarding proprietary funds in a 401(k) plan where settlement represented 25.5% of alleged damages).

7

### 2. The amount offered in settlement

As discussed above, the Settlement includes a $6.9 million settlement fund. As a result of the settlement, the Class will benefit now from the Settlement Fund, instead of years from now if the case were ultimately successful at trial. The distinction is meaningful. Cases of this nature tend to have significant life-cycles. In one such case, *Tussey v. ABB, Inc.*, participants filed their action in 2006, received a trial verdict in 2012, saw that verdict reduced by the court of appeals in 2014 and still have not received any compensation, as their case is currently on remand for a second time on the question of how to calculate damages. *Tussey v. ABB, Inc.*, 850 F.3d 951 (8th Cir. 2017) (remanding on damages); *cert. denied*, 138 S. Ct. 281 (2017). If this case continues, it too could take yet another decade or more for the Class to receive any benefit, even if Plaintiffs prevail at trial.

### 3. The opinions of the participants, including class counsel, class representatives and class members

Pursuant to this Court's Order preliminarily approving the settlement (Dkt. 283), notice of the Settlement Agreement was mailed to over 300,000 individuals believed to be Settlement Class Members. Dkt. 285-1 at ¶¶ 4–7. In addition, the Notice was distributed electronically and made available over the Internet via the Settlement website. *Id*. at ¶¶ 9–10. This notice complies with the requirements of Fed. R. Civ. P. 23 and due process, as it was calculated to ensure individual notice to each of the class members.

Over 300,000 current and former Citigroup employees and their beneficiaries were notified of the settlement and their right to object. The only objection received, apparently based on a misunderstanding, is from a class member apparently believing the settlement notice means someone has stolen her identity and specifically directing that a payment be made to her under

the settlement. Dkt. 287.[2] The virtual lack of any objection is a telling sign of overwhelming support for the settlement by the members of the class. The Class Representatives also both agree with the settlement, as does Newport Trust Company, which reviewed the settlement pursuant to the Department of Labor's regulations in overseeing plan settlements.

Moreover, notice was sent to the Attorneys General of all states where Settlement Class Members reside, as well as the United States Attorney General, as required under the Class Action Fairness Act, 28 U.S.C. § 1715. *Id*. at ¶ 4. No objection or opposition was received from an Attorney General.

These factors overwhelmingly support the Court's granting final approval of the Settlement Agreement.

Class Counsel are very experienced in class action litigation generally and, in particular, are among the most experienced firms in the country with respect to class actions alleging ERISA breaches for use of proprietary funds and/or charging unduly high fees in 401(k) plans. It is also Class Counsel's opinion that the proposed Settlement is fair and reasonable. Doc. 46-2 at ¶ 7.

This factor supports the Court's granting final approval of the Settlement Agreement.

## IV.   CONCLUSION

Plaintiffs respectfully request that the Court finally approve the proposed Settlement Agreement as fair, reasonable, and adequate, and enter the proposed Final Order and Judgment.

Dated: December 20, 2018

---

[2] The Court-approved notice indicated all objections must be received by December 13, 2018. Ms. Brown submitted her objection on December 18, 2018. While Plaintiffs believe the "objection" not to object to the terms of the settlement at all, Plaintiffs also note that it is untimely. Plaintiffs are attempting to reach Ms. Brown to understand the nature of her objection, but, given the late receipt of notice, have not been able to reach her as of the date of this filing.

Respectfully submitted,

By:     /s/ Gregory Y. Porter
Gregory Y. Porter *(Pro hac vice)*
**BAILEY & GLASSER LLP**
1054 31st Street, Suite 230
Washington, DC 20007
T: 202.463.201
F: 202-463-2103
gporter@baileyglasser.com

J. Brian McTigue *(Pro hac vice)*
James A. Moore *(Pro hac vice)*
**MCTIGUE LAW LLP**
4530 Wisconsin Avenue, NW
Suite 300
Washington, DC 20016
T: 202.364.6900
F: 202.264.9960
bmctigue@mctiguelaw.com
jmoore@mctiguelaw.com

*Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 20th day of December 2018, the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

                                               */s/ Gregory Y. Porter*
                                               Gregory Y. Porter