UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
―――――――――――――――――――――――――――

Leber, et al.,

                        Plaintiffs,

        -against-

Citigroup, Inc., et al.,

                        Defendants.

07-Cv-9329 (SHS)

OPINION & ORDER

SIDNEY H. STEIN, U.S. District Judge.

## I. BACKGROUND

This "Motion for Pre-Arbitration Relief and Distribution of Attorneys Fees Beyond Reasonable Dispute" by co-lead class counsel McTigue Law LLP arises out of a dispute between it and Bailey & Glasser LLP, its co-lead class counsel in this longstanding ERISA class action. (Doc. 304.) The disagreement between co-counsel concerns the proper distribution of $2.3 million in attorneys' fees that the Court awarded on January 3, 2019 at the time it approved the settlement agreement in this action. (Doc. 294.) That attorneys' fee award is currently being held in an escrow account administered by the settlement administrator pending authorization from both class counsel firms for its distribution. (McTigue's Feb. 12, 2019 Letter at 2, Doc. 295.)

After the Court entered its order approving the settlement and awarding attorneys' fees, Bailey & Glasser informed McTigue that it will not consent to

the distribution of any amount of attorneys' fees until a dispute between it and McTigue is resolved. *Id*. Bailey & Glasser represents that it is withholding consent because it was allegedly forced to cover a greater portion of the litigation expenses than was required under the "Agreement Between Law Firms Regarding Co-Counseling" (the "Co-Counsel Agreement," Doc. 297 Ex. A) that both firms entered into in 2009. (Bailey & Glasser's Feb. 13, 2019 Letter at 2, Doc. 296.)

In a letter dated February 12, 2019, McTigue informed the Court of its intention to file a motion seeking an order allocating attorneys' fees among class counsel, or, in the alternative, simply ordering the distribution of the fees based on the firms' lodestar percentages set forth in the Co-Counsel Agreement. (McTigue's Feb. 12, 2019 Letter at 1, Doc. 295.) In response, Bailey & Glasser called the Court's attention to that Agreement's arbitration clause, which requires the two firms to attempt to resolve "any dispute arising under or relating to the terms of this Agreement" through mediation and, if that fails, through arbitration. (Bailey & Glasser's Feb. 13, 2019 Letter at 1, Doc. 296.)

The Court held a telephone conference with the two firms on February 21, 2019, during which it encouraged class counsel to resolve the dispute themselves but stated that it would accept appropriate motions if that proved

impossible.  One week later, Bailey & Glasser filed a motion to compel arbitration (Doc. 299) but withdrew that motion shortly thereafter (Doc. 301).  On March 5, 2019, McTigue filed this motion for pre-arbitration relief.

In its motion, McTigue requests that the Court order the immediate distribution of all but $250,000 of the $2.3 million attorneys' fees award on the grounds that "most of the attorneys fees [are] beyond reasonable dispute." (McTigue's Mem. at 3, Doc. 305.)  In its opposition, Bailey & Glasser reiterates its belief that the dispute must be submitted to mediation and arbitration pursuant to the Co-Counsel Agreement.

## II. DISCUSSION

McTigue's motion raises two issues: first, whether the dispute need be resolved through mediation and arbitration; and second, whether the Court should grant the pre-arbitration relief that McTigue requests.  For the following reasons, the Court (1) finds that the dispute must be resolved through the alternative dispute resolution mechanisms set out in the Co-Counsel Agreement and (2) declines to grant the requested pre-arbitration relief.

### A. The Dispute Must Be Resolved Through the Alternative Dispute Resolution Procedures Set Out in the Co-Counsel Agreement.

When deciding whether a dispute must be submitted to arbitration pursuant to an arbitration clause, a district court must first "determine

3

whether the parties agreed to arbitrate; second, it must determine the scope of that agreement." *Mehler v. Terminix Intern. Co.*, 205 F.3d 44, 47 (2d Cir. 2000); *see also Campaniello Imps., Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 666 (2d Cir. 1997). McTigue has not contested the existence or the validity of the Co-Counsel Agreement itself or the arbitration clause contained within it. Therefore, the Court moves directly to the second question: the scope of that agreement.

The U.S. Court of Appeals for the Second Circuit has written that a district court faced with this question should decide at the outset whether the arbitration agreement is broad or narrow. In *Collins & Aikman Products Co. v. Building Systems, Inc.*, it wrote as follows:

> [I]f the arbitration clause is broad, there arises a presumption of arbitrability; if however, the dispute is in respect of a manner that, on its face, is clearly collateral to the contract, then a court should test the presumption by reviewing the allegations underlying the dispute and by asking whether the claim alleged implicated issues of contract construction or the parties' rights and obligations under it. If the answer is yes, then the collateral dispute falls within the scope of the arbitration agreement.

58 F.3d 16, 23 (2d Cir. 1995); *see Norcom Electronics Corp. v. CIM USA Inc.*, 104 F. Supp. 2d 198, 203 (S.D.N.Y. 2000).

The arbitration clause in the Co-Counsel Agreement provides that "[i]n the event of any dispute arising under or relating to the terms of this Agreement, it is agreed that the dispute is to be first mediated. If no

4

agreement is reached after mediation, then the parties agree to participate in binding arbitration." (McTigue's Feb. 19, 2019 Letter, Ex. A § 8, Doc. 297.) This language is a classic example of a broad arbitration clause. *Collins & Aikman Products*, 58 F.3d at 20 (stating that a clause "submitting to arbitration '[a]ny claim or controversy arising out of or relating to th[e] agreement,' is the paradigm of a broad clause."). Therefore, this dispute is subject to a "presumption of arbitrability" as set forth in *Collins & Aikman Products*. *Id*. at 23.

Furthermore, the disagreement involves an issue that is squarely addressed by the terms of the Co-Counsel Agreement. Section 4 of the contract is titled "Attorney Fees and Expenses" and expressly addresses the method of disbursement of attorneys' fees "recovered through the Matter" including "in a class action settlement." (McTigue's Feb. 19, 2019 Letter, Ex. A § 4, Doc 297.) McTigue's and Bailey & Glasser's current dispute over the disbursement of attorneys' fees therefore is a dispute "arising under or relating to the terms of th[e] Agreement." *Id*. § 8.

In addition, federal substantive law of arbitrability, which governs the determination of an arbitration agreement's scope, counsels that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration . . . . The [Federal] Arbitration Act establishes that, as a

5

matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 48 (2d Cir. 1993) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)). "Indeed, unless it can be said 'with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute,' the dispute should be submitted to arbitration." *Concourse Village, Inc. v. Local 32E, Service Employees Int'l Union*, 822 F.2d 302, 304 (2d Cir. 1987) (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)); *Nat'l City Golf Fin. v. Higher Ground Country Club Mgmt. Co.*, 641 F. Supp. 2d 196, 208-09 (S.D.N.Y. 2009). Accordingly, "federal policy favoring arbitration requires [courts] to construe arbitration clauses as broadly as possible." *Genesco, Inc. v. Kakiuchi & Co.*, 815 F.2d 840, 847 (2d Cir. 1987).

McTigue argues that "most of the attorneys fees are beyond reasonable dispute, [so] there is no just reason to delay the distribution of the amount beyond reasonable dispute any longer." (McTigue's Mem. at 3, Doc. 305.) However, McTigue cannot unilaterally decide that some portion of the fees is not in dispute. Bailey & Glasser has chosen to contest the division of the entire attorneys' fee award by withholding its consent to distribution. The

6

dispute therefore extends to the entire $2.3 million and the firms must honor the agreement they made to resolve "any dispute arising under or relating to the terms of [the Co-Counsel] Agreement" through mediation and arbitration. (McTigue's Feb. 19, 2019 Letter, Ex. A § 4, Doc 297.) McTigue urges that the entire disagreement is one ginned up by Bailey & Glasser, the substantially larger firm, as a means of exerting economic pressure on McTigue by depriving McTigue of a significant amount of fees in the hope of coercing McTigue to agree to Bailey & Glasser's proposed modification of the split in fees. (McTigue's Mem. at 4, Doc. 305.) Regardless of the alleged motivation, the agreement to arbitrate will be honored and the arbitrator will be able to hear all appropriate arguments and decide accordingly.

### B. The Court Declines to Grant the Pre-Arbitration Relief McTigue Requests.

McTigue styles its request as one for "pre-arbitration relief." A review of relevant Second Circuit case law reveals that district courts may indeed grant pre-arbitration relief, but that relief appears to be in the form of an injunction to preserve the status quo when a dispute is subject to mandatory arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895-96 (2d Cir. 2015) ("Where the parties have agreed to arbitrate a dispute, a district court has jurisdiction to issue a preliminary injunction to preserve the status quo pending arbitration.")

7

(internal quotations omitted); *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1051-54 (2d Cir. 1990); CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3569 (3d ed.); *see also Aggarao v. MOL Ship Management Co.*, 675 F.3d 355, 376 (4th Cir. 2012); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Salvano*, 999 F.2d 211 (7th Cir. 1992).

Courts are permitted to issue pre-arbitration injunctive relief in order to aid the arbitration process because "[a]rbitration can become a hollow formality if parties are able to alter irreversibly the status quo before the arbitrators are able to render a decision in the dispute." *Blumenthal*, 910 F.2d at 1053. The standard for such an injunction is the same as for preliminary injunctions generally: the party seeking the injunction must demonstrate "(1) a likelihood of success on the merits or . . . sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor; (2) a likelihood of irreparable injury in the absence of an injunction; (3) that the balance of hardships tips in the plaintiff's favor; and (4) that the public interest would not be disserved by the issuance of an injunction." *Benihana*, 784 F.3d at 896.

The pre-arbitration relief that McTigue seeks is an order directing the settlement administrator to distribute all but $250,000 of the attorneys' fee award prior to arbitration. A preliminary injunction to that effect manifestly

would not preserve the status quo; rather, it would disturb the status quo by distributing the funds that are in dispute. Therefore, an injunction ordering the disbursement of these funds would not serve to "preserve the meaningfulness of the arbitration." *Blumenthal*, 910 F.2d at 1053.

The Court therefore denies McTigue's motion for pre-arbitration relief. The parties are directed to proceed with mediation and, if necessary, arbitration. The mediation shall take place on April 2, 2019, as the firms have agreed. (Bailey & Glasser's Opp. at 7, Doc. 307; McTigue's Reply at 2, Doc. 308.) If mediation fails, the firms shall proceed immediately to arbitration pursuant to Section 8 of the Co-Counsel Agreement.

Dated: New York, New York
       March 25, 2019

SO ORDERED:

*Sidney H. Stein*

Sidney H. Stein, U.S.D.J.